**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE**
**ENTERED INTO PREPETITION AND PAY RELATED PREPETITION**
**OBLIGATIONS, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE**
**INSURANCE AND SURETY COVERAGE, AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1]    The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid.  The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") respectfully state the following in support of this motion (this "<u>Motion</u>"):[2]

## **Relief Requested**

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "<u>Interim Order</u>" and "<u>Final Order</u>"), (a) authorizing the Debtors to (i) continue their prepetition insurance coverage and satisfy prepetition obligations related thereto, (ii) renew, amend, supplement, extend, modify, or purchase insurance coverage on a postpetition basis in the ordinary course of business, and (iii) maintain the Surety Bond Program and Letters of Credit on an uninterrupted basis, and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 30 days after the commencement of these chapter 11 cases to consider entry of the Final Order.

## **Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]   A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Jeffrey S. Stein in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith.  Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

4.       The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 6004, and rules 9013-1 and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

5.       The Debtors, together with their non-Debtor affiliates (collectively, "Rite Aid" or the "Company"), are on the front lines of delivering healthcare services and retail products to millions of Americans daily.  Founded in 1962 with a single discount drugstore in Scranton, Pennsylvania, Rite Aid—and its over 45,000 employees—meet the fundamental consumer need for pharmacy services across the country through two divisions.  On the retail side, Rite Aid employs more than 6,100 pharmacists and operates more than 2,100 retail pharmacy locations in 17 states.  Through Elixir, the Company manages pharmacy benefits for more than one million members via accredited mail and specialty pharmacies, prescription discount programs, and an industry-leading claim adjudication platform.  Headquartered in Philadelphia, Pennsylvania, Rite Aid Corporation is publicly held with its common stock trading on the New York Stock Exchange under the trading symbol, "RAD."

6.       On October 15, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

### The Debtors' Insurance Policies and Related Payment Obligations

7.      In the ordinary course of business, the Debtors maintain approximately 147 insurance policies (collectively, the "Insurance Policies") administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers").   The Insurance Policies provide coverage for, among other things, the Debtors' property, general liability, automobile liability, transportation liability, cyber liability, umbrella coverage, casualty liability, fiduciary liability, pollution liability, and directors' and officers' liability (including tail coverage).[3]  A schedule of the Insurance Policies is attached hereto as **Exhibit C**, which is incorporated herein by reference.[4]

8.      Pursuant to this Motion, the Debtors are seeking authority to honor prepetition obligations related to their Insurance Policies, to extend or reduce those Insurance Policies, and to enter into new insurance policies in the ordinary course of business.  The ability to maintain the Insurance Policies, to extend or reduce those Insurance Policies, and to enter into new insurance policies, as needed in the ordinary course of business, is essential to the preservation of the value of the Debtors' business, operations, and assets.  Moreover, in many instances, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts governing the Debtors' commercial activities, including the requirements of the Office of the United States Trustee for the

---

[3]   The descriptions of the Insurance Policies set forth in this Motion constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions set forth in this Motion.

[4]   The Debtors request relief with respect to all Insurance Policies, regardless of whether the Debtors inadvertently fail to include a particular Insurance Policy on **Exhibit C**.  In addition to the Insurance Policies listed on **Exhibit C**, the Debtors maintain additional insurance policies related to workers' compensation, employee health, dental, disability, and life insurance benefits.  These policies are described, and relief is requested with respect to such policies, in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Associate Wages, Salaries, Other Compensation, and Reimbursable Associate Expenses and (B) Continue Associate Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith (the "Wages Motion").

District of New Jersey (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.

9.      Accordingly, the Debtors request authority to maintain their existing Insurance Policies to the extent appropriate with respect to the Debtors' go-forward operations, to pay prepetition obligations related thereto, to extend or reduce those Insurance Policies, or to enter into new insurance policies in the ordinary course of business.

**A.      Insurance Policies and Premiums**.

10.      The Debtors pay all premium obligations associated with their Insurance Policies (the "Insurance Premiums") on an annual, quarterly, biennial, or triennial basis.  Typically, the Insurance Policies are one to three years in length and renew throughout the year.  The Debtors paid an aggregate amount of approximately $40.4 million in Insurance Premiums in 2022, not including applicable taxes and surcharges, deductibles, broker and consulting fees, and commissions.  The Debtors currently do not finance any of their premium obligations.

11.      As of the Petition Date, the Debtors believe that there is $10.1 million of outstanding Insurance Premiums due in the interim period.  For the avoidance of doubt, the Debtors request authority to pay any prepetition outstanding Insurance Premiums owed in connection with the Insurance Policies and to continue honoring their obligations under the Insurance Policies as they come due on a postpetition basis in the ordinary course of business and consistent with past practice.

12.      The Debtors estimate that approximately 3 Insurance Policies will expire, and will need to be renewed in the ordinary course of business, within 30 days of the Petition Date. Accordingly, out of an abundance of caution, the Debtors seek authority to continue honoring any amounts on account of the Insurance Policies in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies.

13.     The Debtors' Insurance Policies, the categories of insurance that they cover, their approximate annual premium, and each respective Insurance Carrier's name, policy number, and policy term date are listed on Exhibit A to the Order.

**B.      Deductibles and Self-Insured Retentions.**

14.     Certain of the Insurance Policies require the Debtors to pay per-incident deductibles (collectively, the "Deductibles"), depending upon the type of claim and the Insurance Policy involved.  Under certain Insurance Policies, the Insurance Carriers and Third-Party Administrators (as defined below) may pay claimants directly and then invoice the Debtors or draw funds directly from the Debtors' bank accounts on account of any such Deductibles.  In such situations, the Insurance Carriers may have prepetition claims against the Debtors due to the prepetition payment of the claims without a corresponding Deductible.  In addition, or as an alternative, to the Deductibles, certain of the Insurance Policies use self-insured retentions (collectively, the "SIRs"). If a claim is made under these policies, the Debtors must make payments in the first instance up to the limit of the SIR and, once the Debtors have made such payments, the carrier is obligated to cover remaining costs.  In instances where an Insurance Policy provides for both a Deductible and an SIR, the Debtors generally must exhaust the SIR before the Deductible will apply. The Deductibles may range up to $1,000,000 subject to certain limitations, and the SIRs range up to $5,000,000.

15.     Moreover, the Debtors maintain self-insured and self-administered general liability and druggist liability policies (together, the "Self-Insurance Policies").  Under the terms of the Self-Insurance Policies, the Debtors maintain control over the investigation, administration, and, if necessary, adjudication of claims falling under the Self-Insurance Policies without involvement from applicable Insurance Providers.  The Self-Insurance Policies provide coverage *only* to the

extent that a claim exceeds $7,000,000 per occurrence (the "Self-Insurance Threshold"). The Debtors are responsible for any and all claims under the Self-Insurance Threshold.

16.    As of the Petition Date, the Debtors do not believe that there are any material prepetition obligations owed to Insurance Carriers relating to Deductibles, SIRs, or the Self-Insurance Policies.  If, however, the Debtors were to fail to make any Deductible payments, the Debtors could be in jeopardy of losing the corresponding Insurance Policy, being in violation of state laws, and having its Letters of Credit drawn.  Accordingly, out of an abundance of caution, the Debtors seek authorization, but not direction, to satisfy any prepetition amounts outstanding in connection with the Deductibles and continue paying applicable Deductibles or SIRs that arise in the ordinary course of business on a postpetition basis.  Finally, the Debtors seek authorization to maintain and perform under the Self-Insurance Policies.

**C.    Insurance Policy Audits**.

17.    Certain of the Insurance Policies are subject to regular audits (the "Insurance Policy Audits") during their respective policy periods, which may result in an adjustment of Insurance Premiums owed on account thereof.  Insurance Policy Audits for prepetition Insurance Premium payments will not conclude until after the Petition Date.  As a result, the aggregate amount of the Debtors' obligation arising from the Insurance Policy Audits, if any, is not known at this time. Accordingly, the Debtors seek the authority, but not the direction, to honor any amounts owed on account of any Insurance Policy Audits in the ordinary course of business, subject to applicable caps.

**D.    Insurance Brokerage Commissions**.

18.    In connection with the Insurance Policies, the Debtors retain insurance brokerage services from Aon PLC, Marsh USA, Inc. ("Marsh"), and EHD Insurance (collectively, the "Insurance Brokers") to help manage their portfolios of risk.  The Insurance Brokers assist the

Debtors in obtaining comprehensive insurance coverage for the Debtors' operations by aiding with the procurement and negotiation of the Insurance Policies and enabling the Debtors to obtain those policies on advantageous terms at competitive rates.  In connection with these services, the Debtors pay the Insurance Brokers approximately $4.25 million in commissions related to all Insurance Policies (the "Insurance Brokerage Commissions").   The majority of the Insurance Brokerage Commissions are payable according to the Insurance Policies' renewal periods.  The Insurance Brokerage Commissions constitute part of the Insurance Premiums the Debtors pay associated with their Insurance Policies.  Invoices for Insurance Brokerage Commissions and Insurance Premiums are delivered to the Debtors shortly after the applicable Insurance Policy renews. The Debtors paid an aggregate amount of approximately $4.25 million in Insurance Brokerage Commissions in 2022.  As of the Petition Date, the Debtors estimate that there are no outstanding amounts due on account of the Insurance Brokerage Commissions.

19.     Continuation of the services of the Insurance Brokers is necessary to ensure the Debtors' ability to secure Insurance Policies on advantageous terms at competitive rates, facilitate the proper maintenance of the Debtors' Insurance Policies postpetition, and ensure adequate protection of the Debtors' property for any party in interest.  Accordingly, the Debtors request authority to continue paying the Insurance Brokerage Commissions, and, to the extent any such prepetition amounts are determined to remain outstanding, the Debtors seek authority to honor any Insurance Brokerage Commissions in full to ensure uninterrupted coverage under their Insurance Policies.

**E.     Third-Party Administrators**.

20.     The Debtors retain third-party administrator services from Corvel Corporation, Constitution State Services (a subsidiary of Travelers Insurance), and Gallagher Bassett Services,

Inc., and are responsible for payment of invoices of Sedgwick Claims Management Services[5] (collectively, the "Third-Party Administrators"). The Third-Party Administrators assist the Debtors with processing and paying claims made against the Insurance Policies. The Third-Party Administrators charge fees that vary depending on the type of claims handled, coupled with account management, technical support, and intake and immediate intervention services provided (the "Third-Party Administrator Fees"). The Debtors paid an aggregate amount of approximately $1.1 million in Third-Party Administrator Fees in 2022. As of the Petition Date, the Debtors estimate that $225,000 of outstanding Third-Party Administrator Fees are due in the interim period.

21. The Debtors also retain certain claim consulting services from Marsh, in addition to the insurance brokerage services Marsh provides discussed above. The Debtors separately pay Marsh claim consulting fees (the "Claim Consulting Fees") in exchange for these services. The Debtors paid an aggregate amount of approximately $263,375 in Claim Consulting Fees in 2022. As of the Petition Date, the Debtors estimate that there are no outstanding amounts due on account of the Claim Consulting Fees.

22. Continuation of the services provided by the Third-Party Administrators is necessary to ensure that claims incurred against the Insurance Policies are resolved in the ordinary course. Accordingly, the Debtors request authority to continue paying the Third-Party Administrator Fees, and, to the extent any such prepetition amounts are determined to remain outstanding, the Debtors seek authority to honor any Third-Party Administrator Fees in full to ensure uninterrupted claims process and related services.

---

[5] Although Sedgwick Claims Management Services is retained by one of the Insurance Providers, the Debtors agreed to pay any invoices delivered to the Insurance Provider within the limits of the SIR under the applicable Insurance Policy.

## The Debtors' Surety Bond Program

**A.    Surety Bonds and Letters of Credit**.

23.    In the ordinary course of business, the Debtors are required by certain statutes or ordinances to provide surety bonds or other forms of credit support to certain third parties, often utility companies, governmental units, or other public agencies, to secure the payment or performance of certain obligations (each, a "Surety Bond" and collectively, the "Surety Bonds"). When a governmental unit or other public agency requests a bond, and the Debtors determine in their business judgment that they do not wish to use cash and cash equivalents on hand to satisfy such request, the Debtors may post a Surety Bond.  Sureties (as defined herein) provide upfront, the full amount of the requested cash and cash equivalents to the requesting party on behalf of the Debtors, in exchange for, among other things, a fee from the Debtors to secure the Surety Bond issuance on the Debtors' behalf.  The issuance of a Surety Bond shifts the risk of the Debtors' nonperformance or nonpayment from the obligee (such as the utility company or a government agency) to the Surety.

24.    As of the Petition Date, the Debtors maintain approximately 109 Surety Bonds, which provide approximately $149.7 million in aggregate Surety Bond coverage for the Debtors. A schedule of the Surety Bonds currently maintained by the Debtors is attached hereto as **Exhibit D** and incorporated herein by reference.[6]

25.    A material portion of the Debtors' Surety Bonds—twenty in total—are posted in favor of the Centers for Medicare & Medicaid Services to secure obligations related to the use of

---

[6]    The descriptions of the surety bonds set forth in this Motion constitute a summary only.  The actual terms of the surety bonds and related agreements will govern in the event of any inconsistency with the description in this Motion.  The Debtors request relief with respect to all Surety Bonds, regardless of whether the Debtors inadvertently fail to include a particular Surety Bond on **Exhibit D**.

durable medical equipment.  In addition, the Debtors' Elixir segment posts surety bonds to several state administration boards in connection with the operation of their pharmacy benefits management business in such states.  In total, the Debtors maintain thirty-six Surety Bonds in connection with their Elixir business.  Accordingly, the ongoing operation of the Debtors' Surety Bond program is critical to the Debtors' ability to continue delivering successful health outcomes to its constituents.

26.    In the ordinary course of business, the Debtors are also required to provide Surety Bonds to the United States Customs and Border Protection Agency ("U.S. Customs") to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries (collectively, the "Customs Surety Bonds").  The Debtors are required to post the Surety Bonds to secure these obligations pursuant to section 1623 of title 19 of the United States Code, which grants U.S. Customs the authority to require bonds "as they may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction which the Secretary of the Treasury of the Customs Service may be authorized to enforce."  19 U.S.C. § 1623(a).  As such, failing to provide, maintain, or timely replace the Customs Surety Bonds will prevent the Debtors from importing merchandise that is essential to replenishing the Debtors' store inventory and, thus, invigorating the Debtors' operations.  The Debtors are also required to provide Surety Bonds to various providers to secure the Debtors' payment for certain utility services, as well as Surety Bonds for certain regulatory and consumer protection purposes.

27.    In consideration for their issuance of the Surety Bonds, the Debtors pay premiums (the "Surety Bond Premiums") to the Sureties (as defined herein).  The Surety Bond Premiums generally are determined on an annual basis and are paid by the Debtors when the Surety Bonds

are issued and annually upon renewal.  The Debtors paid an aggregate amount of approximately $594,000 in Surety Bond Premiums in 2022.[7]  As of the Petition Date, the Debtors believe that there is $293,000 of outstanding Surety Bond Premiums due in the interim period.  Out of an abundance of caution, the Debtors request authority to pay any prepetition outstanding Surety Bond Premiums owed in connection with the Surety Bonds and to continue honoring their obligations under the Surety Bonds as they come due on a postpetition basis in the ordinary course of business and consistent with past practice.  The Debtors also request authority to enter into new Surety Bonds in the ordinary course of business on a postpetition basis, and, solely pursuant to the Order, renew the Surety Bonds.

28.      In addition, sureties also often require the Debtors to sign an agreement promising to pay the surety in the event the bond is called.  Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal (the Debtors).  As such, certain of the Debtors are party to indemnity agreements (each, a "Surety Indemnity Agreement," and, collectively, the "Surety Indemnity Agreements," and, together with the Surety Bonds, the "Surety Bond Program") with North American Casualty Company, Applied Underwriters, Berkeley Surety Group, LLC, International Fidelity Insurance Company, The Hanover Insurance Company, RLI Insurance Company, and Erie Insurance Co. (the "Sureties").  Pursuant to the Surety Indemnity Agreements, the Debtors agree to indemnify the Sureties from any loss, cost, or expense that such Sureties may incur on account of the issuance of any bonds on behalf of the Debtors.

---

[7]     The amount of Surety Bond Premiums paid in 2022 is presented net of Surety Brokerage Fees (as defined herein), which are discussed separately below.

29.     Additionally, some of the Insurance Policies, Sureties, and certain of the Debtors'
landlords require the Debtors to issue letters of credit (the "Letters of Credit") in the approximate
aggregate amount of $236.5 million.  Wells Fargo and Bank of America issued the Letters of Credit
needed to maintain the Debtors' access to the Insurance Policies and Surety bonds, and Bank of
America issued the Letters of Credit required by the Debtors' landlords.

30.     To continue their business operations during the reorganization process, the
Debtors must be able to provide financial assurance to the Centers for Medicare & Medicaid
Services, state regulators, U.S. Customs, certain utility providers, certain regulatory other
authorities, Insurance Carriers, and landlords.  This, in turn, requires the Debtors to maintain the
existing Surety Bond Program and Letters of Credit.  Accordingly, the Debtors seek authority to
pay Surety Bond Premiums as they come due, maintain and renew the Letters of Credit, renew or
potentially acquire additional bonding capacity as needed in the ordinary course of business, and
execute other agreements, as needed.  Failing to provide, maintain, back, or timely replace the
Surety Bonds and Letters of Credit will prevent the Debtors from, among other things, complying
with their federal law obligations, and consequently prevent them from undertaking essential
functions related to their operations, such as importing goods.

**The Surety Bond Brokers**

31.     The Debtors obtain Surety Bonds primarily through their surety bond brokers,
Aon PLC and Mitchell Insurance Agency, and any wholesale brokers used in connection with the
procurement of such Surety Bonds (the "Surety Brokers," and, together with the Insurance
Brokers, the "Brokers").  The Surety Brokers assist the Debtors in obtaining comprehensive Surety
Bond coverage for their operations in the most cost-effective manner, negotiating Surety Bond
terms, provisions, and premiums, and providing ongoing support throughout the applicable
bonding periods.  The Surety Brokers collect fees for services rendered in addition to or as part of

the premiums paid on the Surety Bonds (the "Surety Brokerage Fees").  The Debtors pay the

Surety Brokers an annual aggregate commission of approximately $161,000.  As of the Petition

Date, the Debtors do not believe they owe any prepetition amounts on account of the Surety

Brokerage Fees.  Nevertheless, out of an abundance of caution, the Debtors request authority to

pay any prepetition amount due and owing in connection with the Surety Brokerage Fees and

continue paying the Surety Brokerage Fees as they come due in the ordinary course of business on

a postpetition basis.

### **Basis for Relief**

**A.  Continuation of the Insurance Policies Is Required by the Bankruptcy Code and U.S.
Trustee Guidelines**.

32.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain

appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory

conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many

instances, the coverage provided under the Insurance Policies is required by the regulations, laws,

and contracts that govern the Debtors' commercial activities, including the operating guidelines

issued by the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee

Guidelines").  Accordingly, the Debtors believe it is essential to their estates, and consistent with

the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all obligations

related to the Insurance Policies and the Surety Bond Program (as applicable) and have the

authority to supplement, amend, extend, renew, or replace their Insurance Policies and Surety

Bond Program as needed, in their judgment, without further order of the Court.

**B.** **The Debtors Should Be Authorized to Satisfy Prepetition Obligations Required Under the Insurance Policies, Surety Bond Program, and Letters of Credit and to Continue Honoring Such Obligations Postpetition.**

33.     The relief requested herein is essential to the Debtors' continuation of ordinary course operations and, as such, is warranted under sections 105(a) and 363 of the Bankruptcy Code.  Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a [b]ankruptcy [c]ourt to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

34.     Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  The Debtors submit that obligations on account of the Insurance Policies, the Surety Bond Program, and Letters of Credit are within the ordinary course of business and thus may be continued in the Debtors' discretion under section 363(c)(1) of the Bankruptcy Code.  In the alternative, "[t]he [debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1).  This provision grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists.  *See Ionosphere Clubs*, 98 B.R. at 175.  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *The Committee of*

*Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

35.    Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, pursuant to the doctrine of necessity.  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. at 824–25 (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  At least one court has recognized that there are instances when a debtor's fiduciary duty "can only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex.

2002).  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court

may grant the relief requested herein.

36.     The doctrine of necessity is satisfied here.  The nature of the Debtors' business and

these chapter 11 cases render it essential for the Debtors to maintain their Insurance Policies,

Surety Bond Program, and Letters of Credit (as applicable) on an ongoing and uninterrupted basis.

The non-payment of any premiums, deductibles, or related fees under the Insurance Policies or

Surety Bonds (as applicable) could result in one or more of the Insurance Carriers or Sureties

terminating or declining to renew the Insurance Policies or Surety Bonds or refusing to enter into

new insurance policies or surety bonds with the Debtors.  If any of the Insurance Policies or Surety

Bonds lapse without renewal, the Debtors could be exposed to substantial liability or property

damages, to the detriment of all parties in interest.

37.     Any interruption in insurance coverage or lapse in maintenance of a Surety Bond

would expose the Debtors to a number of risks, including:  (a) the possible incurrence of direct

liability for the payment of claims that otherwise would have been covered under the Insurance

Policies; (b) the possible incurrence of material costs and other losses that otherwise would have

been reimbursed; (c) the possible inability to obtain similar insurance coverage on terms as equally

favorable as the present coverage; (d) the possible incurrence of higher costs for reestablishing

lapsed Insurance Policies or obtaining new insurance coverage; and (e) potential regulatory

exposure in the event the Debtors are required to maintain certain insurance to continue their

operations.

38.     Continuing the Surety Bond Program is also necessary to maintain the Debtors'

current business operations and avoid severe disruption at this critical juncture in these chapter 11

cases.  Based on the Debtors' current circumstances, it is not likely that the Debtors will be able

to renew, or obtain replacement of, existing bonds on terms more favorable than those offered by the Sureties. Moreover, the process of establishing a new Surety Bond Program would be burdensome to the Debtors, and it is doubtful that the Debtors could replace all of the Surety Bonds in time to avoid defaults or other consequences of the applicable obligations. In short, failure to maintain the Insurance Policies and Surety Bonds could have a detrimental impact on the Debtors' business and the value of their estates.

39.    Further, the continued retention of the Brokers allows the Debtors and their employees to focus on their core operational matters. The Debtors are not well-suited to bring the services provided by the Brokers in-house. If the Debtors fail to make timely payments to the Brokers, the Debtors may lose access to the Brokers' valuable services, disrupting management to the detriment of all stakeholders. Accordingly, the Debtors submit that the requirements of section 363(b) of the Bankruptcy Code are satisfied.

40.    Here, the Debtors seek to continue, amend, supplement, and extend their existing Insurance Policies, Surety Bond Program, and Letters of Credit and purchase new Insurance Policies and Surety Bonds and enter into new Letters of Credit in the ordinary course of business. As noted above, continuation of the Insurance Policies, Surety Bond Program, and Letters of Credit is essential to continuing uninterrupted operations during these chapter 11 cases and preserving the value of the Debtors' business, properties, and assets of the estates. The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events. Moreover, in some cases, maintenance of insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the U.S. Trustee's requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, in the event any of the Insurance Policies lapse

or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage or surety bonds on a postpetition basis in the ordinary course of business.

41.      Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (authorizing debtors to continue their insurance policies and surety bond program on a final basis); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. May 18, 2023) (same); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. May 17, 2023) (same); *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J Jan. 18, 2022) (same); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same);[8]

**C.      To the Extent the Court Determines that the Surety Bond Program Is an Extension of Credit, Relief Is Appropriate Under Section 364 of the Bankruptcy Code.**

42.      Under section 364(c) of the Bankruptcy Code, a debtor may obtain unsecured credit in the ordinary course of business or obtain secured credit (a) with priority over administrative expenses, (b) secured by a lien on unencumbered estate assets, or (c) secured by a junior lien on previously encumbered assets.  11 U.S.C. § 364(c).  To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).  Given the Debtors' current financial circumstances, the Debtors may not be able to obtain financial

---

[8]      Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

accommodations on an unsecured basis or administrative expense basis comparable to those offered by the Sureties.  To the extent a Surety Bond is deemed an extension of credit, or the Debtors are required to post new or additional collateral or issue letters of credit in connection therewith, section 364 of the Bankruptcy Code provides the Debtors ample authority to so renew existing Surety Bonds, procure new ones, whether on an unsecured basis or, if necessary, on a secured basis.

43.     Maintenance and renewal of the Surety Bond Program is necessary to maintain the Debtors' current business operations.  The Debtors are required to provide Surety Bonds or other forms of credit support to certain third parties, often governmental units or other public agencies, to secure the payment or performance of certain obligations.  The Debtors therefore seek authority to furnish the Sureties (or any new provider of Surety Bonds) with Letters or Credit or new forms of credit support with respect to the Debtors' existing Surety Bonds, Surety Bond renewals, or any new surety bonds.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

44.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

45.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  The Debtors' ability to renew, supplement, or purchase insurance coverage or surety bonds on a postpetition basis in the ordinary course of business is vital to a smooth transition into chapter 11.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

46.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Waiver of Memorandum of Law

47.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

48.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to

be:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors

under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors'

or any other party in interest's right to dispute any claim on any grounds; (c) a promise or

requirement to pay any particular claim; (d) an implication, admission or finding that any particular

claim is an administrative expense claim, other priority claim or otherwise of a type specified or

defined in this motion or any order granting the relief requested by this motion; (e) a request or

authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365

of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection

of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or

(g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other

party in interest against any person or entity under the Bankruptcy Code or any other applicable

law.

### No Prior Request

49.     No prior request for the relief sought in this Motion has been made to this Court or

any other court.

### Notice

50.     The Debtors will provide notice of this motion to the following parties and/or their

respective counsel, as applicable:  (a) the office of the United States Trustee for the District of

New Jersey; (b) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (c) the agents

under the Prepetition Credit Facilities and counsel thereto; (d) the DIP Agents and counsel thereto;

(e) Paul, Weiss, Rifkind, Wharton & Garrison LLP and Fox Rothschild LLP, as counsel to the Ad

Hoc Secured Noteholder Group; (f) the indenture trustees for the Senior Secured Notes; (g) the

indenture trustee for the Senior Unsecured Notes; (h) the United States Attorney's Office for the

District of New Jersey; (i) the Internal Revenue Service; (j) the U.S. Securities and Exchange

Commission; (k) the attorneys general in the states where the Debtors conduct their business operations; (l) the Insurance Carriers; (m) the Sureties; (n) the Brokers; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper under the circumstances.

Dated:  October 15, 2023

| | |
|---|---|
| | */s/ Michael D. Sirota* |
| | **COLE SCHOTZ P.C.** |
| | Michael D. Sirota, Esq. |
| | Warren A. Usatine, Esq. |
| | Felice R. Yudkin, Esq. |
| | Seth Van Aalten, Esq. (*pro hac vice* pending) |
| | Court Plaza North, 25 Main Street |
| | Hackensack, New Jersey 07601 |
| | Telephone: (201) 489-3000 |
| | Email:    msirota@coleschotz.com |
| |            wusatine@coleschotz.com |
| |            fyudkin@coleschotz.com |
| |            svanaalten@coleschotz.com |

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler, (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    esassower@kirkland.com
          joshua.sussberg@kirkland.com
          aparna.yenamandra@kirkland.com
          ross.fiedler@kirkland.com
          zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]    The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid.  The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE
ENTERED INTO PREPETITION AND PAY RELATED PREPETITION
OBLIGATIONS, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE
INSURANCE AND SURETY COVERAGE, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through eight (8), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (a) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (b) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief* (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Interim Order"), (a) authorizing the Debtors to (i) maintain coverage under the Insurance Policies, the Surety Bonds, and the Letters of Credit and pay related obligations, and (ii) renew, supplement, modify, or purchase insurance and surety coverage in the ordinary course, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

and this Court having determined that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and upon all of the proceedings had before the Court and

after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED**

**THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____, 2023 at _____

**(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be

actually received by the Debtor's proposed counsel on or before _____, **2023**

**at 4:00 p.m. (Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an

order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors shall serve a copy of the Motion and this Interim Order on each

Insurance Carrier and Surety listed on <u>Exhibits C</u> and <u>D</u> to the Motion within two business days

after the date this Interim Order is entered.

4.      The Debtors are authorized, but not directed, and in each case in accordance with

the ordinary course of business and this Order, to:

(a)      continue the Insurance Policies, including without limitation those Insurance Policies identified on <u>Exhibit C</u> to the Motion, and pay any prepetition or postpetition obligations related to the Insurance Policies, including any amounts owed on account of the Insurance Deductibles, the insurance premiums, and amounts owed to the Insurance Broker under the Insurance Policies, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(b)      maintain the Surety Bond Program and Letters of Credit, including without limitation those Surety Bonds identified on <u>Exhibit D</u> to the Motion, without interruption, including the payment of premiums, performance under any

(Page | 5)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

Indemnity Agreement (including posting collateral as security), provision of additional or new surety bonds or letters of credit to third parties to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries, and to take all appropriate actions in connection therewith, including providing any cash collateral, and execution of other agreements in connection with the Surety Bond Program and Letters of Credit, and pay any prepetition or postpetition obligations related to the Surety Bond Program and Letters of Credit, including any amounts owed to the Surety Bond Brokers, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(c)     in consultation with the Required Consenting Noteholders (as defined in the Restructuring Support Agreement), renew, amend, supplement, extend, or purchase insurance policies to the extent that the Debtors determine that such action is in the best interest of their estates; and

(d)     honor any amounts owed on account of any Insurance Policy Audits in the ordinary course of business.

*provided* that, with respect to paragraph 4(a)–(d) above, nothing in this Interim Order authorizes the Debtors to pay any amounts before such amounts are due, including, but not limited to, amounts related to the Insurance Policies and Surety Bond Program.

5.     To the extent the Debtors subsequently become aware of additional Insurance Policies that have not previously been disclosed, or to the extent the Debtors enter into new Insurance Policies or renew any Insurance Policies, the Debtors shall disclose these Insurance Policies to the U.S. Trustee and the professional advisors to the Ad Hoc Secured Noteholder Group and any official committees appointed in these chapter 11 cases.

6.     The Debtors are not authorized by this Interim Order to take any action with respect to a Surety Bond that would have the effect of transforming a prepetition undersecured or

(Page | 6)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

unsecured Surety Bond obligation into a postpetition or secured obligation. Such relief may be sought by separate motion, which may be heard on an expedited basis.

7.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

8.     Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights

(Page | 7)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

9.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the Insurance Policies, the Surety Bond Program, and/or the Letters of Credit to the extent payment thereof is authorized pursuant to the relief granted herein and to the extent authorized by this Interim Order.

10.      Notwithstanding anything to the contrary in the Motion or this Order, any payment made by the Debtors pursuant to the authority granted in this Order must be in compliance with and any authorization of the Debtors contained herein is subject to: (a) any interim or final orders entered by the Court approving the Debtors' entry into any postpetition debtor-in-possession financing facility and/or authorizing the use of cash collateral; (b) the documentation in respect of any such debtor-in-possession financing or use of cash collateral; and (c) any budget or cash flow forecasts in connection therewith (in each case, the "DIP Order"). To the extent there is any inconsistency between the terms of the DIP Order and this Order, the terms of the DIP Order shall control.

11.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

12.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

(Page | 8)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

16.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

17.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

18.     A true copy of this Interim Order shall be served on all required parties pursuant to Local Rule 9013-5(f).

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

|  |  |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]    The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid.  The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE
ENTERED INTO PREPETITION AND PAY RELATED PREPETITION
OBLIGATIONS, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE
INSURANCE AND SURETY COVERAGE, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through seven (7), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (a) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (b) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief* (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) maintain coverage under the Insurance Policies, the Surety Bonds, and the Letters of Credit and pay related obligations, and (ii) renew, supplement, modify, or purchase insurance and surety coverage in the ordinary course, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief

---

[1]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

| (Page \| 4) | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors shall serve a copy of the Motion and this Final Order on each Insurance Carrier and Surety listed on Exhibits C and D to the Motion within two business days after the date this Final Order is entered.

3.      The Debtors are authorized, but not directed, to:

(a)      continue the Insurance Policies, including without limitation those Insurance Policies identified on Exhibit C to the Motion, and pay any prepetition or postpetition obligations related to the Insurance Policies, including any amounts owed on account of the Insurance Deductibles, the insurance premiums, and amounts owed to the Insurance Broker under the Insurance Policies, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(b)      maintain the Surety Bond Program and Letters of Credit, including without limitation those Surety Bonds identified on Exhibit D to the Motion, without interruption, including the payment of premiums, [performance under any Indemnity Agreement (including posting collateral as security),] provision of additional or new surety bonds or letters of credit to third parties to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries, and to take all appropriate actions in connection therewith, including providing any cash collateral, and execution of other agreements in connection with the Surety Bond Program and Letters of Credit, and pay any prepetition or postpetition obligations related to the Surety Bond Program and Letters of Credit, including any amounts owed to the Surety Bond Brokers, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(Page | 5)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

> (c)     in consultation with the Required Consenting Noteholders (as defined in the Restructuring Support Agreement), renew, amend, supplement, extend, or purchase insurance policies to the extent that the Debtors determine that such action is in the best interest of their estates; and

> (d)     honor any amounts owed on account of any Insurance Policy Audits in the ordinary course of business.

4.      The Debtors are not authorized by this Final Order to take any action with respect to a Surety Bond that would have the effect of transforming a prepetition undersecured or unsecured Surety Bond obligation into a postpetition or secured obligation.  Such relief may be sought by separate motion, which may be heard on an expedited basis.

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

6.      Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order;

| (Page | 6) | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

(e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

7.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the Insurance Policies, the Surety Bond Program, and/or the Letters of Credit to the extent payment thereof is authorized pursuant to the relief granted herein and to the extent authorized by this Final Order.

8.     Notwithstanding anything to the contrary in the Motion or this Order, any payment made by the Debtors pursuant to the authority granted in this Order must be in compliance with and any authorization of the Debtors contained herein is subject to:  (a) any interim or final orders entered by the Court approving the Debtors' entry into any postpetition debtor-in-possession financing facility and/or authorizing the use of cash collateral; (b) the documentation in respect of any such debtor-in-possession financing or use of cash collateral; and (c) any budget or cash flow forecasts in connection therewith (in each case, the "DIP Order").  To the extent there is any inconsistency between the terms of the DIP Order and this Order, the terms of the DIP Order shall control.

(Page | 7)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

9.      Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

10.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

11.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

13.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

14.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

15.      Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

16.      A true copy of this Final Order shall be served on all required parties pursuant to Local Rule 9013-5(f).

17.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## Exhibit C

**Insurance Policies**

| Type of Policy | Insurance Issuer | Policy Number | Policy Term |
|---|---|---|---|
| Accident | National Union | GTP 0009110136-B | 6/1/2024 |
| Acquistion | Beazley USA Services, Inc. | W2C853200101 | 12/18/2026 |
| Aircraft | AIG Aerospace Insurance Svcs. | AV01543680604 | 11/7/2023 |
| Automobile | AIU Insurance Co. (AIG) | 7620268 | 10/15/2024 |
| Automobile | National Union (AIG) | 7620267 | 10/15/2024 |
| Crime | Hartford | 10 FI 0288516-23 | 1/31/2024 |
| Crime | Hiscox | UKA3014998.22 | 3/31/2025 |
| Crime | Travelers | 107242710 | 3/31/2024 |
| Crime | XL | ELU189027-23 | 3/31/2024 |
| Cyber | Amtrust | AES1199934-02 | 3/17/2024 |
| Cyber | Arch UK | FSCEO2303750 | 3/17/2024 |
| Cyber | Arch US | NPL006787701 | 3/17/2024 |
| Cyber | AXA XL Bermuda | BM00038690EO23A | 3/17/2024 |
| Cyber | Beazley UK | FSCEO2300117 | 3/17/2024 |
| Cyber | Berkshire Hathaway | 42-EPP-320432-02 | 3/17/2024 |
| Cyber | Brit / Markel UK | FSCEO2300126 | 3/17/2024 |
| Cyber | CNA | 652091405 | 3/17/2024 |
| Cyber | Nationwide | XMS2309158 | 3/17/2024 |
| Cyber | Sompo | NVX30017283801 | 3/17/2024 |
| Cyber | Starr | 1.0006E+12 | 3/17/2024 |
| Cyber | Vantage | P03CY0000032430 | 3/17/2024 |
| Cyber | Zurich | SPR 9579903-02 | 3/17/2024 |
| D & O | AIG | 03-420-15-14 | 3/31/2024 |

| D & O | AIG | 03-420-15-15 | 3/31/2024 | $150,000 |
|-------|-----|--------------|-----------|----------|
| D & O | AIG | 03-420-15-16 | 3/31/2024 | $500,000 |
| D & O | ANV | ANV154690A | 3/31/2024 | $270,000 |
| D & O | Applied Underwriters (Texas) | BFLXLDTPA011300_020011_03 | 3/31/2024 | $45,000 |
| D & O | Argo | MLX4262443-2 | 3/31/2024 | $46,000 |
| D & O | Ascot | MLXS2310000479-03 | 3/31/2024 | $270,000 |
| D & O | Ascot | MLXS2310000016-04 | 3/31/2024 | $93,075 |
| D & O | Aspen | MC00LEL23 | 3/31/2024 | $135,000 |
| D & O | AWAC | 0305-4452 | 3/31/2024 | $430,000 |
| D & O | Berkley | BPRO8092106 | 3/31/2024 | $345,000 |
| D & O | Berkshire Hathaway | 47-EPC-327772-01 | 3/31/2024 | $93,075 |
| D & O | Dual | 1-DDO-PA-17-S01404471-00 | 3/31/2024 | $270,000 |
| D & O | Dual | 1-DDO-PA-17-S01404470-00 | 3/31/2024 | $46,537 |
| D & O | Endurance (Sompo) | DOX30001001404 | 3/31/2024 | $390,000 |
| D & O | Endurance (Sompo) | ADX10004733209 | 3/31/2024 | $139,600 |
| D & O | Great Midwest (Skyward) | HPRO-CX-GM-0000366-00 | 3/31/2024 | $102,000 |
| D & O | Inigo (Lloyds) | FSGDO2300655 | 3/31/2024 | $390,000 |
| D & O | Intact (One Beacon) | MMX-04381-23 | 3/31/2024 | $345,000 |
| D & O | Markel | MKLM6EL0009379 | 3/31/2024 | $135,000 |
| D & O | Obsidian (Orion) | OII-117-DOX-1-2023-2 | 3/31/2024 | $114,000 |
| D & O | QBE | 130004580 | 3/31/2024 | $430,000 |
| D & O | QBE | 130004582 | 3/31/2024 | $130,750 |
| D & O | RLI | EPG0032022 | 3/31/2024 | $92,000 |
| D & O | RSUI | NHS704522 | 3/31/2024 | $280,000 |

| D & O | RSUI | NHS704523 | 3/31/2024 | $93,075 |
|-------|------|-----------|-----------|---------|
| D & O | StarStone | DNO00017248P-03 | 3/31/2024 | $280,000 |
| D & O | Tokio Marine HCC | 24-MGU-23-A56260 | 3/31/2024 | $93,075 |
| D & O | Travelers | 106270884 | 3/31/2024 | $1,120,000 |
| D & O | Wesco (AmTrust) | EUW1843114 03 | 3/31/2024 | $139,600 |
| D & O | Westfield | XSA-288416F-00 | 3/31/2024 | $139,600 |
| E & O | AWAC | 0313-7399 | 3/1/2024 | $170,000 |
| E & O | Chatham Ins. Svcs. (Travelers) | 107576598 | 3/1/2024 | $335,568 |
| Fiduciary | AIG | 03-421-66-67 | 3/31/2024 | $40,000 |
| Fiduciary | Allianz | USF01072023 | 3/31/2024 | $32,000 |
| Fiduciary | Euclid (Hudson) | SXS31210620-01 | 3/31/2024 | $50,000 |
| Fiduciary | RLI | EPG0032023 | 3/31/2024 | $23,000 |
| Fiduciary | Sompo | FLX30017919001 | 3/31/2024 | $37,000 |
| Fiduciary | Travelers | 105588017 | 3/31/2024 | $65,000 |
| Liability | AIG | 25905366 | 10/15/2024 | $220,101 |
| Liability | AIG (CAT) Excess | 16196150 | 10/15/2024 | $22,010 |
| Liability | Allied World | 0309-3594 | 10/15/2025 | $86,000 |
| Liability | American International Reinsurance Company (AIG) | 27937649 | 10/15/2024 | $150,000 |
| Liability | Arcadian | ARCGL134262023 | 10/15/2024 | $159,500 |
| Liability | Arcadian | ARCGL134262023 | 10/15/2024 | $0 |
| Liability | Ascot Bermuda | RA23ZANS6T1X | 10/15/2024 | $112,200 |
| Liability | Ascot Bermuda | RA23ZANS6T1X | 10/15/2024 | $0 |
| Liability | Axa XL | US00113175LI23A | 10/15/2024 | $995,000 |
| Liability | Axa XL | US00113205LI23A | 10/15/2024 | $222,326 |

| Liability | Axa XL | BM00038222LI22A | 10/15/2024 | $99,500 |
| Liability | Axa XL | BM00038225LI22A | 10/15/2024 | $22,233 |
| Liability | Beazley | W2D987230401 | 10/15/2024 | $36,650 |
| Liability | Bowhead | PMC-139752838-01 | 10/15/2024 | $114,995 |
| Liability | CNA | 7017852135 | 10/15/2024 | $142,800 |
| Liability | Endurance (Sompo) | XSC30000549106 | 10/15/2024 | $159,500 |
| Liability | Endurance (Sompo) | MCEN209424 | 10/15/2023 | $0 |
| Liability | Evanston Ins Co  (Markel) | MKLV3XHC000058 | 10/15/2024 | $36,650 |
| Liability | Evanston Ins Co  (Markel) | MKLV2XPD000013 | 1/1/2024 | $15,635 |
| Liability | Evanston Ins Co  (Markel) | MKLV6XL30000389 | 10/15/2024 | $325,000 |
| Liability | Evanston Ins Co  (Markel) | 1962856-16226-ALT-PW-2023 | 10/15/2024 | $40,625 |
| Liability | Great American | EXC 5201991 | 10/15/2024 | $180,000 |
| Liability | Great American | EXC 1494219 | 10/15/2024 | $18,000 |
| Liability | Liberty Mutual | ECO (24) 60775670 | 10/15/2024 | $222,326 |
| Liability | Lloyds | 2302426 | 1/1/2024 | $78,387 |
| Liability | LS Risk | LSR-PCO-00468-23 | 1/1/2024 | $69,525 |
| Liability | Magna Carta (Liberty) | MCLI209425 | 10/15/2024 | $22,233 |
| Liability | National Union (AIG) | 994-12-71 | 10/15/2024 | $5,105 |
| Liability | National Union (AIG) | BE 38178854 | 10/15/2024 | $1,500,000 |
| Liability | Nationwide | ECO2308844 | 10/15/2024 | $180,000 |
| Liability | Nationwide | TBD | 10/15/2024 | $18,000 |
| Liability | North Rock Ins (CNA) | 425305840 | 10/15/2024 | $15,300 |
| Liability | QBE | 140000794 | 10/15/2024 | $900,000 |
| Liability | QBE | B0509BOWCN2251417 | 10/15/2024 | $90,000 |

| Liability | Starr | 1000041076231 | 10/15/2024 | $241,000 |
|---|---|---|---|---|
| Liability | Starr | SIPW048722 | 10/15/2023 | $21,300 |
| Liability | Vantage | P03HC0000026001 | 10/15/2024 | $75,000 |
| Ocean Marine | AGCS Marine Insurance Co | OC 91582300 | 6/1/2024 | $15,662 |
| Pollution | Illinois Ins Co (ACE) | PPI G27413286 004 | 12/10/2024 | $53,667 |
| Property | Allianz | USP00092523 | 6/1/2024 | $1,415,135 |
| Property | ARK | PTNAM2306991 | 6/1/2024 | $31,250 |
| Property | Arrowhead (QBE) | XPP4863678 | 6/1/2024 | $97,875 |
| Property | Ascot Re (Starr) | SLSTPTY11817823 | 6/1/2024 | $25,806 |
| Property | AWAC | P007678/016 | 6/1/2024 | $774,000 |
| Property | Beazley (Syndicate 2623/623) | W2B5F1230401 | 6/1/2024 | $1,100,000 |
| Property | Blenheim/BLN/RSA (Lloyd's) | PTNAM2310565 | 6/1/2024 | $122,500 |
| Property | Canopius (Syndicate 4444) | B57628JAA | 6/1/2024 | $155,000 |
| Property | Canopius (Syndicate 4444) | B69926DAA | 6/1/2024 | $55,845 |
| Property | CGM UK | PTNAM2306989 | 6/1/2024 | $1,237,500 |
| Property | Chubb (ACE American) | CRX D37747646 015 | 6/1/2024 | $202,577 |
| Property | Convex | PTNAM2308647 | 6/1/2024 | $262,500 |
| Property | Crum & Forster | PPP-911749 | 6/1/2024 | $105,000 |
| Property | Everest | RP5CF00217-231 | 6/1/2024 | $190,517 |
| Property | Everest Re (Starr) | SLSTPTY11817823 | 6/1/2024 | $51,793 |
| Property | Fidelis | B23R0360408M | 6/1/2024 | $177,378 |
| Property | Fidelis | B23R0360928M | 6/1/2024 | $120,000 |
| Property | Fidelis | B23R0360927M | 6/1/2024 | $192,500 |
| Property | Hallmark Specialty Ins. Co. | 83PRX23B367 | 6/1/2024 | $48,000 |

| Property | Hamilton Re | PX23-4195-01 | 6/1/2024 | $79,168 |
|---|---|---|---|---|
| Property | HCC and Axis | PTNAM2308649 | 6/1/2024 | $312,500 |
| Property | Hudson | HCS103822 | 6/1/2024 | $875,000 |
| Property | Lloyds | CMCTR2305158 | 6/1/2024 | $1,588,820 |
| Property | Lloyds | CMCTR2307136 | 6/1/2024 | $1,149,500 |
| Property | Lloyds - XLC/TAL/HIS | PTNAM2306952 | 6/1/2024 | $1,992,693 |
| Property | Lloyds (BRT/CIN/KI) | PTNAM2306988 | 6/1/2024 | $1,720,660 |
| Property | Markel BDA | MKLB8XPR000253 | 6/1/2024 | $241,999 |
| Property | Markel US | MKLV1XPR000667 | 6/1/2024 | $109,999 |
| Property | RSUI | LHD925083 | 6/1/2024 | $107,381 |
| Property | Sompo Endurance US | ARP10011204706 | 6/1/2024 | $84,803 |
| Property | Sompo UK | PTNAM2306986 | 6/1/2024 | $673,491 |
| Property | Sompo UK | PTNAM2306986 | 6/1/2024 | $109,894 |
| Property | Starr | SLSTPTY11817823 | 6/1/2024 | $1,333,750 |
| Property | StarStone | F73200232CSP | 6/1/2024 | $144,000 |
| Property | Swiss Re | NAP 0451402 09 | 6/1/2024 | $129,625 |
| Property | Tokio Marine | LCP6481280-03 | 6/1/2024 | $62,900 |
| Property | Westfield Specialty | XAR-00012TF-01 | 6/1/2024 | $127,938 |
| Property | Zurich American Guarantee & Liab. Ins. Co. | ERP9260076-16 | 6/1/2024 | $1,212,258 |
| Property | Zurich American Insurance Company | ERP 5346960-18 | 6/1/2024 | $574,760 |
| Property | Zurich American Insurance Company | ERP 5346960-18 | 6/1/2024 | $123,199 |
| Property | Zurich American Insurance Company | ERP 5346960-18 | 6/1/2024 | $99,066 |
| Storage Tank | Ironshore | ISPILLSCCGQF002 | 9/1/2025 | $20,339 |
| Workers' Compensation | AIU Insurance Co. (AIG) | 49154468 | 10/15/2024 | $874,201 |

| Workers' Compensation | AIU Insurance Co. (AIG) | 49154467 | 10/15/2024 | $385,445 |
| Workers' Compensation | AIU Insurance Co. (AIG) | 49154469 | 10/15/2024 | $1,094 |
| Workers' Compensation | National Union (AIG) | 3332251 | 10/15/2024 | $359,827 |
| Workers' Compensation | Puerto Rico SIF | 1612001168 | 7/31/2024 | $0 |

## **Exhibit D**

**Surety Bonds**

| Type of Bond | Surety | Principal | Bond Number | Expiration Date | Obligee |
|---|---|---|---|---|---|
| BD | APPLIED RISK SERVICES, INC. | ELIXIR RX SOLUTIONS, LLC | N/A | N/A | NASHVILLE ELECTRIC SERVICE |
| LP | APPLIED RISK SERVICES, INC. | ELIXIR RX SOLUTIONS, LLC | SBP150148_001 | 12/31/2023 | CITY OF PHOENIX |
| LP | IAT INSURANCE GROUP | ELIXIR INSURANCE COMPANY | 0406273 | 4/4/2024 | STATE OF NEVADA |
| LP | IAT INSURANCE GROUP | ELIXIR PHARMACY, LLC | 0490893 | 7/23/2024 | CENTERS FOR  MEDICARE & MEDICAID SERVICES |
| LP | IAT INSURANCE GROUP | ELIXIR PHARMACY, LLC | 0512452 | 11/21/2024 | ARIZONA STATE BOARD OF PHARMACY |
| LP | IAT INSURANCE GROUP | ELIXIR PHARMACY, LLC | 0522605 | 6/14/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES NATIONAL SUPPLIER CLEARINGHOUSE |
| LP | IAT INSURANCE GROUP | ELIXIR PHARMACY, LLC | 0522609 | 6/15/2024 | CALIFORNIA STATE BOARD OF PHARMACY |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0449360 | 5/12/2024 | STATE OF CONNECTICUT |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0512383 | 3/7/2024 | STATE OF OKLAHOMA |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0512434 | 9/10/2024 | STATE OF OKLAHOMA |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0512447 | 10/30/2024 | STATE OF UTAH |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0512448 | 11/4/2024 | STATE OF ARIZONA |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0512490 | 3/30/2024 | STATE OF IOWA |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0512491 | 3/30/2024 | PEOPLE OF THE STATE OF ILLINOIS |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0512492 | 3/30/2024 | STATE OF GEORGIA |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | 0512519 | 6/18/2024 | PEOPLE OF THE STATE OF MARYLAND |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | SEIFSU0544045 | 3/26/2024 | STATE OF IOWA |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | SEIFSU0567673 | 7/31/2024 | STATE OF GEORGIA |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | SEIFSU0567675 | 8/16/2024 | STATE OF LOUISIANA |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC | SEIFSU0567683 | 1/2/2024 | STATE OF NEW HAMPSHIRE |
| LP | IAT INSURANCE GROUP | ELIXIR RX SOLUTIONS, LLC "MO" | 0512477 | 2/13/2024 | STATE OF OKLAHOMA |
| LP | IAT INSURANCE GROUP | ELIXIR SAVINGS, LLC | 0406256 | 8/28/2024 | DAVID ALTMAIER, INSURANCE COMMISSIONER |
| LP | IAT INSURANCE GROUP | ELIXIR SAVINGS, LLC | 0512395 | 4/24/2024 | SOUTH CAROLINA DEPARTMENT OF CONSUMER AFFAIRS |
| LP | IAT INSURANCE GROUP | ELIXIR SAVINGS, LLC | 0512496 | 4/19/2024 | KANSAS ATTORNEY GENERAL |
| GP | IAT INSURANCE GROUP | ELIXIR SAVINGS, LLC | 0522615 | 10/3/2024 | NORTH DAKOTA DEPARTMENT OF INSURANCE |
| GP | IAT INSURANCE GROUP | ELIXIR SAVINGS, LLC | 0544028 | 12/6/2023 | TEXAS DEPARTMENT OF INSURANCE |
| LP | IAT INSURANCE GROUP | ELIXIR SAVINGS, LLC | SEIFSU0544031 | 7/12/2024 | STATE OF SOUTH DAKOTA |

| Type of Bond | Surety | Principal | Bond Number | Expiration Date | Obligee |
|---|---|---|---|---|---|
| GP | IAT INSURANCE GROUP | RITE AID CORPORATION | 0522613 | 3/25/2024 | DELMARVA POWER & LIGHT COMPANY |
| LIQUOR | MITCHELL INSURANCE | LANE DRUG CO | Q94 5170935 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | LANE DRUG CO | Q94 5170936 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | LANE DRUG CO | Q94 5170937 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | LANE DRUG CO | Q94 5170938 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | LANE DRUG CO | Q94 5170939 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | LANE DRUG CO | Q94 5170940 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | LANE DRUG CO | Q94 5170941 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | LANE DRUG CO | Q94 5170942 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | RITE AID OF OHIO | Q94 5170934 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | RITE AID OF OHIO | Q94 5170943 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | RITE AID OF OHIO | Q94 5170944 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LIQUOR | MITCHELL INSURANCE | RITE AID OF OHIO | Q94 5170945 C | 10/1/2024 | OHIO BEVERAGE SYSTEM |
| LP | RLI GROUP | RITE AID CORPORATION | CMS251610 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | THE HANOVER INSURANCE COMPANY | ELIXIR INSURANCE COMPANY | 1076231 | 5/7/2024 | STATE OF NEW MEXICO |
| LP | THE HANOVER INSURANCE COMPANY | ELIXIR RX SOLUTIONS, LLC | 1076232 | 6/1/2024 | STATE OF SOUTH CAROLINA |
| GP | THE HANOVER INSURANCE COMPANY | RITE AID CORPORATION | 1076225 | 2/21/2024 | BALTIMORE GAS & ELECTRIC COMPANY |
| GP | THE HANOVER INSURANCE COMPANY | RITE AID CORPORATION | 1076230 | 2/27/2024 | SAN DIEGO GAS & ELECTRIC |
| GP | THE HANOVER INSURANCE COMPANY | RITE AID CORPORATION | 1076237 | 1/23/2024 | 3 PHASES RENEWABLES, INC. |
| GP | THE HANOVER INSURANCE COMPANY | RITE AID CORPORATION | 1076238 | 1/29/2024 | 3 PHASES RENEWABLES, INC. |
| GP | THE HANOVER INSURANCE COMPANY | RITE AID CORPORATION | 1084179 | 11/11/2024 | CONSTELLATION NEWENERGY, INC |
| GP | THE HANOVER INSURANCE COMPANY | RITE AID OF NEW YORK, INC. | 1076228 | 2/21/2025 | CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. |
| GP | THE HANOVER INSURANCE COMPANY | RITE AID OF OHIO, INC. | 1076245 | 7/20/2024 | THE OHIO STATE LOTTERY COMMISSION |
| GP | THE HANOVER INSURANCE COMPANY | THRIFTY PAYLESS, INC. AND RITE AID CORPORATION | 1076224 | 2/18/2024 | SOUTHERN CALIFORNIA EDISON COMPANY |
| GP | W. R. BERKLEY GROUP | BARTELL DRUG COMPANY/C/O RITE AID CORPORATION/RISK MGMT. | 0235812 | 5/25/2024 | UNITED STATES POSTAL SERVICE |
| GP | W. R. BERKLEY GROUP | ECKERD CORPORATION | 0231484 | 5/15/2024 | PECO ENERGY CO. |

| Type of Bond | Surety | Principal | Bond Number | Expiration Date | Obligee |
|---|---|---|---|---|---|
| LP | W. R. BERKLEY GROUP | ECKERD CORPORATION | 0233810 | 7/31/2024 | PEOPLE OF THE STATE OF NEW YORK |
| LP | W. R. BERKLEY GROUP | ELIXIR RX SOLUTIONS OF MISSOURI, LLC | 0239425 | 11/8/2024 | ARKANSAS INSURANCE COMMISSIONER |
| LP | W. R. BERKLEY GROUP | ELIXIR RX SOLUTIONS, LLC | 0239406 | 6/30/2024 | WISCONSIN COMMISSIONER OF INSURANCE |
| LP | W. R. BERKLEY GROUP | ELIXIR RX SOLUTIONS, LLC | 0239424 | 11/8/2024 | ARKANSAS INSURANCE COMMISSIONER |
| LP | W. R. BERKLEY GROUP | ELIXIR RX SOLUTIONS, LLC | 0245113 | 10/1/2024 | STATE OF WEST VIRGINIA |
| BD | W. R. BERKLEY GROUP | ELIXIR RX SOLUTIONS, LLC | N/A | N/A | THE UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY |
| BD | W. R. BERKLEY GROUP | ELIXIR RX SOLUTIONS, LLC | N/A | N/A | BILLINGS PUBLIC SCHOOLS |
| LP | W. R. BERKLEY GROUP | ELIXIR RX SOLUTIONS, LLC (MO) | 0239410 | 7/14/2024 | WISCONSIN COMMISSIONER OF INSURANCE |
| LP | W. R. BERKLEY GROUP | ELIXIR RX SOLUTIONS, LLC DBA ELIXIR RX | 0245114 | 10/1/2024 | STATE OF WEST VIRGINIA |
| LP | W. R. BERKLEY GROUP | GENOVESE DRUG STORES, INC. | 0233813 | 7/31/2024 | PEOPLE OF THE STATE OF NEW YORK |
| GP | W. R. BERKLEY GROUP | LANE DRUG COMPANY (SEE ATTACHED LIST OF COVERED LOCATIONS) | 0227951 | 10/31/2024 | THE OHIO STATE LOTTERY COMMISSION |
| NP | W. R. BERKLEY GROUP | MATTHEW S. LEATHERBURY | 0227934 | 12/17/2023 | STATE OF KANSAS |
| GP | W. R. BERKLEY GROUP | MAXI DRUG, INC. | 0231490 | 6/5/2024 | CONNECTICUT LOTTERY CORPORATION |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0135742 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0135743 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0135744 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0136132 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0136133 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0136135 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0227943 | 3/1/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |

| Type of Bond | Surety | Principal | Bond Number | Expiration Date | Obligee |
|---|---|---|---|---|---|
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0227944 | 3/1/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0227948 | 3/12/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0227949 | 3/12/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| GP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0231483 | 5/15/2024 | PACIFIC GAS AND ELECTRIC COMPANY |
| GP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0231486 | 5/15/2024 | WEST PENN POWER C/O FIRST ENERGY |
| GP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0231488 | 5/15/2024 | PORTLAND GENERAL ELECTRIC COMPANY |
| GP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0231489 | 5/15/2024 | LONG ISLAND LIGHTING COMPANY D/B/A LIPA |
| GP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0245119 | 9/21/2024 | CHAMPION ENERGY SERVICES, LLC |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0245120 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0245121 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0245122 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0245123 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION | 0245124 | 10/2/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| CU | W. R. BERKLEY GROUP | RITE AID CORPORATION | 200612003 | 8/1/2024 | DEPARTMENT OF HOMELAND SECURITY, BUREAU OF CUSTOMS AND BORDER PROTECTION |
| LP | W. R. BERKLEY GROUP | RITE AID CORPORATION AND ALL ITS SUBSIDIARIES AND AFFILIATES AS NOTED IN "SCHEDULE A" ATTACHED | 0227945 | 3/1/2024 | PENNSYLVANIA DEPARTMENT OF TRANSPORTATION |
| LP | W. R. BERKLEY GROUP | RITE AID DRUG PALACE, INC. | 0235807 | 7/31/2024 | PEOPLE OF THE STATE OF NEW YORK |
| LP | W. R. BERKLEY GROUP | RITE AID DRUG PALACE, INC. DBA RITE AID #1707 | 0227935 | 8/31/2026 | People of the State of New York |
| LP | W. R. BERKLEY GROUP | RITE AID DRUG PALACE, INC. DBA RITE AID #1845 | 0231501 | 8/31/2026 | People of the State of New York |

| Type of Bond | Surety | Principal | Bond Number | Expiration Date | Obligee |
|---|---|---|---|---|---|
| LP | W. R. BERKLEY GROUP | RITE AID DRUG PALACE, INC. DBA RITE AID #1957 | 0231502 | 8/31/2026 | People of the State of New York |
| LP | W. R. BERKLEY GROUP | RITE AID DRUG PALACE, INC. DBA RITE AID #564 | 0231503 | 8/31/2026 | People of the State of New York |
| GP | W. R. BERKLEY GROUP | RITE AID OF CONNECTICUT, INC. | 0233809 | 9/1/2024 | CONNECTICUT LOTTERY CORPORATION |
| CT | W. R. BERKLEY GROUP | RITE AID OF KENTUCKY, INC. | 0245128 | 5/26/2024 | COMMONWEALTH OF KENTUCKY PERRY CIRCUIT COURT |
| LP | W. R. BERKLEY GROUP | RITE AID OF MARYLAND, INC. DBA RITE AID MID-ATLANTIC CUSTOMER SUPPORT CENTER (#10) | 0233811 | 9/1/2024 | MARYLAND BOARD OF PHARMACY |
| LP | W. R. BERKLEY GROUP | RITE AID OF MARYLAND, INC., D/B/A/ RITE AID MID-ATLANTIC CUSTOMER SERVICE CENTER | 0233812 | 9/1/2024 | CALIFORNIA STATE BOARD OF PHARMACY |
| LP | W. R. BERKLEY GROUP | RITE AID OF NEW YORK, INC. | 0233828 | 7/31/2024 | STATE OF NEW YORK |
| LP | W. R. BERKLEY GROUP | RITE AID OF PENNVYLVANIA, LLC | 0233808 | 9/1/2024 | COUNTY OF ALLEGHENY, DEPARTMENT OF PUBLIC WORKS |
| GP | W. R. BERKLEY GROUP | RITE AID OF VIRGINIA, INC. | 0231485 | 5/15/2024 | VIRGINIA DOMINION POWER |
| NP | W. R. BERKLEY GROUP | SAUNDRA KAUFFMAN | 0243028 | 4/10/2026 | COMMONWEALTH OF PENNSYLVANIA |
| LP | W. R. BERKLEY GROUP | THE BARTELL DRUG COMPANY | 0235810 | 3/22/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| LP | W. R. BERKLEY GROUP | THE BARTELL DRUG COMPANY D/B/A RITE AID #06978 | 0243019 | 11/1/2024 | CENTERS FOR MEDICARE & MEDICAID SERVICES |
| WC | W. R. BERKLEY GROUP | THRIFTY PAYLESS, INC. | 0233814 | 9/1/2024 | STATE OF WASHINGTON |
| WC | W. R. BERKLEY GROUP | THRIFTY PAYLESS, INC. | 0233816 | 9/1/2024 | STATE OF CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS SELF-INSURANCE PLANS |
| LP | W. R. BERKLEY GROUP | THRIFTY PAYLESS, INC. | 0235819 | 4/1/2024 | STATE OF CALIFORNIA |
| LP | W. R. BERKLEY GROUP | THRIFTY PAYLESS, INC. (DC #81) | 0231499 | 9/4/2024 | OREGON BOARD OF PHARMACY |
| WC | W. R. BERKLEY GROUP | THRIFTY PAYLESS, INC. AND RITE AID HDQTRS. CORP. | 0233815 | 9/1/2024 | STATE OF OREGON |

| Type of Bond | Surety | Principal | Bond Number | Expiration Date | Obligee |
|---|---|---|---|---|---|
| LP | W. R. BERKLEY GROUP | THRIFTY PAYLESS, INC. DBA RITE AID WOODLAND DISTRIBUTION CENTER | 0227942 | 3/14/2024 | CALIFORNIA STATE BOARD OF PHARMACY |
| BD | APPLIED RISK SERVICES, INC. | ELIXIR RX SOLUTIONS, LLC | N/A | N/A | NASHVILLE ELECTRIC SERVICE |
| LP | APPLIED RISK SERVICES, INC. | ELIXIR RX SOLUTIONS, LLC | SBP150148_001 | 12/31/2023 | CITY OF PHOENIX |