**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR**
**ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING AND APPROVING THE CONDUCT OF STORE**
**CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL**
**LIENS, CLAIMS, AND ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):[2]

## Relief Requested

1.      The Debtors seek entry of orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):  (a) authorizing and approving the continuation or initiation of store closing or similar themed sales (the "Initial Store Closings") at the stores identified on Schedule 1 to **Exhibit A** (collectively, the "Initial Closing Stores"); (b) authorizing and approving the Debtors to conduct store closings at additional stores (the "Additional Store Closings" and, together with the Initial Store Closings, the "Store Closings") at a later date or dates pursuant to the procedures set forth herein (collectively, the "Additional Closing Stores," if any, and together with the Initial Closing Stores, the "Closing Stores"), with all such sales to be free and clear of all liens, claims, and encumbrances (the "Sales"), in accordance with the terms of the store closing sale guidelines (the "Sale Guidelines"), attached as Schedule 2 to **Exhibit A**; and (c) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 30 days after the commencement of these chapter 11 cases to consider entry of the Final Order.

2.      In support of this Motion, the Debtors respectfully submit (a) the *Declaration of Marc Liebman in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief*

---

[2]      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Jeffrey S. Stein in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

(the "Liebman Declaration") and (b) the *Declaration of Elise S. Frejka in Support of Debtors'*
*Motions for Entry of Orders (I) Approving Bidding Procedures and Related Relief and*
*(II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to Be Free*
*and Clear of All Liens, Claims, and Encumbrances and Related Relief* (the "Frejka Declaration"),
each filed contemporaneously herewith.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the District of New Jersey (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*
*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on
September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a
final order in connection with this Motion to the extent that it is later determined that the Court,
absent consent of the parties, cannot enter final orders or judgments in connection herewith
consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105, 363, 365, and 554 of
title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-2 and 9013-5 of
the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local
Rules").

## Background

6.      The Debtors, together with their non-Debtor affiliates (collectively, "Rite Aid" or
the "Company"), are on the front lines of delivering healthcare services and retail products to
millions of Americans daily.  Founded in 1962 with a single discount drugstore in Scranton,
Pennsylvania, Rite Aid—and its over 45,000 employees—meet the fundamental consumer need

3

for pharmacy services across the country through two divisions.  On the retail side, Rite Aid employs more than 6,100 pharmacists and operates more than 2,100 retail pharmacy locations in 17 states.  Through Elixir, the Company manages pharmacy benefits for more than one million members via accredited mail and specialty pharmacies, prescription discount programs, and an industry-leading claim adjudication platform.  Headquartered in Philadelphia, Pennsylvania, Rite Aid Corporation is publicly held with its common stock trading on the New York Stock Exchange under the trading symbol, "RAD."

7.      On October 15, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## I.      The Store Closings.

8.      As discussed in the First Day Declaration, the Debtors have worked tirelessly to build stakeholder consensus around a value-maximizing restructuring of the Company.  The Debtors' efforts on this front yielded agreement in principle on restructuring terms among the Company and certain of its key creditor constituencies.  A key component of the Company's go-forward business plan—and the value-maximizing restructuring of the Debtors contemplated by the agreement in principle to be memorialized by the Restructuring Support Agreement—is the continuation and completion of the Debtors' ongoing multi-year effort to rationalize their retail pharmacy store footprint.  This effort entails, among other things, the closure of certain underperforming stores (based on a comprehensive cost-benefit analysis).

4

9.      The Company's store portfolio rationalization process has been ongoing for several years and has accelerated in recent months in connection with the Company's broader restructuring efforts.  During the twelve-month period ending on September 30, 2023, the Debtors closed approximately 210 stores, leaving the Debtors with approximately 2,100 operating stores as of the Petition Date.

10.     The Debtors' meticulous, thoroughly considered store closure plan is centered on value maximization and an asset disposition strategy based on proceeds realizable through the sale or internal transfer of prescription files and related records (collectively, the "Prescription Assets"), store inventory, including front-end retail inventory (collectively, "Inventory"), and store fixtures, furniture, and equipment (collectively, "FF&E," and together with Inventory, "Non-Prescription Assets"). Before the Petition Date, the Debtors, with the assistance of their advisors, conducted a comprehensive analysis of the Debtors' store portfolio, financial performance, and market geography to identify unprofitable, underperforming, or otherwise sub-optimal store locations.  Once identified, the Debtors determined the best strategy to maximize proceeds from the closure process for each location.  With respect to Inventory, the Debtors' strategy for maximizing store proceeds consists of either (i) conducting a self-managed strategic mark-down plan followed by a clearance sale; and/or (ii) transferring Inventory to other Company store locations that would remain open.  With respect to Prescription Assets, the Debtors' strategy consists of either (i) transferring (or "pouring") Prescription Assets to nearby Company store locations that would remain open, or (ii) selling Prescription Assets to another (non-Rite Aid) pharmacy.

11.     After the completion of these asset dispositions, the Debtors would then vacate the closing store location and address the applicable lease as deemed appropriate by the Debtors in

their business judgment.  With respect to the Closing Stores and any leased stores vacated prepetition, the Debtors anticipate that they will either reject the applicable leases or assume and assign them to one or more third-party buyers, consistent with their business judgment.[3]

12.    This Motion essentially seeks authority for the Debtors to continue their prepetition store closure process, including through conducting Sales (including Sales of Prescription Assets) pursuant to the proposed Interim and Final Orders and the Sale Guidelines incorporated therein. As of the filing of this Motion, the Debtors expect to proceed with the Initial Store Closings in the near-term.  In light of the Debtors' ongoing store portfolio rationalization analysis, the Debtors request authority to conduct Additional Store Closings at Additional Closing Stores identified at a later date or dates, pursuant to the Sale Guidelines.

## II.    The Sale Guidelines.

13.    To maximize the value of Prescription Assets and Non-Prescription Assets (together, the "Closing Store Assets") and effectuate the Store Closings, the Debtors seek approval of streamlined procedures to sell the Closing Store Assets free and clear of liens, claims, and encumbrances (with the proceeds thereof distributed in accordance with the DIP Orders).[4]  As set forth below, the Sale Guidelines are substantially similar to sale guidelines approved in pharmacy and/or retail bankruptcies across the United States.  The Debtors also seek approval of the Sale

---

[3]    Contemporaneously herewith, the Debtors filed (a) the *Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases of Non-Residential Real Property and (B) Abandonment of any Personal Property, Effective as of the Rejection Date and (II) Granting Related Relief* (the "Lease Rejection Motion") and (b) the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* (the "Assumption and Rejection Procedures Motion").  This Motion seeks independent relief and does not request authorization to reject, assume, or assume and assign any executory contract or unexpired lease of the Debtors.

[4]    "DIP Orders" means any interim or final orders of the Court granting the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief.*

Guidelines to provide newspaper and other advertising media in which the Sales may be advertised with comfort that the Debtors are conducting the Sales, as applicable, in compliance with applicable law and with the Court's approval.  The Debtors seek interim approval of the Sale Guidelines to allow the continuation and commencement of the Sales at the Closing Stores.

14.     The Debtors have determined, in the exercise of their reasonable business judgment and in consultation with their advisors, that the Sale Guidelines will provide the best and most efficient means of selling the Closing Store Assets to maximize their value to the estates.

**III.     Liquidation Sale Laws and Dispute Resolution Procedures.**

15.     Certain jurisdictions in which the Debtors operate stores have or may have licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including, without limitation, state and local laws, statutes, rules, regulations, and ordinances (collectively, the "Liquidation Sale Laws").  The Liquidation Sale Laws may establish licensing, permitting, or bonding requirements, waiting periods, time limits, bulk sale restrictions, and augmentation limitations that would otherwise apply to the Store Closings.  Such requirements hamper the Debtors' ability to maximize value in selling the Closing Store Assets.  Subject to the Court's approval, the Debtors intend to conduct the Store Closings in accordance with the Sale Guidelines, and to the extent the Sale Guidelines conflict with the Liquidation Sale Laws, the Sale Guidelines shall control.

16.     For the orderly resolution of any disputes between the Debtors and any Governmental Units (as defined in section 101(27) of the Bankruptcy Code) arising due to the Sale Guidelines and the alleged applicability of any Liquidation Sale Laws, the Debtors respectfully request that the Court approve and authorize the Debtors to implement the following dispute resolution procedures (the "Dispute Resolution Procedures"), as set forth in the Interim and Final Orders:

i.    Provided that the Sales are conducted in accordance with the Interim Order, any Final Order, and the Sale Guidelines, the Debtors and the Debtors' landlords shall be deemed to be in compliance with any requirements of any and all county, parish, municipal, or other local government (collectively, "Local") and state Liquidation Sale Laws that would otherwise apply to the Store Closings or the Sales; *provided* that the term "Liquidation Sale Laws" shall not include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors shall continue to be required to comply with applicable Safety Laws and applicable General Laws (as defined in the Interim and Final Orders), subject to any applicable provisions of the Bankruptcy Code and federal law, and nothing in the Interim Order or the Final Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii.    Within five business days after entry of the Interim Order, or as soon as reasonably practicable thereafter, the Debtors will serve by first-class mail copies of the Interim Order, the proposed Final Order, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the Board of Pharmacy's office for each state where a Closing Store is located; (c) the county consumer protection agency or similar agency for each county where the Sales are being held; (d) the division of consumer protection for each state where the Sales are being held; (e) the landlords for the Closing Stores; and (f) any subtenants (if any) under the leases with respect to the Closing Stores (collectively, the "Dispute Notice Parties").

iii.    With respect to any Additional Closing Stores, within five business days after filing any Additional Closing Store List (as defined below) with the Court, or as soon as reasonably practicable thereafter, the Debtors will serve copies of the Interim Order or the Final Order (if entered) and the Sale Guidelines on the applicable Dispute Notice Parties.

iv.    To the extent that there is a dispute arising from or relating to the Sales, the Interim Order or Final Order, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of the Interim Order, or the service of an Additional Closing Store List, any Governmental Unit may assert that a Reserved Dispute exists by serving a notice (the "Dispute Notice") explaining the nature of the dispute on: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Aparna Yenamandra, P.C.; Ross J. Fiedler, and Zachary R. Manning; (b) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Warren A. Usatine, Felice R. Yudkin, and Seth Van Aalten; (c) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg    (arosenberg@paulweiss.com);    Brian    S.    Hermann (bhermann@paulweiss.com);    and    Christopher    Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street,

Morristown, NJ 07960 (Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com), counsel for the Ad Hoc Secured Noteholder Group; (d) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie; (e) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com), Oscar N. Pinkas (pinkaso@gtlaw.com)) (the "Counsel to the DIP Agents"); (f) counsel to any statutory committee appointed in these chapter 11 cases; and (g) the affected landlord or its known counsel. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

v.  If a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of the Interim Order nor the Final Order, nor the conduct of the Debtors pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws. The filing of a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct Sales and Store Closings pursuant to the Interim Order or the Final Order, as applicable, absent further order of the Court. Upon the entry of the Interim Order or Final Order, the Debtors shall be authorized to conduct the Sales and Store Closings pursuant to the terms of the Interim Order or the Final Order, as applicable, and the Sale Guidelines, and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

vi.  If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

IV.     **Fast Pay Laws.**

17.     Several states in which the Debtors operate have laws and regulations that require the Debtors to pay an employee substantially contemporaneously with his or her termination (the "Fast Pay Laws" and together with the Liquidation Sale Laws, the "Applicable State Laws"). These laws often require payment to occur immediately or within a period of only a few days from the date such employee is terminated.

18.     The nature of the contemplated Store Closings is expected to result in the termination of certain Closing Store employees' employment during the Store Closings.  To be clear, the Debtors intend to pay their terminated employees as expeditiously as possible and under normal payment procedures.  The Debtors' payroll systems, however, may be unable to process the payroll information associated with these terminations in a manner that will be compliant with the Fast Pay Laws.  Under ordinary circumstances, the Debtors' payroll department is able to coordinate delivery of final payments to coincide with an employee's final day of work where required by applicable law.  This process requires the Debtors' payroll department to calculate individual payments upon termination, prepare each termination payment, obtain authorization for each such payment, and then prepare each such payment for disbursement.  Given the number of employees who will be terminated during the Store Closings, this process could easily take several days, making compliance with the Fast Pay Laws burdensome to the Debtors' estates, if not impossible.

V.      **Disposition of Prescription Assets.**

19.     As discussed above, in connection with their pharmacy business, the Debtors own certain Prescription Assets across their various store locations, including the Closing Stores. Before the Petition Date, in connection with the Debtors' prepetition store closures, the Debtors either transferred Prescription Assets to non-closing Company stores or sold closing stores'

10

Prescription Assets to one or more non-Rite Aid pharmacies on a confidential basis, with such sale transactions averaging $0.8 million per sale.

20.      By this Motion, the Debtors seek authority to continue Sales and internal transfers of Prescription Assets on a confidential basis consistent with their past practice.  The Prescription Assets are prototypical "melting ice cube" assets.  If customers anticipate a potential store closure—which they likely will here given extensive media coverage of the Debtors' restructuring and the public nature of these cases—they may transfer their prescriptions to another pharmacy, leaving no saleable or internally transferable prescription file with the old pharmacy.  This dynamic is intensified by the limited market for the Prescription Assets, which under applicable nonbankruptcy law generally can only be sold to another licensed/registered pharmacy.  The universe of potential acquirors is therefore limited.  Accordingly, the Debtors firmly believe that continuing Sales and internal transfers of Prescription Assets consistent with their historical practice is the best way to maximize the value of those assets.

**VI.      Contractual Restrictions.**

21.      The Debtors also respectfully request a waiver of any contractual restrictions that could otherwise inhibit or prevent the Debtors from maximizing value through the Store Closings and Sales.  In certain cases, the contemplated Store Closings and Sales may be inconsistent with certain provisions of leases, subleases, or other agreements or documents with respect to the premises in or upon which the Debtors operate, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions, and restrictions (*e.g.*, "go dark" provisions and landlord recapture rights), or other similar agreements, documents, or provisions

(collectively, "<u>Contractual Restrictions</u>").    Such restrictions would also hamper the Debtors'

ability to maximize value in selling Closing Store Assets.

22.    The Debtors also request that no person or entity, including, without limitation,

utilities, landlords, shopping center managers and personnel, creditors, and all persons acting for

or on their behalf shall interfere with or otherwise impede the conduct of the Store Closings, the

Sales or institute any action against the Debtors in any court (other than in the Court) or before

any administrative body that in any way directly or indirectly interferes with, obstructs, or

otherwise impedes the conduct of the Store Closings, the Sales, or the advertising and promotion

(including through the posting of signs) of the Sales.

**VII.    Abandonment.**

23.    The Debtors respectfully request that the Court authorize the abandonment of

certain owned Non-Prescription Assets remaining in the Closing Stores.    The Debtors intend to

sell any marketable owned Non-Prescription Assets present in the Closing Stores.    In certain cases,

however, the Debtors may determine that the cost associated with holding or selling that property

exceeds the proceeds that will be realized from its sale—or such property may not be saleable at

all.    In such cases, retaining the property would be burdensome to the estate and the property

would be of inconsequential value.    For the avoidance of doubt, the Debtors will not sell any

personal identifying information (which means information that alone or in conjunction with other

information identifies an individual, including, but not limited to, an individual's name, social

security number, date of birth, government-issued identification number, account number, and

credit or debit card number) as part of the Store Closings, and all personal identifying information

will be removed from any Non-Prescription Assets prior to abandonment of same.    Accordingly,

the Debtors respectfully submit that abandonment of such property is in the best interests of their

estates and request that the Court authorize the Debtors to do so where the Debtors determine in their business judgment that abandonment is the appropriate course of action.

## Basis for Relief

**I.      The Debtors Have a Valid Business Justification for the Sales of the Closing Store Assets.**

24.     Section 363(b)(1) of the Bankruptcy Code, which governs asset sales outside of a debtor's ordinary course of business, provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   When selling assets outside of the ordinary course of business, a debtor must articulate a valid business justification to obtain court approval.   *See, e.g., Myers* v. *Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996) (citation omitted); *In re Abbotts Dairies, Inc.,* 788 F.2d 143, 147-48 (3d Cir. 1986).   When a debtor demonstrates a valid business justification for a decision, a strong presumption arises "that in making [the] business decision the directors of [the company] acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11).

25.     Store closing or liquidation sales are a routine occurrence in chapter 11 cases involving retail debtors.   *See, e.g., In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (authorizing procedures for store closing sales); *In re Christopher & Banks Corporation*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 10, 2020) (same); *In re SLT Holdco, Inc.,* No. 20-

13

18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Modell's Sporting Goods, Inc.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 25, 2020) (same).[5]

26.    Sufficient business justification exists to approve the proposed Sales of the Closing Store Assets under section 363(b)(1).[6]  The Debtors, with the assistance of their advisors, have determined that the Sales represent the best alternative to monetize the Closing Store Assets and maximize the value received by the Debtors on account thereof.  First, delay in commencing any Sales would diminish the value realizable through the sale of the Closing Store Assets.  Many of the Closing Stores fail to generate positive cash flow and therefore are a significant drain on liquidity.  Accordingly, the Debtors will realize a near-term liquidity improvement through the Store Closings and related Sales.  Second, with respect to Sales of Non-Prescription Assets, there are meaningful amounts of Non-Prescription Assets in the aggregate that may be monetized most efficiently and quickly through an orderly mark-down sale process.  Third, uninterrupted and orderly Sales will allow the Debtors to timely reject or assume and assign leases associated with the Closing Stores and, therefore, avoid the accrual of unnecessary administrative expenses for rent and related costs.  Suspension of the Sales until entry of the Final Order may cause the Debtors to incur claims for rent at many of these stores for another month, potentially costing the estate millions of dollars each month.  Finally, with respect to Prescription Assets, permitting timely Sales of the Prescription Assets consistent with the Debtors' prepetition practices is the best

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

[6]    With respect to Sales of Inventory and Prescription Assets, the Debtors submit that such Sales are authorized without notice or hearing pursuant to section 363(c) of the Bankruptcy Code as sales in the "ordinary course of business," given the Debtors' well-established prepetition store closing process.  *See* 11 U.S.C. § 363(c).  The Debtors are nonetheless requesting authority to conduct Sales of Inventory and Prescription Assets by this Motion out of an abundance of caution.

pathway to preserve and maximize Prescription Asset value, given the risk of value erosion if such

Sales are not timely consummated.

## II.      The Court Should Approve the Sale Guidelines.

27.      The Court may authorize the Debtors to consummate the Store Closings pursuant

to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code

provides, in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease,

other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that, "[t]he court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title."  11 U.S.C. § 105(a).

28.      As discussed herein, pursuant to section 363(b) of the Bankruptcy Code, for the

purpose of conducting the Store Closings, the Debtors need only show a legitimate business

justification for the proposed action.  *See, e.g.*, *Martin*, 91 F.3d at 395 (citation omitted).

29.      In addition, the Court may authorize the Store Closings based on section 105(a) of

the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of

[the Bankruptcy Code]."  Under section 105(a), courts may authorize any action that is essential

to the continued operation of a debtor's businesses.  *See, e.g.*, *In re NVR L.P.*, 147 B.R. 126, 127

(Bankr. E.D. Va. 1992) (holding that a court may permit pre-plan payments of prepetition

obligations when essential to the continued operation of the debtor); *In re Fin. News Network Inc.*,

134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (same).

30.      The relief requested by this Motion represents a sound exercise of the Debtors'

business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates,

and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  The Debtors believe

that the Sale Guidelines represent the most efficient and appropriate means of maximizing the value of the Closing Store Assets, while balancing the potentially competing concerns of landlords and other parties in interest.

31.    Furthermore, ample business justification exists to conduct the Store Closings. Prior to the Petition Date, the Debtors, with the assistance of their advisors, engaged in an extensive review of their store footprint to identify specific store locations for near-term closure to eliminate their ongoing negative impact on the Debtors' financial performance and to improve the Debtors' liquidity. This process has resulted in the Debtors' identification of the Initial Closing Stores and is ongoing with respect to any Additional Closing Stores.

32.    Delay in consummating the Store Closings would diminish the value realized through monetization of the Closing Store Assets for a number of reasons, chief among them that the Closing Stores are a drain on liquidity. Thus, the Debtors will realize a near-term liquidity improvement upon the sale of the Closing Store Assets and the termination of operations at the Closing Stores. Further, the swift and orderly consummation of the Store Closings will allow the Debtors to timely reject or assume and assign the applicable store leases, and therefore avoid the accrual of unnecessary administrative expenses for rent payment. Delaying the Store Closings may cause the Debtors to incur postpetition rent obligations at many of these stores. Additionally, given the Debtors' current section 365(d)(4) deadline, there is a finite number of days that the Sales can run without obtaining further consents from landlords (or further relief from the Court).

33.    Courts in this and other districts have routinely approved sale guidelines in chapter 11 cases, including for assets such as the Prescription Assets, and numerous courts have granted retail debtors authority to implement such guidelines. *See, e.g.*, *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (authorizing the debtors, pursuant to

sections 105(a) and 363(b), to conduct store closings in accordance with court-approved sale guidelines); *In re Christopher & Banks Corporation*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 10, 2020) (same); *In re SLT Holdco, Inc.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Modell's Sporting Goods, Inc.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 25, 2020) (same); *In re Tops Holding II Corporation*, No. 18-22279 (RDD) (Bankr. S.D.N.Y. May 10, 2018) (authorizing store closing procedures permitting transfers of customer prescription records in accordance with applicable law); *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jul. 28, 2015) (same).[7]

### III.   The Court Should Approve the Sale of the Closing Store Assets Free and Clear of all Liens, Encumbrances, and Other Interests under Section 363(f) of the Bankruptcy Code.

34.    The Debtors request approval to sell the Closing Store Assets on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code.   A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:  (a) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f); *see also Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343,

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

345 (E.D. Pa. 1988) (noting that since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met). Moreover, the Third Circuit has indicated that a debtor possesses broad authority to sell assets free and clear of liens. *See In re TWA Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

35.     To the extent there are liens on the Closing Store Assets, the Debtors anticipate that all holders of such liens will consent to the Sales because they provide the most effective, efficient, and timely approach to realizing proceeds for, among other things, the repayment of amounts due to such parties. Subject to the terms of the DIP Orders, any and all liens on the Closing Store Assets sold through the Sales would attach to the remaining net proceeds of such sales with the same force, effect, and priority as such liens currently have on such assets, subject to the rights and defenses, if any, of the Debtors and of any other party in interest with respect thereto. Moreover, all identified lienholders have received sufficient notice and have been given sufficient opportunity to object to the relief requested.

36.     Accordingly, the Sales of the Closing Store Assets satisfy the requirements of section 363(f) of the Bankruptcy Code and should, therefore, be free and clear of any liens, claims, encumbrances, and other interests.

**IV.    The Court Should Waive Compliance with Applicable State Laws and Approve the Dispute Resolution Procedures.**

37.     The Debtors' ability to conduct the Sales in accordance with the Sale Guidelines and without complying with Applicable State Laws is critical to the Sales' success. Although the Debtors intend to comply with state and local health and safety laws and consumer protection laws in conducting the Sales (including with respect to Sales of Prescription Assets), many Liquidation Sale Laws require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing, liquidation, or similar sales. Additionally, compliance with

18

Fast Pay Laws would require the Debtors to pay terminated employees within a time frame that likely would be detrimental to the conduct of these chapter 11 cases.

38.     To eliminate the time, delay, and expense associated with the administrative actions and procedures necessary to comply with the Applicable State Laws, the Debtors propose the Sale Guidelines to streamline the administrative burdens on their estates while still adequately protecting the broad and varied interests of both landlords and applicable governmental agencies charged with enforcing any Liquidation Sale Laws that may apply to the Store Closings. Accordingly, the Debtors believe the Sale Guidelines mitigate any concerns that their landlords or governmental agencies may raise with respect to the Store Closings, and therefore, the requested relief complies with any applicable Liquidation Sale Laws.

39.     There is strong support for granting the Debtors the authority to not comply with the Liquidation Sale Laws, subject to the Sale Guidelines. *First*, it is generally accepted that many state statutes and regulations provide that, if a liquidation or bankruptcy sale is court-authorized, a company need not comply with Liquidation Sale Laws. *See, e.g.*, N.Y. Gen. Bus. Law § 584(a) (so providing); 53 Pa. Stat. § 4471-5(a)(1) (same). *Second*, pursuant to section 105(a) of the Bankruptcy Code, the Court has the authority to permit the Store Closings to proceed notwithstanding any contrary Applicable State Laws as it is essential to the continued operation of the Debtors' business. *Third*, this Court will be able to supervise the Store Closings because the Debtors and their assets are subject to this Court's exclusive jurisdiction. *See* 28 U.S.C. § 1334. Accordingly, creditors and the public interest are adequately protected by notice of this Motion and the ongoing jurisdiction and supervision of the Court.

40.     Further, bankruptcy courts have consistently recognized, with limited exception, that federal bankruptcy law preempts state and local laws that contravene the underlying policies

of the Bankruptcy Code. *See Belculfine v. Aloe (In re Shenango Group. Inc.),* 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code. . . . [A] state statute . . . cannot place burdens on [a debtor] where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd,* 112 F.3d 633 (3d Cir. 1997).

41. Courts in some jurisdictions have found that preemption of state law is not appropriate if the laws deal with public health and safety. *See Baker & Drake. Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake. Inc.)*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (holding that Bankruptcy Code did not preempt state law prohibiting taxicab leasing that was promulgated in part as public safety measure). Nevertheless, preemption is appropriate where, as is the case here, the only state laws involved concern economic regulation rather than the protection of public health and safety. *See id.* at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety").

42. Under the circumstances of these chapter 11 cases, enforcing the strict requirements of the Liquidation Sale Laws would undermine the Bankruptcy Code's fundamental value-maximization imperative by placing constraints on the Debtors' ability to maximize the value of estate assets for the benefit of creditors. Accordingly, authorizing the Sales without the delays and burdens associated with compliance with Liquidation Sale Laws is necessary and appropriate. The Debtors do not seek a general waiver of all state and local law requirements, but only those that apply specifically to retail liquidation sales. Indeed, the requested waiver is narrowly tailored to facilitate the successful consummation of the Sales. Moreover, the Debtors will comply with applicable state and local public health and safety laws (including with respect

to Sales of Prescription Assets), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising. Finally, the Dispute Resolution Procedures provide an orderly means for resolving any disputes arising between the Debtors and any Governmental Units with respect to the applicability of any Liquidation Sale Laws, and should therefore be approved.

43.     Further, courts in this district, and in other districts, have recognized that the Bankruptcy Code preempts certain state laws and have granted relief similar to that requested herein. *See, e.g., In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (authorizing debtors to conduct store closing sales under the terms of the order and finding that "no further approval, license, or permit of any Governmental Unit shall be required"); *In re Christopher & Banks Corporation*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 10, 2020) (same); *In re SLT Holdco, Inc.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Modell's Sporting Goods Inc.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 25, 2020) (same).[8]

44.     Courts have also granted similar relief from Fast Pay Laws in other bankruptcy cases under similar circumstances. *See, e.g., In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (granting relief from federal, state, or local laws including "any fast pay laws" in connection with store closing sales); *In re Z Gallerie, LLC,* No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Things Remembered, Inc.,* No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In re Charming Charlie Holdings, Inc.,* No. 17-12906 (CSS)

---

[8]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

(Bankr. D. Del. Dec. 13, 2017); *In re Golfsmith Int'l Holdings, Inc., No.* 16- 12033 (Bankr. D. Del.

Oct. 13, 2016) (same).[9]

## V.    The Court Should Waive Compliance with Contractual Restrictions.

45.    Certain of the Debtors' leases governing the premises of the Closing Stores may

contain provisions purporting to restrict or prohibit the Debtors from conducting store closing,

liquidation, or similar sales.  Such provisions have been held to be unenforceable in chapter 11

cases as they constitute an impermissible restraint on a debtor's ability to properly administer its

reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code.

*See In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (determining that

enforcement of such lease restrictions would "contravene overriding federal policy requiring

[the debtor] to maximize estate assets . . . ."); *In re R.H. Macy and Co., Inc.*, 170 B.R. 69, 73–74

(Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a

covenant to remain open throughout the lease term, because the debtor had a duty to maximize the

value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing

the store); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467–68 (Bankr. N.D. Ga., 1990) (finding

that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors

if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Lisbon

Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding restrictive lease provision

unenforceable in chapter 11 case where the debtor sought to conduct a liquidation sale).

46.    Courts in this district and others have held that restrictive lease provisions affecting

store liquidation sales in chapter 11 cases are unenforceable.  *See, e.g., In re Bed Bath & Beyond*

---

[9]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request to the Debtors' proposed counsel.

*Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (ordering that restrictive lease provisions shall not be enforceable in conjunction with store closings); *In re Christopher & Banks Corporation*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 10, 2020) (same); *In re SLT Holdco, Inc.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Modell's Sporting Goods Inc.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 25, 2020) (same).

47.     Thus, to the extent that such provisions or restrictions exist in any of the leases of the Closing Stores, the Debtors request that the Court authorize the Debtors to conduct Sales at the Closing Stores without interference by any landlords or other persons affected, directly or indirectly, by the Sales.

## VI.    The Court Should Approve the Abandonment of Certain Property in Connection with any Liquidation Sales.

48.     After notice and a hearing, a debtor "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) (stating that a trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim").

49.     The Debtors are seeking to sell all owned Non-Prescription Assets remaining in the Closing Stores.  In certain cases, however, the Debtors may determine that the costs associated with holding or selling certain Non-Prescription Assets exceeds the proceeds that will be realized upon their sale, or that such property is not sellable at all.  In such event, the property is of inconsequential value and benefit to the estates and/or may be burdensome to retain.

50.     To maximize the value of the Debtors' assets and to minimize the costs to the estates, the Debtors respectfully request authority to abandon any of their remaining

Non-Prescription Assets located at any of the Closing Stores without incurring liability to any person or entity. The Debtors further request that the landlord of each Closing Store with any abandoned Non-Prescription Assets be authorized to dispose of such property without liability to any third parties.

51.    Notwithstanding the foregoing, the Debtors will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debit card number) in any of the Debtors' hardware, software, computers or cash registers or similar equipment that are to be sold or abandoned.

## VII.    The Court Should Approve the Procedures Relating to Additional Closing Stores.

52.    The Debtors request that the Sale Guidelines, the Interim Order, and the Final Order apply to Store Closings of any Additional Closing Stores. In order to provide landlords and other parties in interest with information regarding the ultimate disposition of the Closing Stores, to the extent that the Debtors seek to conduct Store Closings (and related Sales) at any Additional Closing Store, the Debtors will file a list of such Additional Closing Stores with the Court (the "Additional Closing Store List"), and serve a notice of their intent to conduct the applicable Sales at the Additional Closing Stores on the Dispute Notice Parties, including applicable landlords (the "Additional Closing Store Landlords"), and any other interested parties by email (to the extent available to the Debtors) or overnight mail within five business days of filing the Additional Store Closing List or as soon as reasonably practicable thereafter. With respect to the Dispute Notice Parties, including the Additional Closing Store Landlords, the Debtors will mail

24

such notice to the notice address set forth in the lease for such Additional Closing Store (or at the last known address available to the Debtors).

53.     The Debtors propose that the Additional Closing Store Landlords (each of whom will have already been served with this Motion, the Interim Order, and possibly the Final Order) and any interested parties have five days after service of the applicable Additional Closing Store List to object to the application of the relevant Order to their Closing Stores.  If no timely objections are filed with respect to the application of the Order to an Additional Closing Store, then the Debtors should be authorized, pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy Code to proceed with conducting the Store Closing and Sales at the Additional Closing Store in accordance with the Order and the Sale Guidelines.  If any objections are filed with respect to the application of the Order to an Additional Closing Store, and such objections are not resolved, the objections and the application of the Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary so that the Debtors can move promptly to maximize value and minimize expenses for the benefit of their creditors and stakeholders.

**VIII.    The Sale of Personally Identifiable Information Does Not Require, and Should Be Allowed Without, the Appointment of a Consumer Privacy Ombudsman.**

54.     Section 101(41A) of the Bankruptcy Code defines "personally identifiable information" ("Personally Identifiable Information") as an individual's name, residence address, email address, telephone number, social security number, or credit card number, as well as an individual's birth date or other information that, if associated with the information described previously, would permit the identification or contacting of the individual.  11 U.S.C. § 101(41A). Section 332 of the Bankruptcy Code requires the appointment of a consumer privacy ombudsman

(an "Ombudsman") only when a debtor seeks to sell or transfer Personally Identifiable Information in contravention of the debtor's privacy policy with respect to the transfer of such Personally Identifiable Information.  *See* 11 U.S.C. § 363 (b)(1)(A).

55.    As explained in the Frejka Declaration, the contemplated Sales of Closing Store Assets, including Prescription Assets, are consistent with the Debtors' applicable privacy policies and therefore do not necessitate appointment of an Ombudsman under section 332 of the Bankruptcy Code.

56.    The Debtors' umbrella privacy policy, which is publicly available on the Debtors' website at:  https://www.riteaid.com/legal/privacy-policy, and would be applicable to Personally Identifiable Information transfers in connection with Store Closings, provides, in pertinent part, as follows:

> We also may disclose information about you in certain unusual circumstances, including (1) if we are required to do so by law or legal process; (2) in response to requests by government agencies, such as law enforcement authorities; (3) to establish, exercise, or defend our legal rights; (4) when we believe disclosure is necessary or appropriate to prevent physical or other harm or financial loss; (5) in connection with an investigation of suspected or actual fraud or other illegal activity; or (6) in the event we sell or transfer (or contemplate the sale or transfer of) all or a relevant portion of our business or assets (including in the event of a merger, acquisition, joint venture, reorganization, divestiture, dissolution, or liquidation).

Additionally, the Debtors have a specific patient privacy policy, also publicly available on the Debtors' website at:    https://www.riteaid.com/legal/patient-privacy-policy, that provides, in pertinent part:

> We will use your protected health information to carry out health care operations. These uses and disclosures are necessary to run the pharmacy and to make sure that all of our patients receive quality care.  For example, we may use your protected health information to monitor the quality of pharmacist performance and to train pharmacy personnel.  Your protected health information may also be transferred for the purposes of carrying out pharmacy services if we buy or sell pharmacy locations.

57.      Based on the language of these privacy policies, section 363(b)(1) is not implicated because the Debtors do not disclose to any "individual a policy *prohibiting* the transfer of personally identifiable information."  *See* 11 U.S.C. § 363(b)(2) (emphasis added).  Indeed, the Debtors' privacy policies expressly permit transfer and disclosure of Personally Identifiable Information in connection with assets sales and buying and selling pharmacy locations.  But even if section 363(b)(1) were implicated, the Court may authorize the proposed Sales without appointing an Ombudsman because the transfer of the "personally identifiable information" through the Sales is consistent with the Debtors' privacy policies as provided in 11 U.S.C § 363(b)(1).

58.      The transfer of Personally Identifiable Information is further consistent with the Debtors' privacy policies even to the extent the Debtors' privacy policies import requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") relating to transfers of medical information.  The Debtors' patient privacy policy describes how the Debtors maintain and share medical information and is publicly available, as discussed above.  The policy provides that such "protected health information" ("PHI") will not be used or disclosed unless as provided for under the policy, "or as otherwise permitted or required by law."

59.      HIPAA privacy regulations permit the sale of PHI in circumstances where such information is sold by one "covered entity" to another.  *See*, 45 C.F.R. § 164.502(a)(5)(ii) (2014); 45 C.F.R. § 160.103 (2014) (defining "covered entity" as "[a] health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter."); *see also In re Great Atl. and Pac. Tea Co, Inc.*, Case No. 15-23007 (Bankr. S.D.N.Y Aug. 11, 2015) (Report of Consumer Privacy Ombudsman) ("The proposed sale of the Pharmacy Records is therefore permitted by law and consistent with the Debtors' privacy practices . . . .")

27

(*citing* 45 C.F.R. § 164.502(a)(5)(ii) (2014)).   The Debtors expect that, where applicable, buyers of Closing Store Assets containing PHI related to Store Closings, such as buyers of Prescription Assets, will be "covered entities," such as other pharmacies, under the applicable HIPAA regulations.  In turn, because the sale of PHI is permitted under applicable HIPAA regulations, the sale of such personal identifiable information (which may also include PHI) is therefore permissible and consistent with the Debtors' patient privacy policy as provided in section 363(b)(1) of the Bankruptcy Code.  Accordingly, the contemplated Sales of Closing Store Assets, including Prescription Assets, do not necessitate the appointment of an Ombudsman in these chapter 11 cases.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

60.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors' continuation and timely commencement of Store Closings (and related Sales) is critical to maximize the value of the Closing Store Assets, and any delay in granting the relief requested could result in material erosion of such value and cause irreparable harm.  Furthermore, failure to receive the requested relief during the first 30 days of these chapter 11 cases entails the same risk.  The Debtors' ability to timely carry out the Store Closings without interruption is vital to maximize the value of the Closing Store Assets for the benefit of the Debtors' creditors—and thus foundational to the Debtors' successful restructuring.

Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

61.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Waiver of Memorandum of Law

62.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

63.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a

waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

**No Prior Request**

64.    No prior request for the relief sought in this motion has been made to this or any other court.

**Notice**

65.    The Debtors will provide notice of this motion to the following parties and/or their respective counsel, as applicable:  (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (c) the agents under the Prepetition Credit Facilities and counsel thereto; (d) the DIP Agents and counsel thereto; (e) Paul, Weiss, Rifkind, Wharton & Garrison LLP and Fox Rothschild LLP, as counsel to the Ad Hoc Secured Noteholder Group; (f) the indenture trustees for the Senior Secured Notes; (g) the indenture trustee for the Senior Unsecured Notes; (h) the United States Attorney's Office for the District of New Jersey; (i) the Internal Revenue Service; (j) the U.S. Securities and Exchange Commission; (k) the attorneys general in the states where the Debtors conduct their business operations; (l) the landlords for the Closing Stores; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated:  October 16, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
          wusatine@coleschotz.com
          fyudkin@coleschotz.com
          svanaalten@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:    esassower@kirkland.com
          joshua.sussberg@kirkland.com
          aparna.yenamandra@kirkland.com
          ross.fiedler@kirkland.com
          zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

**INTERIM ORDER
(I) AUTHORIZING AND APPROVING THE CONDUCT OF STORE
CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL
LIENS, CLAIMS, AND ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twenty (20), is **ORDERED.**

(Page | 3)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances,, and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order"):  (a) authorizing and approving the continuation or initiation of store closing or similar themed sales (the "Initial Store Closings") at the stores identified on **Schedule 1** attached hereto (collectively, the "Initial Closing Stores"); (b) authorizing and approving the Debtors to conduct store closings at additional stores (the "Additional Store Closings" and, together with the Initial Store Closings, the "Store Closings") at a later date or dates pursuant to the procedures set forth herein (collectively, the "Additional Closing Stores," if any, and together with the Initial Closing Stores, the "Closing Stores") with such sales to be free and clear of all liens, claims, and encumbrances (the "Sales"), in accordance with the terms of the store closing sale guidelines (the "Sale Guidelines"), attached as **Schedule 2** hereto; (c) scheduling a final hearing to consider approval of the Motion on a final basis, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration, the Liebman Declaration, and the Frejka Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| Debtors: | RITE AID CORPORATION, *et al.* |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY FOUND AND DETERMINED THAT**:[1]

A.      The Debtors have advanced sound business reasons for adopting the Sale Guidelines, on an interim basis subject to the Final Hearing, as set forth in the Motion and at the Hearing.

B.      The Sale Guidelines, which are attached hereto as **Schedule 2**, are reasonable and appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Closing Store Assets, and are in the best interest of the Debtors' estates.

C.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient and sound business purposes and justifications for the relief approved herein.

D.      The Store Closings and Sales are in the best interest of the Debtors' estates.

---

[1]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

(Page | 5)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

E.     The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

F.     The entry of this Interim Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is **HEREBY ORDERED THAT**:

1.     The Motion is **GRANTED** on an interim basis as set forth herein.

2.     The Final Hearing on the Motion will be held on _____, 2023 at _____ **(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the following parties on or before _____, **2023 at 4:00 p.m. (Eastern Time):** (a) Debtors' proposed counsel; (b) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960 (Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com), counsel for the Ad Hoc Secured Noteholder Group; and (c) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie.  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.     To the extent any conflict between this Interim Order and the Sale Guidelines, the terms of this Interim Order shall control.

(Page | 6)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

## I.     Authority to Engage in Sales and Conduct Store Closings.

4.      The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue, commence, and conduct Sales and Store Closings at the Closing Stores in accordance with this Interim Order and the Sale Guidelines, as may be modified by any Side Letters (as defined below) between the Debtors and the landlords at the Closing Stores.

5.      The Sale Guidelines are approved in their entirety on an interim basis.

6.      The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Interim Order and the Sale Guidelines.

7.      All entities that are presently in possession of some or all of the Closing Store Assets in which the Debtors hold an interest that is or may be subject to this Interim Order hereby are directed to surrender possession of such Closing Store Assets to the Debtors.

8.      Neither the Debtors nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sales and Store Closings and to take the related actions authorized herein.

9.      The Debtors are authorized to conduct Sales and internal transfers of Prescription Assets consistent with their historical practice, in accordance with applicable law. Each purchaser of Prescription Assets sold pursuant to this Interim Order shall be deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, shall be entitled all of the protections afforded by such provision.

(Page | 7)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

## II.    Conduct of the Sales.

10.    All newspapers and other advertising media in which the Sales and Store Closings may be advertised and all landlords and subtenants are directed to accept this Interim Order as binding authority so as to authorize the Debtors to conduct the Sales and Store Closings, including, without limitation, to conduct and advertise the sale of the Non-Prescription Assets in the manner contemplated by and in accordance with this Interim Order and the Sale Guidelines.

11.    Subject to the Dispute Resolution Procedures provided for in this Interim Order, the Debtors are hereby authorized to take such actions as may be necessary and appropriate to conduct the Sales and Store Closings without necessity of further order of this Court as provided in the Sale Guidelines (subject to any Side Letters), including, but not limited to, advertising a Sale of Non-Prescription Assets as a "store closing sale", "sale on everything", "everything must go", "going-out-of-business", or similar-themed sales as contemplated in the Sale Guidelines through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street signage, as contemplated in the Sale Guidelines.

12.    Except as expressly provided in the Sale Guidelines, the sale of the Closing Store Assets shall be conducted by the Debtors, notwithstanding any Contractual Restrictions to the contrary.  Any and all Contractual Restrictions shall not be enforceable in conjunction with the Store Closings and the Sales.  Any breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or

(Page | 8)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Interim Order, any Side Letter, and the Sale Guidelines. The Debtors and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Debtors and any such landlords, *provided* that nothing in such Side Letters affects the provisions of this Interim Order. In the event of any conflict between the Sale Guidelines, any Side Letter, and this Interim Order, subject to paragraph 34 hereof, the terms of such Side Letter shall control. Copies of any Side Letters will be provided to the U.S. Trustee, the DIP Agent, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960 (Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com), counsel for the Ad Hoc Secured Noteholder Group; and/or any statutory committee of unsecured creditors at least two (2) business days' prior to execution of any Side Letters (which period may be shortened or waived if so consented to by each of the DIP Agent, Required Consenting Noteholders (as defined in the Restructuring Support Agreement), and any statutory committee of unsecured creditors)].

13.     Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities,

(Page | 9)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closings, the Sales, or the sale of the Closing Store Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, as applicable, and all such parties and persons and entities of every nature and description, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings and the Sales, and/or (b) instituting any action or proceeding in any court (other than in this Court) or administrative body seeking an order or judgment against, among others, the Debtors or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closings, the Sales, or the sale of the Closing Store Assets or other liquidation sales at any Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

14.     The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that, in the case of a *bona fide* dispute, the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

under state or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state or federal law.

15.     Pursuant to section 363(f) of the Bankruptcy Code, the Debtors are authorized to sell the Closing Store Assets, and all sales of Closing Store Assets shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Closing Store Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Closing Store Assets, subject to any claims and defenses that the Debtors may possess with respect thereto.

16.     The Debtors are authorized and empowered to transfer Closing Store Assets among and into the Debtors' store locations in accordance with the Sale Guidelines, as applicable.  The Debtors are authorized to sell the Debtors' Non-Prescription Assets and abandon the same, in each case, as provided for and in accordance with the terms of the Sale Guidelines.

17.     Notwithstanding anything to the contrary in this Interim Order, the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; *provided* that the Debtors will either (a) provide for the return of such property to the Debtors' headquarters or (b) return such property to the applicable lessor, or other owner of the property; provided, however, that the Debtors may abandon property owned by the Landlord at the applicable Closing Store.

18.     Neither the Sale Guidelines nor this Interim Order authorize the Debtors to transfer or sell to any other party the personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including but not limited to an

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number) ("PII") of any customers unless such sale or transfer is permitted by the Debtors' privacy policy and applicable state or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws").  The foregoing shall not limit the use of the Debtors' customer lists and mailing lists for purposes of advertising and promoting the Sales.

19.     Appointment of a consumer privacy ombudsman is not required with respect to the Sales.

20.     The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable.

21.     Nothing herein shall limit the Debtors' right to suspend, postpone, or discontinue a Sale at a Closing Store on notice to affected parties.

22.     Nothing herein is intended to affect any rights of any applicable Government Unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

## III.     Procedures Relating to Additional Closing Stores.

23.     To the extent that the Debtors seek to conduct Sales at any Additional Closing Stores, the Sale Guidelines and this Interim Order shall apply to each such Additional Closing Store (and the corresponding Additional Store Closing(s)).

(Page | 12)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

24.     Except with respect to Sales of Prescription Assets, before conducting the Sales at any Additional Closing Store, the Debtors will file with the Court a list of each such Additional Closing Store (each, an "Additional Closing Store List") and serve a notice of their intent to conduct the applicable Sales at the Additional Closing Store on the Dispute Notice Parties, including applicable landlords (collectively, the "Additional Closing Store Landlords"), and other interested parties by email (to the extent available to the Debtors) or overnight mail within five business days of filing the Additional Store Closing List or as soon as reasonably practicable thereafter.  With respect to the Dispute Notice Parties, including the Additional Closing Store Landlords, the Debtors will mail, if applicable, such notice to the notice address set forth in the lease for such Additional Closing Store (or at the last known address available to the Debtors).

25.     The relevant Additional Closing Store Landlords and any other interested parties shall have ten days after service of the applicable Additional Closing Store List to object to the application of this Interim Order to the Additional Closing Store(s) included in such Additional Closing Store List.  If no timely objections are filed with respect to the application of this Interim Order to an Additional Closing Store, the Debtors shall be authorized to proceed with conducting the Sales at the Additional Closing Stores (and any corresponding Additional Store Closing(s)) in accordance with this Interim Order and the Sale Guidelines.  If any objections are filed with respect to the application of this Interim Order to an Additional Closing Store and such objections are not resolved, the objections and the application of this Interim Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary.

(Page | 13)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

## IV. Dispute Resolution Procedures with Governmental Units.

26.     Nothing in this Interim Order, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.  Nothing contained in this Interim Order, the Sale Guidelines, or any Side Letter shall in any way:  (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws").  Nothing in this Interim Order, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court, that any such laws are not in fact General Laws or that

(Page | 14)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

such enforcement is impermissible under the Bankruptcy Code or this Interim Order. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

27.     To the extent that the sale of Closing Store Assets is subject to any Liquidation Sale Laws, the following provisions of this paragraph 27 shall apply and control over any Side Letters:

i.     Provided that the Sales are conducted in accordance with this Interim Order and the Sale Guidelines, the Debtors and the Debtors' landlords shall be deemed to be in compliance with any requirements of all county, parish, municipal, or other local government (collectively, "Local") and state Liquidation Sale Laws that would otherwise apply to the Store Closings or the Sales; *provided*, that the term "Liquidation Sale Laws" shall not include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Interim Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii.     Within five business days after entry of this Interim Order, or as soon as reasonably practicable thereafter, the Debtors will serve by first-class mail, copies of this Interim Order, the proposed Final Order, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the Board of Pharmacy's office for each state where a Closing Store is located; (c) the county consumer protection agency or similar agency for each county where the Sales are being held; (d) the division of consumer protection for each state where the Sales are being held; (e) the landlords for the Closing Store; and (f) any subtenants (if any) under the leases with respect to the Closing Stores (collectively, the "Dispute Notice Parties").

iii.     With respect to any Additional Closing Stores, within five business days after filing any Additional Closing Store List (as defined below) with the Court, or as soon as reasonably practicable thereafter, the Debtors will serve copies of this Interim

| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

Order, the proposed (or entered) Final Order, and the Sale Guidelines on the applicable Dispute Notice Parties.

iv.     To the extent that there is a dispute arising from or relating to the Sales, this Interim Order, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten days following entry of this Interim Order, or service of an Additional Closing Store List, any Governmental Unit may assert that a Reserved Dispute exists by serving a notice (the "Dispute Notice") explaining the nature of the dispute on: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Aparna Yenamandra, P.C.; Ross J. Fiedler, and Zachary R. Manning; (b) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Warren A. Usatine, Felice R. Yudkin, and Seth Van Aalten; (c) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960 (Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com), counsel for the Ad Hoc Secured Noteholder Group; (d) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie; (e) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com), Oscar N. Pinkas (pinkaso@gtlaw.com)) (the "Counsel to the DIP Agents") (f) counsel to any statutory committee appointed in these chapter 11 cases; and (g) the affected landlord or its known counsel. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

v.      If a Dispute Resolution Motion is filed, nothing in this Interim Order shall preclude the Debtors, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of this Interim Order, nor the conduct of the Debtors pursuant to this Interim Order, violates such Liquidation Sale Laws. The filing of a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Interim Order or to limit or interfere with the Debtors' ability to

| Debtors: | RITE AID CORPORATION, *et al*. |
| --- | --- |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

conduct or to continue to conduct the Sales pursuant to this Interim Order absent further order of the Court.  Upon the entry of this Interim Order, the Court expressly authorizes the Debtors to conduct the Sales pursuant to the terms of the Interim Order and the Sale Guidelines (as may be modified by Side Letters) and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Interim Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

vi.  If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Interim Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

28.  Subject to paragraphs 26 and 27 above, each and every federal, state, or local agency, department, or Governmental Unit with regulatory authority over the Store Closings or the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Sales.

29.  Provided that the Store Closings and the Sales are conducted in accordance with the terms of this Interim Order and the Sale Guidelines (as may be modified by Side Letters) and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closings and the Sales in accordance with the terms of this Interim Order and

(Page | 17)

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

the Sale Guidelines (as may be modified by Side Letters) without the necessity of further showing

compliance with any such Liquidation Sale Laws.

30.     Nothing in this Interim Order, the Sale Guidelines, or any Side Letter releases,

nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental

laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive

relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property

after the date of entry of this Interim Order.  Nothing contained in this Interim Order, the Sale

Guidelines, or any Side Letter shall in any way:  (a) diminish the obligation of any entity to comply

with environmental laws; or (b) diminish the obligations of the Debtors to comply with

environmental laws consistent with their rights and obligations as debtors in possession under the

Bankruptcy Code.

**V.      Other Provisions.**

31.     To the extent the Debtors are subject to any Fast Pay Laws in connection with the

Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in

applicable states, such payroll payments are made by the later of:  (a) the Debtors' next regularly

scheduled payroll; and (b) seven calendar days following the termination date of the relevant

employee, and in all such cases consistent with, and subject to, any previous orders of this Court

regarding payment of same.

32.     Notwithstanding the relief granted in this Interim Order and any actions taken

pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the

validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute

(Page | 18)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) an authorization to assume any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion or this Interim Order are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

33.    Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, filed substantially contemporaneously herewith (such orders, the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions

(Page | 19)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders and to the extent of any conflict or inconsistency between this Interim Order and the DIP Orders, the DIP Orders shall govern and control.

34.     On a confidential basis and upon the written (including email) request of the U.S. Trustee (which request has been made), any official committee of unsecured creditors appointed in these chapter 11 cases, or the advisors to the Ad Hoc Secured Noteholder Group, the Debtors shall provide copies of periodic reports on a monthly basis concerning the Sales and Store Closings that are prepared by the Debtors or their professionals; *provided*, however, that the foregoing shall not require the Debtors or their professionals to prepare or undertake to prepare any additional or new reports other than the weekly Sales and Store Closing reports.

35.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

36.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

37.     Notwithstanding any Bankruptcy Rule to the contrary, this Interim Order shall be effective and enforceable immediately upon entry hereof.

38.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

(Page | 20)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Interim Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

39.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

40.     The Debtors shall serve a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two business days after the entry of this Interim Order.

41.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

42.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order

43.     This Court shall retain jurisdiction with regard to all issues or disputes relating to this Interim Order, including, but not limited to:  (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner; (b) any claim of the Debtors and/or the landlords for protection from interference with the Store Closings or Sales; (c) any other disputes related to the Store Closings or Sales; and (d) protect the Debtors against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action in respect of the Debtors, the landlords, the Store Closings, or the Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

## **Schedule 1**

**Initial Closing Stores**

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 1 | 213 | 2715 PARADE STREET | ERIE | PA | 16504 |
| 2 | 225 | 5612 N. FIFTH STREET | PHILADELPHIA | PA | 19120 |
| 3 | 365 | 728 EAST PULASKI HIGHWAY | ELKTON | MD | 21921 |
| 4 | 374 | 5624 BALTIMORE NATIONAL PK | BALTIMORE | MD | 21228 |
| 5 | 385 | 5804 RITCHIE HIGHWAY | BALTIMORE | MD | 21225 |
| 6 | 443 | 350 MAIN STREET | PENNSBURG | PA | 18073 |
| 7 | 553 | 4011 COTTMAN AVENUE | PHILADELPHIA | PA | 19135 |
| 8 | 558 | 1441 OLD YORK ROAD | ABINGTON | PA | 19001 |
| 9 | 761 | 2887 HARLEM ROAD | CHEEKTOWAGA | NY | 14225 |
| 10 | 803 | 300 MARKET STREET | JOHNSTOWN | PA | 15901 |
| 11 | 850 | 8716 NEW FALLS ROAD | LEVITTOWN | PA | 19054 |
| 12 | 852 | 11750 BUSTLETON AVENUE | PHILADELPHIA | PA | 19116 |
| 13 | 857 | 169 WEST LANCASTER AVENUE | ARDMORE | PA | 19003 |
| 14 | 1070 | 420 DANIEL WEBSTER HIGHWAY | MERRIMACK | NH | 03054 |
| 15 | 1288 | 1315 EAST WASHINGTON LANE | PHILADELPHIA | PA | 19138 |
| 16 | 1524 | 924 WEST MAIN STREET | FREMONT | MI | 49412 |
| 17 | 1527 | 507 N LAFAYETTE STREET | GREENVILLE | MI | 48838 |
| 18 | 1530 | 715 SOUTH CLINTON STREET | GRAND LEDGE | MI | 48837 |
| 19 | 1685 | 801 WYOMING AVENUE STE 9 | WEST PITTSTON | PA | 18643 |
| 20 | 1704 | 657 HEACOCK ROAD | YARDLEY | PA | 19067 |
| 21 | 1767 | 2801 W. DAUPHIN STREET | PHILADELPHIA | PA | 19132 |
| 22 | 1796 | 4057 ASBURY AVE STE 8 | TINTON FALLS | NJ | 07753 |
| 23 | 1854 | 1709 LIBERTY STREET | ERIE | PA | 16502 |
| 24 | 1859 | 7501 RITCHIE HIGHWAY | GLEN BURNIE | MD | 21061 |
| 25 | 1955 | 674 ROUTE 196, STE 14 | TOBYHANNA | PA | 18466 |
| 26 | 1970 | 431 HALEDON AVENUE | HALEDON | NJ | 07508 |
| 27 | 1977 | 35 MILL ROAD | IRVINGTON | NJ | 07111 |
| 28 | 2264 | 2722 WEST 9TH STREET | CHESTER | PA | 19013 |
| 29 | 2390 | 3129 LINCOLN WAY EAST | MASSILLON | OH | 44646 |
| 30 | 2442 | 950 EAST BALTIMORE PIKE | YEADON | PA | 19050 |
| 31 | 2521 | 1636 ROUTE 38 SUITE 49 | LUMBERTON | NJ | 08048 |
| 32 | 2629 | 120 SOUTH MAIN STREET | NEW CARLISLE | OH | 45344 |
| 33 | 2709 | 8235 STENTON AVENUE | PHILADELPHIA | PA | 19150 |
| 34 | 3084 | 146 WOODMAN DRIVE | DAYTON | OH | 45431 |
| 35 | 3117 | 2701 MARKET STREET | YOUNGSTOWN | OH | 44507 |
| 36 | 3247 | 401 WEST NORTH STREET | SPRINGFIELD | OH | 45504 |
| 37 | 3377 | 7941 OXFORD AVENUE | PHILADELPHIA | PA | 19111 |
| 38 | 3457 | 136 NORTH 63RD STREET | PHILADELPHIA | PA | 19139 |
| 39 | 3477 | 773 HAMILTON STREET | SOMERSET | NJ | 08873 |
| 40 | 3681 | 5440 LANSDOWNE AVENUE | PHILADELPHIA | PA | 19131 |
| 41 | 3781 | 7967 BALTIMORE ANNAPOLIS BLVD | GLEN BURNIE | MD | 21060 |
| 42 | 3880 | 15250 24 MILE ROAD | MACOMB | MI | 48042 |
| 43 | 3958 | 2002 AVENUE  U | BROOKLYN | NY | 11229 |
| 44 | 4045 | 1434 S BLACK HORSE PIKE | WILLIAMSTOWN | NJ | 08094 |
| 45 | 4234 | 102 NORTH CENTERVILLE ROAD | STURGIS | MI | 49091 |
| 46 | 4300 | 47300 PONTIAC TRAIL | WIXOM | MI | 48393 |
| 47 | 4318 | 35250 SOUTH GRATIOT AVENUE | CLINTON TWP. | MI | 48035 |
| 48 | 4321 | 51037 VAN DYKE AVENUE | SHELBY TOWNSHIP | MI | 48316 |
| 49 | 4350 | 3100 EAST MICHIGAN AVENUE | JACKSON | MI | 49202 |
| 50 | 4366 | 9155 TELEGRAPH ROAD | TAYLOR | MI | 48180 |
| 51 | 4407 | 1243 U.S. 31 SOUTH | MANISTEE | MI | 49660 |
| 52 | 4466 | 29447 FORD ROAD | GARDEN CITY | MI | 48135 |

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 53 | 4504 | 2838 EAST COURT STREET | FLINT | MI | 48506 |
| 54 | 4526 | 1900 EAST 8 MILE ROAD | DETROIT | MI | 48234 |
| 55 | 4537 | 36485 GARFIELD ROAD | CLINTON TWP. | MI | 48035 |
| 56 | 4548 | 25922 MIDDLEBELT ROAD | FARMINGTON HILLS | MI | 48336 |
| 57 | 4552 | 2 WHITNEY AVENUE | FLORAL PARK | NY | 11001 |
| 58 | 4577 | 109 NORTH WHITTEMORE STREET | ST. JOHNS | MI | 48879 |
| 59 | 4616 | 208 EAST CENTRAL AVENUE | TITUSVILLE | PA | 16354 |
| 60 | 4706 | 833 NORTH BATTLEFIELD BLVD | CHESAPEAKE | VA | 23320 |
| 61 | 4761 | 1124 NORTH BALLENGER HWY. | FLINT | MI | 48504 |
| 62 | 4767 | 230 SOUTH MAIN STREET | BELLEFONTAINE | OH | 43311 |
| 63 | 4770 | 2701 SOUTH CEDAR STREET | LANSING | MI | 48910 |
| 64 | 4868 | 71-18 KISSENA BOULEVARD | FLUSHING | NY | 11367 |
| 65 | 4981 | 3131 HEMPSTEAD TURNPIKE | LEVITTOWN | NY | 11756 |
| 66 | 5201 | 601 SOUTH GRADY WAY,STE.P | RENTON | WA | 98057 |
| 67 | 5204 | 3202 132ND STREET, S.E. | MILL CREEK | WA | 98012 |
| 68 | 5227 | 110 SW 148TH STREET | BURIEN | WA | 98166 |
| 69 | 5231 | 10103 EVERGREEN WAY | EVERETT | WA | 98204 |
| 70 | 5280 | 8230 MARTIN WAY EAST | LACEY | WA | 98516 |
| 71 | 5347 | 2440 SE CESAR E CHAVEZ BLVD | PORTLAND | OR | 97214 |
| 72 | 5412 | 1600 NORTH MAIN STREET | MERIDIAN | ID | 83642 |
| 73 | 5417 | 5005 WEST OVERLAND ROAD | BOISE | ID | 83705 |
| 74 | 5448 | 4044 EAGLE ROCK BOULEVARD | LOS ANGELES | CA | 90065 |
| 75 | 5457 | 4046 SOUTH CENTINELA AVENUE | LOS ANGELES | CA | 90066 |
| 76 | 5466 | 7859 FIRESTONE BOULEVARD | DOWNEY | CA | 90241 |
| 77 | 5521 | 4402 ATLANTIC AVENUE | LONG BEACH | CA | 90807 |
| 78 | 5571 | 935 NORTH HOLLYWOOD WAY | BURBANK | CA | 91505 |
| 79 | 5585 | 139 NORTH GRAND AVENUE | COVINA | CA | 91724 |
| 80 | 5593 | 13905 AMAR ROAD | LA PUENTE | CA | 91746 |
| 81 | 5611 | 920 EAST VALLEY BOULEVARD | ALHAMBRA | CA | 91801 |
| 82 | 5635 | 3813 PLAZA DRIVE | OCEANSIDE | CA | 92056 |
| 83 | 5638 | 1670 MAIN STREET | RAMONA | CA | 92065 |
| 84 | 5657 | 6505 MISSION GORGE ROAD | SAN DIEGO | CA | 92120 |
| 85 | 5661 | 8985 MIRA MESA BOULEVARD | SAN DIEGO | CA | 92126 |
| 86 | 5730 | 25906 NEWPORT ROAD | MENIFEE | CA | 92584 |
| 87 | 5735 | 24829 DEL PRADO | DANA POINT | CA | 92629 |
| 88 | 5753 | 30222 CROWN VALLEY PARKWAY | LAGUNA NIGUEL | CA | 92677 |
| 89 | 5757 | 19701 YORBA LINDA BOULEVARD | YORBA LINDA | CA | 92886 |
| 90 | 5760 | 1406 WEST EDINGER AVENUE | SANTA ANA | CA | 92704 |
| 91 | 5772 | 2738 EAST THOMPSON BLVD. | VENTURA | CA | 93003 |
| 92 | 5780 | 720 NORTH VENTURA ROAD | OXNARD | CA | 93030 |
| 93 | 5967 | 20572 HOMESTEAD ROAD | CUPERTINO | CA | 95014 |
| 94 | 5976 | 2620 EL CAMINO REAL | SANTA CLARA | CA | 95051 |
| 95 | 5979 | 901 SOQUEL AVENUE | SANTA CRUZ | CA | 95062 |
| 96 | 6001 | 571 BELLEVUE ROAD | ATWATER | CA | 95301 |
| 97 | 6045 | 5409 SUNRISE BOULEVARD | CITRUS HEIGHTS | CA | 95610 |
| 98 | 6080 | 1309 FULTON AVENUE | SACRAMENTO | CA | 95825 |
| 99 | 6213 | 3029 HARBOR BOULEVARD | COSTA MESA | CA | 92626 |
| 100 | 6288 | 959 CRENSHAW BOULEVARD | LOS ANGELES | CA | 90019 |
| 101 | 6318 | 3000 SOUTH ARCHIBALD AVENUE | ONTARIO | CA | 91761 |
| 102 | 6333 | 15800 IMPERIAL HIGHWAY | LA MIRADA | CA | 90638 |
| 103 | 6521 | 22201 MERIDIAN AVENUE E | GRAHAM | WA | 98338 |
| 104 | 6717 | 8509 IRVINE CENTER DRIVE | IRVINE | CA | 92618 |

| No. | Store No. | Property Address | City | State | Zip Code |
|-----|-----------|------------------|------|-------|----------|
| 105 | 6769 | 499 ALVARADO STREET | MONTEREY | CA | 93940 |
| 106 | 6908 | 9600 15TH AVE SW | SEATTLE | WA | 98106 |
| 107 | 6915 | 2518 196TH ST SW | LYNNWOOD | WA | 98036 |
| 108 | 6920 | 3620 FACTORIA BLVD SE | BELLEVUE | WA | 98006 |
| 109 | 6927 | 11919 NE 8TH STREET | BELLEVUE | WA | 98005 |
| 110 | 6952 | 7370 170TH AVE NE | REDMOND | WA | 98052 |
| 111 | 7827 | 1080 S WEST END BLVD | QUAKERTOWN | PA | 18951 |
| 112 | 10092 | 80 EAST MAIN STREET | WEBSTER | MA | 01570 |
| 113 | 10382 | 289 GREENWOOD AVE. | BETHEL | CT | 06801 |
| 114 | 10415 | 3 MARSHALL HILL ROAD | WEST MILFORD | NJ | 07480 |
| 115 | 10449 | 210 BRIDGETON PIKE | MANTUA | NJ | 08051 |
| 116 | 10456 | 108 SWEDESBORO ROAD SUITE 20 | MULLICA HILL | NJ | 08062 |
| 117 | 10505 | 2370 ROUTE 33 | ROBBINSVILLE | NJ | 08691 |
| 118 | 10514 | 1726 ROUTE 37 EAST | TOMS RIVER | NJ | 08753 |
| 119 | 10517 | 86  B LACEY ROAD | WHITING | NJ | 08759 |
| 120 | 10586 | 2981 OCEAN AVENUE | BROOKLYN | NY | 11235 |
| 121 | 10619 | 3199 LONG BEACH ROAD | OCEANSIDE | NY | 11572 |
| 122 | 10620 | 198 WEST MERRICK ROAD | VALLEY STREAM | NY | 11580 |
| 123 | 10626 | 836 SUNRISE HIGHWAY | BAY SHORE | NY | 11706 |
| 124 | 10628 | 2784 SUNRISE HIGHWAY | BELLMORE | NY | 11710 |
| 125 | 10633 | 901 MERRICK ROAD | COPIAGUE | NY | 11726 |
| 126 | 10635 | 577 LARKFIELD ROAD | EAST NORTHPORT | NY | 11731 |
| 127 | 10642 | 695 EAST JERICHO TURNPIKE | HUNTINGTON STATION | NY | 11746 |
| 128 | 10650 | 700-43 PATCHOGUE-YAPHANK ROAD | MEDFORD | NY | 11763 |
| 129 | 10655 | 273 PINE HOLLOW ROAD | OYSTER BAY | NY | 11771 |
| 130 | 10657 | 397 SUNRISE HIGHWAY | WEST PATCHOGUE | NY | 11772 |
| 131 | 10658 | 593 OLD TOWN RD. | PORT JEFF STATION | NY | 11776 |
| 132 | 10663 | 65 ROUTE 111 | SMITHTOWN | NY | 11787 |
| 133 | 10828 | 2453 ELMWOOD AVENUE | KENMORE | NY | 14217 |
| 134 | 10868 | 1567 PENFIELD ROAD | ROCHESTER | NY | 14625 |
| 135 | 10900 | 700 STEVENSON BLVD. | NEW KENSINGTON | PA | 15068 |
| 136 | 10901 | 351 BRIGHTON AVENUE | ROCHESTER | PA | 15074 |
| 137 | 10906 | 5235 LIBRARY ROAD | BETHEL PARK | PA | 15102 |
| 138 | 10908 | 5990 UNIVERSITY BLVD STE30 | MOON TOWNSHIP | PA | 15108 |
| 139 | 10943 | 2501 SAW MILL RUN BLVD | PITTSBURGH | PA | 15234 |
| 140 | 10949 | 5410 KEEPORT DRIVE | PITTSBURGH | PA | 15236 |
| 141 | 10967 | 6090 ROUTE 30 | GREENSBURG | PA | 15601 |
| 142 | 10974 | 4830 WILLIAM PENN HIGHWAY | EXPORT | PA | 15632 |
| 143 | 10991 | 1730 WILMINGTON ROAD | NEW CASTLE | PA | 16105 |
| 144 | 11042 | 2178 W. UNION BLVD. | BETHLEHEM | PA | 18018 |
| 145 | 11053 | 1628 SOUTH FOURTH STREET | ALLENTOWN | PA | 18103 |
| 146 | 11134 | 2401 EAST VENANGO STREET | PHILADELPHIA | PA | 19134 |
| 147 | 11135 | 6327-43 TORRESDALE AVENUE | PHILADELPHIA | PA | 19135 |
| 148 | 11160 | 200 W. RIDGE AVENUE STE 112 | CONSHOHOCKEN | PA | 19428 |
| 149 | 11182 | 25 CHESTNUT HILL PLAZA | NEWARK | DE | 19713 |
| 150 | 11188 | 3209 KIRKWOOD HIGHWAY | WILMINGTON | DE | 19808 |
| 151 | 11208 | 5 BEL AIR SOUTH PKY, SUITE1347 | BEL AIR | MD | 21015 |
| 152 | 11255 | 1458 MOUNT PLEASANT ROAD | CHESAPEAKE | VA | 23322 |
| 153 | 12999 | 301 EISENHOWER DRIVE | HANOVER | PA | 17331 |
| 154 | 17783 | 7036 WERTZVILLE ROAD | MECHANICSBURG | PA | 17050 |

## **Schedule 2**

**Sale Guidelines**

### Sale Guidelines[1]

1.  The Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

2.  The Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Sale shall be conducted on Sunday unless the Debtors had been operating such Closing Store on a Sunday prior to the commencement of the Sales.

3.  On "shopping center" property, the Debtors shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Debtors may solicit customers in the Closing Stores themselves. On "shopping center" property, the Debtors shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.  At the conclusion of the Sale, the Debtors shall vacate the Closing Stores; *provided* that the Debtor may abandon any Non-Prescription Assets not sold in the Sales at the conclusion of the Sales (the "Termination Date"), without cost or liability of any kind to the Debtors. The Debtors shall notify the Counsel to the DIP Agents, the advisors to the Ad Hoc Secured Noteholder Group, and the landlord of its intention to abandon any Non-Prescription Assets at least two (2) days prior to the Termination Date. The Debtors will have the option to remove the Non-Prescription Assets, at their own cost prior to the Termination Date. Any abandoned Non-Prescription Assets left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors. For the avoidance of doubt, as of the Termination Date, the Debtors may abandon, in place and without further responsibility or liability of any kind, any Non-Prescription Assets.

5.  The Debtors may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales. The Debtors may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines. All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Debtors, prior to purchase, in accordance with these Sale Guidelines.

6.  The Debtors shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Debtors shall not use neon or day-glo on its sign walkers, display, hanging

---

[1] Capitalized terms used but not defined in these Sale Guidelines have the meanings given to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief.*

signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.  In addition, the Debtors shall be permitted to utilize exterior banners at (a) non-enclosed mall Closing Stores and (b) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided, however*, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store.  In addition, the Debtors shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order.  Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Debtors any additional restrictions not contained in the applicable lease agreement.

7.   Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

8.   Except with respect to the hanging of exterior banners, the Debtors shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

9.   The Debtors shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease.  No property of the landlord of a Closing Store shall be removed or sold during the Sales.  The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

10.   The Debtors shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

11.   The Debtors and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

12.   The Debtors may advertise the sale of owned Non-Prescription Assets in a manner consistent with these Sale Guidelines.  The purchasers of any owned Non-Prescription Assets sold during the sale shall be permitted to remove the owned Non-Prescription Assets either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however*, that the foregoing shall not apply to *de minimis* sales of Non-Prescription Assets made whereby the item can be carried out of the Closing Store in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Debtors may abandon, in place and without further responsibility, any Non-Prescription Assets.

13.   At the conclusion of the Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Debtors and their agents and representatives shall continue to have access to the Closing Stores pending assumption or rejection of applicable leases.

14.     The rights of landlords against Debtors for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

15.     The Debtors are authorized to conduct and consummate sales and internal transfers of Prescription Assets consistent with their historical practices, in accordance with applicable law.

16.     If and to the extent that the landlord of any Closing Store affected hereby contends that the Debtors are in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Debtors as follows:

> Rite Aid Corporation
> 1200 Intrepid Avenue, 2nd Floor
> Philadelphia, PA 19112
> Attention:  Chief Legal Officer
>
> with copies (which shall not constitute notice) to:
>
> COLE SCHOTZ P.C.
> Court Plaza North, 25 Main Street
> Hackensack, New Jersey 07601
> Telephone: (201) 489-3000
> Attention: Michael D. Sirota, Esq.
>           Warren A. Usatine, Esq.
>           Felice R. Yudkin, Esq.
>           Seth Van Aalten
> Email:    msirota@coleschotz.com
>           wusatine@coleschotz.com
>           fyudkin@coleschotz.com
>           svanaalten@coleschotz.com
>
> - and -
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention:  Joshua A. Sussberg, P.C.
>           Aparna Yenamandra, P.C.
>           Ross J. Fiedler
>           Zachary R. Manning
> Email:    joshua.sussberg@kirkland.com
>           aparna.yenamandra@kirkland.com
>           ross.fiedler@kirkland.com
>           zach.manning@kirkland.com

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]  The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

**FINAL ORDER**
**(I) AUTHORIZING AND APPROVING THE CONDUCT OF STORE**
**CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL**
**LIENS, CLAIMS, AND ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twenty (20), is
**ORDERED.**

(Page | 3)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief* (the "<u>Motion</u>"),[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of a final order (this "<u>Final Order</u>"):  (a) authorizing and approving the continuation or initiation of store closing or similar themed sales (the "<u>Initial Store Closings</u>") at the stores identified on **Schedule 1** attached hereto (collectively, the "<u>Initial Closing Stores</u>"); (b) authorizing and approving the Debtors to conduct store closings at additional stores (the "<u>Additional Store Closings</u>" and, together with the Initial Store Closings, the "<u>Store Closings</u>") at a later date or dates pursuant to the procedures set forth herein (collectively, the "<u>Additional Closing Stores</u>," if any, and together with the Initial Closing Stores, the "<u>Closing Stores</u>") with such sales to be free and clear of all liens, claims, and encumbrances (the "<u>Sales</u>"), in accordance with the terms of the store closing sale guidelines (the "<u>Sale Guidelines</u>"), attached as **Schedule 2** hereto; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration, the Liebman Declaration, and the Frejka Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY FOUND AND DETERMINED THAT**:[1]

A.     The Debtors have advanced sound business reasons for adopting the Sale Guidelines as set forth in the Motion and at the Hearing.

B.     The Sale Guidelines, which are attached hereto as **Schedule 2**, are reasonable and appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Closing Store Assets, and are in the best interest of the Debtors' estates.

C.     The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient and sound business purposes and justifications for the relief approved herein.

D.     The Store Closings and Sales are in the best interest of the Debtors' estates.

E.     The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

---

[1]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

(Page | 5)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

F.      The entry of this Final Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is

**HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      To the extent any conflict between this Final Order and the Sale Guidelines, the terms of this Final Order shall control.

**I.      Authority to Engage in Sales and Conduct Store Closings.**

3.      The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue, commence, and conduct Sales and Store Closings at the Closing Stores in accordance with this Interim Order and the Sale Guidelines, as may be modified by any Side Letters (as defined below) between the Debtors and the landlords at the Closing Stores.

4.      The Sale Guidelines are approved in their entirety on a final basis.

5.      The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order and the Sale Guidelines.

6.      All entities that are presently in possession of some or all of the Closing Store Assets in which the Debtors hold an interest that is or may be subject to this Final Order hereby are directed to surrender possession of such Closing Store Assets to the Debtors.

7.      Neither the Debtors nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as

(Page | 6)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sales and Store Closings and to take the related actions authorized herein.

8.      The Debtors are authorized to conduct Sales and internal transfers of Prescription Assets consistent with their historical practice, in accordance with applicable law.  Each purchaser of Prescription Assets sold pursuant to this Final Order shall be deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, shall be entitled all of the protections afforded by such provision.

## II.      Conduct of the Sales.

9.      All newspapers and other advertising media in which the Sales and Store Closings may be advertised and all landlords and subtenants are directed to accept this Final Order as binding authority so as to authorize the Debtors to conduct the Sales and Store Closings, including, without limitation, to conduct and advertise the sale of Non-Prescription Assets in the manner contemplated by and in accordance with this Final Order and the Sale Guidelines.

10.      Subject to the Dispute Resolution Procedures provided for in this Interim Order, the Debtors are hereby authorized to take such actions as may be necessary and appropriate to conduct the Sales and Store Closings without necessity of further order of this Court as provided in the Sale Guidelines (subject to any Side Letters), including, but not limited to, advertising a Sale of Non-Prescription Assets as a "store closing sale", "sale on everything", "everything must go", "going-out-of-business", or similar-themed sales as contemplated in the Sale Guidelines through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does

| Debtors: | RITE AID CORPORATION, *et al.* |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

not require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street signage, as contemplated in the Sale Guidelines.

11. Except as expressly provided in the Sale Guidelines, the sale of the Closing Store Assets shall be conducted by the Debtors, notwithstanding any Contractual Restrictions to the contrary. Any and all Contractual Restrictions shall not be enforceable in conjunction with the Store Closings and the Sales. Any breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Final Order, any Side Letter, and the Sale Guidelines. The Debtors and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Debtors and any such landlords, *provided* that nothing in such Side Letters affects the provisions of this Final Order. In the event of any conflict between the Sale Guidelines, any Side Letter, and this Final Order, subject to paragraph 33 hereof, the terms of such Side Letter shall control. Copies of any Side Letters will be provided to the U.S. Trustee, the DIP Agent, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960 (Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com), counsel for

(Page | 8)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

the Ad Hoc Secured Noteholder Group; and/or any statutory committee of unsecured creditors at least two (2) business days' prior to execution of any Side Letters (which period may be shortened or waived if so consented to by each of the DIP Agent, Required Consenting Noteholders (as defined in the Restructuring Support Agreement), and any statutory committee of unsecured creditors).

12.     Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closings, the Sales, or the sale of the Closing Store Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, as applicable, and all such parties and persons and entities of every nature and description, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings and the Sales, and/or (b) instituting any action or proceeding in any court (other than in this Court) or administrative body seeking an order or judgment against, among others, the Debtors or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closings, the Sales, or the sale of the Closing Store Assets, or other liquidation sales at any Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

(Page | 9)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

13.     The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that, in the case of a *bona fide* dispute, the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state or federal law.

14.     Pursuant to section 363(f) of the Bankruptcy Code, the Debtors are authorized to sell the Closing Store Assets, and all sales of Closing Store Assets shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Closing Store Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Closing Store Assets, subject to any claims and defenses that the Debtors may possess with respect thereto.

15.     The Debtors are authorized and empowered to transfer Closing Store Assets among and into the Debtors' store locations in accordance with the Sale Guidelines, as applicable.  The Debtors are authorized to sell the Debtors' Non-Prescription Assets and abandon the same, in each case, as provided for and in accordance with the terms of the Sale Guidelines.

(Page | 10)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

16.    Notwithstanding anything to the contrary in this Interim Order, the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; *provided* that the Debtors will either (a) provide for the return of such property to the Debtors' headquarters or (b) return such property to the applicable lessor, or other owner of the property; provided, however, that the Debtors may abandon property owned by the Landlord at the applicable Closing Store.

17.    Neither the Sale Guidelines nor this Final Order authorize the Debtors to transfer or sell to any other party the personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number) ("PII") of any customers unless such sale or transfer is permitted by the Debtors' privacy policy and applicable state or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws"). The foregoing shall not limit the use of the Debtors' customer lists and mailing lists solely for purposes of advertising and promoting the Sales.

18.    Appointment of a consumer privacy ombudsman is not required with respect to the Sales.

19.    The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable.

(Page | 11)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

20.      Nothing herein shall limit the Debtors' right to suspend, postpone, or discontinue a Sale at a Closing Store on notice to affected parties.

21.      Nothing herein is intended to affect any rights of any applicable Government Unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

### III.    Procedures Relating to Additional Closing Stores.

22.      To the extent that the Debtors seek to conduct Sales at any Additional Closing Stores, the Sale Guidelines and this Final Order shall apply to each such Additional Closing Store (and the corresponding Additional Store Closing(s)).

23.      Except with respect to Sales of Prescription Assets, before conducting the Sales at any Additional Closing Store, the Debtors will file with the Court a list of each such Additional Closing Store (each, an "Additional Closing Store List") and serve a notice of their intent to conduct the applicable Sales at the Additional Closing Store on the Dispute Notice Parties, including applicable landlords (collectively, the "Additional Closing Store Landlords"), and other interested parties by email (to the extent available to the Debtors) or overnight mail within five business days of filing the Additional Closing Store List or as soon as reasonably practicable thereafter.  With respect to the Dispute Notice Parties, including the Additional Closing Store Landlords, the Debtors will mail, if applicable, such notice to the notice address set forth in the lease for such Additional Closing Store (or at the last known address available to the Debtors).

24.      The relevant Additional Closing Store Landlords and any other interested parties shall have ten days after service of the applicable Additional Closing Store List to object to the

(Page | 12)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

application of this Final Order to the Additional Closing Store(s) included in such Additional

Closing Store List.  If no timely objections are filed with respect to the application of this Final

Order to an Additional Closing Store, the Debtors shall be authorized to proceed with conducting

the Sales at the Additional Closing Stores (and any corresponding Additional Store Closing(s)) in

accordance with this Final Order and the Sale Guidelines.  If any objections are filed with respect

to the application of this Final Order to an Additional Closing Store and such objections are not

resolved, the objections and the application of this Final Order to the Additional Closing Store will

be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights

of any party to seek relief on an emergency basis on shortened notice, to the extent necessary.

## IV.    Dispute Resolution Procedures with Governmental Units.

25.    Nothing in this Final Order, the Sale Guidelines, or any Side Letter releases,

nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental

laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive

relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property

after the date of entry of this Final Order.  Nothing contained in this Final Order, the Sale

Guidelines, or any Side Letter shall in any way:  (a) diminish the obligation of any entity to comply

with environmental laws; or (b) diminish the obligations of the Debtors to comply with

environmental laws consistent with their rights and obligations as debtors in possession under the

Bankruptcy Code.  The Store Closings and the Sales shall not be exempt from laws of general

applicability, including, without limitation, public health and safety, criminal, tax, (including, but

not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair

| Debtors: | RITE AID CORPORATION, *et al.* |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws"). Nothing in this Final Order, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

26.     To the extent that the sale of Closing Store Assets is subject to any Liquidation Sale Laws, the following provisions of this paragraph 26 shall apply and control over any Side Letters:

i.      Provided that the Sales are conducted in accordance with this Final Order and the Sale Guidelines, the Debtors and the Debtors' landlords shall be deemed to be in compliance with any requirements of all county, parish, municipal, or other local government (collectively, "Local") and state Liquidation Sale Laws that would otherwise apply to the Store Closings or the Sales; *provided*, that the term "Liquidation Sale Laws" shall not include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Final Order shall be deemed to bar Governmental Units (as defined in section

(Page | 14)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii. Within five business days after entry of this Final Order, or as soon as reasonably practicable thereafter, the Debtors will serve by first-class mail copies of this Final Order and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the Board of Pharmacy's office for each state where a Closing Store is located; (c) the county consumer protection agency or similar agency for each county where the Sales are being held; (d) the division of consumer protection for each state where the Sales are being held; (e) the landlords for the Closing Store; and (f) any subtenants (if any) under the leases with respect to the Closing Stores (collectively, the "Dispute Notice Parties").

iii. With respect to any Additional Closing Stores, within five business days after filing any Additional Closing Store List (as defined below) with the Court, or as soon as reasonably practicable thereafter, the Debtors will serve copies of this Final Order and the Sale Guidelines on the applicable Dispute Notice Parties.

iv. To the extent that there is a dispute arising from or relating to the Sales, this Final Order, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten days following entry of this Final Order, or service of an Additional Closing Store List, any Governmental Unit may assert that a Reserved Dispute exists by serving a notice (the "Dispute Notice") explaining the nature of the dispute on: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Aparna Yenamandra, P.C.; Ross J. Fiedler, and Zachary R. Manning; (b) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Warren A. Usatine, Felice R. Yudkin, and Seth Van Aalten; (c) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960 (Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com), counsel for the Ad Hoc Secured Noteholder Group; (d) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie; (e) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com) and Greenberg

(Page | 15)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com), Oscar N. Pinkas (pinkaso@gtlaw.com)); (f) counsel to any statutory committee appointed in these chapter 11 cases; and (g) the affected landlord or its known counsel. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

v.     If a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of this Final Order, nor the conduct of the Debtors pursuant to this Final Order, violates such Liquidation Sale Laws. The filing of a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Sales pursuant to this Final Order absent further order of the Court. Upon the entry of this Final Order, the Court expressly authorizes the Debtors to conduct the Sales pursuant to the terms of the Final Order and the Sale Guidelines (as may be modified by Side Letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

vi.     If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

27.     Subject to paragraphs 25 and 26 above, each and every federal, state, or local agency, department, or Governmental Unit with regulatory authority over the Store Closings or the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any

(Page | 16)

| Debtors: | RITE AID CORPORATION, *et al.* |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

Governmental Unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Sales.

28.    Provided that the Store Closings and the Sales are conducted in accordance with the terms of this Final Order and the Sale Guidelines (as may be modified by Side Letters) and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closings and the Sales in accordance with the terms of this Final Order and the Sale Guidelines (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

29.    Nothing in this Final Order, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Sale Guidelines, or any Side Letter shall in any way:  (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

**V.    Other Provisions.**

30.    To the extent the Debtors are subject to any Fast Pay Laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in

(Page | 17)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

31.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) an authorization to assume any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion or this Final Order are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

32.      Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements

(Page | 18)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

imposed on the Debtors under the terms of each Final and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, filed substantially contemporaneously herewith (such orders, the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders and to the extent of any conflict or inconsistency between this Final Order and the DIP Orders, the DIP Orders shall govern and control.

33.     On a confidential basis and upon the written (including email) request of the U.S. Trustee (which request has been made), any official committee of unsecured creditors appointed in these chapter 11 cases, or the advisors to the Ad Hoc Secured Noteholder Group, the Debtors shall provide copies of periodic reports on a monthly basis concerning the Sales and Store Closings that are prepared by the Debtors or their professionals; *provided*, however, that the foregoing shall not require the Debtors or their professionals to prepare or undertake to prepare any additional or new reports other than the weekly Sales and Store Closing reports.

34.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

35.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

(Page | 19)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

36.    Notwithstanding any Bankruptcy Rule to the contrary, this Final Order shall be effective and enforceable immediately upon entry hereof.

37.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

38.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

39.    The Debtors shall serve by regular mail a copy of this Final Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two business days after the entry of this Final Order.

40.    Any party may move for modification of this Final Order in accordance with Local Rule 9013-5(e).

41.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

42.    This Court shall retain jurisdiction with regard to all issues or disputes relating to this Final Order, including, but not limited to:  (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner; (b) any claim of the Debtors and/or the landlords for protection from interference with the Store Closings or Sales; (c) any other disputes related to the

(Page | 20)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief |

Store Closings or Sales; and (d) protect the Debtors against any assertions of any liens, claims, encumbrances, and other interests. No such parties or person shall take any action in respect of the Debtors, the landlords, the Store Closings, or the Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

## **Schedule 1**

**Initial Closing Stores**

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 1 | 213 | 2715 PARADE STREET | ERIE | PA | 16504 |
| 2 | 225 | 5612 N. FIFTH STREET | PHILADELPHIA | PA | 19120 |
| 3 | 365 | 728 EAST PULASKI HIGHWAY | ELKTON | MD | 21921 |
| 4 | 374 | 5624 BALTIMORE NATIONAL PK | BALTIMORE | MD | 21228 |
| 5 | 385 | 5804 RITCHIE HIGHWAY | BALTIMORE | MD | 21225 |
| 6 | 443 | 350 MAIN STREET | PENNSBURG | PA | 18073 |
| 7 | 553 | 4011 COTTMAN AVENUE | PHILADELPHIA | PA | 19135 |
| 8 | 558 | 1441 OLD YORK ROAD | ABINGTON | PA | 19001 |
| 9 | 761 | 2887 HARLEM ROAD | CHEEKTOWAGA | NY | 14225 |
| 10 | 803 | 300 MARKET STREET | JOHNSTOWN | PA | 15901 |
| 11 | 850 | 8716 NEW FALLS ROAD | LEVITTOWN | PA | 19054 |
| 12 | 852 | 11750 BUSTLETON AVENUE | PHILADELPHIA | PA | 19116 |
| 13 | 857 | 169 WEST LANCASTER AVENUE | ARDMORE | PA | 19003 |
| 14 | 1070 | 420 DANIEL WEBSTER HIGHWAY | MERRIMACK | NH | 03054 |
| 15 | 1288 | 1315 EAST WASHINGTON LANE | PHILADELPHIA | PA | 19138 |
| 16 | 1524 | 924 WEST MAIN STREET | FREMONT | MI | 49412 |
| 17 | 1527 | 507 N LAFAYETTE STREET | GREENVILLE | MI | 48838 |
| 18 | 1530 | 715 SOUTH CLINTON STREET | GRAND LEDGE | MI | 48837 |
| 19 | 1685 | 801 WYOMING AVENUE STE 9 | WEST PITTSTON | PA | 18643 |
| 20 | 1704 | 657 HEACOCK ROAD | YARDLEY | PA | 19067 |
| 21 | 1767 | 2801 W. DAUPHIN STREET | PHILADELPHIA | PA | 19132 |
| 22 | 1796 | 4057 ASBURY AVE STE 8 | TINTON FALLS | NJ | 07753 |
| 23 | 1854 | 1709 LIBERTY STREET | ERIE | PA | 16502 |
| 24 | 1859 | 7501 RITCHIE HIGHWAY | GLEN BURNIE | MD | 21061 |
| 25 | 1955 | 674 ROUTE 196, STE 14 | TOBYHANNA | PA | 18466 |
| 26 | 1970 | 431 HALEDON AVENUE | HALEDON | NJ | 07508 |
| 27 | 1977 | 35 MILL ROAD | IRVINGTON | NJ | 07111 |
| 28 | 2264 | 2722 WEST 9TH STREET | CHESTER | PA | 19013 |
| 29 | 2390 | 3129 LINCOLN WAY EAST | MASSILLON | OH | 44646 |
| 30 | 2442 | 950 EAST BALTIMORE PIKE | YEADON | PA | 19050 |
| 31 | 2521 | 1636 ROUTE 38 SUITE 49 | LUMBERTON | NJ | 08048 |
| 32 | 2629 | 120 SOUTH MAIN STREET | NEW CARLISLE | OH | 45344 |
| 33 | 2709 | 8235 STENTON AVENUE | PHILADELPHIA | PA | 19150 |
| 34 | 3084 | 146 WOODMAN DRIVE | DAYTON | OH | 45431 |
| 35 | 3117 | 2701 MARKET STREET | YOUNGSTOWN | OH | 44507 |
| 36 | 3247 | 401 WEST NORTH STREET | SPRINGFIELD | OH | 45504 |
| 37 | 3377 | 7941 OXFORD AVENUE | PHILADELPHIA | PA | 19111 |
| 38 | 3457 | 136 NORTH 63RD STREET | PHILADELPHIA | PA | 19139 |
| 39 | 3477 | 773 HAMILTON STREET | SOMERSET | NJ | 08873 |
| 40 | 3681 | 5440 LANSDOWNE AVENUE | PHILADELPHIA | PA | 19131 |
| 41 | 3781 | 7967 BALTIMORE ANNAPOLIS BLVD | GLEN BURNIE | MD | 21060 |
| 42 | 3880 | 15250 24 MILE ROAD | MACOMB | MI | 48042 |
| 43 | 3958 | 2002 AVENUE  U | BROOKLYN | NY | 11229 |
| 44 | 4045 | 1434 S BLACK HORSE PIKE | WILLIAMSTOWN | NJ | 08094 |
| 45 | 4234 | 102 NORTH CENTERVILLE ROAD | STURGIS | MI | 49091 |
| 46 | 4300 | 47300 PONTIAC TRAIL | WIXOM | MI | 48393 |
| 47 | 4318 | 35250 SOUTH GRATIOT AVENUE | CLINTON TWP. | MI | 48035 |
| 48 | 4321 | 51037 VAN DYKE AVENUE | SHELBY TOWNSHIP | MI | 48316 |
| 49 | 4350 | 3100 EAST MICHIGAN AVENUE | JACKSON | MI | 49202 |
| 50 | 4366 | 9155 TELEGRAPH ROAD | TAYLOR | MI | 48180 |
| 51 | 4407 | 1243 U.S. 31 SOUTH | MANISTEE | MI | 49660 |
| 52 | 4466 | 29447 FORD ROAD | GARDEN CITY | MI | 48135 |

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 53 | 4504 | 2838 EAST COURT STREET | FLINT | MI | 48506 |
| 54 | 4526 | 1900 EAST 8 MILE ROAD | DETROIT | MI | 48234 |
| 55 | 4537 | 36485 GARFIELD ROAD | CLINTON TWP. | MI | 48035 |
| 56 | 4548 | 25922 MIDDLEBELT ROAD | FARMINGTON HILLS | MI | 48336 |
| 57 | 4552 | 2 WHITNEY AVENUE | FLORAL PARK | NY | 11001 |
| 58 | 4577 | 109 NORTH WHITTEMORE STREET | ST. JOHNS | MI | 48879 |
| 59 | 4616 | 208 EAST CENTRAL AVENUE | TITUSVILLE | PA | 16354 |
| 60 | 4706 | 833 NORTH BATTLEFIELD BLVD | CHESAPEAKE | VA | 23320 |
| 61 | 4761 | 1124 NORTH BALLENGER HWY. | FLINT | MI | 48504 |
| 62 | 4767 | 230 SOUTH MAIN STREET | BELLEFONTAINE | OH | 43311 |
| 63 | 4770 | 2701 SOUTH CEDAR STREET | LANSING | MI | 48910 |
| 64 | 4868 | 71-18 KISSENA BOULEVARD | FLUSHING | NY | 11367 |
| 65 | 4981 | 3131 HEMPSTEAD TURNPIKE | LEVITTOWN | NY | 11756 |
| 66 | 5201 | 601 SOUTH GRADY WAY,STE.P | RENTON | WA | 98057 |
| 67 | 5204 | 3202 132ND STREET, S.E. | MILL CREEK | WA | 98012 |
| 68 | 5227 | 110 SW 148TH STREET | BURIEN | WA | 98166 |
| 69 | 5231 | 10103 EVERGREEN WAY | EVERETT | WA | 98204 |
| 70 | 5280 | 8230 MARTIN WAY EAST | LACEY | WA | 98516 |
| 71 | 5347 | 2440 SE CESAR E CHAVEZ BLVD | PORTLAND | OR | 97214 |
| 72 | 5412 | 1600 NORTH MAIN STREET | MERIDIAN | ID | 83642 |
| 73 | 5417 | 5005 WEST OVERLAND ROAD | BOISE | ID | 83705 |
| 74 | 5448 | 4044 EAGLE ROCK BOULEVARD | LOS ANGELES | CA | 90065 |
| 75 | 5457 | 4046 SOUTH CENTINELA AVENUE | LOS ANGELES | CA | 90066 |
| 76 | 5466 | 7859 FIRESTONE BOULEVARD | DOWNEY | CA | 90241 |
| 77 | 5521 | 4402 ATLANTIC AVENUE | LONG BEACH | CA | 90807 |
| 78 | 5571 | 935 NORTH HOLLYWOOD WAY | BURBANK | CA | 91505 |
| 79 | 5585 | 139 NORTH GRAND AVENUE | COVINA | CA | 91724 |
| 80 | 5593 | 13905 AMAR ROAD | LA PUENTE | CA | 91746 |
| 81 | 5611 | 920 EAST VALLEY BOULEVARD | ALHAMBRA | CA | 91801 |
| 82 | 5635 | 3813 PLAZA DRIVE | OCEANSIDE | CA | 92056 |
| 83 | 5638 | 1670 MAIN STREET | RAMONA | CA | 92065 |
| 84 | 5657 | 6505 MISSION GORGE ROAD | SAN DIEGO | CA | 92120 |
| 85 | 5661 | 8985 MIRA MESA BOULEVARD | SAN DIEGO | CA | 92126 |
| 86 | 5730 | 25906 NEWPORT ROAD | MENIFEE | CA | 92584 |
| 87 | 5735 | 24829 DEL PRADO | DANA POINT | CA | 92629 |
| 88 | 5753 | 30222 CROWN VALLEY PARKWAY | LAGUNA NIGUEL | CA | 92677 |
| 89 | 5757 | 19701 YORBA LINDA BOULEVARD | YORBA LINDA | CA | 92886 |
| 90 | 5760 | 1406 WEST EDINGER AVENUE | SANTA ANA | CA | 92704 |
| 91 | 5772 | 2738 EAST THOMPSON BLVD. | VENTURA | CA | 93003 |
| 92 | 5780 | 720 NORTH VENTURA ROAD | OXNARD | CA | 93030 |
| 93 | 5967 | 20572 HOMESTEAD ROAD | CUPERTINO | CA | 95014 |
| 94 | 5976 | 2620 EL CAMINO REAL | SANTA CLARA | CA | 95051 |
| 95 | 5979 | 901 SOQUEL AVENUE | SANTA CRUZ | CA | 95062 |
| 96 | 6001 | 571 BELLEVUE ROAD | ATWATER | CA | 95301 |
| 97 | 6045 | 5409 SUNRISE BOULEVARD | CITRUS HEIGHTS | CA | 95610 |
| 98 | 6080 | 1309 FULTON AVENUE | SACRAMENTO | CA | 95825 |
| 99 | 6213 | 3029 HARBOR BOULEVARD | COSTA MESA | CA | 92626 |
| 100 | 6288 | 959 CRENSHAW BOULEVARD | LOS ANGELES | CA | 90019 |
| 101 | 6318 | 3000 SOUTH ARCHIBALD AVENUE | ONTARIO | CA | 91761 |
| 102 | 6333 | 15800 IMPERIAL HIGHWAY | LA MIRADA | CA | 90638 |
| 103 | 6521 | 22201 MERIDIAN AVENUE E | GRAHAM | WA | 98338 |
| 104 | 6717 | 8509 IRVINE CENTER DRIVE | IRVINE | CA | 92618 |

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 105 | 6769 | 499 ALVARADO STREET | MONTEREY | CA | 93940 |
| 106 | 6908 | 9600 15TH AVE SW | SEATTLE | WA | 98106 |
| 107 | 6915 | 2518 196TH ST SW | LYNNWOOD | WA | 98036 |
| 108 | 6920 | 3620 FACTORIA BLVD SE | BELLEVUE | WA | 98006 |
| 109 | 6927 | 11919 NE 8TH STREET | BELLEVUE | WA | 98005 |
| 110 | 6952 | 7370 170TH AVE NE | REDMOND | WA | 98052 |
| 111 | 7827 | 1080 S WEST END BLVD | QUAKERTOWN | PA | 18951 |
| 112 | 10092 | 80 EAST MAIN STREET | WEBSTER | MA | 01570 |
| 113 | 10382 | 289 GREENWOOD AVE. | BETHEL | CT | 06801 |
| 114 | 10415 | 3 MARSHALL HILL ROAD | WEST MILFORD | NJ | 07480 |
| 115 | 10449 | 210 BRIDGETON PIKE | MANTUA | NJ | 08051 |
| 116 | 10456 | 108 SWEDESBORO ROAD SUITE 20 | MULLICA HILL | NJ | 08062 |
| 117 | 10505 | 2370 ROUTE 33 | ROBBINSVILLE | NJ | 08691 |
| 118 | 10514 | 1726 ROUTE 37 EAST | TOMS RIVER | NJ | 08753 |
| 119 | 10517 | 86  B LACEY ROAD | WHITING | NJ | 08759 |
| 120 | 10586 | 2981 OCEAN AVENUE | BROOKLYN | NY | 11235 |
| 121 | 10619 | 3199 LONG BEACH ROAD | OCEANSIDE | NY | 11572 |
| 122 | 10620 | 198 WEST MERRICK ROAD | VALLEY STREAM | NY | 11580 |
| 123 | 10626 | 836 SUNRISE HIGHWAY | BAY SHORE | NY | 11706 |
| 124 | 10628 | 2784 SUNRISE HIGHWAY | BELLMORE | NY | 11710 |
| 125 | 10633 | 901 MERRICK ROAD | COPIAGUE | NY | 11726 |
| 126 | 10635 | 577 LARKFIELD ROAD | EAST NORTHPORT | NY | 11731 |
| 127 | 10642 | 695 EAST JERICHO TURNPIKE | HUNTINGTON STATION | NY | 11746 |
| 128 | 10650 | 700-43 PATCHOGUE-YAPHANK ROAD | MEDFORD | NY | 11763 |
| 129 | 10655 | 273 PINE HOLLOW ROAD | OYSTER BAY | NY | 11771 |
| 130 | 10657 | 397 SUNRISE HIGHWAY | WEST PATCHOGUE | NY | 11772 |
| 131 | 10658 | 593 OLD TOWN RD. | PORT JEFF STATION | NY | 11776 |
| 132 | 10663 | 65 ROUTE 111 | SMITHTOWN | NY | 11787 |
| 133 | 10828 | 2453 ELMWOOD AVENUE | KENMORE | NY | 14217 |
| 134 | 10868 | 1567 PENFIELD ROAD | ROCHESTER | NY | 14625 |
| 135 | 10900 | 700 STEVENSON BLVD. | NEW KENSINGTON | PA | 15068 |
| 136 | 10901 | 351 BRIGHTON AVENUE | ROCHESTER | PA | 15074 |
| 137 | 10906 | 5235 LIBRARY ROAD | BETHEL PARK | PA | 15102 |
| 138 | 10908 | 5990 UNIVERSITY BLVD STE30 | MOON TOWNSHIP | PA | 15108 |
| 139 | 10943 | 2501 SAW MILL RUN BLVD | PITTSBURGH | PA | 15234 |
| 140 | 10949 | 5410 KEEPORT DRIVE | PITTSBURGH | PA | 15236 |
| 141 | 10967 | 6090 ROUTE 30 | GREENSBURG | PA | 15601 |
| 142 | 10974 | 4830 WILLIAM PENN HIGHWAY | EXPORT | PA | 15632 |
| 143 | 10991 | 1730 WILMINGTON ROAD | NEW CASTLE | PA | 16105 |
| 144 | 11042 | 2178 W. UNION BLVD. | BETHLEHEM | PA | 18018 |
| 145 | 11053 | 1628 SOUTH FOURTH STREET | ALLENTOWN | PA | 18103 |
| 146 | 11134 | 2401 EAST VENANGO STREET | PHILADELPHIA | PA | 19134 |
| 147 | 11135 | 6327-43 TORRESDALE AVENUE | PHILADELPHIA | PA | 19135 |
| 148 | 11160 | 200 W. RIDGE AVENUE STE 112 | CONSHOHOCKEN | PA | 19428 |
| 149 | 11182 | 25 CHESTNUT HILL PLAZA | NEWARK | DE | 19713 |
| 150 | 11188 | 3209 KIRKWOOD HIGHWAY | WILMINGTON | DE | 19808 |
| 151 | 11208 | 5 BEL AIR SOUTH PKY, SUITE1347 | BEL AIR | MD | 21015 |
| 152 | 11255 | 1458 MOUNT PLEASANT ROAD | CHESAPEAKE | VA | 23322 |
| 153 | 12999 | 301 EISENHOWER DRIVE | HANOVER | PA | 17331 |
| 154 | 17783 | 7036 WERTZVILLE ROAD | MECHANICSBURG | PA | 17050 |

## **Schedule 2**

**Sale Guidelines**

## Sale Guidelines[1]

1.    The Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

2.    The Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Sale shall be conducted on Sunday unless the Debtors had been operating such Closing Store on a Sunday prior to the commencement of the Sales.

3.    On "shopping center" property, the Debtors shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Debtors may solicit customers in the Closing Stores themselves.  On "shopping center" property, the Debtors shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.    At the conclusion of the Sale, the Debtors shall vacate the Closing Stores; *provided* that the Debtor may abandon any Non-Prescription Assets not sold in the Sales at the conclusion of the Sales (the "Termination Date"), without cost or liability of any kind to the Debtors.  The Debtors shall notify the Counsel to the DIP Agents, the advisors to the Ad Hoc Secured Noteholder Group, and the landlord of its intention to abandon any Non-Prescription Assets at least two (2) days prior to the Termination Date.  The Debtors will have the option to remove the Non-Prescription Assets, at their own cost prior to the Termination Date.  Any abandoned Non-Prescription Assets left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors.  For the avoidance of doubt, as of the Termination Date, the Debtors may abandon, in place and without further responsibility or liability of any kind, any Non-Prescription Assets.

5.    The Debtors may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales.  The Debtors may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines.  All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Debtors, prior to purchase, in accordance with these Sale Guidelines.

6.    The Debtors shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  The Debtors shall not use neon or day-glo on its sign walkers, display, hanging

---

[1]    Capitalized terms used but not defined in these Sale Guidelines have the meanings given to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief.*

signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.  In addition, the Debtors shall be permitted to utilize exterior banners at (a) non-enclosed mall Closing Stores and (b) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided, however*, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store.  In addition, the Debtors shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order.  Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Debtors any additional restrictions not contained in the applicable lease agreement.

7.  Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

8.  Except with respect to the hanging of exterior banners, the Debtors shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

9.  The Debtors shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease.  No property of the landlord of a Closing Store shall be removed or sold during the Sales.  The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

10.  The Debtors shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

11.  The Debtors and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

12.  The Debtors may advertise the sale of owned Non-Prescription Assets in a manner consistent with these Sale Guidelines.  The purchasers of any owned Non-Prescription Assets sold during the sale shall be permitted to remove the owned Non-Prescription Assets either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however*, that the foregoing shall not apply to *de minimis* sales of Non-Prescription Assets made whereby the item can be carried out of the Closing Store in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Debtors may abandon, in place and without further responsibility, any Non-Prescription Assets.

13.  At the conclusion of the Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Debtors and their agents and representatives shall continue to have access to the Closing Stores pending assumption or rejection of applicable leases.

14.     The rights of landlords against Debtors for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

15.     The Debtors are authorized to conduct and consummate sales and internal transfers of Prescription Assets consistent with their historical practices, in accordance with applicable law.

16.     If and to the extent that the landlord of any Closing Store affected hereby contends that the Debtors are in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Debtors as follows:

> Rite Aid Corporation
> 1200 Intrepid Avenue, 2nd Floor
> Philadelphia, PA 19112
> Attention:  Chief Legal Officer
>
> with copies (which shall not constitute notice) to:
>
> COLE SCHOTZ P.C.
> Court Plaza North, 25 Main Street
> Hackensack, New Jersey 07601
> Telephone: (201) 489-3000
> Attention: Michael D. Sirota, Esq.
>            Warren A. Usatine, Esq.
>            Felice R. Yudkin, Esq.
>            Seth Van Aalten
> Email:   msirota@coleschotz.com
>          wusatine@coleschotz.com
>          fyudkin@coleschotz.com
>          svanaalten@coleschotz.com
>
> - and -
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention:  Joshua A. Sussberg, P.C.
>             Aparna Yenamandra, P.C.
>             Ross J. Fiedler
>             Zachary R. Manning
> Email:   joshua.sussberg@kirkland.com
>          aparna.yenamandra@kirkland.com
>          ross.fiedler@kirkland.com
>          zach.manning@kirkland.com