**Order Filed on October 18, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## ORDER (I) APPROVING THE AUCTION AND BIDDING PROCEDURES, (I) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING THE ELIXIR STALKING HORSE APA, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VII) AUTHORIZING THE SALE OF ASSETS, AND (VIII) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through and including twenty-one (21), is **ORDERED**.

**DATED: October 18, 2023**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

Page | 3)
Debtors:          RITE AID CORPORATION, *et al.*
Case No.          23-18993 (MBK)
Caption:          Order (I) Approving Bidding Procedures and Bid Protections,
                  (II) Scheduling Certain Dates and Deadlines with Respect Thereto,
                  (III) Approving the Form and Manner of Notice Thereof, (IV) Approving
                  the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for
                  the Assumption and Assignment of Contracts and Leases, (VI) Authorizing
                  the Assumption and Assignment of Assumed Contracts, (VII) Authorizing
                  the Sale of Assets, and (VIII) Granting Related Relief

Upon the *Debtors' Motion Seeking Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief,*[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) approving the proposed marketing, auction, and bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"), by which the Debtors will solicit and select the highest or otherwise best offer(s) for the sale or sales (the "Sale Transactions") of all, substantially all, or any portion of any of the Rite Aid Retail Assets and/or the Elixir Assets (the "Assets"); (b) approving the break-up fee and expense reimbursements relating to certain stalking horse bidders (the "Stalking Horse Bid Protections"); (c) establishing certain dates and deadlines related thereto and scheduling an auction or auctions, if any, for the Sale Transactions (the "Auctions"); (d) approving the manner of notice of the Auctions and any sale hearing (the "Sale Hearing") as may be necessary; (e) approving and authorizing the Debtors to enter into a "stalking horse" asset purchase agreement (the "Elixir Stalking Horse APA") with MedImpact Healthcare Systems, Inc.

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

Page | 4)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

("MedImpact"), substantially in the form attached to the Bidding Procedures as Schedule 2;

(f) approving procedures for the assumption and assignment of certain Executory Contracts and

Unexpired Leases in connection with the Sale Transaction, if any; (g) providing that, in light of

the fact that the Debtors' privacy policy does not prohibit the transfer of personal identifiable

information, the appointment of a consumer privacy ombudsman is not required; and (h) granting

related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; the

Rifkin Declaration; the Cohen Declaration; and the Frejka Declaration filed in support of the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy*

*Court Under Title 11* of the United States District Court for the District of New Jersey, entered

July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found

that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and this Court having found that the relief requested in the Motion is in the best interests

of the Debtors' estates; and this Court having found that the Debtors' notice of the Motion was

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion , the First Day Declaration, the Rifkin Declaration, the Cohen Declaration,

and the Frejka Declaration, and having heard the statements in support of the relief requested

therein at a hearing before this Court (the "Hearing"); and this Court having determined that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and

Document      Page 5 of 62

Page | 5)

| Debtors: | RITE AID CORPORATION, *et al.* |
|----------|-------------------------------|
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and in the best interests of the Debtors' estates.

3.      The Debtors' proposed notice of the Motion and the Hearing was adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required.

4.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

I.      **Important Dates and Deadlines**.

A.      **Elixir Dates and Deadlines.**

5.      **Final Bid Deadline**.  November 16, 2023, at 5:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids for the Elixir Assets must be **actually received** by the parties specified in the Bidding Procedures.

6.      **Stalking Horse Bidders and Bid Protections**.  The Debtors are authorized to enter into the Elixir Stalking Horse APA with MedImpact, and the terms of the Elixir Stalking Horse APA are hereby approved.  MedImpact shall be deemed an Elixir Stalking Horse Bidder and

| Page | 6) | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

Qualified Bidder and MedImpact's Bid contemplated by the Elixir Stalking Horse APA shall be deemed a Qualified Bid.

7.        The Bid Protections for the Elixir Stalking Horse Bidder are approved in their entirety and the amount of such Bid Protections as to MedImpact shall be an allowed administrative expense claim under section 503(b) of the Bankruptcy Code.  The Debtors are authorized, but not directed, to pay any amounts that may become due to the Elixir Stalking Horse Bidder on account of the Bid Protections on the terms set forth in the Elixir Stalking Horse APA.

8.        With respect to the Elixir Sale Transaction, no person or entity, other than MedImpact, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the Elixir Assets, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

9.        **Auction**.  The date and time of the Elixir Auction, if needed, is November 20, 2023, at 10:00 a.m. prevailing Eastern Time, for the Elixir Assets, which time may be extended by the Debtors in consultation with the Consultation Parties upon written notice with the Court. The Elixir Auction will be held at the offices of the proposed co-counsel to the Debtors:  Kirkland & Ellis LLP, 601 Lexington Ave., New York, NY 10022.  Except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties,

| | |
|---|---|
| Page \| 7) | |
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

the U.S. Trustee, any Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to participate in the Elixir Auction, and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Elixir Auction; *provided, however*, that any party in interest may attend the Elixir Auction. The Debtors shall send written notice of the date, time, and place of any Elixir Auction to the Qualified Bidders, the Consultation Parties, and the U.S. Trustee no later than two business days before such Elixir Auction, and will post notice of the date, time, and place of such Elixir Auction no later than two business days before such Elixir Auction on the website of the Debtors' proposed notice, claims, and solicitation agent, Kroll Restructuring Administration LLC (the "Notice and Claims Agent") at https://restructuring.ra.kroll.com/riteaid. For the avoidance of doubt, the Debtors may also conduct more than above-listed Elixir Auctions with respect to other non-overlapping material portions of the Debtors' Elixir Assets.

10. **Notice of Successful Bidder**. As soon as reasonably practicable upon conclusion of any Auction, the Debtors shall file a Notice of Successful Bidder and Contract Assumption for the Elixir Assets, in substantially the form attached hereto as **Exhibit 2**.

11. **Sale Objection Deadline**. Objections to the sale, if any, and any adequate assurance of future performance with respect to any Elixir Assets must be made by December 1, 2023 at 4:00 p.m. prevailing Eastern Time.

Page | 8)

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

12.    **Sale Hearing**.  December 7, 2023, at 11:00 a.m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider the Successful Bid or Successful Bids of the Elixir Assets, if needed.  The proposed order approving the sale of the Elixir Assets shall be filed no later than five (5) days before the Sale Hearing.

**B.    Rite Aid Retail Dates and Deadlines.**

13.    **Final Bid Deadline**.  November 30, 2023, at 5:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids for the Rite Aid Retail Assets must be **actually received** by the parties specified in the Bidding Procedures.

14.    **Stalking Horse Bidders and Bid Protections**.  The Debtors, upon entry of this Order, shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment, in consultation with the Consultation Parties, *provided*, *however*, that to the extent any of the DIP Agents or the Ad Hoc Secured Noteholder Group submits a Bid for any Rite Aid Retail Assets, such DIP Agent or Ad Hoc Secured Noteholder Group shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for such Rite Aid Retail Assets included in such DIP Agent's or Ad Hoc Secured Noteholder Group's Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in the Bidding Procedures, to select one or more Rite Aid Retail Stalking Horse Bidders with respect to some or all of the Debtors' Rite Aid Retail Assets by no later than November 20, 2023, at 5:00 p.m., prevailing Eastern Time, and enter into

Page | 9)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

a Stalking Horse Agreement, and to provide such Stalking Horse Bidders with Stalking Horse Bid Protections without further action or order by this Court, *provided* that to the extent a Rite Aid Retail Stalking Horse Bidder has submitted a Credit Bid, the Stalking Horse Bid Protections shall not be provided.

15.    With respect to a Rite Aid Retail Sale Transaction, no person or entity, other than any Rite Aid Retail Stalking Horse Bidder that has not submitted a Credit Bid, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the Rite Aid Retail Assets, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

16.    In the event that the Debtors enter into a Stalking Horse Agreement with one or more Rite Aid Retail Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court (the "Rite Aid Retail Stalking Horse Notice") and serve the Rite Aid Retail Stalking Horse Notice on the Rite Aid Retail Stalking Horse Bidder, the Consultation Parties, and the U.S. Trustee.  The Rite Aid Retail Stalking Horse Notice shall:  (a) set forth the identity of the Rite Aid Retail Stalking Horse Bidder (and if the Rite Aid Retail Stalking Horse Bidder is a newly formed entity, then the Rite Aid Retail Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Rite Aid Retail Stalking

Page | 10

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

Horse Bid and what portion (if any) is cash; (c) state whether the Rite Aid Retail Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Rite Aid Retail Stalking Horse Bid; (d) specify any proposed Rite Aid Retail Stalking Horse Bid Protections (including the amount and calculation thereof); (e) specify the Assets included in the Rite Aid Retail Stalking Horse Bid; (f) attach the applicable Rite Aid Retail Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (g) set forth the deadline to object to the Rite Aid Retail Stalking Horse Bidder designation and any Rite Aid Retail Stalking Horse Bid Protections. If there are no objections to the Rite Aid Retail Stalking Horse Notice within five days of filing with the Court, (the "Rite Aid Retail Stalking Horse Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Rite Aid Retail Stalking Horse Notice Period that authorizes the Debtors to designate an Rite Aid Retail Stalking Horse Bidder and to enter into an Rite Aid Retail Stalking Horse Agreement, without the need for further hearing.   If a party timely files an objection to the Rite Aid Retail Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Rite Aid Retail Stalking Horse Notice Period and as soon thereafter as the Court is available.

17.   **Auction**.  The date and time of the Rite Aid Retail Auction, if needed, is December 4, 2023, at 10:00 a.m. prevailing Eastern Time, for the Rite Aid Retail Assets, which time may be extended by the Debtors in consultation with the Consultation Parties upon written notice with the Court.  The Rite Aid Retail Auction will be held at the offices of the proposed co-counsel to the

Page | 11)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

Debtors:  Kirkland & Ellis LLP, 601 Lexington Ave., New York, NY 10022.  Except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties, the U.S. Trustee, any Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to participate in the Rite Aid Retail Auction, and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Rite Aid Retail Auction; *provided*, *however*, that any party in interest, including any affected landlord, may attend any Auction.  The Debtors shall send written notice of the date, time, and place of any Rite Aid Retail Auction to the Qualified Bidders, the Consultation Parties, and the U.S. Trustee no later than two business days before such Rite Aid Retail Auction, and will post notice of the date, time, and place of such Rite Aid Retail Auction no later than two business days before such Rite Aid Retail Auction on the website of the Debtors' Notice and Claims Agent at https://restructuring.ra.kroll.com/riteaid.  For the avoidance of doubt, the Debtors may also conduct more than the above-listed Auctions with respect to other non-overlapping material portions of the Debtors' Rite Aid Retail Assets.

18.   **Notice of Successful Bidder**.  As soon as reasonably practicable upon conclusion of any Auction, the Debtors shall file a Notice of Successful Bidder and Contract Assumption for the Rite Aid Retail Assets, in substantially the form attached hereto as **Exhibit 2**.

Page | 12

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

19.  **Sale Objection Deadline**.  Objections to the sale, if any, and any adequate assurance of future performance with respect to any Rite Aid Retail Assets must be made by December 15, 2023 at 4:00 p.m. prevailing Eastern Time.

20.  **Sale Hearing**.  December 19, 2023, at 11:00 a.m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider the Successful Bid or Successful Bids of the Rite Aid Retail Assets, if needed.

**II.    Auction, Bidding Procedures, Auction Notice, and Related Relief**.

21.  The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures. Subject to the terms of the Bidding Procedures, the Debtors may modify the Bidding Procedures as necessary or appropriate to maximize value for their estates.

22.  Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

Page | 13)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

23.    Each Auction Notice, substantially in the forms attached as Schedules 1(a) and 1(b) to the Bidding Procedures, is hereby approved.  As soon as reasonably practicable following entry of the Order, the Debtors will cause the Auction Notices to be served upon the following parties: (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (c) the agents under the Prepetition Credit Facilities and counsel thereto; (d) the DIP Agents and counsel thereto; (e) Paul, Weiss, Rifkind, Wharton & Garrison LLP and Fox Rothschild LLP, as counsel to the Ad Hoc Secured Noteholder Group; (f) the indenture trustee to the Senior Secured Notes; (g) the indenture trustee to the Senior Unsecured Notes; (h) the United States Attorney's Office for the District of New Jersey; (i) the Internal Revenue Service; (j) the U.S. Securities and Exchange Commission; (k) the attorneys general in the states where the Debtors conduct their business operations; (l) all parties who have expressed a written interest in the Assets; (m) all known holders of liens, encumbrances, and other claims secured by the Assets; (n) each governmental agency that is an interested party with respect to the Sale Transactions; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.

24.    Pursuant to Local Rule 6004-2(c)(2):  (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be documented, recorded, or videotaped.

Page | 14

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

## III.    Assumption and Assignment Procedures.

25.    The procedures set forth below regarding the assumption and assignment of the Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder, if any, pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale Transactions are hereby approved to the extent set forth herein.

26.    These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' Executory Contracts and Unexpired Leases to be assumed and assigned in connection with a Sale Transaction under any asset purchase agreement approved hereby, subject to any contract designation rights set forth in any purchase agreement and the payment of any amount necessary to cure all defaults as required under section 365(b) of the Bankruptcy Code (the foregoing amounts as stated in the Contract Assumption Notice, the "Cure Payments"):

(a)    **Notice of Successful Bidder and Contract Assumption.**  As soon as reasonably practicable upon conclusion of any Auction, but in any event no later than one day following such Auction, (the "Assumption and Assignment Service Deadline"), the Debtors shall serve a notice of contracts assumed and assigned to any Successful Bidder (the "Notice of Successful Bidder and Contract Assumption"), in substantially the form attached hereto as **Exhibit 2** via first class mail on the applicable Executory Contract or Unexpired Lease counterparties at the notice addresses set forth in the applicable Executory Contract or Unexpired Lease and on their counsel of record via email, each to the extent known, and provide a copy of the same to the Consultation Parties.  The Notice of Successful Bidder

Page | 15)

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

and Contract Assumption, with respect to the assumption and assignment of Executory Contracts or Unexpired Leases, shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Executory Contract or Unexpired Lease, (ii) the name of the counterparty to the Executory Contract or Unexpired Lease, (iii) Debtors' good faith estimates of the Cure Payments, if any, required in connection with the Executory Contract or Unexpired Lease, and (iv) the applicable Sale Objection Deadline; *provided*, however, that service of a Notice of Successful Bidder and Contract Assumption does not constitute an admission that any Executory Contract or Unexpired Lease listed thereon is an executory contract or that such stated Cure Payment constitutes a claim against the Debtors or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. Further, the inclusion of a contract on the Notice of Successful Bidder and Contract Assumption is not a guarantee that such contract will ultimately be assumed and assigned.

(b) **Cure Payments.** The payment of the applicable Cure Payments by the Debtors and/or the Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder as required by section 365(b) of the Bankruptcy Code and (ii) together with the assumption of the ultimately assumed Executory Contract or Unexpired Lease by the Debtors and the assignment of such Executory Contract or Unexpired Lease to the Successful Bidder, constitute adequate assurance of future performance thereof.

(c) **Supplemental Contract Assumption Notice.** To the extent the Debtors, at any time after the Assumption and Assignment Service Deadline (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (ii) remove any Executory Contracts or Unexpired Leases from the list attached to the Notice of Successful Bidder and Contract Assumption, (iii) and/or modify the previously stated Cure Payment associated with any Executory Contract

15

Page | 16)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

or Unexpired Lease, the Debtors will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the Executory Contract or Unexpired Lease counterparties affected by the Supplemental Assumption Notice. Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts or Unexpired Leases as was included in the Notice of Successful Bidder and Contract Assumption. Except as otherwise provided in any purchase agreement, a Successful Bidder may designate additional Executory Contracts or Unexpired Leases to be assumed and assigned up to two business days prior to closing and may remove Executory Contracts or Unexpired Leases from the list of Executory Contracts and Unexpired Leases up to two business days prior to closing.

(d)     **Objections.**  Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, and the Bankruptcy Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the correct Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (a) proposed counsel to the Debtors, (b) counsel to the Stalking Horse Bidder, if any, (c) the Elixir Bid Notice Parties or Rite Aid Retail Notice Parties, and (d) any other party that has filed a notice of appearance in these chapter 11 cases, so as actually to be received on or before the Sale Objection Deadline or deadline set forth in the Supplemental Assumption Notice, as applicable.

(e)     **Dispute Resolution.**  In the event that the Debtors and a counterparty to an Executory Contract or Unexpired Lease cannot resolve an objection to a Cure Payment, the Executory Contract or Unexpired Lease at issue may be assumed by the Debtors and assigned to the Successful Bidder, *provided* that the Debtors shall segregate the Cure Payment that the Executory

Page | 17

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

Contract or Unexpired Lease counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties. Any objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease or related Cure Payment proposed in connection with the Sale Transaction that remains unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Court).

(f)     **Contract Assumption.** No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date the Sale Transaction has closed.

27.     Any party failing to timely file an objection to the Cure Payments, adequate assurance of future performance, or the proposed assumption and assignment of an Executory Contract or Unexpired Lease is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Executory Contract or Unexpired Lease, (c) the related relief requested in the Motion, (d) and adequate assurance of future performance, and (e) the Sale Transaction. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Executory Contract or Unexpired Lease, adequate assurance of future performance, the relief requested in the Motion, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional

| Debtors: | RITE AID CORPORATION, *et al.* |
|----------|--------------------------------|
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

cure or other amounts against the Debtors and the Successful Bidder with respect to such party's Executory Contract or Unexpired Lease.

28.    The Debtors shall, concurrently with the Notice of Successful Bidder and Contract Assumption, provide evidence to each Executory Contract or Unexpired Lease counterparty that the Proposed Assignee of the Executory Contract or Unexpired Lease has the ability to comply with the requirements of adequate assurance of future performance; *provided* that any such evidence that constitutes nonpublic information shall be provided on a confidential basis.  All Bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to counsel for the applicable Executory Contract or Unexpired Lease counterparties via email with such information to be used only for purpose of assessing the applicable Bidder.

**IV.    Miscellaneous**.

29.    Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the sureties, the Debtors, the Debtors' lenders, and the agents under their respective credit agreements, the Stalking Horse Bidder, if applicable, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to the Auction, the Bidding

Page | 19)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the applicable Bid Deadline).

30.     The Debtors are authorized to revise the Sale Schedule in consultation with the Consultation Parties.  The Debtors are further authorized, but not directed, to conduct multiple Sale Transactions and/or Auctions (as necessary) in substantial conformity with the Sale Schedule and Bidding Procedures established through this Order.

31.     The issue concerning whether an Ombudsman should be appointed pursuant to section 363(b)(1) of the Bankruptcy Code is carved out from this order and will be determined at a subsequent hearing to be held on November 16, 2023, at 1:00 p.m.  The U.S. Trustee or any statutory committee appointed in these chapter 11 cases shall have ten days following the initial appointment of such statutory committee, to file pleadings concerning the appointment of an Ombudsman.

32.     The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

33.     The Court, at the request of the Debtors in consultation with the Consultation Parties and subject to the Court's availability, may modify the dates of and adjourn any hearing set by this Order without further Order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

Page | 20)
Debtors:        RITE AID CORPORATION, *et al.*
Case No.        23-18993 (MBK)
Caption:        Order (I) Approving Bidding Procedures and Bid Protections,
                (II) Scheduling Certain Dates and Deadlines with Respect Thereto,
                (III) Approving the Form and Manner of Notice Thereof, (IV) Approving
                the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for
                the Assumption and Assignment of Contracts and Leases, (VI) Authorizing
                the Assumption and Assignment of Assumed Contracts, (VII) Authorizing
                the Sale of Assets, and (VIII) Granting Related Relief

34.     The Debtors, in consultation with the Consultation Parties, may modify any of the deadlines set forth herein or provide for additional deadlines within a Sale Schedule, *provided* that the Debtors will disclose all applicable deadlines in the applicable Auction Notice.

35.     The Debtors may modify any Good Faith Deposit, in consultation with the Consultation Parties, as necessary or appropriate, based on the Assets being sold.

36.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

37.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

38.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

39.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

40.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

41.     Any party may move for modification of this Final Order in accordance with Local Rule 9013-5(e).

Page | 21)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption: | Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief |

42.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

## <u>Exhibit 1</u>

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al*., | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**BIDDING PROCEDURES FOR THE
SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN
CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On October 15, 2023 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court").

The Debtors filed these chapter 11 cases after reaching an agreement in principle, memorialized in a term sheet (the "RSA Term Sheet") [Docket No. 20, Ex. A], to conclude a Restructuring Support Agreement with the Ad Hoc Secured Noteholder Group. The RSA Term Sheet contemplates a chapter 11 plan of reorganization that provides for the equitization of some or all of the Senior Secured Notes Claims of Holders thereof into equity in New Rite Aid, after taking into account any sales consummated pursuant to these Bidding Procedures, including with respect to the Elixir Assets, through confirmation of the Plan (the "Plan Restructuring").

On the Petition Date, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates* [Docket No. __] (the "Plan") and the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates* [Docket No. __], each reflecting the terms of the Plan Restructuring.

The Plan Restructuring, however, serves as a baseline restructuring proposal. The Plan also contemplates that the Debtors will continue their prepetition marketing and bidding process pursuant to the procedures contained herein (these "Bidding Procedures"). These Bidding Procedures will enable the Debtors to consummate alternative or complementary sale transactions in the event that the Debtors receive offers for any portion of the Assets, including the Rite Aid Retail Assets, that, in their reasonable business judgment, in consultation with the Consultation Parties, represent higher or otherwise better bids in comparison with the value provided by the Plan Restructuring. These Bidding Procedures also enable the Debtors to complete the prepetition

---

[1]  The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

marketing process for the Elixir Assets through a value-maximizing Auction and Elixir Sale Transaction.

On the Petition Date, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [__]] (the "Bidding Procedures Motion"), seeking approval of, among other things, these Bidding Procedures.

On [__], 2023, the Court entered the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [__]] (the "Bidding Procedures Order"),[2] by which the Court approved these Bidding Procedures. These Bidding Procedures set forth the process by which the Debtors are authorized to solicit bids for and conduct auctions (collectively, the "Auctions," and each, an "Auction") for a sale or disposition of all, any portion of, or substantially all of the Debtors' Rite Aid Retail Assets, as a potential alternative to, or in conjunction with, the Plan Restructuring, and the Elixir Assets, or any portion thereof (collectively, the "Sale," and each, a "Sale Transaction").

Any Sale will be implemented pursuant to section 363 of the Bankruptcy Code, pursuant to an amended Plan, or a combination thereof and any individual Sale Transaction may be implemented pursuant to section 363 of the Bankruptcy Code or the Plan.

Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to Kroll Restructuring Administration LLC by calling 844-274-2766 (toll free) or +1 646-440-4878 (international) or visiting the Debtors' restructuring website at (https://restructuring.ra.kroll.com/RiteAid).

## I.    Assets to be Auctioned.

The Debtors are seeking to sell all of their Rite Aid Retail Assets and Elixir Assets or any portion thereof. These assets include, but are not limited to, the Debtors' going-concern business, real and personal property, unexpired leases, executory contracts, equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, prescription files and related records, and books and records, in each case, free and clear of all liens, claims, interests,

---

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Bidding Procedures Motion, the Bidding Procedures Order, or the Plan as applicable.

or other encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable non-bankruptcy law (collectively, the "<u>Assets</u>").

## II.    Public Announcement of Auctions.

**<u>Announcement of Elixir Auction</u>**.  As soon as practicable after entry of the Bidding Procedures Order, the Debtors shall serve on the parties that receive notice of the Bidding Procedures Motion, (a) a notice setting forth (i) the date, time, and place of the (A) auction for the Elixir Assets (the "<u>Elixir Auction</u>") and (B) the Elixir Sale Hearing (as defined below) and (ii) the deadlines and procedures for objecting to the proposed Elixir Sale Transaction(s), and (b) the Bidding Procedures Order and these Bidding Procedures in the applicable form attached hereto as **<u>Schedule 1(a)</u>** (the "<u>Elixir Auction Notice</u>").  As soon as practicable after entry of the Bidding Procedures Order, the Debtors shall also publish the Elixir Auction Notice, with any modifications necessary for ease of publication, in *The New York Times* (National Edition) to provide notice to any other potential interested parties.  Finally, the Debtors shall post the Elixir Auction Notice on their case website, https://restructuring.ra.kroll.com/RiteAid.  The Elixir Auction Notice shall include a complete list and general description of the Elixir Assets for sale (such Elixir Assets, the "<u>Specified Elixir Assets</u>").

**<u>Announcement of Rite Aid Retail Auction</u>**.  As soon as practicable after entry of the Bidding Procedures Order, the Debtors shall serve on the parties that receive notice of the Bidding Procedures Motion, (a) a notice setting forth (i) the date, time, and place of the (A) auction for the Rite Aid Retail Assets (the "<u>Rite Aid Retail Auction</u>") and (B) the Rite Aid Retail Sale Hearing (as defined below) and (ii) the deadlines and procedures for objecting to the proposed Rite Aid Retail Sale Transaction(s), and (b) the Bidding Procedures Order and these Bidding Procedures in the applicable form attached hereto as **<u>Schedule 1(b)</u>** (the "<u>Rite Aid Retail Auction Notice</u>").  As soon as practicable after entry of the Bidding Procedures Order, the Debtors shall also publish in *The New York Times* (National Edition) to provide notice to any other potential interested parties the Rite Aid Retail Auction Notice.  Finally, the Debtors shall post the Rite Aid Retail Auction Notice on their case website, https://restructuring.ra.kroll.com/RiteAid.  The Rite Aid Retail Auction Notice shall include a complete list and general description of the Rite Aid Retail Assets for sale (such Rite Aid Retail Assets, the "<u>Specified Rite Aid Retail Assets</u>").

## III.    Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Assets or part of the Assets (a "<u>Potential Bidder</u>") must deliver or have previously delivered to (a) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com), and Ross J. Fiedler (ross.fiedler@kirkland.com), 300 North LaSalle, Chicago, Illinois 60654, Attn: Steve Toth (steve.toth@kirkland.com), (b) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn:   Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com), and (c) proposed investment banker to the Debtors, Guggenheim Securities, LLC, 330 Madison Avenue, New York, New York 10017, Attn:  Brendan Hayes

3

(brendan.hayes@guggenheimpartners.com), Casey Cohen (casey.cohen@guggenheimpartners.com), Matthew Scheidemann (matthew.scheidemann@guggenheimpartners.com), and Jeffrey Kirshner (jeffrey.kirshner@guggenheimpartners.com), the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

    a.      an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

    b.      sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties;[3] and

    c.      a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable.

The Debtors, in consultation with their advisors, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a bid (such Potential Bidder, an "Acceptable Bidder").  Notwithstanding anything to the contrary herein, the DIP Agents and the Ad Hoc Secured Noteholder Group shall each be an Acceptable Bidder for any Sale.

## IV.    Preliminary Indications of Interest with Respect to Rite Aid Retail Assets

In order to be eligible to submit a Bid for Rite Aid Retail Assets, Acceptable Bidders will first be required to submit a non-binding indication of interest (an "Rite Aid Retail IOIs") not later than 4:00 p.m. (prevailing Eastern Time) on November 16, 2023 (the "Rite Aid Retail IOI Deadline"), to the Rite Aid Retail Bid Notice Parties (as defined below); *provided* that the Debtors may extend the Rite Aid Retail IOI Deadline or waive the requirement of a Rite Aid Retail IOI for one or more Acceptable Bidders, without further order of the Court.

Each Rite Aid Retail IOI must include, except as the Debtors, in consultation with the Consultation Parties, otherwise determine:

    (i)      a letter outlining the Acceptable Bidder's offer, form(s) of consideration, any conditions precedent (other than the sufficiency of financing) and stating that the

---

[3]    "Consultation Parties" means the Prepetition Agent and the DIP Agents (collectively, the "DIP Agents") and the Ad Hoc Secured Noteholder Group, and any of their respective designees, and any official committee of unsecured creditors appointed in these chapter 11 cases; *provided*, *however*, that to the extent any of the DIP Agents or the Ad Hoc Secured Noteholder Group submits a Bid for any Assets, such DIP Agent or Ad Hoc Secured Noteholder Group shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for such Assets included in such DIP Agent's or Ad Hoc Secured Noteholder Group's Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in the Bidding Procedures.

Acceptable Bidder is prepared to work in good faith to acquire the Rite Aid Retail Assets and finalize a binding proposal by the applicable Bid Deadline (as defined below);

(ii)    written evidence acceptable to the Debtors demonstrating financial wherewithal and a description of any corporate or governmental authorizations necessary to consummate the proposed Rite Aid Retail Sale Transaction;

(iii)   the identification of the ultimate beneficial owners of the Acceptable Bidder;

(iv)    a description of all remaining due diligence requirements and any material conditions to be satisfied prior to submission of a Bid; and

(v)     to the extent known at the time of the Rite Aid Retail IOI, any obligations related to employees of the Debtors the Acceptable Bidder may assume.

**V.      Qualified Bid Requirements.**

To participate in any Auction, an Acceptable Bidder must deliver to the Debtors and their above-referenced advisors an irrevocable offer for the purchase of some or all of the Assets (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the applicable Bid Deadline (as defined below):

a.    **Purchased Assets and Assumed Liabilities**:  Each Bid must clearly state the following:  (a) the particular Assets, including Elixir Assets, or the portion thereof identified with reasonable specificity, to be purchased; (b) the liabilities and obligations to be assumed, including any debt and cure costs to be assumed; and (c) as applicable, whether the Acceptable Bidder intends to operate the Debtors' business as a going concern.

b.    **Good Faith Deposit**:  Except with respect to a credit bid (a "Credit Bid"), the Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit"); *provided*, that the DIP Agents and the Ad Hoc Secured Noteholder Group (or their designees) shall not be required to submit a Good Faith Deposit.  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10% of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the applicable Auction;

c.    **Purchase Price**:  Each Bid must (a) clearly set forth the purchase price to be paid, assuming a purchase of the applicable Assets and any assumption of liabilities (the "Purchase Price"), (b) identify separately the cash and non-cash components of the Purchase Price, and (c) indicate the allocation of the Purchase Price among the applicable Assets; *provided that*, for the avoidance of doubt, such allocation shall be nonbinding on any third party, including with respect to the application of proceeds pursuant to the Financing Orders and the DIP Documents (as defined in

the Financing Orders) and shall not prejudice the rights of any party in interest to contest such allocation.  The Purchase Price should be a single point value in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis.  Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all Assets or whether the Qualified Bid should be viewed as separate Bid for one or more sets of Assets;

d.    **Same or Better Terms; Bid Documents**:  Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "<u>Bid Documents</u>"). The Bid Documents shall include:  (a) a form of purchase agreement; (b) a schedule of contracts and leases to be assumed to the extent applicable to the Bid, (c) with respect to the purchase agreement, a redline of such agreement marked to reflect the amendments and modifications made to a form of the applicable purchase agreement that the Debtors shall make available to Acceptable Bidders via the Debtors' electronic data room pursuant to the due diligence process, (d) any other material documents integral to such Bid, and (e) a statement from the Acceptable Bidder that (i) it is prepared to enter into and consummate the transactions contemplated in the form purchase agreement, no later than ten (10) business days after the conclusion of the Auction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder (or, if no Auction is held, the applicable deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures), and (ii) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "<u>Back-Up Bid</u>")) until the consummation of the Sale Transaction;

e.    **No Qualified Bidder Bid Protections**:  Unless such Qualified Bid is selected as a Stalking Horse Bid, a Qualified Bid must include a statement that the bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

f.    **Employee Obligations**:  Each Bid must indicate whether the Acceptable Bidder intends to hire all employees who are primarily employed in connection with the applicable Assets included in such Bid.  If the Acceptable Bidder does not intend to hire all employees who are primarily employed in connection with the applicable Assets included in such Bid, the Acceptable Bidder must include a description of the Acceptable Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees who are primarily employed in connection with the applicable Assets, and a description of any contemplated incentive plan, to the extent applicable;

g.    **Sources of Financing**:  To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtors' satisfaction, in consultation with the Consultation

Parties, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid, including providing adequate assurance of future performance under all Contracts proposed to be assumed by such Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors;

h.      **Contingencies; No Financing or Diligence Outs**:    The Bid must not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties, which shall not be more burdensome, in the Debtors' reasonable business judgment, than those contemplated by the Stalking Horse Bid, if any.  All diligence must be completed before the Bid Deadline.

i.      **Identity**:  Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties.  Each Bid must also include contact information for the specific person(s) whom Guggenheim Securities, LLC ("Guggenheim Securities") and Kirkland & Ellis LLP ("Kirkland & Ellis") should contact regarding such Bid;

j.      **As-Is, Where-Is**:    Each Bid must include a written acknowledgement and representation that the Acceptable Bidder:  (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, by the Debtors, Guggenheim Securities, Kirkland & Ellis, or the Debtors' other advisors regarding the completeness of any information provided in connection therewith, except, solely with respect to the Debtors, as expressly stated in the Acceptable Bidder's proposed purchase agreement;

k.      **Authorization**:  Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

l.      **Joint Bids**:  The Debtors will be authorized to approve joint Bids in their reasonable business judgment, in consultation with the Consultation Parties, on a case-by-case

7

basis, so long as a joint bid meets the Qualified Bid Requirements, and the applicable bidders otherwise comply with these Bidding Procedures;

m. **Adequate Assurance of Future Performance**:  Each Bid must (i) identify any then-known executory contracts (the "<u>Executory Contracts</u>") and unexpired leases (the "<u>Unexpired Leases</u>") to be assumed and assigned in connection with the proposed Sale Transaction, (ii) provide for the payment of all cure amounts ("<u>Cure Amounts</u>") related to such then-known Executory Contracts or Unexpired Leases by the Acceptable Bidder and (iii) demonstrate, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, that the Acceptable Bidder can provide adequate assurance of future performance under all such then-known Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, and (iv) provide the following documentation:

 (a) The legal name of the proposed assignee of such then-known Executory Contracts or Unexpired Leases (the "<u>Proposed Assignee</u>") and any guarantors, as applicable;

 (b) Financial statements for the calendar or fiscal years ended 2021 and 2022 for the Proposed Assignee and any guarantors, as applicable, and other financial information about the Proposed Assignee to demonstrate its ability to provide adequate assurance of future performance;

 (c) With respect to a Bid for the Rite Aid Retail Assets, summary documentation regarding the Proposed Assignee's and any guarantor's, as applicable, retail experience and present retail operations; and

 (d) With respect to a Proposed Assignee of an Unexpired Lease identified in a Bid for the Rite Aid Retail Assets, a summary of the Proposed Assignee's proposed use of the premises;

n. **Acknowledgement of Compliance with Bidding Procedures, Bidding Order, Bankruptcy Code, and Non-Bankruptcy Law**:  Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, Bankruptcy Code and any applicable non-bankruptcy law;

o. **Privacy Policy**:  The Acceptable Bidder must comply in all respects with the Debtors' consumer privacy policy, which does not restrict the transfer of the personally identifiable information of its customers, and each Bid must contain a statement acknowledging such compliance;

p. **No Collusion**:  The Acceptable Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale Transaction, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids,

the Auction, or the Sale Transaction.  For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s), the DIP Agents, or the Ad Hoc Secured Noteholder Group with the Debtors' prior written consent (email shall suffice).

q.    **Good Faith Offer**:  The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction;

r.    **Irrevocable**:  Each Bid must state that in the event such Bid is chosen as the Back-Up Bid (as defined below), it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

s.    **Back-Up Bid**:  Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined below) if the Acceptable Bidder's Bid is the next highest or otherwise best bid;

t.    **Regulatory Approvals and Covenants**:  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale Transaction, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the applicable purchase agreement and/or confirmation of the Plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible);

u.    **Expected Closing Date**:  Each Bid must state the Acceptable Bidder's expected date of closing of the applicable Sale Transaction;

v.    **Time Frame for Closing**:  A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors, in consultation with the Consultation Parties;

w.    **No Fees**:  Except to the extent the Acceptable Bidder is entitled to the Stalking Horse Bid Protections as a Stalking Horse Bidder, each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation; *provided*, *however*, that nothing in these Bidding Procedures shall limit, alter or impair the rights of any party to payment and reimbursement of expenses that are set forth in the DIP Orders, and parties entitled to payment or reimbursement of expenses under the DIP Orders shall be entitled to payment or reimbursement of expenses incurred in connection with these Bidding Procedures and the matters contemplated hereby;

9

For the avoidance of doubt, each Acceptable Bidder (except with respect to the DIP Agents and the Ad Hoc Secured Noteholder Group and any of their respective designees) by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their reasonable business judgment, in consultation with the Consultation Parties and in a manner consistent with the Financing Orders (as defined in the Plan) to provide the Stalking Horse Bid Protections to the stalking horse bidders (each, a  "Elixir Stalking Horse Bidder" or "Rite Aid Retail Stalking Horse Bidder," and together, the "Stalking Horse Bidders") in connection with any stalking horse agreement (each, a "Stalking Horse Agreement") in accordance with these Bidding Procedures; *provided,* that to the extent such Stalking Horse Bidder has submitted a Credit Bid, the Stalking Horse Bid Protections shall not be provided;

x.    **Adherence to Bidding Procedures**:  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction;

y.    **Consent to Jurisdiction**:  The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the closing, as applicable; and

z.    **Conditions to Closing**:  Each Bid must identify with particularity each and every condition to closing, including any then-known Executory Contracts and Unexpired Leases for which assumption and assignment is required.

Only Bids, whether for Elixir Assets or Rite Aid Retail Assets, fulfilling all of the preceding requirements contained in this section may, or otherwise in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable business judgment, be deemed to be "Qualified Bidders;" *provided* that notwithstanding anything to the contrary herein, any Bid submitted by the DIP Agents or the Ad Hoc Secured Noteholder Group (or their designees) shall be Qualified Bids.

Neither the Debtors nor any of their advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Assets, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Assets with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets.  All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable

10

Assets, except to the extent expressly provided in the Bankruptcy Court's order approving the Sale Transaction. Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Bankruptcy Court's order approving the Sale Transaction.

In advance of the commencement of any Auction, as is reasonably practicable, the Debtors shall determine, in consultation with the Consultation Parties, which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided* that if the Debtors receive a Bid prior to the applicable Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction.

## VI.    Right to Credit Bid.

The DIP Agents and the Ad Hoc Secured Noteholder Group, their respective designees, and any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (each, a "Secured Creditor") shall have the right to submit an additional or replacement Credit Bid consisting of all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to Credit Bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided, further*, that (i) the rights of the DIP Agents and the Ad Hoc Secured Noteholder group or their respective designees to Credit Bid shall be as set forth in the Financing Orders, (ii) the consummation of a Credit Bid in respect of any collateral is conditioned on payment in full in cash of any claims secured by senior liens on such collateral, unless the holders of such senior liens consent to a different treatment of such claims, and (iii) the rights of any party-in-interest to seek standing or authority to pursue a Challenge (as defined in the Financing Orders) and to object to any Secured Creditor's rights to Credit Bid are hereby reserved and preserved, in each case as set forth in the Financing Orders.

Any Credit Bid made by a Secured Creditor or their respective assignees, as applicable, will be deemed to be a cash Bid solely for purposes of evaluating Bids (including evaluating Qualified Bids and Subsequent Bids). Notwithstanding anything to the contrary contained herein or the Bidding Procedures Order, the DIP Agents or the Ad Hoc Secured Noteholder Group or their respective designees, as applicable, whether as a Stalking Horse Bidder or otherwise, shall not be subject to the Good Faith Deposit requirement (whether for a credit bid or otherwise), are hereby deemed Qualified Bidders, and their Bids, including any Credit Bid, are hereby deemed Qualified Bids.

## VII.   Obtaining Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors.

***No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***.  Beginning on the date the Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request.  The Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic dataroom for the benefit of all Applicable Bidders.  To the extent the Debtors provide any material written information to an Acceptable Bidder that the Debtors had not previously provided to a Consultation Party, the Debtors shall promptly make such information available to such Consultation Party.

Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors.  The due diligence period will end on the applicable Bid Deadline and subsequent to the applicable Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction.  For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

### A.    Communications with Acceptable Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Acceptable Bidders (including any Qualified Bidders) shall be through Guggenheim Securities.

### B.    Due Diligence from Acceptable Bidders (including Qualified Bidders).

Each Acceptable Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors and their respective advisors, regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated transaction.  Failure by an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder, if any) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer an Acceptable Bidder (including any

Qualified Bidder, other than the Stalking Horse Bidder, if any) or that a bid made by such bidder is not a Qualified Bid.

> **The Debtors have designated Brendan Hayes, Casey Cohen, Matthew Scheidemann, and Jeffrey Kirshner at Guggenheim Securities to coordinate all requests for additional information and due diligence access on behalf of the Debtors. They can be reached at brendan.hayes@guggenheimpartners.com, casey.cohen@guggenheimpartners.com, matthew.scheidemann@guggenheimpartners.com, and jeffrey.kirshner@guggenheimpartners.com.**

## VIII.    Bid Deadlines.

### A.    Elixir Bid Deadline.

Binding Bids for the Elixir Assets must be submitted in writing to the following parties (the "Elixir Bid Notice Parties") so as to be **actually received** no later than 5:00 p.m. (prevailing Eastern Time) on November 16, 2023 (the "Elixir Bid Deadline").

> (vi)    proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com), Ross J. Fiedler (ross.fiedler@kirkland.com), and Zachary R. Manning (zach.manning@kirkland.com), 300 North LaSalle, Chicago, Illinois 60654, Attn:  Steve Toth (steve.toth@kirkland.com);

> (vii)    proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 Attn:  Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (fyudkin@coleschotz.com); and Seth Van Aalten (svanaalten@coleschotz.com); and

> (viii)    the Debtors' proposed investment banker, Guggenheim Securities, LLC, 330 Madison Avenue, New York, New York 10017, Attn:  Brendan Hayes (brendan.hayes@guggenheimpartners.com), Casey Cohen (casey.cohen@guggenheimpartners.com), Matthew Scheidemann (matthew.scheidemann@guggenheimpartners.com), and Jeffrey Kirshner (jeffrey.kirshner@guggenheimpartners.com).

In consultation with the Consultation Parties, the Debtors may extend the Elixir Bid Deadline in their reasonable business judgment for all or certain Acceptable Bidders.

### B.    Rite Aid Retail Bid Deadline.

Binding Bids for any or all of the Rite Aid Retail Assets must be submitted in writing to the following parties (the "Rite Aid Retail Bid Notice Parties") so as to be **actually received** no later than 5:00 p.m. (prevailing Eastern Time) on November 30, 2023 (the "Rite Aid Retail Bid Deadline," and together with the Elixir Bid Deadline, the "Bid Deadlines").

13

(i)     proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com), Ross J. Fiedler (ross.fiedler@kirkland.com), and Zachary R. Manning (zach.manning@kirkland.com), 300 North LaSalle, Chicago, Illinois, 60654, Attn: Steve Toth (steve.toth@kirkland.com);

(ii)    proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com); and

(iii)   the Debtors' proposed investment banker, Guggenheim Securities, LLC, 330 Madison Avenue, New York, New York 10017, Attn: Brendan Hayes (brendan.hayes@guggenheimpartners.com), Casey Cohen (casey.cohen@guggenheimpartners.com), Matthew Scheidemann (matthew.scheidemann@guggenheimpartners.com), and Jeffrey Kirshner (jeffrey.kirshner@guggenheimpartners.com).

In consultation with the Consultation Parties, the Debtors may extend the Rite Aid Retail Bid Deadline for any reason whatsoever, in their reasonable business judgment for all or certain Acceptable Bidders.

## IX.    Evaluation of Qualified Bids.

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' business judgment, and, in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid or combination of Qualified Bids for any Assets (the "Starting Bids"). The Debtors shall promptly provide to the Consultation Parties and the U.S. Trustee copies of all Bids received by the Debtors, including the Starting Bid; *provided* that the Consultation Parties and the U.S. Trustee must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors deem appropriate:   (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents, including the effect of the sale of Elixir Assets on Rite Aid Retail Assets, and *vice versa*; (d) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code; (e) the certainty of a Qualified Bid leading to a confirmed Plan; (f) whether the Qualified Bid contemplates a Sale Transaction for the Debtors' new equity interest or a Sale Transaction for the Assets; and (g) the tax consequences of such Qualified Bid. Prior to commencing the Auction, the Debtors shall notify the Stalking Horse Bidder, if any, and

all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable assets.  At such time, the Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder, if any, and each Qualified Bidder.

**X.    Stalking Horse Bid Protections.**

Pursuant to the Bidding Procedures Order, a Stalking Horse Bidder, if any, that has not submitted a Credit Bid, is entitled to the Stalking Horse Bid Protections (as defined below) in the amounts set forth herein, and in accordance with the terms of the Bidding Procedures Order.

In the event that the Debtors receive multiple Qualified Bids, with respect to any Elixir Assets (and solely in the event of the termination of the Elixir Stalking Horse APA, attached hereto as **Schedule 2**, with MedImpact), at any time until November 8, 2023, at 5:00 p.m. (prevailing Eastern Time), and with respect to any Rite Aid Retail Assets, at any time until November 20, 2023, at 5:00 p.m. (prevailing Eastern Time), the Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment, in consultation with the Consultation Parties, to (a) select one or more Acceptable Bidders to act as the Stalking Horse Bidder in connection with the Auction for such assets, and (b) in connection with any stalking horse agreement (with respect to any Elixir Assets, an "Elixir Stalking Horse Agreement," and with respect to any Rite Aid Retail Assets, a "Rite Aid Stalking Horse Agreement") with a Stalking Horse Bidder, (x) provide a break-up fee and (y) agree to reimburse the reasonable and documented out of pocket fees and expenses (the "Stalking Horse Bid Protections") not to exceed (i) three and a half percent of the Purchase Price with respect to the foregoing clauses (x) and (y) in the aggregate, with respect to the Elixir Sale Transaction, and (ii) three percent of the applicable Purchase Price with respect to the foregoing clauses (x) and (y) in the aggregate, with respect to a Rite Aid Retail Sale Transaction. Any such Stalking Horse Bid Protections are authorized pursuant to these Bidding Procedures and the Bidding Procedures Order.

Except with respect to entry into the Elixir Stalking Horse APA with MedImpact, in the event that the Debtors enter into a Stalking Horse Agreement with one or more Elixir Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court (the "Elixir Stalking Horse Notice") and serve the Elixir Stalking Horse Notice on the Elixir Stalking Horse Bidder, the U.S. Trustee, and the Consultation Parties.  The Elixir Stalking Horse Notice shall:  (i) set forth the identity of the applicable Elixir Stalking Horse Bidder (and if the Elixir Stalking Horse Bidder is a newly formed entity, then the Elixir Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Elixir Stalking Horse Bid and what portion (if any) is cash; (iii) state whether the Elixir Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Elixir Stalking Horse Bid; (iv) specify any proposed Elixir Stalking Horse Bid Protections (including the amount and calculation thereof); (v) specify the Assets included in the Elixir Stalking Horse Bid; (vi) attach the applicable Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vii) set forth the deadline to object to the Elixir Stalking Horse Bidder designation and any Elixir Stalking Horse Bid Protections.  If there are no objections to the Elixir Stalking Horse Notice within five days of filing with the Court, (the "Elixir Stalking Horse Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Elixir Stalking Horse Notice Period that authorizes the Debtors to designate an Elixir Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing.  If a party timely files an objection

to the Elixir Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Elixir Stalking Horse Notice Period and as soon thereafter as the Court is available.

In the event that the Debtors enter into a Stalking Horse Agreement with one or more Rite Aid Retail Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court (the "Rite Aid Retail Stalking Horse Notice") and serve the Rite Aid Retail Stalking Horse Notice on the Rite Aid Retail Stalking Horse Bidder, the U.S. Trustee, and Consultation Parties. The Rite Aid Retail Stalking Horse Notice shall: (a) set forth the identity of the Rite Aid Retail Stalking Horse Bidder (and if the Rite Aid Retail Stalking Horse Bidder is a newly formed entity, then the Rite Aid Retail Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Rite Aid Retail Stalking Horse Bid and what portion (if any) is cash; (c) state whether the Rite Aid Retail Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Rite Aid Retail Stalking Horse Bid; (d) specify any proposed Rite Aid Retail Stalking Horse Bid Protections (including the amount and calculation thereof); (e) specify the Assets included in the Rite Aid Retail Stalking Horse Bid; (f) attach the applicable Rite Aid Retail Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (g) set forth the deadline to object to the Rite Aid Retail Stalking Horse Bidder designation and any Rite Aid Retail Stalking Horse Bid Protections. If there are no objections to the Rite Aid Retail Stalking Horse Notice within five days of filing with the Court, (the "Rite Aid Retail Stalking Horse Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Rite Aid Retail Stalking Horse Notice Period that authorizes the Debtors to designate an Rite Aid Retail Stalking Horse Bidder and to enter into an Rite Aid Retail Stalking Horse Agreement, without the need for further hearing. If a party timely files an objection to the Rite Aid Retail Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Rite Aid Retail Stalking Horse Notice Period and as soon thereafter as the Court is available.

Upon entry of the Bidding Procedures Order, the Debtors are authorized, but are not obligated or directed, to incur and pay the Stalking Horse Bid Protections to any Stalking Horse Bidder that has not submitted a Credit Bid in an aggregate amount not to exceed three and a half percent of the proposed Purchase Price, with respect to the Elixir Sale Transaction, and three percent of the applicable proposed Purchase Price, with respect to the Rite Aid Retail Sale Transaction.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder that has not submitted a Credit Bid, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

## XI.    No Qualified Bids.

If no Qualified Bids other than a Bid submitted by a Stalking Horse Bidder, if any, are received for the Assets included in such Stalking Horse Bid by the applicable Bid Deadline, then the Debtors may cancel the Auction with respect to such Assets. If any Stalking Horse Bid is the only Qualified Bid received by the applicable Bid Deadline, the Debtors may decide, in their

reasonable business judgment, in consultation with the Consultation Parties, to designate such Stalking Horse Bid as the Successful Bid (as defined below) as to the applicable Assets and pursue entry of an order approving a Sale Transaction with respect to such Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement.  The Debtors shall promptly file notice of any cancellation of the Auction and/or designation of the Stalking Horse Bid, where applicable, as the Successful Bid with the Court.

## XII.   Auction.

The Auctions will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.      the Auctions will be conducted openly;

b.      except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at any Auction;

c.      the Qualified Bidders, including any Stalking Horse Bidders, if any, must appear in person or through duly-authorized representatives at the Auctions;

d.      bidding shall begin with the Starting Bid;

e.      subsequent bids (each, an "Overbid") may only be made at the Auctions and shall be at least (i) a 2% increase in cash, cash equivalents, or other such consideration that the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, deem equivalent (including the right of a Secured Creditor to Credit Bid any remaining amount of its secured claims) over the previous bid, *plus* (ii) solely with respect to the first Overbid made by a party in the event that the Debtors have entered into a Stalking Horse Agreement with respect to the Assets to which the Overbid relates, the aggregate amount of Bid Protections under such Stalking Horse Agreement (a "Minimum Overbid"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid.  The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, announce increases or reductions to the Minimum Overbid at any time during any Auction.  For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at any Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their reasonable business judgment deem equivalent (including the right of a Secured Creditor to Credit Bid any remaining amount of its secured claims) that exceeds the then-existing highest Bid by at least the amount of the Minimum Overbid;

f.      at the commencement of any Auction, in consultation with the Consultation Parties, the Debtors may announce procedural and related rules governing such Auction, including time periods available to all Qualified Bidders to submit successive bid(s);

g.      each Qualified Bidder will be permitted a reasonable time to respond to previous bids at any Auction, as determined by the Debtors;

h.      during the course of any Auction, the Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view, the highest or otherwise best bid(s) for the applicable Assets;

i.      the Auctions will be transcribed to ensure an accurate recording of the bidding at such Auction;

j.      each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction.  For the avoidance of doubt, this requirements does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent;

k.      each Qualified Bidder will be required to confirm that its bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction);

l.      subject to each of the Debtors' fiduciary obligations, including those explicitly set forth herein, the Court and the Debtors will not consider bids made after the applicable Auction has been closed;

m.      the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction, (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders, or (iv) otherwise violative of any of the Debtors' fiduciary obligations;

n.      the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

o.      the Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to adjourn any Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that

the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

p.       notwithstanding anything herein to the contrary, the Debtors may, in consultation with the Consultation Parties, at any time choose to adjourn any Auction by announcement at such Auction.  The Debtors shall promptly file notice of such adjournment with the Court.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law.

Any Auction rules adopted by the Debtors will not modify any of the terms of the Stalking Horse Bid purchase agreement or the rights of the Stalking Horse Bidder, if any, without the consent of the Stalking Horse Bidder, if any.

Except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only (i) the Debtors, (ii) the Consultation Parties, (iii) the Office of the United States Trustee, (iv) any Qualified Bidders, (v) any party in interest (including any affected landlord), and (vi) in each case, the respective representatives and professionals of the foregoing parties shall be entitled to attend any Auction.  Only Qualified Bidders shall be entitled to make Overbids at the Auction.

A.       **Elixir Auction.**

Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Elixir Asset or portion of Elixir Assets by the applicable Bid Deadline, the Debtors shall conduct an Elixir Auction to determine the Successful Bidder in their reasonable business judgment with respect to such Elixir Assets or portion of Elixir Assets in accordance with the Auction Procedures (as defined below).  If the Debtors do not receive a Qualified Bid for any particular Elixir Asset by the applicable Bid Deadline, the Debtors will not conduct an Elixir Auction with respect to such Elixir Asset.

The Auction for Elixir Assets shall commence on November 20, 2023 at 10:00 a.m. (prevailing Eastern Time), or such other time or other place as the Debtors determine.

B.       **Rite Aid Retail Auction.**

Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Rite Aid Retail Asset or portion of Rite Aid Retail Assets by the applicable Bid Deadline, the Debtors shall conduct a Rite Aid Retail Auction to determine the Successful Bidder in their reasonable business judgment with respect to such Rite Aid Retail Assets or portion of Rite Aid Retail Assets.  If the Debtors do not receive a Qualified Bid for any particular Rite Aid Retail Asset by the applicable Bid Deadline, the Debtors will not conduct a Rite Aid Retail Auction with respect to such Rite Aid Retail Asset.  If one or more Qualified Bids (other than the Rite Aid Retail Stalking Horse Bid, if any) are received by the applicable Bid Deadline with respect to the applicable Assets, then the Debtors shall conduct the Rite Aid Retail Auction with respect to such Rite Aid Retail Assets in accordance with the Auction Procedures (as defined below).

The Auction for Rite Aid Retail Assets shall commence on December 4, 2023 at 10:00 a.m. (prevailing Eastern Time), or such other time or other place as the Debtors determine.

## XIII. Acceptance of the Successful Bid.

Each Auction shall continue until (i) there is only one Qualified Bid or a combination of Qualified Bids that the Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, and in consultation with the Consultation Parties, is the highest or otherwise best bid to purchase the applicable Assets (each, a "Successful Bid"), and (ii) the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, such Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration, which includes but is not limited to, assumed liabilities (administrative liabilities, cure payments), and the amount of executory contracts and leased locations being assumed; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents, including the effect of the sale of Elixir Assets on Rite Aid Retail Assets, and *vice versa*; (d) the tax consequences of such Qualified Bid; (e) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code; (f) the certainty of a Qualified Bid leading to a confirmed Plan; and (g) any other consideration that may impact the Debtors' stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the Assets contemplated for the purchase pursuant to such Successful Bid. The Debtors shall file notice of the Successful Bid and the Successful Bidder with the Court as soon as reasonably practicable after conclusion of the applicable Auction. Following conclusion of the Auction and selection of a Successful Bidder, the Debtors shall present the results of the Auction at a hearing (each, a "Sale Hearing") and shall seek Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "Definitive Purchase Agreement Order"). For the avoidance of doubt, the Definitive Purchase Agreement Order shall deem the Debtors' selection of the Successful Bid final and, subject to the designation of the Back-Up Bid, the Debtors shall not solicit and /or accept any further bids or offers to submit a bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor, or any special committee of any board of any Debtor, to take or refrain from taking any action that the Debtors determined in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within one (1) business day of the selection of the Successful Bidder, such Successful Bidder (including both the Stalking Horse Bidder, if any, and Back-Up Bidder, if applicable) shall

make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement; *provided* that the DIP Agents and the Ad Hoc Secured Noteholder Group (or their designees) shall not be required to make any deposit.  Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIV.    Designation of Back-Up Bidder.

The Back-Up Bid to purchase any applicable Assets (the "<u>Back-Up Bidder</u>") will be determined by the Debtors at the conclusion of the Auction, in consultation with the Consultation Parties, and will be announced at that time to all the Qualified Bidders participating in the Auction. The Debtors will also announce information related to such Back-Up Bid, including any agreement with the Back-Up Bidder; *provided* that the Debtors shall not provide any confidential information in connection with such announcement.  The Debtors' selection of a Back-Up Bid shall be deemed final and the Debtors shall not accept any further bids or offers to submit a bid after such selection. The Debtors will be authorized, but not required, to consummate the Transaction with the Back-Up Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not.

If for any reason a Successful Bidder fails to consummate the purchase of such assets within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid for such assets, and the Back-Up Bidder shall be deemed a Successful Bidder for such assets and shall be required to consummate any Sale Transaction with the Debtors as soon as is reasonably practicable without further order of the Court, upon 2 Business Days' advance notice filed with the Court.  To the extent any objections are raised and remain unresolved, the Court may schedule a hearing on an expedited basis to adjudicate such objection.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (a) 90 days following the hearing to consider the applicable Sale Order, (b) consummation of a Sale Transaction with one or more Successful Bidders at an Auction, and (c) the release of such Back-Up Bid by the Debtors in writing (the "<u>Back-Up Termination Date</u>"); *provided* the Back-Up Termination Date with respect to the Elixir Sale Transaction shall be subject to the Elixir Stalking Horse APA.  The Debtors shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Termination Date.

## XV.    Approval of the Sale Transaction.

At the applicable Sale Hearing certain findings will be sought from the Court regarding the Auction, including, among other things, that:  (1) the applicable Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (4) consummation of any Sale Transaction as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the applicable Assets and is in the best interests of the Debtors and their estates.  **The applicable Sale Hearing**

**may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice to creditors or other parties in interest prior to, or making an announcement at, such Sale Hearing.  No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder, if any).**

In the event a transaction is consummated through a Plan, a hearing before the Court to consider confirmation of the Plan (the "Confirmation Hearing") will be held at a date and time consistent with the any order approving the Debtors' disclosure statement and scheduling applicable dates and deadlines related thereto, including confirmation of the Plan.

### A.    Elixir Sale Transaction

With respect to the Elixir Assets, a hearing to consider approval of any Elixir Sale Transaction, is currently scheduled to take place on December 7, 2023, at 11:00 a.m., prevailing Eastern Time, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608. The proposed order approving the sale of Elixir Assets shall be filed no later than five days before the Sale Hearing.

Objections to the Sale Transaction(s), and entry of any order approving the applicable sale (the "Elixir Sale Order") must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to by **actually received** by the Debtors, the Elixir Bid Notice Parties, and the foregoing parties' respective counsel by December 1, 2023, at 4:00 p.m. (prevailing Eastern Time) (the "Elixir Sale Objection Deadline").

### B.    Rite Aid Retail Sale Transaction

With respect to the Rite Aid Retail Assets, a hearing to consider approval of any Rite Aid Retail Sale Transaction, is currently scheduled to take place on December 19, 2023, at 11:00 a.m., prevailing Eastern Time, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608.

Objections to the Sale Transaction(s), and entry of any order approving the applicable sale order (the "Rite Aid Retail Sale Order," and collectively with any Elixir Sale Order, the "Sale Orders") must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to by **actually received** by the Debtors, the Rite Aid Retail Bid Notice Parties, and the foregoing parties' respective counsel by December 15, 2023, at 4:00 p.m. (prevailing Eastern Time) with respect to Sales of Rite Aid Retail Assets (the "Rite Aid Retail Sale Objection Deadline," and together with the Elixir Sale Objection Deadline, the "Sale Objection Deadlines").

## XVI.   Return of Good Faith Deposit.

The Good Faith Deposit(s) of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors'

estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit(s) of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, pursuant to the applicable asset purchase agreement.

The Good Faith Deposits of any unsuccessful Qualified Bidders (except for any Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five business days after consummation of the applicable Sale Transaction or upon the permanent withdrawal of the applicable proposed Sale Transaction.

The Good Faith Deposit(s) of any Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days of the Back-Up Termination Date.

The return of any Good Faith Deposits of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' Plan or purchase agreement, as applicable.  All such deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court.

## XVII.  Reservation of Rights.

The Debtors, in consultation with the Consultation Parties, reserve their rights to modify these Bidding Procedures in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties in any manner that will best promote the goals of the bidding process, or impose, at or before any Auction, additional customary terms and conditions on the sale of the applicable Assets, including, without limitation:  (1) extending the deadlines set forth in the Bidding Procedures; (2) adjourning any Auction without further notice; (3) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting any Auction; (4) canceling any Auction; (5) rejecting any or all Bids or Qualified Bids; and (6) adjusting the applicable Minimum Overbid increment.

All parties expressly reserve all of their rights (and do not waive any such rights) to seek Court relief with regard to the Auction, the Bidding Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the applicable Bid Deadline).

Each reference in these Bidding Procedures and the Bidding Procedures Order to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith.  All Consultation Parties will be permitted to seek relief from the Bankruptcy Court, on an expedited basis, if they disagree with any actions or decisions made by the Debtors as part of these Bidding Procedures.  The rights of all Consultation Parties with respect to the outcome of any Auction are reserved, subject to the terms of the Financing Orders and RSA (as defined in the Plan), as applicable.

## XVIII. Consent to Jurisdiction.

All Qualified Bidders at any Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to any Auction, Sale, Sale Transaction and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, any Auction, Sale Hearing, or the construction and enforcement of any agreement or any other document relating to any Sale or Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## XIX. Fiduciary Out.

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, or any special committee of any board of any Debtor, to take any action or to refrain from taking any action related to any sale transaction or with respect to these Bidding Procedures, to the extent such Debtor, board of director, board of managers, or such similar governing body reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or the Bidding Procedures Order, through the date of the Auction (if held), nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to:  (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving the Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity with respect to Alternative Proposals; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

## Schedule 1(a)

**Elixir Auction Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that on [__], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [__]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of substantially all or a portion of the Elixir Assets consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order. **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Elixir Assets **on November 20, 2023, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Kirkland & Ellis, 601 Lexington Avenue, New York, New York 10022, as arranged by counsel to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties,

---

[1]    The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

the U.S. Trustee, any Qualified Bidders, any party in interest (including any affected landlord), and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

   **PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction at a hearing scheduled to commence on or before **December 7, 2023, at 11:00 a.m. (prevailing Eastern Time)** (the "Sale Hearing") before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608.

   **PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of the Sale and each Sale Transaction must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** **on or before December 1, 2023, at 4:00 p.m. (prevailing Eastern Time)** by the following parties: (i) the Debtors, Rite Aid Corporation, 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112; (ii) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com), Ross J. Fiedler (ross.fiedler@kirkland.com), and Zachary R. Manning (zach.manning@kirkland.com), 300 North LaSalle, Chicago, Illinois, 60654, Attn: Steve Toth (steve.toth@kirkland.com); (iii) co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com); (iv) Office of the United States Trustee for Region 3, District of New Jersey, Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie; (vi) counsel to the DIP Agents, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com); Jonathan D. Marshall (jmarshall@choate.com); and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, New Jersey 07932, Attn: Alan J. Brody (brodya@gtlaw.com) and Oscar N. Pinkas (pinkaso@gtlaw.com); (vii) counsel to the Ad Hoc Secured Noteholder Group, Paul, Weiss, Rifkind, Wharton & Garrison, 1285 6th Avenue, New York, NY 10019, Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960, Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com); (viii) proposed counsel to any statutory committee appointed in these chapter 11 cases; and (ix) counsel to any Stalking Horse Bidder.

<u>**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**</u>

   **ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR A SALE TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING**

**PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Dated:  [_____], 2023

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      esassower@kirkland.com
            joshua.sussberg@kirkland.com
            aparna.yenamandra@kirkland.com
            ross.fiedler@kirkland.com
            zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

## Schedule 1(b)

**Rite Aid Retail Auction Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that on [___], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [___]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of substantially all or a portion of the Rite Aid Retail Assets consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order. **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Rite Aid Retail Assets **on December 4, 2023, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Kirkland & Ellis, 601 Lexington Avenue, New York, New York 10022, as arranged by counsel to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties,

---

[1]    The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

the U.S. Trustee, any Qualified Bidders, any party in interest (including any affected landlord), and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

        **PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction at a hearing scheduled to commence on or before <u>**December 19, 2023, at 11:00 a.m. (prevailing Eastern Time)**</u> (the "<u>Sale Hearing</u>") before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608.

        **PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of the Sale and each Sale Transaction must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** **on or before December 15, 2023, at 4:00 p.m. (prevailing Eastern Time)** by the following parties: (i) the Debtors, Rite Aid Corporation, 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112; (ii) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com), Ross J. Fiedler (ross.fiedler@kirkland.com), and Zachary R. Manning (zach.manning@kirkland.com), 300 North LaSalle, Chicago, Illinois, 60654, Attn: Steve Toth (steve.toth@kirkland.com); (iii) co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com); (iv) Office of the United States Trustee for Region 3, District of New Jersey, Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie; (vi) counsel to the DIP Agents, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com); Jonathan D. Marshall (jmarshall@choate.com); and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, New Jersey 07932, Attn: Alan J. Brody (brodya@gtlaw.com) and Oscar N. Pinkas (pinkaso@gtlaw.com); (vii) counsel to the Ad Hoc Secured Noteholder Group, Paul, Weiss, Rifkind, Wharton & Garrison, 1285 6th Avenue, New York, NY 10019, Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960, Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com); (viii) proposed counsel to any statutory committee appointed in these chapter 11 cases; and (ix) counsel to any Stalking Horse Bidder.

<u>**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**</u>

        **ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR A SALE TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING**

**PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Dated: [_____], 2023

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      esassower@kirkland.com
            joshua.sussberg@kirkland.com
            aparna.yenamandra@kirkland.com
            ross.fiedler@kirkland.com
            zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

4

## **Schedule 2**

**Elixir Stalking Horse APA**

Filed at Docket No. 33

## **Exhibit 2**

**Notice of Successful Bidder and Contract Assumption**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF SUCCESSFUL BIDDER AND POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
> OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN
> EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on [__], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures*

---

[1]   The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

*for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief,* [Docket No. [___]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

PLEASE TAKE FURTHER NOTICE that on [___], 2023, the Debtors conducted an Auction of certain of their Assets, pursuant to the Bidding Procedures Order.

PLEASE TAKE FURTHER NOTICE that in accordance with the Bidding Procedures Order and following the completion of the Auction, the Debtors, in consultation with the Consultation Parties, have determined [___] to be the Successful Bidder.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bidding Procedures Order, the applicable Sale Hearing to consider approval of the Sale Transaction to the Successful Bidder is currently scheduled to take place, with respect to Elixir Assets, on December 7, 2023, at 11:00 a.m., prevailing Eastern Time, and with respect to Rite Aid Retail Assets, on December 19, 2023, at 11:00 a.m., prevailing Eastern Time, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder the contract or agreement listed on **Exhibit A** to which you are a counterparty, upon approval of the Sale Transaction. The Debtors have conducted a review of their books and records and have determined that the Cure Payments for unpaid monetary obligations under such Executory Contract or Unexpired Lease is as set forth on **Exhibit A**.

PLEASE TAKE FURTHER NOTICE that if you disagree with the proposed Cure Payments, object to a proposed assignment to the Successful Bidder of any Executory Contract or Unexpired Lease, or dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract, or otherwise object to the applicable Sale Transaction, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments, state the correct Cure Payments alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served and **actually received no later than December 1, 2023 at 5:00 p.m. (prevailing Eastern Time) (the "Elixir Cure Objection Deadline") or December 15, 2023 at 5:00 p.m. (prevailing Eastern Time) (the "Rite Aid Retail Cure Objection Deadline**," and together with the Elixir Cure Objection Deadline, the "**Cure Objection Deadline**"), as applicable, by the Court and the following parties:  (i) the Debtors, Rite Aid Corporation, 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112; (ii) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Aparna Yenamandra (aparna.yenamandra@kirkland.com), Ross J. Fiedler (ross.fiedler@kirkland.com), and Zachary R. Manning (zach.manning@kirkland.com), 300 North LaSalle, Chicago, Illinois, 60654, Attn:  Steve Toth (steve.toth@kirkland.com); (iii) co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn:  Michael D. Sirota (msirota@coleschotz.com), Warren A.

---

[2]   Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

Usatine (wusatine@coleschotz.com), Felice R. Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com); (iv) Office of the United States Trustee for Region 3, District of New Jersey, Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie; (vi) counsel to the DIP Agents, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn:  John F. Ventola (jventola@choate.com); Jonathan D. Marshall (jmarshall@choate.com); and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, New Jersey 07932, Attn:  Alan J. Brody (brodya@gtlaw.com) and Oscar N. Pinkas (pinkaso@gtlaw.com); (vii) counsel to the Ad Hoc Secured Noteholder Group, Paul, Weiss, Rifkind, Wharton & Garrison, 1285 6th Avenue, New York, NY 10019, Attn:  Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960, Attn:  Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com); (viii) proposed counsel to any statutory committee appointed in these chapter 11 cases; and (viii) counsel to any Stalking Horse Bidder.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Payments, (b) the proposed assignment and assumption of any Executory Contract or Unexpired Lease, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the applicable Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Payments as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Payments are due under the Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease or related Cure Payments in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Executory Contract or Unexpired Lease on this Notice of Successful Bidder and Contract Assumption or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved.  Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease

Dated: [_____], 2023

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
    wusatine@coleschotz.com
    fyudkin@coleschotz.com
    svanaalten@coleschotz.com


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
Ross J. Fiedler (*pro hac vice* pending)
Zachary R. Manning (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email: esassower@kirkland.com
    joshua.sussberg@kirkland.com
    aparna.yenamandra@kirkland.com
    ross.fiedler@kirkland.com
    zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*