**WOMBLE BOND DICKINSON (US) LLP**
Wojciech F. Jung
David M. Banker
950 Third Avenue, Suite 2400
New York, New York 10022
Telephone: (332) 258-8400
Email: wojciech.jung@wbd-us.com
Email: david.banker@wbd-us.com

**HOLLAND & HART LLP**
Matthew J. Ochs (admitted *pro hac vice*)
555 17th Street, Suite 3200
Denver, Colorado 80202
Telephone: (303) 295-8000
Email: mjochs@hollandandhart.com

*Counsel for Western Union Financial Services, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RITE AID CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-18993 (MBK)<br><br>(Jointly Administered)<br><br>**Related Docket No. 37, 236, 404, 437** |

**LIMITED OBJECTION OF WESTERN UNION FINANCIAL SERVICES, INC.
TO THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING SALES,
WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS,
AND ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF**

Western Union Financial Services, Inc. ("Western Union") submits this limited objection

(this "Objection") to entry of a final order (the "Final Order") granting the *Debtors' Motion for*

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

*Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief* [Docket No. 37] (the "Store Closing Motion")[2] and the *Notices of Additional Closing Stores* filed in connection with the Store Closing Motion [Docket Nos. 236, 404, and 437]. In support of this Objection, Western Union respectfully states as follows:

## BACKGROUND

### a. The Bankruptcy Case

1. On October 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. No trustee, examiner, or official committee has been appointed in these cases except for (a) the Official Committee of Unsecured Creditors appointed on November 1, 2023 [Docket No. 431], and (b) the Official Committee of Tort Claimants appointed November 2, 2023 [Docket No. 432].

### b. The Store Closing Motion

3. On the Petition Date, the Debtors filed the Store Closing Motion seeking authorization for and approval of the Debtors' store closing process (the "Initial Store Closings"), including closing approximately 150 initial stores (the "Initial Closing Stores") that either began prior to, or shortly after, the Petition Date, and to conduct future store closings (the "Additional Store Closings," and together with the Initial Store Closings, the "Store Closings") at additional store locations (the "Additional Closing Stores," and together with the Initial Closing Stores, the

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the "Interim Order" attached to the Store Closing Motion as Exhibit "A" or in the Agency Agreement (defined below).

2

"Closing Stores"), all pursuant to the procedures and sale guidelines set forth in the Store Closing Motion and its exhibits (the "Sale Guidelines"). Store Closing Motion ¶ 1.

4. The Store Closing Motion proposes to sell the assets of the Closing Stores free and clear of liens, claims, and encumbrances (with the proceeds thereof distributed in accordance with the DIP Orders)[3] and to allow the Debtors to abandon certain unidentified personal property as part of the Store Closings. Store Closing Motion ¶¶ 13, 23.

c. *The Agency Agreement between Western Union and the Debtors*

5. In 2022, prior to the Petition Date, Western Union and certain of the Debtors, including Rite Aid Hdqtrs. Corp., for and on behalf of itself and its then current and future wholly owned affiliates of Rite Aid Hdqtrs. Corp., entered into the Western Union North America Agency Agreement (together with all amendments, exhibits, schedules, attachments, statements of work, and other documents related thereto, the "Agency Agreement").[4]

6. As set forth in the Agency Agreement, Western Union appointed the applicable Debtors, separately and collectively, as "Agent." As Agent, the Debtors are authorized to offer certain services to consumers, including Money Transfer Services and Money Orders (collectively, the "Services"), in accordance with the terms of the Agency agreement, and act as trustee and fiduciary of Western Union for the limited purpose of offering the Services. The Debtors offer the Services at their retail locations, in exchange for compensation, including regular payments and incentives provided for in the Agency Agreement.

---

[3] Contemporaneously with filing this limited Objection, Western Union filed the *Limited Objection of Western Union Financial Services, Inc. to the Debtors' Motion For Entry Of Interim And Final Orders (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief.*

[4] The Agency Agreement contains confidential, proprietary and commercially sensitive terms and processes. If it becomes necessary to file the Agency Agreement with the Court, Western Union reserves right to seek to do so under seal pursuant to Bankruptcy Rule 9018, D.N.J. LBR 9018-1, and sections 105 and 107(b) of the Bankruptcy Code.

7. Under the Agency Agreement, Western Union, among other things, provided the applicable Debtors certain Western Union equipment and property enabling the Debtors to provide the Services to consumers, including MT Equipment (for Money Transfer Services) and MO Equipment (for Money Orders), money order forms and other related property (collectively, the "Equipment"). Title in and ownership of the Equipment and related property remains with Western Union, with Agent holding it in bailment. Agency Agreement Part A ¶ 6A, Part B ¶ 6B. The Debtors are obligated and safeguard and insure applicable Equipment. Agency Agreement ¶ 11; Part A ¶ 6A; Part B ¶ 6 B.

### d. *The Agency Agreement and Store Closings*

8. In the event of store closings, the Agency Agreement sets forth the Debtors' responsibilities with respect to Money Transfer Services as follows:

> [U]pon the closure of a location, with respect to that location, Agent [the designated Debtor] shall: (a) stop presenting itself to the public as providing the Services; (b) make no use of [Western Union's] intellectual property, Consumer Information or confidential information and return the same to [Western Union]. . . (d) at [Western Union's] sole cost and expense, return to Western Union all of the following: state licensing materials (if any), Consumer Information, information and materials of any type relating to [Western Union's] security measures and procedures, the MT Equipment, which shall be delivered in good repair and condition, reasonable wear and tear excepted (all equipment shall be shipped or mailed to [Western Union] freight or postage prepaid and fully insured for the full replacement value thereof), and any other items that [Western Union] has provided to Agent; (e) at [Western Union's] sole cost and expense, remove and (at Western Union's election) deliver to [Western Union] or dispose of all signs, displays and other materials containing [Western Union's] name or logo (or will permit [Western Union] to do so at [Western Union's] sole cost and expense). . .

Agency Agreement Part A ¶ 8A.

9. Also in the event of store closings, the Agency Agreement sets forth the Debtors' responsibility, as to Money Orders as follows:

4

> [I]n the event an Agent location ceases to offer the Money Order Services, with respect to each such location, Agent shall (a) stop presenting itself to the public as selling Money Orders, (b) make no use of [Western Union]'s intellectual property, Consumer Information, or confidential information . . . (d) at [Western Union]'s sole cost and expense, return to [Western Union] requested materials which may include the following: all unused money orders, all state licensing materials (if any) in a self-addressed postage pre-paid package supplied by [Western Union]; all Consumer Information and all information and materials of any type relating to [Western Union]'s security measures and procedures; all MO Equipment and MO Software, all of which shall be delivered to [Western Union] in good repair and condition, reasonable wear and tear excepted; and all other items that [Western Union] has provided to Agent, (e) at [Western Union]'s sole cost and expense, remove and (at [Western Union]'s election) deliver to [Western Union] or dispose of all signs, displays and other materials containing the [Western Union] or [Western Union] name or logo (or will permit [Western Union] to do so at [Western Union]'s sole cost and expense) . . .

Agency Agreement Part B ¶ 7B.

## **OBJECTION**

10. Western Union owns the Equipment—it is not the Debtors' property, and the Debtors have no justifiable basis to sell the Equipment or abandon it as part of any Store Closings. The Equipment is highly sensitive, proprietary, and may include consumer or other confidential transactional and process related information. It is critical that the Debtors honor their obligations under the Agency Agreement to safeguard the Equipment located in Closing Stores, and return or destroy it in accordance with the Agency Agreement. This includes the Debtors honoring their obligation to insure Equipment under the Agency Agreement, as applicable.

11. The Debtors also have no right to sell or abandon property they hold in bailment, such as the Equipment. "The elements of a bailment are: (1) delivery of personal property by one person to another to be used for a specific purpose, (2) acceptance of that delivery, and (3) an express or implied contract that the purpose will be carried out and that the property will be returned or dealt with as otherwise directed." *In re Magna Entm't Corp.*, 438 B.R. 380, 396 (Bankr. D. Del. 2010). "A bailment occurs when property is entrusted to a party temporarily for

5

some purpose; upon the fulfillment of that purpose the property is redelivered to the person who delivered it . . ." *Glenshaw Glass Co. v. Ontario Grape Growers' Mktg. Bd.*, 67 F.3d 470, 475 (3d Cir. 1995) (internal quotation marks and citations omitted). *See also* See 8A Am. Jur. 2d Bailments, § 202; Restatement 2d of Torts, § 183 (2d 1979) (upon termination, bailor is entitled to immediate possession of the bailed goods).

12.    Here, the Agency Agreement states that "[Western Union] shall furnish to Agent in bailment, the equipment necessary for Agent to provide [the Services] . . ." Agency Agreement, Part A ¶ 6A, Part B ¶ 6B.  In addition, "[t]itle to all [Equipment], computer programs, computer software, microcode, firmware, source code, including all updates, replacements and copies thereof, provided by [Western Union] to Agent . . . shall remain in [Western Union] and no title thereto is transferred to agent." Agency Agreement, Part A ¶ 6A.2, Part B ¶ 6B.3.  The Equipment was delivered for use for a specific purpose, and to the extent the Debtors have any interest in the Equipment, it is merely possessory and there is no legal or equitable interest such that the Equipment is property of the estate pursuant to section 541 of the Bankruptcy Code. Consequently, the Debtors cannot sell or abandon property held in Bailment, such as the Equipment.

13.    The Debtors cite to section 554 as authority to abandon certain unidentified personal property at their rejected/closed stores.  But section 554 applies only to "property of the estate". The Equipment and related property are not owned by the Debtors, so section 554 is inapplicable here. The Agency Agreement clearly states that "[t]itle to all [Equipment]" and other personal property provided by Western Union to the Debtors, as Agent, remains with Western Union property at all times. See Agency Agreement, Part A ¶ 6A, Part B¶ 6B. The Agency Agreement also imposes certain confidentiality and non-disclosure obligations upon the Debtors.

Agency Agreement, ¶¶ 5.1, 5.2. As such, the Bankruptcy Code does not vest the Debtors with the authority to abandon non-estate property; instead, the Debtors have been entrusted, as fiduciary and agent of Western Union, and bailee of the Equipment and other Western Union property, to safeguard and insure the property and coordinate with Western Union for its secure return or destruction. Simply put, the Debtors cannot use abandonment under section 554 of the Bankruptcy Code as a tool to discharge their obligations under the Agency Agreement (such as return obligations under ¶¶ 8A and 8B, for example) including, to the extent applicable, section 365 of the Bankruptcy Code. *See, e.g., In the Matter of Thornhill Bros. Fitness, L.L.C.*, 2023 WL 7095650, --- F.4th ---- (5th Cir. Oct. 27, 2023) (rejecting agreement to transfer contract rights outside of the confines of section 365).

14. Western Union requests that any Final Order and approved Sale Guidelines (a) specify that the Equipment shall not be sold or abandoned as part of the Store Closings, (b) include procedures for insuring, safeguarding and the responsible return or destruction (as applicable) of the Equipment, including providing Western Union with adequate advance notice of a planned store closing to allow time for proper removal or destruction of the equipment (as applicable) (the "Return Procedures"), and (c) recognize Western Union's right to an administrative expense claim to the extent the Debtors sell or abandon the Equipment, or Western Union is otherwise damaged by the Debtors' breach of its obligations to return or destroy Equipment in accordance with the Return Procedures and the Agency Agreement.[5]

15. Specifically, Western Union requests the inclusion of the following language in the Final Order:

---

[5] Western Union and the Debtors are in discussion regarding the return of the Equipment upon store closure and Western Union is hopeful that consensual resolution can be reached prior to the hearing on the Debtors' motions.

> Nothing in this Final Order or the Sale Guidelines shall affect or otherwise limit or relieve the Debtors from their obligations with respect to: (a) that certain Western Union North America Agency Agreement (the "<u>Agency Agreement</u>") between certain of the Debtor parties and Western Union Financial Services, Inc. ("<u>Western Union</u>"), (b) Western Union's property described under the Agency Agreement, including, but to not limited to, the Equipment (as defined in the Agency Agreement); and the Debtors shall fully comply with the procedures set forth for in the Agency Agreement for the safeguarding, insuring, return, and destruction (as applicable) of Western Union's property described in the Agency Agreement, including the Equipment, except as otherwise may be mutually agreed to in writing between the Debtors and Wester Union. Western Union's right to an administrative expense claim to the extent the Debtors sell or abandon Western Union's property being held or controlled by the Debtors pursuant to the Agency Agreement, including the Equipment, or Western Union is otherwise damaged by the Debtors' breach of its obligations to return or destroy Equipment in accordance with the Return Procedures and the Agency Agreement. Furthermore, nothing in the Final Order shall restrict or otherwise impair the parties' rights and obligations under the Agency Agreement and the Bankruptcy Code.

## **<u>RESERVATION OF RIGHTS</u>**

Western Union reserves the right to raise additional further objections and arguments to the Store Closing Motion and the Notices of Additional Closing Stores and to seek other and additional remedies and relief at or prior to any hearing on the Store Closing Motion or hearing on the Notices of Additional Closing Stores.  Western Union further reserves and preserves all of it its rights, claims, defenses, and remedies with respect to the Agency Agreement, including, without limitation, in connection with (a) any sought assumption or rejection of the Agency Agreement pursuant to section 365 of the Bankruptcy Code, (b) any further sale or transfer of any Western Union property described in the Agency Agreement, including but not limited to the Equipment, (c) the assertion of administrative, unsecured, or rejection damage claims, including but not limited to any loss/destruction/abandonment or other diminution in value of the Equipment or unauthorized use of the Trust Funds, (d) adequate assurance requests, and (e) exercise of any Remedial Actions (as defined in the Agency Agreement) and other remedies available under

applicable law before in any case or proceeding, and before this Court or any other court of competent jurisdiction.

## CONCLUSION

WHEREFORE, Western Union respectfully requests that the Court (i) condition entry of the Final Order on remedying the issues identified in this Objection, and inclusion of the proposed language above; and (ii) grant such further relief as the Court deems just and proper.

Dated: November 9, 2023

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *David M. Banker*

Wojciech F. Jung
David M. Banker
950 Third Avenue, Suite 2400
New York, New York 10022
Telephone: (332) 258-8400
Email: wojciech.jung@wbd-us.com
Email: david.banker@wbd-us.com

-and-

**HOLLAND & HART LLP**
Matthew J. Ochs (admitted *pro hac vice*)
555 17th Street, Suite 3200
Denver, Colorado 80202
Telephone: (303) 295-8000
Email: mjochs@hollandandhart.com

*Counsel* for *Western Union Financial Services, Inc.*