|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**STARK & STARK, P.C.**<br>Joseph H. Lemkin, Esq. (JL-2490)<br>993 Lenox Drive, Bldg. 2<br>Lawrenceville, NJ 08648<br>(609) 791-7022 (Telephone)<br>(609) 895-7395 (Facsimile)<br>jlemkin@stark-stark.com |  |
| In Re:<br><br>Rite Aid Corporation, et al.,<br><br>                 Debtors. | Case No. 23-18993 (MBK)<br><br>Chapter 11<br><br>Hearing Date: November 16, 2023<br><br>Objection Date: November 9, 2023<br><br>Docket #:    33 |

**LIMITED OBJECTION, JOINDER AND RESERVATION OF RIGHTS OF THE CERTAIN LANDLORDS WITH RESPECT TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING THE ELIXIR STALKING HORSE APA, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VII) AUTHORIZING THE SALE OF ASSETS, AND (VIII) GRANTING RELATED RELIEF**

     Stark & Stark, P.C. ("Stark & Stark") submits this limited objection, joinder and reservation of rights to on behalf of its clients, Levin Management Corporation, MAG II Morrell Plaza, LP, Trust for the Benefit of Catherine M. Levin, et. al., Arlona Limited partnership, Somerset County Shopping Center, Robert Marin and Celeset de Schulthess Marin Family Trust, Santiago Holdings II, LLC, Yoko C. Gates Trust, Sunrest Properties, LLC, Felos Associates, LLC, Alp and Alex Aslan and Garfield Builders, LLC the *Motion of the Debtors for Entry of an Order (I) Approving Bidding Procedures and Bid Protections; (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereto, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (IV) Approving*

1

*the Elixir Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authoring the Assumption and Assignment of Assumed Contracts, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 33] (the "Motion"), and respectfully states as follows:

1. On or about October 15, 2023, Rite Aid Corporation and certain of its affiliates (collectively the "Debtors"), each filed a voluntary petition for bankruptcy relief under Chapter 11 of title 11 the United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

2. Debtors filed the instant motion on October 16, 2023.

### I. WINNING BIDDERS MUST PROVDIE EVIDENCE OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER THE LEASES

*(A) Adequate Assurance of Future Performance for Shopping Center Leases*

3. In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default under such contract or lease.

11 U.S.C. § 365(f)(2).

4. Section 365(b)(1) of the Bankruptcy Code further provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee–

4891-3224-2831, v. 2

    (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default…;

    (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and

    (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

    5.    In connection with a shopping center lease, adequate assurance of future performance includes adequate assurance:

    (A)    of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor…;

    (B)    that any percentage rent due under such lease will not decline substantially;

    (C)    that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity, … and

    (D)    that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

4.    The Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Leases. *In re F.W. Restaurant Assoc.,* Inc., 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

5.    To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, the Landlords and its attorneys must receive the following

information from the exact proposed assignee of the Lease:

- The exact name of the entity which is going to be designated as the proposed assignee;

- The proposed assignee's and any guarantor's tax returns and audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2017, 2018, and 2019;

- The number of clothing and/or other retail stores the proposed assignee operates and all trade names that the proposed assignee uses;

- A statement setting forth the proposed assignee's intended use of the premises;

- The proposed assignee's experience operating clothing and/or other retail stores in shopping centers;

- The proposed assignee's 2020 and 2021 business plans, including sales and cash flow projections; and

- Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Lease.

6. Unless and until the Landlords receive all of this information, the Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

### (B) The Leases Must Be Assumed and Assigned Cum Onere

7. Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption or assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . .". 11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all- or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

8. As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease

> occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach."). The Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* – with all benefits and burdens. *See, e.g., American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

9. The Debtors or a proposed assignee must be required to comply with all contractual obligations to indemnify and hold the Landlords harmless with regard to events which occurred before assumption and assignment, but which were not known to the Landlords as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by the Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) the Debtors or the proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail"

5

coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the Landlords are joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

9. Finally, the Landlords assert that if the Debtors seek to assume and assign the Leases, the proposed assignee should be required to execute short-form assumption and assignment agreements with the Landlords in connection with the proposed assignment of the Leases so that the Landlords will be in privity with their new tenants.

## II. THE CURE AMOUNTS

10. The procedures should be clear that assumption and/or assumption and assignment of leases necessitate cure of *all* amounts due under the Leases.

11. Pursuant to the Leases, the Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance costs, real estate taxes, and insurance. In addition, prior to assumption and assignment of the Leases, the Debtors are required by section 365(b)(1) of the Bankruptcy Code to cure all outstanding defaults under the Leases and compensate the Landlords for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. §365(b)(1)(B). Attorneys' fees due under the Leases are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). Accordingly, as part of its pecuniary losses, the Landlords are entitled to attorneys' fees in connection with the Debtors' obligation to cure all monetary defaults under the Leases.

12. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue,

and/or the Landlords suffer other pecuniary losses with respect to the Leases, the Landlords reserve the right to continue to amend the total cure Amounts to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments, which have not yet been billed or have not yet become due under the terms of the Leases (the "Adjustment Amounts"). The Debtors and/ or the proposed assignee must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of when such Adjustment Amounts were incurred.

### III. DEMAND FOR SECURITY

13. Section 365(l) of the Bankruptcy provides, in the pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

See 11 U.S.C. § 365(l).

14. In the ordinary course of its business, the Landlords require security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history. In connection with any assumption and assignment of the Leases, the Landlords hereby demand such security in one of those forms as required by section 365(l) of the Bankruptcy Code. Until the exact financials of the proposed assignee are known to the Landlords, the Landlords reserve their right to specify the exact form and amount of such security; however, the Landlords would typically require a parent or personal guaranty in connection with leasing to a new tenant. The assumption procedures should make such security requirements clear.

### IV. THE DEBTORS MUST BE RESPONSIBLE FOR TIMELY PAYMENT OF ALL POST-PETITION RENT AND ADDITIONAL RENT DUE UNDER THE LEASES UNTIL THEY ARE ASSUMED, ASSUMED AND ASSIGNED, OR REJECTED

15. Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

> The [debtor] shall timely perform all of the obligations of the debtor, except those…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3).

16. The Landlords request that the procedures sought through the motion be conditioned upon the Debtors' timely performance of all obligations arising under the Leases before the Leases are assumed, assumed, and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code, including, without limitation, the full payment of rent on the first day of each month.

17. "Where the trustee rejects a non-residential real property lease, he must immediately surrender the property to the lessor." *In re Lovesac Corp.*, Case No. 06-10080 (CSS)., 2007 BL 1868, at *3 (Bankr. D. Del. Aug. 1, 2007); also 11 U.S.C. Section 365(d)(4)(A); *In re Henderson*, 245 B.R. 449, 453 (Bankr. S.D.N.Y. 2000).

18. After the rejection of a sublease by a bankrupt debtor/sub-lessor, Section 365 (h)(1)(A)(ii) of the Bankruptcy Code permits a subtenant to remain in possession of the property it subleases from the bankruptcy debtor and further permits the subtenant to retain all of its rights under the sub-lease. *In re Amicus Wind Down Corp.*, 2012 WL 604143, 2012 Bankr. LEXIS 662 (Bankr. D.Del. Feb. 24, 2012).

19. Any lease that remains part of the sale process still be subject to payment of rent. The debtor cannot have its cake and eat it too of rejecting a lease but then also trying to have the lease as part of the sale process. Either the lease is rejected and it is outside of the process or it is within the process.

V. **LANDLORD'S RIGHTS UPON REJECTION – RELIEF FROM THE AUTOMATIC STAY**

20. In the event that Debtors reject Landlords' Leases, Debtors should be required to give

notice to each and every third party who may have a claim in any property at the premises to remove the property, or in default thereof, the third party's interest shall be deemed terminated and the property deemed abandoned.

21. Any grant of the right to abandon property should be coupled with the grant of an administrative claim to the landlord for the reasonable costs of removal of that property, subject only to a possible challenge to the reasonableness thereof. If Debtors refuse to remove their property because of the cost of such removal, that cost should not be passed solely to the landlord but should be borne by all of Debtors' creditors as a cost of administration of the estate.

22. The procedures should provide that upon rejection of any lease or license agreement, stay relief is granted, to the extent necessary, in order that Landlords can: (1) terminate the rejected leases; and (2) remove any abandoned property from the premises without notice or liability to any party and without further notice or order of the Court.

23. Finally, the procedures should apply to all executor agreements between Landlords and the Debtors, including license agreements.  As noted above, the Debtor have entered into a license agreement with Debtors regarding certain a "Halloween" shop.  The procedures should be the same for the Debtors to assume and/or reject such licenses, to the extent such licenses are executory.

## JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS AND RESERVATION OF RIGHTS

24. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Motion, as well as any other objections (formal or informal) advanced by other creditors, including the official committee of unsecured creditors. Further, Landlords reserve its rights to make further and or future objections, as additional information is disclosed, including amending and/or supplementing this Objection.

Dated: November 9, 2023

**STARK & STARK**
A Professional Corporation
By: /s/ Joseph H. Lemkin
Joseph H. Lemkin, Esq.

And

By: /s/ Thomas S. Onder
Thomas S. Onder, Esq.