| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>Rocco A. Cavaliere - 34722000<br>TARTER KRINSKY & DROGIN LLP<br>1350 Broadway, 11th Floor<br>New York, NY  10018<br>Telephone:    (212) 216-8000<br>Facsimile:     (212) 216-8001<br>rcavaliere@tarterkrinsky.com<br><br>*Attorneys for 32-14 31st Food LLC* | |
| In re:<br><br>RITE AID CORPORATION, et. al.[1]<br><br>                      Debtor. | Case No.: 23-18993 (MBK)<br><br>Chapter: 11<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF 32-14 31st FOOD LLC TO DEBTORS'
MOTION FOR ENTRY OF ORDER (I) AUTHORIZING (A) REJECTION
OF CERTAIN UNEXPIRED LEASES OF NON-RESIDENTIAL REAL
PROPERTY AND (B) ABANONDMENT OF ANY PERSONAL
PROPERTY, EACH EFFECTIVE AS OF THE REJECTION
DATE AND (II) GRANTING RELATED RELIEF**

32-14 31ST Food LLC ("Subtenant") hereby submits this limited objection (the "Limited Objection") to the motion filed by the above-captioned debtors and debtors in possession (the "Debtors") titled as *Debtors' Motion for Entry of an Order (I) authorizing (A) Rejection of Certain Unexpired Leases of Non-Residential Real Property and (B) Abandonment of Any Personal Property, Each Effective as of the Rejection Date and (II) Granting Related Relief* (the "Rejection Motion").  By this Limited Objection, the Landlord respectfully represents as follows:

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid.  The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

091105\1\170427796.v2

## INTRODUCTION

1.  Just several months ago, Subtenant entered into a sublease dated June 21, 2023 (the "Sublease") with Genovese Drug Stores Inc. (the "Sublandlord" or "Debtor"), one of the Debtors herein, for use and possession of the premises located at 32-14 31st Street, Astoria, New York (the "Subleased Premises").  In connection with the Sublease, and as contemplated by Sublandord, the Debtor herein, Subtenant has expended over $2 million in out-of-pocket costs in order to make the Subleased Premises suitable for its intended use as a supermarket as expressly negotiated with the Debtor. Aside from the foregoing, the Subtenant has expended approximately $500,000 on inventory that belongs to Subtenant, not the Debtor.  In addition, at the behest of the Debtor, Subtenant incurred an additional $200,000 for a broker fee associated with the Sublease, adding more insult to injury.

2.  Now just a few months later, the Debtor seeks to reject the Sublease, as well as reject the prime lease between the Debtor and 3214 Thirty First Street LLC (the "Prime Landlord"). Rejection under section 365 of the Bankruptcy Code is usually very straightforward and is governed by the debtor's business judgment.  However, Congress has dictated, in situations like this, when the debtor is in the role of landlord/sublandlord, non-debtor tenants like the Subtenant, whose businesses would be destroyed if forced to leave the subleased space, have rights under section 365(h) to retain possession of the premises and continue satisfying its obligation and paying rent as expressly set forth in their respective subleases.  By this Limited Objection, Subtenant objects to the rejection of the Sublease (or the Prime Lease) to the extent that rejection is intended to affect the legal rights of Subtenant to retain possession of the Leased Premises.

## BACKGROUND

3. By lease dated May 15, 1984, as amended by Lease Amendment No. 1 dated February 10, 2004, and by Second Amendment of Lease dated January 26, 2015 (the "Prime Lease") between 3214 Thirty First Street LLC, as successor in interest to Solil Management Corp. (the "Prime Landlord") and Sublandord, one of the Debtors herein, Prime Landlord leased to Sublandlord the Leased Premises.

4. On June 21, 2023, Subtenant entered into the Sublease with Sublandlord, one of the Debtors herein, to occupy and use the Leased Premises for the operation of a supermarket, which is finally opening for business this week. The Sublease is set to expire on January 31, 2030. As noted above, in reliance on the Sublease, Subtenant expended $2 million in costs associated with building out its space and purchasing equipment, refrigerators, freezers, cash registers, shelving and racks, and other items (the "Subtenant's Personal Property"), Subtenant also expended over $500,000 in inventory (the "Subtenant's Inventory").

5. On October 15, 2023, the Debtors filed for bankruptcy protection in this Court.

6. On October 16, 2023, the Debtors filed the Rejection Motion seeking to reject several leases, including the Prime Lease and the Sublease.

7. Subtenant has attempted to approach the Prime Landlord multiple times since the Petition Date to engage in discussions about the Subtenant's continued use of the Leased Premises. However, the Prime Landlord has not yet engaged Subtenant in any discussions about the possibility of a negotiated direct lease between the Prime Landlord and Subtenant. As such, Subtenant has been left with no choice but to file this Limited Objection to preserve its rights under the Sublease, and frankly to preserve its business, as more fully set forth herein.

# LIMITED OBJECTION TO REJECTION MOTION

8. The Subtenant has several objections to the Debtors' Rejection Motion, as follows:

### A. The Rejection Motion Should Be Denied Absent Recognition of Subtenant's Section 365(h) Rights to Retain Possession of the Subleased Premises In Exchange For Continued Payment of Its Obligations Under the Sublease

9. The Rejection Motion and proposed order accompanying the Rejection Motion are silent regarding the rights of subtenants to continue to occupy their leased premises after rejection of prime leases and subleases. Section 365(h) governs the Subtenant's rights if the Court were to allow rejection of the Sublease as set forth in the Rejection Motion. Section 365(h)(1)(A) provides as follows:

> (i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or
>
> (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1)(A)(i)-(ii). As such, in summary, section 365(h) of the Bankruptcy Code provides a non-debtor lessee (such as the Subtenant) under an unexpired lease two options when the debtor-landlord rejects a lease under section 365(a): (i) the non-debtor lessee can reserve the right to seek damages as an unsecured claim on account of the rejection damages or (ii) the non-debtor lessee can elect to retain its rights under the lease, as long as the non-debtor lessee

complies with its lease obligations. Therefore, Subtenant reserves its right to elect to remain in possession of the Leased Premises as provided in section 365(h)(1)(A)(ii).

10. As noted by other subtenants in this case [see Dollar Stores' Objection, Dkt. No. 473] and as recognized by overlandlords as well [see A&C Ventures Inc., Dkt. No. 449], there is ample case law that has recognized the rights of sublessees in the context of section 365(h)(1) of the Bankruptcy Code. See In re Overseas Shipholding Group, Inc., 2015 WL 3475727 at *4 n. 2 (Bankr. D. Del. June 1, 2015) ("the application of section 365(h)(1) is the same where the debtor is a sublessor and has a subtenant", citing In re Zota Petroleums, LLC, 482 B.R. 154, 161 (Bankr. E.D. Va. 2012) (ruling in favor of sublessee, further stating "permitting a § 363 sale free and clear of the interests of the debtor's sublessee would make the provisions of § 365(h)(1)(A)(ii) nugatory with respect to non-debtor lessees"); In re Samaritan Alliance, LLC, 2007 WL 4162918 at *4 (Bankr. E.D. Ky. Nov. 21, 2007) (concluding that a sublessee's "possessory interest in the [property] and the rights appurtenant thereto, as embodied in the [sublease], are preserved under section 365(h)"); In re Elephant Bar Restaurant, Inc., 195 B.R. 353, 356 (Bankr. W.D. Pa. 1996) (finding that the rejection of an overlease resulted in the rejection of the debtor's sublease with a third party, while recognizing that the sublessee retained possessory rights to the premises under section 365(h)(1)(A)(ii)).

11. Another case on point is In re Amicus Wind Down Corp., 2012 WL 604143 (BAnkr. D. Del. Feb. 24, 2012). In that case, a prime landlord recognized the interests of a subtenant in its continued possession of its space under the sublease. In Amicus, the debtor filed a motion to reject its prime lease with the prime landlord. The prime landlord objected to the rejection because the debtor was unable to provide the prime landlord with unfettered possession of the entire leased space because the debtor failed to address the possessory rights of the

subtenant in the premises pursuant to a sublease. The Amicus court agreed with the prime landlord and determined that "absent eviction proceedings in the New York courts, the Debtor cannot unilaterally surrender the Subtenant's possessory rights in the premises. Id at 8; see also Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.,), 60 F.3d 1031 (3d Cir. 1995) (rejection does not terminate a lease; it merely suspends certain rights and obligations under what a debtor determines is a burdensome lease); see also Columbia Gas Sys., 50 F.3d 233, 239 n. 8 (3d Cir. 1995) ("rejection…is equivalent to a nonbankruptcy breach"; i.e. it is not a termination). The Amicus court went even further and determined that "the subtenant retained its rights under the lease even if it is not in physical possession of the premises. Id at *6. Of course, here, the facts are even more compelling as the Subtenant is in possession of the Subleased Premises, after outlaying over $2 million over the last several months to get the supermarket finally open for business.

12. Similar to the authorities set forth above, this Court has recognized the important statutory rights of lessees under section 365(h) when confronted with a situation in which a debtor seeks to sell its "leasehold interest" under section 363 of the Bankruptcy Code. IDEA Boardwalk, LLC v. Revel Entm't Grp. (In re Revel AC, Inc.), 532 B.R. 216, 227 (Bankr. D. N.J. 2015). In that context, this Court has found that "the Tenants retain these rights notwithstanding a sale of the Debtors' assets under section 363 of the Bankruptcy Code. Id. at 227; see also In re Haskell LP, 321 B.R. 1 (Bankr. D. Mass. 2005) (section 365(h) rights are protected, notwithstanding section 363(f) "free and clear" language).

13. Consistent with the ample case law authority protecting the rights of nondebtor subtenants (under subleases) and nondebtor tenants (under leases) in accordance with section 365(h) of the Bankruptcy Code, any Court order authorizing rejection of the Sublease must, at

the same time, make clear that such rejection is without derogation of the rights of the Subtenant operating these Subleased Premises. Absent the relief requested in this Limited Objection, the Subtenant's business will cease, causing millions of dollars in irreparable damages that will forever be lost.

14.     Finally, while the Prime Landlord can speak for itself, until the Debtor can provide vacant possession of the Leased Premises to the Prime Landlord, the Debtor is also not able to reject the Prime Lease because it cannot "surrender" possession at the time of rejection, all as more fully set forth in the Prime Landlord's Objection that was filed earlier today [see Dkt. No. 519], and as succinctly stated in a separate Objection filed by A&C Ventures, an overlandlord at a different space. See Dkt. No. 449.

### B.    Abandonment of the Subtenant's Personal Property and Subtenant's Inventory Is Not Permitted Under Section 365 or 554 of the Bankruptcy Code

15.     Another major flaw in the Rejection Motion is the Debtor's attempt to "abandon" property at the Leased Premises to the Prime Landlord.  As noted, the Subtenant here has expended over $2 million in recent months since entry into the Sublease to retrofit this space as a supermarket, including with respect to the purchase of the Subtenant's Personal Property. Subtenant also made significant purchases of the Subtenant's Inventory at a cost of over $500,000.  In both cases, the Subtenant's Personal Property and the Subtenant's Inventory is property of the Subtenant.  Section 554(a) of the Bankruptcy Code is very straightforward and gives a debtor the right to "abandon any *property of the estate* that is burdensome to the estate or that is of inconsequential value and benefit to the estate" (italics added).  The Debtor simply does not have the authority to abandon anything that is not "property of the estate".  Nor does the Prime Landlord have the right to obtain a windfall by accepting a transfer "by abandonment"

from the Debtor of the Subtenant's Personal Property and Subtenant's Inventory that unequivocally belongs to the Subtenant.

16.    Of course, to the extent the Court recognizes Subtenant's rights under section 365(h), this issue of abandonment is moot since the Subtenant will continue to use the Subtenant's Personal Property and otherwise the Subtenant's Inventory in the conduct of its business.  However, if the Court were to ultimately find (contrary to the weight of authority) that Subtenant does not have rights under section 365(h), Subtenant respectfully requests the Court ensure that Subtenant has sufficient time to remove the Subtenant's Personal Property and the Subtenant's Inventory prior to vacating the Subleased Premises.  As noted by Dollar Tree in its objection [Dkt. No. 473], a reasonable time for removal of the Subtenant's Personal Property is necessary. See Dollar Tree Objection, ¶ 30. And the time allotted for removal of personal property owned by subtenants will depend on the facts and circumstances of each case.  In the Subtenant's case, it could take many months to carefully remove with no damage to the Leased Premises some of the Subtenant's Personal Property.

17.    Finally, and consistent with a sublessee's rights to retain possession of their subleased premises or otherwise surrender and remove their property, utility services at the subleased locations should remain in place because obviously any shutdown of electricity and other utility services will impact the operation of the business of subtenants.  As such, the Debtor's motion with respect to utility payments and services [Dkt. No. 5] should address this circumstance to avoid any unintended consequences to subtenants, including the Subtenant here.

## **RESERVATION OF RIGHTS**

18.    Subtenant reserves the right to file additional documents in support of this Limited Objection and make any additional arguments at the hearing(s) to consider the Debtor's

Rejection Motion. Subtenant further reserves the right to take discovery in connection with this contested matter.

19. Furthermore, to the extent the Court overrules this Limited Objection without recognition of Subtenant's section 365(h) rights, Subtenant reserves all of its rights in connection with any future eviction proceeding commenced by Prime Landlord in state court and nothing set forth herein shall prejudice Subtenant's rights in such non-bankruptcy state court action.

## CONCLUSION

20. Subtenant merely desires what Congress dictated it has a right to receive if it so elects: i.e. either (i) damages under section 365(h)(1)(A)(i) or (ii) retaining possession as set forth under section 365(h)(1)(A)(ii) through the expiration of the Sublease in exchange for its continuing obligation to comply with the terms of the Sublease and make payments as directed thereunder.[2] Finally, whether or not Subtenant continues in possession of the Subleased Premises, the Debtor's proposed abandonment of the Subtenant's Personal Property and Subtenant's Inventory to the Prime Landlord is not permitted under the law.

---

[2] Whether the Subtenant's rent payments under the Sublease should be paid directly to the Debtor for it to be "passed on" to the Prime Landlord or whether the Subtenant should pay such rent under the Sublease directly to the Prime Landlord is a matter that can be negotiated or otherwise directed by the Court, as long as it does not affect Subtenant's rights under the Bankruptcy Code or applicable nonbankruptcy law.

**WHEREFORE**, the Subtenant respectfully requests the Court sustain this Limited Objection for the reasons set forth herein.

Dated: New York, New York
November 9, 2023

                      **TARTER KRINSKY & DROGIN LLP**
                      *Attorneys for 32-14 31st Food LLC*

By: /s/Rocco A. Cavaliere
Rocco A. Cavaliere, Esq.
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
rcavaliere@tarterkrinsky.com