| | |
|---|---|
| **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** <br> Edward O. Sassower, P.C. <br> Joshua A. Sussberg, P.C. (*pro hac vice*) <br> Aparna Yenamandra, P.C. (*pro hac vice*) <br> Ross J. Fiedler (*pro hac vice*) <br> Zachary R. Manning (*pro hac vice*) <br> 601 Lexington Avenue <br> New York, New York 10022 <br> Telephone: (212) 446-4800 <br> Facsimile: (212) 446-4900 <br> esassower@kirkland.com <br> joshua.sussberg@kirkland.com <br> aparna.yenamandra@kirkland.com <br> ross.fiedler@kirkland.com <br> zach.manning@kirkland.com <br><br> *Proposed Co-Counsel for Debtors and Debtors in Possession* | **COLE SCHOTZ P.C.** <br> Michael D. Sirota, Esq. <br> Warren A. Usatine, Esq. <br> Felice R. Yudkin, Esq. <br> Court Plaza North, 25 Main Street <br> Hackensack, New Jersey 07601 <br> Telephone: (201) 489-3000 <br> msirota@coleschotz.com <br> wusatine@coleschotz.com <br> fyudkin@coleschotz.com <br><br> *Proposed Co-Counsel for Debtors and Debtors in Possession* |

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: <br><br> RITE AID CORPORATION, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 23-18993 (MBK) <br><br> (Jointly Administered) |

### DEBTORS' OMNIBUS OBJECTION TO
### MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

---

[1]  The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

# **TABLE OF CONTENTS**

                                                                                                                                  **Page**

**Preliminary Statement** ..............................................................................................................1

**Background** ................................................................................................................................3

**I.**        **The Movants' Claims** ....................................................................................................3

**II.**      **The Debtors' Insurance Coverage** ...............................................................................5

**Argument** ....................................................................................................................................6

**I.**        **The Automatic Stay Is a Fundamental Debtor Protection** ..........................................6

**II.**      **The Movants Have Not Established "Cause" to Lift the Automatic Stay.** ..................6

          A.    *Sonnax* Factor 1: Relief would not result in a partial or complete resolution of the issue. ..........................................................................................8

          B.    *Sonnax* Factor 2: Granting the Motions would disrupt and interfere with the Debtors' bankruptcy proceedings. .............................................................9

          C.    *Sonnax* Factor 3: Relief is unwarranted because the Debtors are not fiduciaries in the other actions. .......................................................................11

          D.    *Sonnax* Factor 4: Relief should not be granted because the Personal Injury Actions do not involve specialized tribunals. ...........................................11

          E.    *Sonnax* Factor 5: The stay should not be lifted because the Debtors' insurers have not assumed responsibility for defending Rite Aid. .......................12

          F.    *Sonnax* Factor 6: Relief should not be granted because the Personal Injury Actions do not primarily involve third parties. ...........................................12

          G.    *Sonnax* Factor 7: Relief should not be granted because it would prejudice the interests of the Debtors' other creditors. ..............................................12

          H.    *Sonnax* Factor 10: Judicial economy favors denying the Motions and leaving the stay in place. ..............................................................................13

          I.    *Sonnax* Factor 11: The stay should not be lifted because the Personal Injury Actions were not ready for trial. .................................................................13

          J.    *Sonnax* Factor 12: Lifting the stay would harm Debtors far more than keeping it in place would harm Movants. ..................................................14

**Conclusion** ................................................................................................................................15

The Debtors object to the motions for relief from the automatic stay filed by Nora Prelvukaj [Dkt. No. 137], Mary Ellen Smutek [Dkt. No. 217], Kevin Brown and Erika Brown [Dkt. No. 307], Cheron Walker [Dkt. No. 308], Jean Kamara [Dkt. No. 309], Vanessa Waters and Derek Waters [Dkt. No. 310], Kimberly Pastor [Dkt. No. 334], and Margaret Small [Dkt. No. 472] (collectively, the "Motions" and the "Movants"). In support of this Objection, the Debtors state as follows:

**Preliminary Statement**

1. The Movants—unsecured creditors holding contingent, unliquidated litigation claims against the Debtors—seek to lift the automatic stay to prosecute prepetition personal injury-related lawsuits against the Debtors and certain non-Debtor defendants in non-bankruptcy courts (the "Personal Injury Actions"). This Court should deny the Motions so that the Debtors (and their creditors) can benefit from the "breathing spell" created by the automatic stay, to prevent the Movants from jumping the line of creditors, and to protect the Debtors from being forced to expend estate assets defending cases in other forums.

2. Movants offer no "cause" to lift the stay, and each of the standard factors for determining cause to lift a stay weighs against doing so here. Instead, Movants assert in conclusory fashion that they should be allowed to proceed against the Debtors' insurers, which the Movants incorrectly claim will not prejudice the Debtors' estates. *See, e.g.*, Prelvukaj Motion, Dkt. No. 137-1 at ¶¶ 9-10; Smutek Motion, Dkt. No. 217 at ¶¶ 8-10; Browns' Motion, Dkt. No. 307-1 at ¶¶ 13-14; Walker Motion, Dkt. No. 308-1 ¶¶ 13-14; Kamara Motion, Dkt. No. 309-1 at ¶¶ 13-14; Waters' Motion, Dkt. No. 310-1 ¶¶ 13-14; Pastor Motion, Dkt. No. 334-1 at ¶¶ 10-11; and Small Motion, Dkt No. 472 at ¶ 16. In fact, all the insurance policies that likely apply to the Movants' lawsuits include unexhausted self-insured retentions ("SIRs") or deductibles that would require depletion of the Debtors' estates as a precondition to any insurance recovery. *See* Declaration of

Anita Ward at ¶¶ 5-6 (the "Ward Decl."). Thus, even if the Movants were entitled to insurance proceeds—which their Motions do not establish and which need not be resolved here—the Movants cannot access those insurance proceeds without first impairing the property of the Debtors' estates via the SIRs, an outcome at odds with the automatic stay's protection of estate assets.

3. The SIRs aside, granting the relief requested will distract the Debtors' in-house team from their restructuring-focused obligations and require the Debtors to expend estate assets defending against the Movants' cases, depriving the Debtors of the pause in the non-bankruptcy court adjudication of prepetition claims afforded by the automatic stay.

4. Congress was clear that debtors require a "breathing spell" from prepetition litigation while they navigate the bankruptcy process. The automatic stay affords debtors time to develop, confirm, and consummate a plan of reorganization, while protecting other creditors from a race by their peers to procure judgments outside the bankruptcy court. Thus, *all* unsecured creditors, including the Movants, must establish "extraordinary circumstances" to lift the stay and skip the line of other litigants participating in the restructuring process. *See*, *e.g.*, *In re Brown*, 311 B.R. 409, 413 (E.D. Pa. 2004) ("Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary circumstances."); *In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017) ("[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief[.]") (quoting *In re Leibowitz,* 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

5. The Movants do not meet their heavy burden of proof to justify lifting the automatic stay and prioritizing the Movants' claims ahead of other prepetition litigation claimants.

Furthermore, the Movants have not identified any cognizable harm that would be suffered if the stay is not lifted. Nor can they. The Movants can preserve their claims against the Debtors by filing proofs of claim. Just like every other prepetition litigation claimant, Movants should follow and participate in the claims administration process. The Movants will not be prejudiced by resolving their claims through these chapter 11 cases—just like every other creditor—and there is nothing extraordinary about Movants' claims that warrants lifting the stay.

6.  Finally, if the Motions were granted, only the Movants stand to benefit, while the automatic stay would continue to prohibit other constituents from pursuing their claims outside this Court. An order granting the relief sought by the Motions would invite thousands of other litigation claimants to seek similar relief.[1] Courts recognize the risk of opening the proverbial "floodgates" to similarly situated creditors. *See, e.g.*, *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) ("[G]ranting relief [from the automatic stay] could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case[.]"). The Debtors are entering a critical phase of these chapter 11 cases as they develop consensus ahead of the confirmation hearing. Permitting the Movants to continue litigating their claims against Rite Aid outside of the bankruptcy proceedings would undermine those efforts.

## Background

### I. The Movants' Claims

7.  Nora Prelvukaj alleges that she was injured in the County of Richmond, New York, on October 8, 2017, when a truck driven by Defendant Mark Joseph Naselli and owned by

---

[1] *See* Decl. of Jeffrey S. Stein in Supp. of Debtors' Ch. 11 Petitions and First Day Mots., Dkt. No. 20 at ¶ 7 (summarizing Debtors' litigation claims portfolio).

3

Defendant Volpe Dedicated Inc., collided with Prelvukaj's vehicle. *See* Dkt. No. 137-2 at ¶ 64. She alleges that Rite Aid was vicariously liable for her injuries as the employer of the driver and the trucking company. *Id.* at ¶¶ 79-80. Prelvukaj filed a personal injury action in the United States District Court for the District of Eastern New York on October 22, 2020, and Rite Aid filed its answer on October 29, 2020.

8. Mary Ellen Smutek alleges that she was injured in Oakmont, Pennsylvania, when a truck driven by Defendant Arturo Barraza and owned by Rite Aid was involved in an accident with Smutek's vehicle. *See* Dkt. No. 217 at ¶ 6. Smutek filed her personal injury action in the Court of Common Pleas of Allegheny County on December 3, 2020. *Id.* at ¶ 7.

9. Kevin Brown and Erika Brown allege that they were injured in Reading and Philadelphia, Pennsylvania, when they were exposed to products containing aromatic amines that were sold by Rite Aid. *See* Dkt. No. 307-2 at ¶ 12. The Browns allege that the products were manufactured by third-party Defendants Hoyu America Co., Ltd., Combe Incorporated, and Sally Beauty Company, Inc. *Id.* at ¶ 14. The Browns filed their personal injury action in the Court of Common Pleas of Philadelphia County on January 25, 2019.

10. Cheron Walker alleges that she was injured in Philadelphia, Pennsylvania, when she purchased products from Rite Aid that were manufactured by Defendant Revlon, Inc., and other third-party Defendants. *See* Dkt. No. 308-2 at 2. Walker filed her personal injury action in the Court of Common Pleas of Philadelphia County on August 30, 2023.

11. Jean Kamara alleges that she was injured in Philadelphia, Pennsylvania, when she purchased products from Rite Aid that were manufactured by Defendant Revlon, Inc., and other third-party Defendants. *See* Dkt. No. 309-2 at 2. Kamara filed her personal injury action in the Court of Common Pleas of Philadelphia County on August 30, 2023.

12. Vanessa and Derek Waters allege that they were injured in Philadelphia, Pennsylvania, when they purchased products from Rite Aid that were manufactured by Defendant Revlon, Inc., and other third-party Defendants. *See* Dkt. No. 310-2 at 3. The Waters filed their personal injury action in the Court of Common Pleas of Philadelphia County on August 30, 2023.

13. Kimberly Pastor alleges that she was injured in Philadelphia, Pennsylvania on December 3, 2022, during a slip and fall accident at a Rite Aid store. *See* Dkt. No. 334-1 at ¶ 5. Pastor has not yet filed a personal injury action against Rite Aid, but she seeks relief from the stay "so that she may proceed to commence a state court personal injury case against debtors[.]" *Id.* at ¶ 1.

14. Margaret Small alleges that she was injured in Philadelphia, Pennsylvania on December 18, 2020, when she slipped and fell on an icy parking lot outside of a Rite Aid store. *See* Dkt. No. 472 at ¶ 3. Small filed her personal injury action in the Court of Common Pleas of Philadelphia County on December 22, 2022.

15. On October 15, 2023 (the "Petition Date"), the Debtors commenced these chapter 11 cases. By operation of section 362 of the Bankruptcy Code, the automatic stay enjoined all persons from commencing or continuing judicial action against any of the Debtors that was or could have been initiated before the Petition Date. *See* 11 U.S.C. § 362(a)(1). Consequently, the Personal Injury Actions were stayed.

## II. The Debtors' Insurance Coverage

16. The insurance policies that appear to apply to the Movants' lawsuits include per-occurrence SIRs and/or deductibles ranging from $1 million to $7 million. *See* Ward Decl. at ¶¶ 6, 10, 17, 21, 26. Accordingly, the Debtors must expend, at minimum, ***nearly $1 million per claim*** before insurance coverage is triggered. *Id.* at ¶¶ 6, 11, 14, 19, 22, 27, 30. The Debtors have not exhausted those SIRs or deductibles for any of the claims at issue. *Id.* at ¶ 6.

5

**Argument**

I. **The Automatic Stay Is a Fundamental Debtor Protection.**

17. The automatic stay is one of the most "fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986) (quoting S. Rep. 95-989, 54 (1978); H.R. Rep. 95–595, 340 (1977)). The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). Further, it "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990).

18. Litigation claims should be addressed through the proof-of-claim process. This approach will prevent a race to the courthouse by similarly situated claimants that would have the negative effects of (a) depleting funds in the Debtors' estates available to satisfy other claims, (b) distracting the Debtors' in-house team from their restructuring-focused priorities, and (c) impairing the Debtors' ability to maximize distributions available for all similarly situated claimants.

II. **The Movants Have Not Established "Cause" to Lift the Automatic Stay.**

19. The Movants must show "cause" to lift the automatic stay. *See* 11 U.S.C.A. § 362(d)(1); *In re Mattera*, 2006 WL 4452834, at *4 (Bankr. D.N.J. Feb. 6, 2006). Courts generally analyze the *Sonnax* Factors in determining whether to grant relief from the automatic stay:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) (applying the *Sonnax* Factors).[2] "All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay." *Id.*

20. The Browns, Walker, Kamara, the Waters, and Pastor made no effort to establish an initial showing of cause, while Smutek and Small[3] merely made conclusory (and incorrect) assertions that lifting the stay would not impact the Debtors' bankruptcy proceedings. Nonetheless, as discussed in detail below, the Debtors have analyzed the twelve *Sonnax* Factors,

---

[2] Some bankruptcy courts have also looked to a three-part test to determine whether cause exists for lifting the stay: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) whether the creditor has a probability of prevailing on the merits. *In re Trib. Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009). The first two *Tribune* factors parallel the *Sonnax* Factors, discussed herein, and weigh in favor of denying the Motions. Movants also cannot carry their burden on the third *Tribune* factor because the underlying litigation has not progressed to a point where an accurate assessment of success on the merits can be made, and many of Movants' claims are against Co-Defendants with liability independent from the Debtors.

[3] Without explanation, application, or analysis, Small's Motion included a string cite to several cases that allegedly support lifting the stay. *See* Dkt. No. 472 at ¶ 17. All of those cases are inapposite. For example, only one authority cited by Small, *Matter of Rabin*, was from the Third Circuit, and that case is distinguishable because it limited relief from the stay to entry of judgment and required the movants to return to the bankruptcy court to litigate the nondischargeability of a securities fraud claim. 53 B.R. 529, 532 (Bankr. D.N.J. 1985).

7

ten of which weigh against lifting the stay, while the remaining two factors are inapplicable. Accordingly, those Motions should be denied.

21. After making no effort to address "cause" in her initial Motion, Prelvukaj filed a *Supplemental Affirmation In Support and In Reply* the day before the Debtors' Objection deadline [Dkt. No. 515]. While the proper procedure would have been for Prelvukaj to file the 13-page brief as a reply to this Objection, the supplement changes nothing. Prelvukaj agrees with the Debtors that the *Sonnax* Factors (also referred to as the *Chan* factors) should be used to determine "cause." *See* Dkt. No. 515 at ¶¶ 21-22. Prelvukaj primarily argues that the Debtors' bankruptcy proceedings will not be prejudiced by lifting the stay because "Travelers Insurance [the Debtors' carrier] is currently responsible for the entirety of the policy including the deductible." *Id.* at ¶ 32. That assertion misses the mark. If the stay were lifted and Prelvukaj pursued the Travelers policy, Travelers would assert a claim against the Debtors for the amount of the deductible—Prelvukaj admits as much. *Id.* at ¶¶ 14-15, 32. Stay relief that creates *more* creditors and claims against the Debtors prejudices not just the Debtors but other unsecured creditors. Moreover, as is true for all of the Motions, lifting the stay to permit Prelvukaj's litigation to continue would open the floodgates for other claimants, disrupting these chapter 11 cases and further prejudicing other creditors. *See In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 106 (E.D. Pa. 2010) (affirming bankruptcy court's stay of state-court actions, in part because lifting the stay "could open the floodgates to allow all other litigants to pursue the same course."). Those reasons alone are sufficient to deny Prelvukaj's Motion.

    A.    ***Sonnax* Factor 1: Relief would not result in a partial or complete resolution of the issue.**

22. The first *Sonnax* factor, which looks to whether the requested relief would completely or only partially resolve a movant's claim, counsels against lifting the stay. Even if

8

the Movants were to prevail at the trial court level and obtain a verdict against the Debtors, such a result would likely be followed by post-trial proceedings, appeals, and potential contribution litigation amongst the Debtors and their co-defendants. Accordingly, the requested relief provides only a partial resolution of the Movants' claims. *See In re Drexel Burnham Lambert Grp., Inc.*, 1990 WL 302177 (Bankr. S.D.N.Y. Dec. 14, 1990) (denying automatic stay relief where resolution of the underlying proceedings would still leave "important issues" to be decided). Moreover, the Movants that file proofs of claim in these chapter 11 cases would still need to resolve those claims through the claims administration process. In fact, the Movants will likely obtain a complete resolution of their claims more quickly in these bankruptcy cases than they would by pursuing their claims in other courts. *See In re Vivax Med. Corp.*, 242 B.R. 211, 215 (Bankr. D. Conn. 1999) (considering time frame for complete resolution of movant's claim in finding first *Sonnax* factor weighed against requested stay relief).

### B. *Sonnax* Factor 2: Granting the Motions would disrupt and interfere with the Debtors' bankruptcy proceedings.

23. The second *Sonnax* Factor, which looks to disruption and interference with the bankruptcy proceedings, also counsels against lifting the stay. The "general idea is that 'cause' exists where the other proceeding bears no relation to the bankruptcy case or no relation to the purpose of the automatic stay." *In re Adams*, 27 B.R. 582, 585 (D. Del. 1983). Here, the Motions seek to allow continued prosecution of claims that would interfere with and disrupt the bankruptcy cases by (i) draining property of the estates due to applicable SIRS/deductibles, (ii) undermining the claims adjudication process by allowing the Movants to jump ahead of similarly situated creditors in obtaining recoveries, (iii) distracting the Debtors' in-house teams from their primary task of facilitating a successful restructuring, and (iv) depleting insurance policies that are property of the Debtors' bankruptcy estates.

9

24. *First*, allowing Movants' lawsuits to continue, even if "limited" to available insurance proceeds, would drain property of the Debtors' bankruptcy estates. The policies that would apply to the Movants' litigation claims each contain millions of dollars of unexhausted per-occurrence or per-accident SIRs and/or deductibles. *See* Ward Decl. at ¶ 6. Until those SIRs/deductibles are exhausted (through an erosion of property belonging to the Debtors' bankruptcy estates), the Debtors are required to fund the litigation and defense against the Movants' lawsuits—as well as any resulting settlement or judgment. It is only after those SIRs/deductibles are exhausted that the Debtors' insurance carriers would incur any obligation to begin independently funding defense or liability costs.

25. Bankruptcy courts deny motions to lift the automatic stay when claimants seek to recover damages from a debtor's insurance policies where the debtors have not exhausted the applicable SIR or deductible. *See, e.g.*, *Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co.*, 2005 WL 3487723 at *2 (W.D. Tex. Nov. 3, 2005) ("[U]nder the policy [the insurer] need not pay anything under its policy unless [debtor] first satisfies the self-insured retention."); *In re EnCap Golf Holdings, LLC*, 2008 WL 3193786 at *4 (Bankr. D.N.J. Aug. 4, 2008) ("Because the Self-Insured Retention has not been exhausted, [insurer] has no obligation to make payments under [its] Policy . . . there is no cause to grant relief from the automatic stay[.]"); *In re Apache Prod. Co.*, 311 B.R. 288, 297 (Bankr. M.D. Fla. 2004) (holding that the debtor "must exhaust the SIR amount before [insurer's] obligation to defend arises."); *In re Residential Capital LLC*, 2012 WL 3249641, at *5 (Bankr. S.D.N.Y. Aug. 7, 2012) (denying a motion to lift the automatic stay where allowing the action to proceed would require debtors to pay damages directly from its policy deductible). Rite Aid has not exhausted the SIRs or deductibles applicable to the Personal Injury Actions. *See* Ward Decl. at ¶ 6.

10

26. ***Second***, the Movants seek to lift the stay to pursue damages in connection with prepetition claims that should be resolved through the claims reconciliation process. Claims adjudication is core to these chapter 11 cases—it ensures equitable recoveries for similarly situated creditors and reduces the burden of resolving claims on the Debtors' estates relative to traditional non-bankruptcy litigation.

27. ***Third***, even if the Movants are only permitted to recover against insurance proceeds, the Debtors' in-house teams will nonetheless be burdened with furnishing and preparing Debtor-affiliated witnesses and discovery in the Movants' litigation, a distraction from their critical role in facilitating a successful exit from these chapter 11 cases.

28. ***Finally***, the Movants seek to recover from the Debtors' insurance policies, which are property of the bankruptcy estates. Indeed, the Third Circuit has observed that "[i]t has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate." *Acands, Inc. v. Travelers Cas. & Sur. Co.,* 435 F.3d 252, 260 (3d Cir. 2006) (citing *Estate of Lellock v. The Prudential Ins. Co. of Am.,* 811 F.2d 186, 189 (3d Cir. 1987)).

**C.    *Sonnax* Factor 3:    Relief is unwarranted because the Debtors are not fiduciaries in the other actions.**

29. Because the Personal Injury Actions do not involve Rite Aid as a fiduciary, the third *Sonnax* Factor weighs against lifting the stay.

**D.    *Sonnax* Factor 4:    Relief should not be granted because the Personal Injury Actions do not involve specialized tribunals.**

30. The fourth *Sonnax* Factor also supports denying Movants' requests to lift the stay. The courts where Movants' cases are currently pending—the U.S. District Court for the Eastern District of New York and the Courts of Common Pleas in Allegheny or Philadelphia County, Pennsylvania—are not specialized tribunals with necessary expertise to hear the Personal Injury Actions. *See In re Curtis*, 40 B.R. 795, 800 (Bankr. D. Utah 1984) (discussing examples of

11

specialized tribunals, *e.g.*, "the Board of Contract Appeals," "state patient compensation panel[s]," and "unsettled questions of state property law . . . submitted to state courts[.]") (collecting cases).

      E.      ***Sonnax* Factor 5: The stay should not be lifted because the Debtors' insurers have not assumed responsibility for defending Rite Aid.**

31.      The fifth *Sonnax* Factor weighs against lifting the stay because the Debtors' insurers have not assumed responsibility for defending the Movants' lawsuits. To the contrary, most of these matters have not even triggered an obligation to notice the carriers because so little of the applicable SIRs have been exhausted. And even after the carriers accept coverage, until the SIRs/deductibles are fully exhausted (through an erosion of property belonging to the Debtors' bankruptcy estates), the Debtors will be required to bear the burden of litigating and defending the Personal Injury Actions, as well as satisfying any settlement or judgment.

      F.      ***Sonnax* Factor 6: Relief should not be granted because the Personal Injury Actions do not primarily involve third parties.**

32.      The sixth *Sonnax* Factor also weighs against lifting the stay. Although the Personal Injury Actions name various co-defendants, Rite Aid is a lead defendant in all of those actions.

      G.      ***Sonnax* Factor 7: Relief should not be granted because it would prejudice the interests of the Debtors' other creditors.**

33.      The seventh *Sonnax* Factor counsels against lifting the stay because litigating Movants' claims outside of the claims administration process would prejudice the interests of other creditors by diverting the Debtors' time, attention, and resources at a critical juncture in these chapter 11 cases and by elevating the interests of the Movants over the interests of other creditors. The claims pending in the prepetition litigation are merely that—claims. The Movants should follow the same claims resolution process as all other similarly-situated creditors.

34.      Moreover, the Debtors are named defendants in numerous other actions similar to the Personal Injury Actions at issue here. Lifting the automatic stay for the Movants' claims would

12

open the floodgates for other plaintiffs to file similar motions seeking to pursue insurance proceeds by litigating their claims in other forums across the country, resulting in a depletion of estate resources available to creditors due to the millions of dollars that will need to be expended exhausting SIRs and deductibles, the erosion of an important estate asset (the insurance policies themselves), and differing recoveries for similarly-situated creditors.

      **H.**     ***Sonnax* Factor 10: Judicial economy favors denying the Motions and leaving the stay in place.**

35. The tenth *Sonnax* factor, which looks to the interest of judicial economy, similarly weighs in favor of denying stay relief to these Movants. The most efficient path to resolution of the Movants' claims is through the centralized claims administration process that will resolve the vast majority of claims in these chapter 11 cases. Lifting the stay to allow the Movants' claims to proceed outside of the Debtors' claims resolution process will impede the Debtors' and this Court's ability to streamline the claims process, which courts have recognized as grounds to deny relief from the automatic stay. *See, e.g.*, *In re Residential Cap., LLC*, 2012 WL 3555584, at *5 (Bankr. S.D.N.Y. Aug. 16, 2012) ("[Movant]'s damages claims should be heard in this Court as part of the claims allowance process."). Because of the possibility of prolonged lawsuits (including post-trial proceedings, appeals, and contribution litigation), and the risk of opening the floodgates of prepetition litigants seeking to continue their litigation against the Debtors in courts around the country, the interest of judicial economy weighs heavily against lifting the stay.

      **I.**     ***Sonnax* Factor 11: The stay should not be lifted because the Personal Injury Actions were not ready for trial.**

36. The eleventh *Sonnax* Factor counsels against lifting the stay because the parties are far from prepared for trial in most of the Personal Injury Actions. The Personal Injury Action by Pastor has not even been filed. Three other Movants—Walker, Kamara, and the Waters—just filed their actions in August 2023. Although the remaining four actions by Prelvukaj, Smutek, the

13

Browns, and Small were filed earlier, none of those actions were fully ready for trial as of the Debtors' petition date.

37. To prepare for trial, Rite Aid will be required to expend significant time and resources litigating and defending the Personal Injury Actions. This would be true even if the Debtors' insurance carriers were undertaking the cost of defense and liability, which they will not until the SIRs/deductibles are exhausted. The Debtors would still need to monitor the litigation, investigate claims, prepare party witnesses, and respond to discovery, among the other burdens associated with litigation. Under these circumstances, the eleventh *Sonnax* Factor weighs against lifting the automatic stay.

**J.     *Sonnax* Factor 12:  Lifting the stay would harm Debtors far more than keeping it in place would harm Movants.**

38. The final *Sonnax* Factor—which looks to the impact on the parties and the balance of harms—decisively weighs in favor of denying Movants' requested relief. When considering motions for relief from the automatic stay, bankruptcy courts within the Third Circuit have held that that movants bear "the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief[]" against debtors. *In re W.R. Grace*, 2007 WL 1129170 at *3 (quoting *In re Micro Design, Inc.,* 120 B.R. 363, 369 (E.D. Pa.1990)).

39. Here, the only harm the Movants suffer from the automatic stay is a brief delay in adjudicating their claims. A hearing on confirmation of the Debtors' proposed plan of reorganization is currently scheduled for just a few months away. By contrast, the Debtors will face substantial prejudice if forced to defend against this litigation while in the midst of an expedited chapter 11 process for all the reasons discussed above: continuing litigation will erode property of the Debtors' estates due to the unexhausted SIRs/deductibles, deplete property of the

14

Debtors' estates (in the form of the insurance policies), and distract the Debtors' in-house teams from their critical role in facilitating a successful emergence from these chapter 11 cases.

40. Moreover, thousands of third parties—similarly situated general unsecured creditors—will be prejudiced by Movants depleting estate resources and skipping the line of creditors to recover on their claims from property of the Debtors' estates (*i.e.*, applicable insurance proceeds) rather than participating in the orderly and equitable claims administration process.

41. Because the overwhelming majority of the *Sonnax* Factors weighs against lifting the automatic stay, the Movants cannot satisfy the standard for lifting the stay and the Court should therefore deny the requested relief.[4]

## Conclusion

42. For the foregoing reasons, the Court should deny the Motions for lack of cause. Doing so will help facilitate the fair and equitable resolution of prepetition litigation claims by centralizing that resolution process in this Court and give effect to the "breathing spell" provided to the Debtors through the Bankruptcy Code's automatic stay.

---

[4] The remaining *Sonnax* Factors—Factor 8 (whether the judgment claim arising from the other action is subject to equitable subordination) and Factor 9 (whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor)—are inapplicable.

Dated: November 9, 2023

By: /s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:   msirota@coleschotz.com
          wusatine@coleschotz.com
          fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice*)
Aparna Yenamandra, P.C. (*pro hac vice*)
Ross J. Fiedler (*pro hac vice*)
Zachary R. Manning (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:   esassower@kirkland.com
          joshua.sussberg@kirkland.com
          aparna.yenamandra@kirkland.com
          ross.fiedler@kirkland.com
          zach.manning@kirkland.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*