**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice*)
Aparna Yenamandra, P.C. (*pro hac vice*)
Ross J. Fiedler (*pro hac vice*)
Zachary R. Manning (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RITE AID CORPORATION, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-18993 (MBK)<br><br>(Jointly Administered) |
| RITE AID CORPORATION, et al.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Adv. Pro. No. 23-_____ |

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

**VERIFIED ADVERSARY COMPLAINT**

Plaintiff, Rite Aid Corporation ("**Rite Aid**" or "**Plaintiff**"), together with the above-captioned debtors and debtors in possession (collectively, "**Debtors**"), brings this Complaint against Defendant United States of America ("**United States**" or "**Defendant**"), seeking a declaratory judgment and injunctive relief, and further states as follows:

**INTRODUCTION**

1. This adversary proceeding results from the United States's decision to disturb the indefinite stay of litigation entered by the United States District Court for the Northern District of Ohio under its inherent power to control its docket in a prepetition False Claims Act ("**FCA**"), Controlled Substance Act ("**CSA**"), and common law claims lawsuit brought against Debtor Rite Aid Corporation and several of its subsidiaries, all Debtors. Notably, throughout weeks of negotiations, the United States agreed with the Debtors that a stay of the lawsuit is appropriate, but nonetheless demanded the Debtors stipulate that the Bankruptcy Code's *automatic stay* does not apply to any aspect of the United States's case. When the Debtors would not capitulate to that unreasonable demand, which is both unnecessary under the circumstances and wrong as a matter of law, the United States filed a motion to have the current stay expire in 45 days, while the Debtors would still be in the thick of their reorganization efforts. The risk of irreparable harm that the United States's request could have on the Debtors and their creditors, if granted, leaves the Debtors with no choice but to file this adversary proceeding.

2. The Debtors now seek a preliminary injunction enjoining the United States from continuing to prosecute its lawsuit, including its pending motion to modify the District Court's stay order. That relief is necessary to prevent irreparable harm to the Debtors and their estates, as the continued prosecution of the United States's case threatens to undermine the Debtors' restructuring efforts. By contrast, neither the United States (nor the public it represents) will suffer

2

any harm from the requested injunctive relief: to the contrary, it is in the best interest of the public that the Court grant the requested relief to facilitate the Debtors' timely and successful restructuring, which would inure to the benefit of all creditors and continue the critical supply of prescription medication at more than 1,900 pharmacies, employing more than 6,000 pharmacists in 17 states.

3. This adversary proceeding was avoidable. On October 17, two days after the Debtors filed voluntary petitions for chapter 11 relief, Rite Aid Corporation filed a Suggestion of Bankruptcy in *United States ex rel. White v. Rite Aid Corp.*, Case No. 1:21-CV-1239 (N.D. Ohio) (hereinafter, "**White Litigation**"), a False Claims Act lawsuit against certain of the Debtors arising from the United States's investigation of the sale and marketing of opioid drugs. The Northern District of Ohio subsequently stayed the White Litigation, citing its "inherent power to stay proceedings . . . ." *United States ex rel. White v. Rite Aid Corp.*, Case No. 1:21-CV-1239, Doc. No. 71 at 1 (N.D. Ohio).

4. Immediately, the United States demanded the Debtors agree to the withdrawal of that stay and the entry of an order that explicitly held the automatic stay (11 U.S.C. § 362(a)) did not apply to the White Litigation because the United States's case was within the police and regulatory power exception (11 U.S.C. § 362(b)(4)). In response, the Debtors sought to negotiate a replacement stipulated stay in which the parties would reserve rights as to the application of the automatic stay. While the Debtors and the United States agreed in principle that the White Litigation should be stayed, and even reached an agreement as to the length and details of that stay, the United States rejected any reservation of rights and instead demanded the stay include an explicit finding that the automatic stay did not apply and that the police power exception did.

3

5.      These conditions were unnecessary and likely calculated to generate government-friendly precedent for use against other debtors (perhaps even these Debtors) in subsequent proceedings.  These conditions were also legally unsupported.  Immediately after negotiations broke down on the afternoon of November 14, the United States filed a motion to lift the Northern District of Ohio's stay in the White Litigation within 45 days, and asked the Northern District of Ohio to determine that the automatic stay does not apply to the White Litigation.

6.      To be sure, the Debtors' chief objective was, and remains, to reach consensus with the United States on its various claims in the White Litigation (and elsewhere), in a manner that allows the Debtors to confirm a chapter 11 plan and preserve as many pharmacies and jobs as possible. To that end, the Debtors have been engaging with and providing substantial diligence to the United States for months. Those discussions continue, notwithstanding these filings.

7.      The Debtors bring this adversary proceeding pursuant to Rule 7001(7) of the Federal Rules of Bankruptcy Procedure.  The Debtors seek a preliminary injunction barring the United States's continuation of litigation against the Debtors in the White Litigation until this Court conducts a confirmation hearing on the Debtors' plan of reorganization. The Debtors also seek a declaration that an injunction pursuant to Section 105(a) of the Bankruptcy Code—which authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]"—is necessary to protect the Debtors' ability to effectively pursue its plan of reorganization and to preserve the property of the Debtors' estates.

8.      The Debtors have initiated this adversary proceeding to safeguard and avoid irreparable harm to the Debtors' estates, ensure the integrity of the automatic stay, and enable the Debtors to achieve a successful reorganization.  The Debtors have contemporaneously filed an application requesting the relief sought herein, and a memorandum of points and authorities setting

forth the bases for the requested relief in full. The Debtors incorporate the arguments and authority contained in the application as if set forth fully herein.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334, because this is a civil proceeding arising in or related to the Debtors' chapter 11 cases. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

10. Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

11. The statutory bases for the relief requested herein are Sections 105(a) and 362(a) of the Bankruptcy Code. The automatic stay pursuant to 11 U.S.C. § 362 is a fundamental debtor protection that permits debtors to reorganize while ensuring that all creditors are treated fairly and equitably. The Debtors believe that the automatic stay applies to the White Litigation. However, the Debtors anticipate that the United States will assert the police powers exception to the stay codified in 11 U.S.C. § 362(b)(4). To ensure the benefits of the stay, the Debtors seek an injunction pursuant to Section 105 of the Bankruptcy Code and a declaration that an injunction is in the best interest of the Debtors' estates.

12. The Debtors have commenced this adversary proceeding pursuant to Bankruptcy Rules 7001(7), 7001(9) and 7065.

13. The Debtors have made no prior request for the relief requested herein to this or any other court.

## PARTIES

14. Plaintiff Rite Aid Corporation is a corporation organized under the laws of Delaware with its principal place of business in Philadelphia, Pennsylvania.

5

15. Defendant United States of America is a plaintiff in the White Litigation.

## BACKGROUND

### I. The Debtors' Operations

16. Rite Aid is on the front lines of delivering healthcare services and retail products to millions of Americans daily. Founded in 1962 with a single discount drugstore in Scranton, Pennsylvania, Rite Aid—and its over 45,000 employees—meet the fundamental consumer need for pharmacy services across the country through two divisions. Rite Aid's mission is to connect everyday care, drive down healthcare costs, and promote whole health for life.

17. Rite Aid supports the health of millions of customers through two primary business segments: Retail Pharmacy and Pharmacy Services. On the retail side, Rite Aid employs more than 6,000 pharmacists and operates more than 1,900 retail pharmacies in 17 states. Many of these pharmacies are located in underserved communities where customers do not have multiple viable options to procure necessary medications.

18. In the Retail Pharmacy segment, the Company's highly trained pharmacists offer a wide range of health care services, including dispensing medications. Rite Aid pairs its Retail Pharmacy Segment with its pharmacy benefit manager business. Pharmacy benefit managers act as intermediaries to process prescriptions, help with drug utilization, and control costs for the groups that pay for drugs, such as insurance companies, unions, and large employers.

### II. The White Litigation

19. The White Litigation is a civil FCA litigation brought by several relators—private litigants bringing claims on behalf of the government—who first filed a qui tam complaint under seal in October 2019. The relators asserted causes of action under four separate provisions of the federal FCA and 25 state FCA analogues. The relators allege that Rite Aid submitted "false

claims" to the government when it submitted claims for reimbursement for prescriptions with "red flags" to federal healthcare programs.

20. Relators filed an amended complaint in January 2020, adding new allegations concerning Rite Aid stores in additional states and additional prescribers whose prescriptions allegedly should not have been filled. In January 2021, relators filed a second amended complaint, adding more allegations concerning additional doctors. In March 2023, the United States filed a complaint in intervention, asserting federal FCA claims as well as additional claims for unlawful dispensing under the CSA, and common law claims of payment by mistake of fact and unjust enrichment.

21. The United States alleges that between May 2014 and June 2019, pharmacists at Rite Aid stores in several states and in Washington, D.C. filled prescriptions with "red flags" and that, because those prescriptions had red flags, they were not issued for a legitimate medical purpose and/or were written by prescribers not acting in the usual course of their professional practice and should not have been filled. The United States alleges that Rite Aid pharmacists knowingly dispensed prescription opioids despite being aware of these red flags, and that at the corporate level, Rite Aid disregarded concerns raised by individual pharmacists concerning suspicious prescribers, as well as data and reports that showed problematic prescribing trends and warnings from Rite Aid's wholesale distributor concerning the volume of opioids shipped to certain Rite Aid stores.

22. Rite Aid disputes the United States's allegations and has filed motions to dismiss, which remain pending.[2] On June 12, 2023, Rite Aid filed two motions to dismiss: a motion on the

---

[2] On July 27, 2023, the District Court granted relators' motion to dismiss all non-intervened claims without prejudice pursuant to Federal Rule of Civil Procedure 21. *See United States ex rel. White v. Rite Aid Corp.*, Case No. 1:21-CV-1239, Doc. No. 64 (N.D. Ohio).

merits addressing all of the government's claims, and a jurisdictional motion on behalf of Rite Aid Corporation only. Rite Aid's omnibus motion argued that the complaint does not plausibly allege that Rite Aid pharmacists filled invalid prescriptions, because the presence of a "red flag" does not render a prescription illegitimate. There are countless reasons that a prescription with one of the alleged red flags (*e.g.*, high dosage units, early refills, combinations of medications) are medically necessary and legitimate, and absent allegations of the patient's underlying medical condition, the existence of a red flag alone is insufficient to plausibly allege invalidity.[3]

23. Rite Aid also provided ample training to its pharmacists to assist them in properly dispensing controlled substances, including following a detailed six-step prescription validation process for highly diverted controlled substances. Rite Aid also moved to dismiss on the additional grounds that the United States failed to plausibly allege the essential elements of an FCA violation, including scienter and materiality. Separately, Rite Aid Corporation's jurisdictional motion to dismiss argued that the court cannot exercise personal jurisdiction over Rite Aid Corporation for the CSA and equitable claims, because Rite Aid Corporation—a holding company with no employees—conducted no business in Ohio. The government filed its oppositions to Rite Aid's motions on August 25, 2023, and Rite Aid filed its replies on October 6, 2023.

### III. Discussions with the United States

24. On October 15, 2023, the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code in this Court. The Debtors are operating their business and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

---

[3] *See United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 879 (6th Cir. 2021) (dismissing FCA claims because allegations of high dosage units are insufficient to allege prescriptions are invalid, absent additional allegations of "medical information" about the patient's "medical history and needs").

8

25. On October 17, 2023, the Debtors filed a Suggestion of Bankruptcy in the White Litigation. That same day, the District Court in the Northern District of Ohio stayed the White Litigation indefinitely pursuant to its inherent authority.

26. The United States immediately informed the Debtors that it would seek a modification or retraction of the stay order. In the intervening weeks, the Debtors attempted to negotiate a stipulated stay with the United States. Unfortunately, the parties were unable to reach an agreement. Specifically, negotiations broke down on the afternoon of November 14, 2023, due to a single point of impasse: the United States insisted that any stipulated order include an explicit agreement by the Debtors or finding by the Court that the automatic stay did not apply to the White Litigation or that the United States's claims in the White Litigation were exempt from the automatic stay pursuant to 11 U.S.C. § 362(b)(4), which exempts actions from an automatic stay that enforce a "governmental unit's or organization's police and regulatory power."

27. The Debtors were unwilling to enter into such extraneous legal stipulations regarding a nuanced area of law (*i.e.*, the scope of the police power exception) that were unrelated to whether the White Litigation should be stayed by stipulation — as all parties agreed in principle that it should. The United States refused the Debtors' common-sense proposal that the parties reserve their rights on the issue and agree to a stay under the District Court's inherent power to control its docket.

28. Regrettably, the United States appears to have elected to pursue the establishment of pro-government precedent on the scope of the police power exception rather than agree to a stipulated stay where all parties reserved rights as to the automatic stay. On the evening of November 14, the United States filed a motion in the White Litigation to modify the Northern District of Ohio's October 17 Order staying the White Litigation.

## IV. The United States's Motion

29. Filed minutes after the parties' negotiations regarding a stipulated stay reached an impasse, the United States's motion argued that the White Litigation "is excepted from the automatic stay in title 11 of the United States Code" pursuant to, among other things, the police powers exception of Section 362(b)(4). The United States argued that its time-consuming litigation—seeking a sizable recovery from the estate—should not remain stayed, claiming without support that the enforcement action would not provide the government with a pecuniary advantage over other creditors. The United States, however, conceded that "a brief pause of this litigation could be beneficial." *United States ex rel. White v. Rite Aid Corp.*, Case No. 1:21-CV-1239, Doc. No. 72 at 3 (N.D. Ohio).

30. Through its motion, the United States has asked a non-bankruptcy court to determine whether the automatic stay applies to monetary claims asserted against the Debtors and seeks to continue the prosecution of its claims against the Debtors in short order, giving the Debtors no choice but to bring this adversary complaint.

## COUNT I

## DECLARATORY JUDGMENT

### (28 U.S.C. §§ 2201–02)

31. Rite Aid restates and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

32. An actual legal and substantial controversy exists between the parties regarding whether the White Litigation should proceed in the Northern District of Ohio during the pendency of the Debtors' chapter 11 cases. This controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. The Court's declaration will resolve the substantial uncertainty created by the United States's motion, which not only seeks an

order from the Northern District of Ohio to lift the existing stay but also purports to ask a non-bankruptcy court to decide the scope and application of the automatic stay and police power exception.

33. This Court has the power to declare the rights, status, and legal relations between the Debtors and the United States for purposes of injunctive relief. The United States seeks a monetary judgment against the Debtors in the White Litigation, and as a result, the United States errs in requesting a finding from the District Court that the entirety of its lawsuit against the Debtors is subject to the police power exception and exempted from the automatic stay. More importantly, though, the United States's motion to have the existing stay in the Northern District of Ohio expire prior to a hearing on the Debtors' plan of reorganization risks undermining the Debtors' ability to successfully reorganize and emerge from bankruptcy.

34. Accordingly, the Debtors are entitled to Judgment declaring that an injunction of the White Litigation pursuant to Section 105(a) of the Bankruptcy Code is necessary to protect the Debtors' ability to effectively confirm a plan of reorganization and to preserve the property of the Debtors' estates.

35. Such a declaration will serve the twin interests of judicial efficiency and cost effectiveness by resolving all or nearly all of the substantial and actual controversy between the parties concerning whether the White Litigation should continue.

## COUNT II

### INJUNCTIVE RELIEF

**(11 U.S.C. § 105 and Fed. R. Bank. P. 7065)**

36. Rite Aid restates and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

37. Rite Aid seeks an injunction pursuant to Section 105(a) of the Bankruptcy Code enjoining the United States from continuing its prosecution of the White Litigation until the Court has an opportunity to rule on confirmation of the Debtors' plan of reorganization. Section 105(a) of the Bankruptcy Code authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Relief pursuant to Section 105(a) of the Bankruptcy Code is proper in a chapter 11 case when necessary to protect a debtor's ability to effectively reorganize, to preserve property of the debtor's estate, and to safeguard the interests of their stakeholders. A bankruptcy court may, therefore, in its discretion, stay actions pursuant to Section 105, even where the case may otherwise be exempt from the automatic stay.

38. An injunction is warranted in light of the four traditional injunction factors: (1) likelihood of success on the merits (*i.e.*, likelihood of a successful reorganization); (2) likelihood that the Debtor would suffer irreparable harm if the injunction is not granted; (3) the extent to which the non-movant would suffer irreparable harm if the injunction was issued; and (4) the public interest.

39. First, the Debtors have a substantial likelihood of demonstrating that they will successfully reorganize pursuant to chapter 11. The Debtors' prospects for a successful reorganization are strong. The Debtors have entered bankruptcy in good faith in an effort to permanently, fully, and equitably resolve outstanding claims. The Debtors have sufficient assets to fund the chapter 11 cases. They have the support of a large portion of their existing capital structure, a framework for a Restructuring Support Agreement, and guidance by experienced advisors with a history of successfully reorganizing debtors.

40. Second, the Debtors will suffer irreparable harm absent an injunction. If the United States is not enjoined from continuing to prosecute the White Litigation, the Debtors' reorganization efforts will be threatened. Continuation of the White Litigation during the Debtors' bankruptcy proceedings will frustrate and jeopardize the Debtors' efforts to successfully reorganize by disrupting the Debtors' business, undermining their ability to meet their customers' needs, and impairing the overall value of the Debtors' estates. Moreover, this overhang on a potential reorganization will inject uncertainty into the Debtors' efforts to use the bankruptcy process to market their assets.

41. For example, if the White Litigation proceeds toward judgment, it would: (1) put political pressure on similarly situated government claimants to abandon Plan support in order to meet constituent demands; (2) risk preventing a uniform assessment of claims that is essential for the Debtors to consummate a reorganization; and (3) prevent consensus and a holistic resolution that works for all stakeholders, including the more than 1,000 opioid plaintiffs who are not presently represented by the United States. Allowing certain cases to continue—like the White Litigation—would give nothing other than incentive and opportunity to use those proceedings to undermine these chapter 11 cases. Losing the opportunity to successfully emerge from bankruptcy would be the most profound irreparable harm.

42. Third, the likelihood of irreparable harm to the Debtors in the absence of injunctive relief far outweighs any harm to the United States. The United States will suffer little or no harm if the White Litigation is stayed because even if it obtains a judgment in the White Litigation, it will become an unsecured creditor and be bound to the outcome of the chapter 11 proceedings. Mere delay is insufficient to prevent a court from issuing an injunction, nor does it outweigh the irreparable harm to the Debtors' estates. Moreover, the United States has been willing to agree to

a 45-day stay of the White Litigation (albeit under unacceptable conditions), undermining any argument that any "delay" will result in irreparable harm.

43. The Debtors' requested injunctive relief would simply stay the White Litigation until the Court can consider the Debtors' plan of reorganization, which the Debtors expect to occur as soon as March 2024, mere months from now. The United States, like all other creditors, can rely on the tools of the Bankruptcy Code for further protection.

44. Finally, injunctive relief serves the public interest by facilitating the Debtors' successful reorganization. There is a strong public interest in a successful chapter 11 reorganization, which will both preserve countless jobs and allow Rite Aid's pharmacies to continue serving hundreds of thousands of patients and providing them with vital medication. It also is in the public interest to promote a fair and orderly treatment of government (and non-government) claims by resolving them all in an equitable manner. That fundamental tenet of chapter 11 is undermined if piecemeal litigation like the White Litigation is allowed to proceed, which disallows the resolution of all of the United States's claims, and similarly situated private claims, in a uniform and equitable manner.

45. Accordingly, an injunction barring the United States from continuing its prosecution of the White Litigation is appropriate and essential to the orderly and effective administration of the Debtors' estates and serves the public interest. Therefore, good cause exists for the entry of injunctive relief pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, Plaintiff Rite Aid Corporation respectfully requests that: (i) judgment be entered in favor of Rite Aid, declaring that an injunction of the White Litigation pursuant to Section 105(a) of the Bankruptcy Code—which authorizes the court to

"issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]"—is in the best interest of the Debtors' estates; (ii) the United States be enjoined from continuing the White Litigation until a ruling on confirmation of the Debtors' plan of reorganization; and (iii) for other relief to which the Debtors are entitled.

Dated: November 16, 2023

Respectfully submitted,

By: /s/ Michael D. Sirota
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice*)
Joshua A. Sussberg, P.C. (*pro hac vice*)
Aparna Yenamandra, P.C. (*pro hac vice*)
Ross J. Fiedler (*pro hac vice*)
Zachary R. Manning (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

# **VERIFICATION**

I, JEFFREY S. STEIN, hereby certify and verify under penalty of perjury that:

I am the Chief Executive Officer and Chief Restructuring Officer of Rite Aid Corporation.

I have read the factual allegations contained in the Verified Adversary Complaint and affirm such allegations are true and accurate to the best of my knowledge, information and belief.

Dated: November 16, 2023

*/s/ Jeffrey S. Stein*
Jeffrey S. Stein
Chief Executive Officer
Chief Restructuring Officer
Rite Aid Corporation