**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Brian S. Hermann (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Douglas R. Keeton (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
bhermann@paulweiss.com
chopkins@paulweiss.com
dkeeton@paulweiss.com

**FOX ROTHSCHILD LLP**
Joseph J. DiPasquale, Esquire
Howard A. Cohen, Esquire (admitted *pro hac vice*)
Mark E. Hall, Esquire
Michael R. Herz, Esquire
49 Market Street
Morristown, NJ 07960-5122
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
jdipasquale@foxrothschild.com
hcohen@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

*Co-Counsel to the Ad Hoc Group of Secured Noteholders*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RITE AID CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-18993 (MBK)<br><br>(Jointly Administered) |

**STATEMENT OF THE AD HOC GROUP OF SECURED NOTEHOLDERS
IN SUPPORT OF THE DEBTORS' SCHEDULING SUBMISSION**

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

151738577.1

The Ad Hoc Group of Secured Noteholders[2] respectively submits this statement (the "<u>Statement</u>") in support of the *Debtors' Scheduling Submission* [ECF No. 724] (the "<u>Debtors' Submission</u>")[3] and respectfully states as follows:

**<u>STATEMENT IN SUPPORT</u>**

1. The Debtors operate a complex retail business that faces serious headwinds and runs on thin economic margins.[4] As this Court has heard since the first day hearing, the prospect of a going-concern reorganization may vanish if the cases are delayed and administrative expenses mount beyond levels the Debtors' business can support.[5]

2. The projected administrative expenses in this case are already massive. McKesson alone is estimated to have an administrative claim of over $700 million (without accounting for any superpriority administrative claims that arise pursuant to the McKesson Settlement Order [ECF No. 630]).[6] Additional administrative claims are mounting fast. The Debtors estimate that professional fees alone will accrue at a rate of approximately $8 million per week. The Ad Hoc Group of Secured Noteholders fears that even this number may be substantially understated.

---

[2] As used herein, the term "<u>Ad Hoc Group of Secured Noteholders</u>" has the meaning set forth in the *Verified Statement Pursuant to Bankruptcy Rule 2019 of Ad Hoc Group of Secured Noteholders* [ECF No. 224].

[3] Capitalized terms used but not otherwise defined herein have the meaning set forth in the Debtors' Submission.

[4] *See* Hr'g Tr. at 32:1–8, *In re Rite Aid Corporation*, Case No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 16, 2023) ("[T]he financial and operational headwinds cannot be understated . . . it's created a completely unsustainable situation that needs to be right sized.").

[5] *See id.* at 43:19–25 ("[A]dministrative claims could potentially kill this case. . . This is a retail company. And we acknowledge that there are potential liabilities for various claims, but if people want appropriate treatment, if people want a recovery, it is going to be incumbent upon all of our constituents to come to the table immediately.")

[6] *See Final Order Authorizing and Approving the Settlement Between the Debtors and McKesson Corporation* [ECF No. 630], Exhibit A at 5. As used herein, the terms "<u>DIP Superpriority Claims</u>", "<u>Adequate Protection Superpriority Claims</u>", and "<u>Carve Out</u>" shall have the meanings ascribed to such terms in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [ECF No. 120].

151738577.1

3.      If the Debtors are to achieve a successful going concern reorganization with the support of key stakeholders—a goal the Ad Hoc Group of Secured Noteholders share—these cases must proceed expeditiously and with minimal costs.  For this reason, the Ad Hoc Group of Secured Noteholders is engaged in extensive work and ongoing negotiations with the Debtors and other key stakeholders on the terms of a going concern reorganization through a credit bid or plan of reorganization in conjunction with the ongoing sale process.  But there can be no reorganization if these cases are extended too long and administrative expenses climb too high.  There are simply insufficient resources in this business to fund elongated cases and allow the Debtors to emerge as any form of going concern.

4.      The only way to control these costs is to move these cases forward quickly. Accordingly, it benefits all stakeholders in these cases—including the employees, customers, and vendors that depend on the Debtors remaining a going concern (*i.e.*, many of the Committees' own constituents)—for professionals to focus instead on reaching reasonable resolutions of any outstanding issues on the Debtors' proposed timeline.  The Ad Hoc Group of Secured Noteholders is committed to participating in that process in good faith and with the speed required by the circumstances of these cases.  Experience suggests that the job will always find a way to occupy the time afforded.  If progress is being made, timelines can always be modified at the appropriate time, but it is virtually impossible to shorten timelines that have already been extended.[7]

5.      For the foregoing reasons, the Ad Hoc Group of Secured Noteholders supports the Debtors' efforts to progress these cases on their proposed timeline and opposes the Committees'

---

[7] The Ad Hoc Group of Secured Noteholders shares in, and reiterates, the Debtors' concern with respect to any further delay of the confirmation timeline in light of the maximum 210-day time period contemplated by Section 365(d)(4) of the Bankruptcy Code.  *See Debtors' Submission* at ¶ 2, 5.

efforts to insert delay that will increase costs and hence imperil a going concern restructuring coupled with a sales process.

## RESERVATION OF RIGHTS

6. The Ad Hoc Group of Secured Noteholders reserves the right to supplement this Statement, as well as respond to any supplemental pleadings filed in connection with the Debtors' Submission.

Dated: November 20, 2023

/s/ Joseph J. DiPasquale
Joseph J. DiPasquale, Esquire
**FOX ROTHSCHILD LLP**
Howard A. Cohen, Esquire (admitted *pro hac vice*)
Mark E. Hall, Esquire
Michael R. Herz, Esquire
49 Market Street
Morristown, NJ 07960-5122
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
hcohen@foxrothschild.com
jdipasquale@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

-and-

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Brian A. Hermann (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Douglas R. Keeton (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
bhermann@paulweiss.com
chopkins@paulweiss.com
dkeeton@paulweiss.com

*Co-Counsel to the Ad Hoc Group of Secured Noteholders*

151738577.1