CERTILMAN BALIN ADLER & HYMAN, LLP
Thomas J. Monroe, Esq.
New Jersey ID #005782001
90 Merrick Avenue
East Meadow, New York 11554
Telephone: (516) 296-7000
Facsimile: (516) 296-7111

Hearing Date: December 14, 2023
Time: 10:00 a.m.

*Attorneys for 3214 Thirty First Street LLC*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------X

In re:

RITE AID CORPORATION, et al.,

Debtors.[1]

Chapter 11
Case No. 23-18993 (MBK)

(Jointly Administered)

-----------------------------------------------------------------X

**SUPPLEMENT TO OBJECTION OF 3214 THIRTY FIRST STREET LLC TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING (A) REJECTION OF CERTAIN UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY AND (B) ABANDONMENT OF ANY PERSONAL PROPERTY, EACH EFFECTIVE AS OF THE REJECTION DATE AND (II) GRANTING RELATED RELIEF**

3214 Thirty First Street LLC, a New York limited liability company, as successor in interest to Solil Management Corp. ("**Landlord**"), by its attorneys, Certilman Balin Adler & Hyman, LLP, hereby supplements its prior objection [ECF Doc. No. 519] (the "**Landlord Objection**") to Debtor's Motion for Entry of an Order (i) Authorizing (A) Rejection of Certain Unexpired Leases of Non-Residential Real Property and (B) Abandonment of any Personal Property, Each Effective as of the Rejection Date and (ii) Granting Related Relief [ECF Doc. No.

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at http://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtor's service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Foor, Philadelphia, Pennsylvania 19112.

1

25] ("**Rejection Motion**"), which seeks to reject a lease (the "**Lease**") between the Landlord and the Debtor[2] for a building and premises located at 32-14 31st Avenue, Astoria, New York (the "**Premises**") as well as the reject a sublease for the Premises (the "**Sublease**") that the Debtor entered into on or about June 21, 2023 with 32-14 31st Food LLC (the "**Subtenant**"), and respectfully represents as follows:

1. The Rejection Motion seeks to have the Lease rejected effective as of

> the *later of* (a) the Rejection Date set forth in Schedule 1 or (b) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing, with email being sufficient, of the Debtors' surrender of the premises *and* (i) turning over keys, key codes, and security codes, if any, to the affected landlord or (ii) notifying the affected landlord in writing, with email being sufficient, that the keys, key codes, and security codes, if any, are not available, but that the landlord may rekey the leased premises[.]

Rejection Mot. ¶ 11 and Proposed Order ¶ 2 (emphasis added). The Rejection Date listed in Schedule 1 to the Rejection Motion is October 15, 2023. The Debtor sent a written notice dated October 16, 2023 of its intent to surrender possession of the Premises of the Debtor, a copy of which is annexed to the Landlord Objection as Exhibit C, which states in relevant part that

> . . . As of the date of this letter, the Company surrenders possession of the above referenced property.
>
> If practicable, the Company has returned the keys to you by depositing the keys in the on-site lock box. The lock box code is NA. In any event, the Landlord is permitted to rekey the Premises and Tenant has relinquished control of the Premises to the Landlord.

*See* Oct. 16 Letter, Ex. C to Landlord Objection. However, such attempted surrender was rejected by the Landlord because only months prior to the Petition Date it subleased the Premises to the Subtenant who is now in possession of the Premises. *See* Landlord Obj. Ex. D. Accordingly, the Debtor is unable to deliver to the Landlord the keys, key codes, and security codes for the Premises,

---

[2] The applicable Debtor in this case is Genovese Drug Stores, Inc., which is the tenant under the Lease.

2

and the Landlord cannot go in and rekey the Premises at this time. The Debtor's inability to comply with the terms of its own Rejection Motion and proposed Order prevents a rejection of the Lease. Notwithstanding the sublease, the Debtor still maintains dominion and control over the Premises by and through the Sublease. A copy of the Sublease is annexed to the Landlord Objection as Exhibit B.

2. Entry into the Sublease does not relieve the Debtor from its obligations under the Lease, particularly the requirement to pay rent to the Landlord on a monthly basis. *See* Lease 14, 25. Notwithstanding that ongoing obligation, the Debtor entered into the Sublease granting the Subtenant free rent for the first year and rent rates thereafter substantially below its own rent obligations under the Lease. *See* Sublease 7. Between the entry into the Sublease and September 2023, the Debtor did make rent payments to the Landlord. It has paid nothing since.

3. The base rent owed under the Lease is currently $730,236.00 per year, which is $60,853.00 per month. The Landlord advises that it has not received rent under the Lease for the months of October, November and December 2023, and is currently owed a total of approximately $182,559. The Landlord will be filing a separate motion to compel payment of administrative rent by the Debtor.

4. What makes this case more egregious is that, upon information and belief, the Debtor knew that it was closing this location in advance of its bankruptcy filing and entered into the Sublease anyways with a plan to seek rejection effectively on day one of its case. Rather than surrender the premises to the Landlord before subletting, it unilaterally chose to enter into the Sublease within months of the bankruptcy filing. Upon information and belief, in other instances, the Debtor or its affiliate closed down stores prior to the Petition Date without saddling the location with a last-minute subtenant. *See, e.g.*, Store No. 142 (Glen Cove Shopping Center). It seems

apparent that at the time the Debtor entered into the Sublease, it knew it had an obligation to pay because it continued to pay the Landlord through September 2023. However, the terms of the Sublease are also wildly divergent from the terms of the Lease. The Sublease provides for the payment of zero ($0.00) base rent during its first twelve months, with the second-year base rent at $475,000.00 annually, $39,583.33 per month, which is approximately 35% less than the current rent under the Lease. That alone calls into question the Debtor's motivations and intent. Such a tactic should not be condoned or approved by this Court.

5. While the Bankruptcy Code provides a procedure for a debtor to replace itself with a new tenant for a landlord under an assumption and assignment of a lease (*see* 11 U.S.C. § 365(f)), rejection of the lease requires the Debtor to return possession to its landlord. *See* 11 U.S.C. § 365(d)(4). Because the Debtor handed over possession of the Premises to the Subtenant while maintaining dominion and control over the Premises through the Sublease, the Debtor is unable to deliver possession of the Premises back to the Landlord. Unless and until possession is returned to the Landlord, the Debtor cannot be permitted to reject the Lease and must continue to pay rent to the Landlord. Moreover, any retroactive rejection of an unexpired lease of non-residential real property is only permitted if equitable. *See In re Chi-Chi's Inc.*, 305 B.R. 396, 399 (Bank. D. Del. 2004).[3]

6. The equities in this instance favor the Landlord. In this case, the Debtor could have left the Premises vacate before filing, but instead entered into a long-term sublease with the Subtenant on terms that the Debtor, upon information and belief, never intended to perform once it filed for bankruptcy, i.e., pay rent on a lease it intended to reject. Now, the Landlord, without

---

[3] The Debtor cites in the Rejection Motion (*see* Rejection Mot. ¶ 24) to several cases in this District where retroactive rejection was apparently allowed, but they are orders entered in cases, not decisions of a court and, therefore, offer no context and respectfully have no application to the actual facts of this particular attempted rejection.

consent, has the Subtenant in the Premises making structural and other changes to the building, with no one paying rent to the Landlord. Moreover, by allowing the Subtenant to entrench itself in the Premises, the Debtor has effectively inserted itself into any negotiations in the event the Landlord seeks to consider the Subtenant for a direct tenancy. Moreover, the Debtor cannot even comply with the parameters that it seeks to impose for the rejection of the Lease. This problem is entirely of the Debtor's making and could have been avoided entirely. That it should now incur administrative costs as a result is insufficient reason to permit the rejection of the Lease.

7. The Landlord is not in contractual privity with the Subtenant, has not recognized and does not recognize the Subtenant, and reserves any and all rights, claims and defenses to the Subtenant's current possession and use of the Premises. The Landlord has had discussions with the Subtenant and may have further discussions about a possible direct tenancy, but the Landlord is not required under the Bankruptcy Code or applicable non-bankruptcy law to recognize the Subtenant or offer a direct lease to it. Any reference to the Subtenant and/or the Sublease in this or any other filing with the Court or anywhere else is not and cannot be construed or interpreted as a waiver of any such rights, claims and defenses. With regard to any claim by the Subtenant of having rights in the Premises upon the rejection of the Lease and Sublease, any such rights are expressly limited to whatever non-bankruptcy law provides (which the Landlord believes will be none). *See* 11 U.S.C. § 363(h)(1)(A(ii)) (stating that a lessee's rights under this provision are only "to the extent that such rights are enforceable under applicable nonbankruptcy law."). Regardless, this Court cannot permit a rejection process to be converted into a de facto assumption process whereby the Landlord is somehow stuck with an occupant in its Premises not of its choosing.

8. This situation is almost on point with one addressed in *In re Amicus Wind Down Corp.*, No. 11-13167 (KG), 2012 WL 604143 (Bankr. D. Del. Feb. 24, 2012. The biggest

difference is that in that case the sublease was entered into years before the bankruptcy case (*see id.* *1, not within months of filing. In that case, the court denied a debtor's rejection of a lease until such time as that debtor could deliver possession of the premises to the landlord. *Amicus Wind Down*, at *3. There, the debtor was governed by almost identical language in its rejection procedures (*see id.* at *2) as the Debtor has in the Rejection Motion in this case, which requires the delivery of possession, i.e., the delivery of keys and security codes or the legal right to rekey the Premises. The Debtor in this case is unable to provide either form of delivery because its Subtenant is in possession of the Premises.

9. Moreover, it appears that both the Debtor and the Subtenant may be in violation of the Lease and/or the Sublease. Although the Lease may permit the Debtor to sublet the Premises, it "shall nevertheless remain liable to the Landlord for the performance of Tenant's obligations under this lease, if any assignee fails to perform same." Lease, Sec. 14. Section 16 of the Lease requires the tenant to "comply with all applicable requirements of governmental authorities having jurisdiction and shall obtain all necessary permits for such purposes" for installing, maintaining and or replacing signage "in, on, over or in front of the [Premises]." *Id.*, Sec. 16. The tenant of the Premises is required to provide proof of contractually obligated types and amounts of insurance coverage. *Id.*, Sec. 18. The Lease further requires the tenant of the Premises to "at its own cost and expense, observe and comply with all laws, ordinances, requirements, orders, directives, rules and regulations of the federal, state, county and city governments and all other appropriate governmental authorities having jurisdiction over the [Premises] which are required to be complied with" while the Lease is in effect. *Id.*, Sec. 11. Any structural changes to the building on the Premises require "Landlord's written consent which shall not be unreasonably withheld or delayed." *Id.*, Sec. 10(b).

10. With regard to signage, the Subtenant must (i) follow the terms of the Lease regarding signs; (ii) follow shopping center sign criteria; (iii) all governmental regulations; and (iv) "submit plans for said signage to [the Debtor]" for pre-approval. *See* Sublease, ¶ 9. Upon information and belief, the Subtenant has not done so regarding its signage.

11. Subsequent to the filing of the Landlord Objection, the Landlord's agent made a visit to the Premises and reported the following concerning the condition of the Premises:

1. Entire store built out without required NYC DOB permits, architectural plans, or engineering plans.
2. Electrical ( Major Hazard: main electric service is only 600A, I'm sure they are overloaded, engineer must certify otherwise):
   1. New lighting
   2. Checkout counters
   3. Cooking equipment
   4. Refrigeration power
   5. HVAC power
   6. Refrigerated trailer in parking lot plugged in
3. Exterior Signage installed without permits
4. Plumbing:
   1. New sinks
   2. New bathroom fixtures
   3. Water lines for produce
   4. New gas fired kitchen equipment in basement with hood (major hazard and illegal)
5. New HVAC units on roof
6. New refrigeration equipment:
   1. Refrigerated isles for produce.
   2. Freezer units
   3. Walk-in freezers on first floor and basement
   4. Compressor rack in basement for all the equipment
7. Fire alarm disconnected (major hazard)
8. Could not confirm status of fire sprinkler system and no inspection tags
9. Elevator not being inspected.
10. Trip hazards throughout space

Additionally, Landlord has been advised by its agent that the Subtenant has added an additional entryway into the building which constitutes a structural change. Several of the foregoing appear to violate both provisions of the Lease and the Sublease.

7

12. On November 21, 2023, the Landlord's counsel did receive an email, a copy of which is annexed hereto as Exhibit "A," from the Subtenant's counsel asserting that a Department of Buildings inspector visited the Premises on November 20, 2023, and purportedly found no violations. The Subtenant also disputes that a kitchen is present in the basement of the Premises. The Subtenant will also apparently be engaging an architect to file appropriate plans and provide same to the Landlord and the Debtor.

13. The Debtor should not be allowed to reject the Lease under its own procedures which it is not even in compliance with until the Subtenant is removed.

### RESERVATION OF RIGHTS

14. Landlord reserves the right to amend and/or supplement its Objection to assert any additional objections regarding the rejection of the Lease for the Premises.

**WHEREFORE**, the Landlord requests that the Court sustain this Objection, deny the Rejection Motion as it pertains to the lease for the premises located at 32-14 31st Street, Astoria, New York, and grant such other, further and related relief as the Court deems just, proper and equitable.

Dated: East Meadow, New York
December 7, 2023

**CERTILMAN BALIN ADLER & HYMAN, LLP**
Attorneys for 3214 Thirty First Street LLC

By: /Thomas J. Monroe
Thomas J. Monroe, Esq.
New Jersey Attorney ID #005782001
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
(516) 296-7000