| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br>CERTILMAN BALIN ADLER & HYMAN, LLP<br>Thomas J. Monroe, Esq.<br>New Jersey Attorney ID #005782001<br>90 Merrick Avenue, 9th Fl<br>East Meadow, NY 11554<br>Telephone: (516) 296-7000<br>Fax: (516) 296-7111<br>tmonroe@certilmanbalin.com<br><br>Attorneys for 3214 Thirty First Street LLC | Hearing Date: January 29, 2024, at 10:00 a.m.<br><br><br><br><br><br><br><br><br><br><br>Related to: Doc. Nos. 25, 519, 549, 1027, 1072, 1559, 1603 |
| In Re:<br><br>RITE AID CORPORATION, et al.<br><br>Debtors[1]. | Case No. 23-18993 (MBK)<br><br>Chapter 11<br><br>(Jointly Administered) |

**LANDLORD'S RESPONSE TO SUBTENANT 32-14 31ST FOOD'S (I) SUPPLEMENTAL OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDER, AUTHORIZING, AMONG OTHER THINGS, REJECTION OF CERTAIN PRIME LEASE AND CERTAIN SUBLEASE RELATING TO SUBLEASED SPACE AT 32-14 31ST STREET, ASTORIA, NEW YORK, (II) STATEMENT IN CONNECTION WITH PRIME LANDLORD'S MOTION FOR PAYMENT OF ADMINISTRATIVE RENT FROM DEBTORS, AND (III) REQUEST FOR SHORT ADJOURNMENT OF "VIRTUAL" HEARING SCHEDULED FOR JANUARY 29, 2024**

TO:   THE HONORABLE MICHAEL B. KAPLAN
      CHIEF UNITED STATES BANKRUPTCY JUDGE

3214 Thirty First Street LLC (the "Landlord"), the counterparty to the unexpired lease of non-residential real property (the "Lease") with Genovese Drug Store, Inc. (the "Debtor"), one of the above-captioned debtors and debtors in possession, for non-residential real property located at

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claim and noticing agent at . The location of Debtor Rite Aid Corporation's principal place of business and the Debtor's services address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

8225270.3

3214 31st Street, Astoria, New York (the "Premises") by and through its undersigned counsel, hereby submits this response to the supplemental objection, which supplemented its prior objection [ECF Doc. Nos. 549, 1559] (the "Subtenant Rejection Opposition") filed by 32-14 31st Food LLC (the "Subtenant") in response to the *Debtor's Motion for Entry of an Order (i) Authorizing (A) Rejection of Certain Unexpired Leases of Non-Residential Real Property and (B) Abandonment of any Personal Property, Each Effective as of the Rejection Date*, and states as follows:

1. The Landlord is the victim in this case. It has not been paid any of the rent or real estate taxes owed by the Debtor under the Lease during this chapter 11 case which totals no less than $368,087.65 as of today. Accordingly, the Debtor is in default under the Lease for non-payment of rent and additional rent. Not only has the Landlord's Premises been substantially altered by the Subtenant, but such alterations were also done without seeking and obtaining the necessary permits and other approvals necessary from the appropriate governmental authorities or the Landlord. As such, the Landlord believes that the Debtor and the Subtenant are in default of the Lease based on multiple violations of applicable terms of the Lease concerning such matters. Such defaults have and will result in additional damages to the Landlord of approximately $411,020.00. *See* Declaration of David Malanga [ECF Doc. No.   ] ¶ 8. Landlord also believes that the Debtor should notify the Subtenant in writing of any and all defaults of the Sublease which exist. Moreover, the Landlord has never consented or otherwise agreed to recognize the Subtenant or the Sublease. It looks to the Debtor which is the only entity in which it is in privity under the Lease.

2. Additionally, although the Debtor seeks to reject the Lease, it cannot do so unless and until it can deliver the Premises to the Landlord free of any occupants, including the Subtenant.

2

8225270.3

The Landlord does agree with the Subtenant that the Debtor should not be permitted to reject the Lease at this time. *See* Subtenant Rejection Opposition ¶ 4. The Landlord separately objects to the rejection of the Lease on its own grounds based in substantial part on the current occupancy of the Premises by the Subtenant. *See* ECF Doc. Nos. 519 and 1027.

3. Accordingly, the Debtor should perform under the Lease, including payment of administrative rents and additional rents, until the Premises can be actually surrendered to the Landlord free of occupants.

4. It is actually quite shocking that the Debtor entered into the Sublease at all, particularly on such negative terms. By the Debtor's and its affiliates' own admission, they have been engaged in a multi-year endeavor to close underperforming stores in an attempt to reduce operating expenses. *See Disc. Stmt.* [ECF Doc. No. 43], p. 39. With regard to the Premises, the Debtor closed and decommissioned that location several years ago with it being dark well in advance of the Sublease, with the Debtor paying a substantial amount of rent each month. However, it is mind-boggling that the Sublease provides for no rent to be paid for the first year, and approximately 35% less rent per month below the rent reserved in the Lease starting in the second year. Moreover, the Sublease does not require the Subtenant to pay any of the real estate taxes which the Lease requires to be paid.

5. That means that at the time the Debtor entered into the Sublease it did so in polar opposition to its attempts to "rationalize their retail pharmacy footprint" and reduce its operating expenses. Instead of letting the Premises remain dark and return it to the Landlord shortly after filing for bankruptcy like it did with so many other buildings, it unfathomably chose to enter into

3

the Sublease which clearly does nothing more than cause and increase damages to the Landlord including having to respond to certain of the Subtenant's arguments.

6. This Response addresses the Subtenant's assertion of any alleged rights it may have under Section 363(h) of the Bankruptcy Code in the event the Court grants the Debtors' request to reject the Lease. The Subtenant brazenly asserts that it should be able to stay in possession of the Premises under the terms of its Sublease (*see, e.g.*, Sub. Rej. Opp.¶ 13, 24 28). The Landlord is not a party to that document, did not participate in nor was it consulted about the terms and has not approved, ratified or otherwise recognized the legitimacy of that document. Such document as grossly deviates from the terms of the Lease.

7. Unless and until either the Lease or the Sublease are rejected, the Subtenant has no Section 363(h) rights as that provision is only triggered upon a rejection of the Sublease. Such rejection will only occur if the Court grants the rejection of the Sublease, or grants the rejection of the Lease. Second, any rights under the Sublease that might be retained by the Subtenant under Section 363(h) post-rejection are expressly limited "to the extent such rights are enforceable under applicable nonbankruptcy law." 11 U.S.C. § 365(h)(1)(A)(ii). As such, if nonbankruptcy law does not permit a subtenant to continue its possession of a premises after the prime lease has been terminated, Section 365(h)(1)(A)(ii) does not and will not give any right to possession.

8. Almost all of the cases cited by the Subtenant in support of its Section 365(h) position are inapposite to the undisputed facts of this case. Those cases involved a sale, rather than a rejection, of a prime lease under Sections 363(b) and (f) and addressing if any Section 365(h) rights survived such sale. *See In re Haskel, L.P.*, 321 B.R. 1 (Bankr. D. Mass. 2005) (addressing sale of a lease free and clear with no discussion of the effects of a rejection of lease and impact on

4

subleasee);; *In re Zota Petroleums, LLC,* 482 B.R. 154 (Bankr. E.D. Va. 2012) (involving sale of lease, not rejection of prime lease, when evaluating any continued rights of subtenant after such sale); *In re Samaritan Alliance, LLC*, No. 07-50735, 2007 WL 4162918 (Bankr. E.D. Ky. Nov. 21, 2007 (ruling on subtenant's continued rights after sublease rejected but prime lease sold, not rejected); *IDEA Boardwalk v. Revel Ent. Group (In re Revel AC, Inc.)*, 532 B.R. 216 (Bankr. D. N.J. 2015) (resolving post-sale rights of subtenant after sale, not rejection, of prime lease). The court in *In re Overseas Shipholding Group, Inc.*, Case No. 12-20000, 2015 WL 3475727 (Bankr. D. Del. June 1, 2015) resolved a rejection damage claim of subtenant that elected not to remain in possession after rejection. The Subtenant's citation to *Elephant Bar Restaurant* does not support its contention that the Bankruptcy Code would allow it to remain in possession post-rejection. Rather, that case supports the clear language of the Code that if a subtenant has any rights at all, they are "only 'to the extent that such rights are enforceable under applicable nonbankruptcy [ie., Colorado state] law.'" *In re Elephant Bar Restaurant, Inc., 195 B.R. 353, 357 (Bankr. W.D. Penn. 1996).* Subtenant's request for adequate protection is simply not supported by the case law or the Bankruptcy Code.

9. Furthermore, the Subtenant's attempt to analogize lease rejections to the rejection of intellectual properties agreements is wholly unrelated to this case because, among other reasons, none of the cases cited in the Subtenant Supplemental Objection involved a superior license being rejected with a determination of the effect such rejection had on a sublicense under a different section of the Bankruptcy Code. *See* Sub. Supp. Obj. ¶ 29.

10. By asserting that it has the right to stay in possession notwithstanding a rejection of the Lease, the Subtenant is seeking an end-run around the requirements that must be satisfied to

5

8225270.3

assign a lease to a new tenant. If a debtor desires to replace itself with another party as the tenant in its non-residential real property location, it must assume, not reject, the lease. *See* 11 U.S.C. § 365(f)(2)(A) ("The trustee may assign an…unexpired lease of the debtor only if…the trustee assumes such…lease in accordance with the provisions of this section[.]" That process is not occurring here. To allow the Subtenant to remain because of Section 365(h) would render the entire lease assumption and assignment process superfluous.

11. The Landlord notes that references by the Subtenant to the Landlord's, composition, size or value and any discussion of commercial rental markets raised in the Subtenant Rejection Opposition are immaterial to the matters before the Court. Contrary to Subtenant's statement buried in footnote 3 of the Subtenant Supplemental Objection, neither Landlord nor any of its business representatives ever threatened Subtenant's principal or anyone else associated with the Subtenant in any way, shape or form. In fact, Landlord believes that if discovery would have gone forward, it would be found that the opposite was true and it was Subtenant's principal that threatened the Landlord's business representative.

12. Furthermore, Landlord disputes Subtenant's characterization concerning any discussions with the Landlord about the Subtenant remaining in the Premises under a direct lease or otherwise. The Landlord has received, reviewed and responded to the Subtenant each time a proposal has been made. Those discussions have focused on the monthly rent, without addressing the substantial real estate taxes on the Premises that are a part of the Lease of approximately $300,000 per year and almost no discussion at all about the substantial alterations. The Landlord also respectfully submits that there is no requirement that it acknowledge or accept the Subtenant in its current state as a subtenant or offer it a direct lease in the event the Lease is rejected and the

8225270.3

Premises is returned to the Landlord vacant. From the Landlord's point of view someone entered onto its Premises and proceeded to make substantial alterations thereto without proper permission, the alterations continue to violate applicable law, and the Subtenant wants to modestly increase its already sweetheart deal with the Debtor. If any bad faith has occurred here in any discussions between the Landlord and the Subtenant, it falls on the Subtenant and its principal.

13. The Landlord respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Landlord relies is set forth in the Request and does not raise any novel issues of law.

**WHEREFORE**, the Landlord respectfully requests that the Court sustain that part of the Subtenant Rejection Opposition and its own opposition and deny the Rejection Motion, and to the extent the Subtenant is seeking relief under Section 365(h) that the Court deny such requested relief as well, and grant such other relief as is just and proper.

Dated:   East Meadow, New York
         January 26, 2024

                                        CERTILMAN BALIN ADLER & HYMAN, LLP.
                                        Attorneys for 3214 Thirty First Street LLC

                                        By:  /s/Thomas J. Monroe_____
                                             Thomas J. Monroe, Esq.
                                             New Jersey Attorney ID #005782001
                                             90 Merrick Avenue
                                             East Meadow, NY 11554
                                             (516) 296-7000

8225270.3