| In re: RITE AID CORPORATION., *et al* Debtors.[1] | Chapter 11 Case No. 23-18993 |
|---|---|

Order Filed on January 29, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY GUGGENHEIM SECURITIES, LLC AS INVESTMENT BANKER EFFECTIVE AS OF THE PETITION DATE, (II) MODIFYING CERTAIN TIME-KEEPING REQUIREMENTS, AND (III) GRANTED RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twelve (12) is **ORDERED**.

**DATED: January 29, 2024**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Upon consideration of the application (the "Application")[2] of the Debtors for entry of an order (this "Order") authorizing the Debtors to retain and employ Guggenheim Securities, LLC ("Guggenheim Securities") as their investment banker, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, effective as of the Petition Date, pursuant to the terms of the Engagement Letter, all as more fully described in the Application; and the Court being satisfied, based on the representations made in the Application and the Hayes Declaration, that Guggenheim Securities does not hold or represent any interest adverse to the Debtors' estates and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided pursuant to the Local Rules; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application; and objections (if any) to the Application having been withdrawn, resolved or overruled on the merits; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and this Court having found that sufficient cause exists for the relief

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

set forth herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is GRANTED as set forth herein.

2. Pursuant to section 327(a) and 328(a) of the Bankruptcy Code, the Debtors are authorized to retain and employ Guggenheim Securities as their investment banker in these chapter 11 cases, pursuant to the terms and subject to the conditions set forth in the Engagement Letter (of which a copy of the Engagement Letter is attached hereto as Exhibit 1) to the extent approved herein.

3. Notwithstanding anything to the contrary in the Application or the Engagement Letter, in no event shall the aggregate amount of Monthly Fees, Restructuring Transaction Fees, Financing Fees, Sale Transaction Fees or any other such fees actually paid to Guggenheim Securities under the Engagement Letter exceed an amount equal to the Maximum Fee Cap (as defined below); provided, that, the foregoing Maximum Fee Cap shall not include or be applied to any Monthly Fee paid on account of August 2024 and any subsequent calendar month occurring during the period of Guggenheim Securities' engagement under the Engagement Letter. The term "Maximum Fee Cap" shall refer to $36,000,000 or, in the event of an Alternative Scenario (as defined below), $38,500,000; provided, that, to the extent that, in connection with these chapter 11 cases, no Plan is confirmed and no Transaction (other than the PBM Business Chapter 11 Sale) is consummated, whereby, directly or indirectly, any material portion of any of the Debtors' businesses or assets continues to be operated by one or more reorganized Debtors on a going forward basis or is otherwise sold or transferred to, or otherwise combined with, any one or more Acquirors (whether through a credit bid or otherwise) (any such Plan or Transaction, a "Going

Concern Transaction"; and any Restructuring Transaction or Sale Transaction (other than the PBM Business Chapter 11 Sale) that is not a Going Concern Transaction shall be referred to herein as an "Other Transaction"), then the "Maximum Fee Cap" shall refer to $30,000,000 or, in the event of an Alternative Scenario, $32,500,000. As used herein, (A) the term "Alternative Scenario" refers to a situation where none of the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants or the Ad Hoc Group of Secured Noteholders (as defined below) timely files or asserts with this Court a formal written objection to any Going Concern Transaction or Other Transaction, as applicable, or, where, if any such formal written objection is timely filed with this Court, such formal written objection is either withdrawn or consensually resolved on or prior to such time of such Transaction's approval by the Court, and (B) the term "Ad Hoc Group of Secured Noteholders" refers to that certain *ad hoc* group of holders of certain of the Debtors' indebtedness represented in these chapter 11 cases by Paul, Weiss, Rifkind, Wharton & Garrison LLP and Fox Rothschild LLP and identified in various statements and filings before this Court as the "Ad Hoc Group of Secured Noteholders."

4. Except to the extent set forth herein, the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and the Debtors are authorized to pay, reimburse, and indemnify Guggenheim Securities in accordance with the terms and conditions of, and at the times specified in, the Engagement Letter.

5. For the avoidance of doubt, notwithstanding anything to the contrary in the Engagement Letter:

(a) in determining the amount of any Restructuring Transaction Fee payable on account of any Restructuring Transaction effected in connection with these chapter 11 cases, clause (y) of Section 4(b)(i) of the Engagement Letter shall be disregarded, and, with

respect to any such Restructuring Transaction, the amount of the Restructuring Transaction Fee shall equal 0.75% of the Aggregate Restructuring Value relating to such Restructuring Transaction;

(b) in connection with any Debt Financing consisting of an "exit financing" ("Exit Financing") effected in connection with these chapter 11 cases, an amount equal to 100% of any Rolled Exit Debt Fee Payment (as defined below) actually paid to Guggenheim Securities hereunder shall be credited (but only once) against any Restructuring Transaction Fee or Sale Transaction Fee that thereafter or substantially concurrently therewith becomes payable pursuant to Sections 4(b) or 4(d) of the Engagement Letter (it being understood that no amount of any Rolled Exit Debt Fee Payment may be credited against any other fee payable hereunder). As used herein, the term "Rolled Exit Debt Fee Payment," with respect to any Financing Fee paid on account of an Exit Financing, refers to such portion of such fee (if any) attributable to such amount (if any) of Rolled Over Debt issued under such financing; and

(c) no Sale Transaction Fee shall be payable to Guggenheim Securities solely on account of the sale or other monetization of the Debtors' interests in that certain MedImpact Seller Financing (or the sale of any similar seller financing in connection with these chapter 11 cases) as described and defined in the Debtors' *Motion for Entry of an Order (I) Approving Entry into the MedImpact Seller Financing Documents, (II) Approving the Private Sale of the Debtors' Interest in the MedImpact Seller Financing Free and Clear of Liens, Claims, Encumbrances, and Interests and (III) Granting Related Relief* [Docket No. 643].

6. Guggenheim Securities shall file applications for allowance of compensation and reimbursement of expenses pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders and procedures of this Court; *provided* that the fees, expenses and other compensation payable to Guggenheim Securities pursuant to the Engagement Letter shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except, notwithstanding any provisions to the contrary in this Order, the U.S. Trustee shall retain the right and be entitled to object to Guggenheim Securities' fees, expenses and other compensation based on the reasonableness standard provided for in section 330 of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Guggenheim Securities' fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Guggenheim Securities' fees.

7. In the event that, during the pendency of these chapter 11 cases, Guggenheim Securities requests reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in Guggenheim Securities' fee applications, and such invoices and time records shall be in compliance with the Local Rules, the U.S. Trustee Guidelines, and the standards of section 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy

Code. Notwithstanding the foregoing, Guggenheim Securities shall only be reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent permitted under applicable law; *provided*, *however*, that Guggenheim Securities shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any of Guggenheim Securities' fee applications in these chapter 11 cases.

8. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Guggenheim Securities and the structure of Guggenheim Securities' compensation pursuant to the Engagement Letter, Guggenheim Securities and its professionals shall be granted a limited waiver of the information-keeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-1, the U.S. Trustee Guidelines, and any otherwise applicable orders or procedures of the Court in connection with the services to be rendered pursuant to the Engagement Letter, and shall instead be required only to maintain time records of its services rendered for the Debtors in half-hour increments.

8. Notwithstanding anything to the contrary in the Application or any of its attachments (including the Hayes Declaration and the Engagement Letter), no amounts shall be paid to Guggenheim Securities absent an order of this Court approving a fee application filed on notice to parties in interest in these chapter 11 cases under the procedures set forth in any order entered by the Court in these chapter 11 cases allowing for interim compensation, except that the Debtors are authorized to pay the $200,000.00 Monthly Fee to Guggenheim Securities each month when required under the Engagement Letter without a prior fee application; *provided*, however, that Guggenheim Securities shall file monthly fee statements and interim fee applications pursuant to the deadlines and other procedures specified for monthly fee

statements and interim fee applications set forth in any order entered by the Court in these chapter 11 cases allowing for interim compensation, except as otherwise expressly set forth in this Order. All fees paid to Guggenheim Securities by the Debtors pursuant to the Engagement Letter during these chapter 11 cases are subject to disgorgement unless and until they are approved by the Court on a final basis, after submission of Guggenheim Securities' final fee application.

9. The indemnification, contribution, and reimbursement provisions included in the Indemnification Provisions annexed to the Engagement Letter are approved, subject during the pendency of these chapter 11 cases to the following modifications:

a. Guggenheim Securities shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter, unless the indemnification, contribution or reimbursement is approved by the Court;

b. notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify or provide contribution or reimbursement to Guggenheim Securities for any claim or expense to the extent that it is either: (i) judicially determined (the determination having become final) to have arisen from Guggenheim Securities' bad faith, actual fraud, gross negligence or willful misconduct, (ii) for a contractual dispute in which the Debtors allege breach of Guggenheim Securities' obligations under the Engagement Letter unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled without the Debtors' consent prior to a judicial determination as to Guggenheim Securities' gross negligence, actual fraud, willful misconduct, bad faith or self-dealing but determined by this Court, after notice and a hearing, to be a claim or expense for which Guggenheim Securities should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order;

c. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Guggenheim Securities believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of

defense costs, Guggenheim Securities must file an application before this Court and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Guggenheim Securities for indemnification, contribution, or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify or make contributions or reimbursements to Guggenheim Securities. All parties in interest shall retain the right to object to any demand by Guggenheim Securities for indemnification, contribution or reimbursement in accordance with the terms of this Order; and

d. any limitation of liability pursuant to the terms and conditions set forth in the Application, the Engagement Letter, or any ancillary documents thereto shall not apply as to any losses, claims, damages, or liabilities to the extent resulting from conduct for which Guggenheim Securities would not be entitled to indemnification under the provisions of this Order. Notwithstanding any provision in the Engagement Letter or any ancillary documents thereto to the contrary, the contribution obligations of Guggenheim Securities shall not be limited to the aggregate amount of fees actually received by Guggenheim Securities pursuant to the Engagement Letter.

10. Notwithstanding anything in the Application, the Hayes Declaration or the Engagement Letter to the contrary, Guggenheim Securities shall apply the expense advance received from the Debtors before the Petition Date as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Guggenheim Securities. Guggenheim Securities is authorized without further order of the Court to apply amounts from the prepetition expense advance, that would otherwise be applied toward payment of postpetition fees and expenses, as are necessary and appropriate to compensate and reimburse Guggenheim Securities for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practice. At the conclusion of Guggenheim Securities' engagement by the Debtors, if the amount of any expense advance held by Guggenheim Securities is in excess of the amount of Guggenheim Securities' outstanding and estimated fees, expenses, and costs, Guggenheim Securities will pay to the

Debtors the amount by which any expense advance exceeds such fees, expenses, and costs, in each case in accordance with the Engagement Letter.

11. Notwithstanding anything in the Application, the Hayes Declaration or the Engagement Letter to the contrary, to the extent Guggenheim Securities retains the services of independent contractors or subcontractors (collectively, the "**Contractors**") in these chapter 11 cases to conduct certain of its investment banking services under the Engagement Letter in its stead and Guggenheim Securities seeks to pass through to the Debtors, and requests to be reimbursed for, the fees and/or costs of the Contractors, Guggenheim Securities shall (a) pass through the fees of such Contractors to the Debtors at the same rate that Guggenheim Securities pays the Contractors; (b) seek reimbursement for actual costs of the Contractors only; (c) ensure that the Contractors perform the conflicts check required by Bankruptcy Rule 2014 and file with the Court such disclosures as required by Bankruptcy Rule 2014; and (d) attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in these chapter 11 cases.

12. In the event the Debtors seek to have any of Guggenheim Securities' affiliates or employees of foreign affiliates or subsidiaries perform services for the Debtors, the Debtors shall seek the separate retention of any such affiliates, foreign affiliates, or subsidiaries.

13. The Debtors shall use their best efforts to avoid any duplication of services provided by Guggenheim Securities and any of the Debtors' other retained professionals in these chapter 11 cases, and, in connection with the services to be rendered pursuant to the Engagement Letter, Guggenheim Securities shall endeavor to coordinate and work together with such of the Debtors' other retained professionals to minimize or avoid duplication of services.

14. None of the fees payable to Guggenheim Securities under the Engagement Letter shall constitute a "bonus" or fee enhancement under applicable law.

15. Notwithstanding anything to the contrary in the Application, the Hayes Declaration or the Engagement Letter, during these chapter 11 cases, that portion of the second sentence of Paragraph O of the Annex to the Engagement Letter concerning fiduciary duties shall have no force or effect.

16. To the extent that there may be any inconsistency between the terms of the Engagement Letter, the Application, the Hayes Declaration, and this Order, the terms of this Order shall govern.

17. The Debtors and Guggenheim Securities are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

18. Notice of this Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20. Notwithstanding anything to the contrary in the Application, the Hayes Declaration or the Engagement Letter, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Engagement Letter and this Order.