Law Office of Shmuel Klein PA
Attorney for HVP2 LLC
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510
email:shmuel.klein@verizon.net

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

_____

In re:
RITE AID CORPORATION, *et al.*,
Debtors

_____

Chapter 11
Case No. 23-18993 (MBK)
(Jointly Administered)

TO: HONORABLE MICHAEL B. KAPLAN
Chief United States Bankruptcy Judge

**CERTIFICATION IN OPPOSITION AND RESERVATION OF RIGHTS
OF HVP2 LLC TO DEBTORS AMENDED DISCLOSURE STATEMENT**

I, Shmuel Klein certify actual knowledge of the foregoing statements and they are true:

1.  I am the attorney for an unlisted Creditor of the Debtor, HVP2 LLC  (hereinafter "HVP") which is a landlord for one of the Debtor's retail stores.

2.  This Certification is filed in Opposition to the Debtor's Amended Motion to approve its proposed plan and disclosure statement and its application to shorten time.  All must be denied.   It is bizarre that the Debtor seeks a "conditional" non-final disclosure statement.  The Debtor's motion states:

> "with such approval without prejudice to the right of any party in interest to argue at the Combined Hearing that the Disclosure Statement does not contain adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code, and the Order shall be without preclusive effect as to any determination by the Court at the Combined Hearing solely regarding the adequacy of the information contained in the Disclosure Statement within the meaning of section 1125(a)(1) of the Bankruptcy Code"

3.  Why is the Debtor wasting the Court's time and all the parties time for a "conditional disclosure statement?"  Ultimately, the Debtor is still required to file and receive court approval of a written disclosure statement before there can be a vote on a plan of reorganization.  The disclosure statement

must provide "adequate information" concerning the affairs of the debtor to enable the holder of a claim or interest to make an informed conclusion about the plan. 11 U.S.C. §1125.  One of the primary requirements of the disclosure statement is to "disclose".   A creditor requires enough **detailed** information to make a well-informed decision about endorsing the plan or not.   The Debtor's proposed disclosure statement is woefully inadequate as it utterly fails to identify any of its current retail leases, whether it intends to reject or assume the leases on those stores and fails to inform any creditor how it expects to go forward as an ongoing business, or if it will simply sell off its leases and brand.  In its recent filings to extend its exclusivity period, it admits it has no concrete plan as it admits:

> "Continued engagement with various interested parties around the terms of potential qualified bids for some or all of the Debtors' retail assets (the "Retail Assets" and, such sale, the "Retail Sale")"

4. It is inconsistent for the Debtor ask this Court to approve its plan and disclosure statement when it has not finalized any of its "right-sizing the Company's retail store footprint".   Creditors cannot vote for something which the Debtor itself admits is far from completion regarding it's leases and exiting bankruptcy as a re-sized Debtor.

OBJECTION I.  THE APPROVAL HEARING MUST BE POSTPONED BECAUSE THE DISCLOSURE STATEMENT LACKS VITAL INFORMATION ABOUT THE THE DEBTORS IS GROSSLY INCOMPLETE

5. The Plan and Disclosure Statement are fundamentally flawed in many key respects; it fails to disclose:  (i) what store leases the Debtor intends to retain and continue to operate and (ii)  what store leases the Debtor intends to reject and how much income it may receive and save, and (iii) what non-retail store activities it will continue to operate post-petition.   A hearing on the Debtors' proposed Disclosure Statement is premature until the above detailed disclosure is included in the Disclosure Statement.

6.  Further, if the Debtor simply intends to sell off it's retail leases, as was the case with Bed Bath and Beyond, and other failed business, then this must also be disclosed in its plan and disclosure statement.

7.  Should the Court move forward with the hearing, the Debtors' proposed disclosure statement should be rejected because it lacks critical information necessary for claimants to make an informed judgment about the amended proposed plan.  Most critically, the Disclosure Statement fails to adequately describe the available assets and expected liabilities of the Debtors.  As a result, even basic fact prevent claimants to determine whether they are impaired or unimpaired.

8.  The Disclosure Statement also fails to explain how potential insurance proceeds would be utilized by the Debtor to pay possible claimants of its FTC debacle concerning face recognition and possible insurance proceeds of its illegitimate drug participation.  Making matters worse, the Disclosure Statement fails to explain whether self-insured retentions ("SIRs") if any, will be honored or applied under the Proposed Plan.

9.  The Disclosure Statement is also silent on the Debtors' intentions with respect to the whether it will continue to operate any stores at all.

10. Unless modified, the Proposed Plan has no hope of confirmation and should not be permitted to move beyond a requisite adequate disclosure statement phase.

11. Any hearing on the Disclosure Statement is premature.  The Disclosure Statement lacks material information, absent which, the Court, as a matter of law, could not order approve.  <u>In re Medley</u>, 58 B.R. 255, 256 (Bankr. E.D. Mo. 1986) (holding that a disclosure statement would not be approved where it was a "superficial outline" that did not provide creditors with material information); see also <u>In re Clamp-All Corp</u>., 233 B.R. 198, 206 (Bankr. D. Mass. 1999) ("the hearing on approval of the disclosure statement gives interested parties the opportunity to challenge certain statements or information contained in the disclosure statement").  The Debtor also may face additional exposure on account of the Debtor's apparent rejection of the remaining commercial leases.

12. Lessors should not be left to guess whether the terms of the Plan are prejudicial to their interests or the degree to which payments on valid claims will be diluted by payments of invalid claims. Providing information on the number and scope of the claims against the estate only after approval of the Disclosure Statement and solicitation is grossly inadequate and prejudicial, especially for a plan of this complexity when there is no substantive disclosure of the criteria to disallow claims. See In re Rosenblum, No. 18-17155-MKN, 2019 Bankr. LEXIS 2278, at *1617 (Bankr. D. Nev. July 15, 2019) (rejecting disclosure statement because debtor's failure to represent accurately all claims against the estate was "misleading to all other creditors that might be entitled to vote to accept or reject his proposed plan of reorganization") (citing Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.), 293 B.R. 489, 497 (B.A.P. 9th Cir. 2003); In re Acemla De P.R. Inc., No. 17-2021 ESL, 2019 Bankr. LEXIS 182, at *60 (Bankr. D.P.R. Jan. 22, 2019) (rejecting disclosure statement because, among other reasons, the debtor did "not even mention[]" a risk the creditors faced if approved) (citing In re RADCO Props., Inc., 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) ("Creditors not only rely on the disclosure statement to form their ideas about what sort of distribution or other assets they will receive but also what risks they will face.")); In re Kiklis, 352 B.R. 355, 360 (Bankr. D. Mass. 2006) (sustaining objection because "the Disclosure Statement is insufficient in that it does not provide [a creditor] any information regarding the proposed treatment of that portion of its claim that is unsecured").

13. The Debtor failed to provide the Court with any evidence regarding the terms of any of its remaining leases or the Debtor's rationale for rejecting of those leases. Moreover, the Plan and Disclosure Statement fail to address the impact rejecting the remaining lease(s) would have on the estate; including any possible claims for the return of any security deposits or prepaid rents, or rejection damage claims. If the Debtor, in fact, intended to reject any of its commercial leases, the lessors may mitigate their damages which may reduce the lessor's claims. The Debtor failed to provide any

information regarding the possible breach of lease action against the lessee or if the Debtor was holding any security deposits or pre-payment of rents that could offset any lost rents.

14. Section 1129(a)(7) provides that in order for a plan to be confirmable, the plan must provide creditors with at least as much as the creditors would have received in a Chapter 7 liquidation. In re A.H. Robins, Co., Inc., 880 F.2d 694, 698 (4th Cir.1989); In re Smith, 357 B.R. 60, 67 (Bankr. M.D.N.C. 2006); In re Grandfather Mountain Limited Partnership, 207 B.R. 475, 484 (Bankr. M.D.N.C.1996); In re Piece Goods Shops Company, L.P./Piece Goods Shops Corp., 188 B.R. 778, 791 (Bankr.M.D.N.C.1995). This section is commonly referred to as the best interest of creditors test. The plan proponent bears the burden of introducing evidence of its current financial situation, assets, liabilities, and prospects to satisfy the court that the proposed plan meets the test. In re Piece Goods, 188 B.R. at 791. Simply put, the Debtors proposed Disclosure Statement Fails to Adequately Describe the Available Assets and Expected Liabilities of the Debtors.

15. Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain "adequate information," which the Code defines as "information of a kind, and in sufficient detail … that would enable … the relevant class to make an informed judgment about the plan." See 11 U.S.C. § 1125(a). The provision of adequate information in a disclosure statement is a key requirement of the Bankruptcy Code. See also Ryan Ops. G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996) ("the importance of full and honest disclosure cannot be overstated."). "The disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization." In re Scioto Valley Mortg. Co., 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988). Plan proponents bear the burden of establishing that the disclosure statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code. See, e.g., In re Am. Capital Equip., LLC, 688 F.3d 145, 155 (3d Cir. 2012) ("The debtor has the burden of proving that a disclosure statement is adequate"). Here, the Debtors'

Disclosure Statement fails to satisfy the §1125 standard for multiple reasons and therefore cannot be approved.

16. The Debtor admits in paragraph 3: "Important work remains" as the Debtor has not completed any decision regarding the balance of its leases; which ones it will assume or reject or sell or continue to operate. No Lessor Creditor can rationally be asked to support a disclosure statement and plan which leaves them completely in the dark.

## THE COURT CANNOT APPROVE THE DISCLOSURE STATEMENT BECAUSE IT DESCRIBES A PATENTLY UNCONFIRMABLE PLAN

17. This Court should also deny the Disclosure Statement because the Proposed Plan is patently unconfirmable. The Third Circuit held in In re American Capital Equipment, LLC, 688 F.3d 145 (3d Cir. 2012) ("Skinner II"), "that a bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." Id. at 154; see also In re Main St. AC, Inc., 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999) ("It is now well accepted that a court may disapprove of a disclosure statement ... if the plan could not possibly be confirmed."); In re Felicity Assocs., 197 B.R. 12, 14 (Bankr. D. R.I. 1996) (same); In re Filex, Inc., 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990) (same); Lawrence P. King, 7 Collier on Bankruptcy ¶ 1125.03[5] (15th Ed. Rev. 2004) ("most courts will not approve a disclosure statement if the underlying plan is clearly unconfirmable on its face"). "A plan is patently unconfirmable where (1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." Skinner II, 688 F.3d at 154–55. Here, the Proposed Plan is patently unconfirmable for a host of reasons including without limitation, because it (i) Lessor Creditors do not know whether its lease will be accepted or rejected or assigned, (ii) and thus whether they a impaired or unimpaired and (iii) what amount may be included in a proof of claim.

18. Section 1129(a)(11) of the Bankruptcy Code requires that in order for a plan to be confirmable, "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." This requirement is often called the feasibility requirement. In re A.H. Robins, Co., Inc., 880 F.2d 694, 698 (4th Cir.1989). The question of feasibility is a question of fact in which the debtor bears the burden to show feasibility of the plan by a preponderance of the evidence. In re Investment Co. of Southwest, Inc. (F.H. Partners, L.P. v. Investment Co. of Southwest, Inc., Four Hills Associates, Bank of America), 341 B.R. 298, 310 (10th Cir. BAP 2006). Feasibility is "firmly rooted in predictions based on objective fact." In re Cheatham, 78 B.R. 104, 109 (Bankr.E.D.N.C.1987); In re Investment, 341 B.R. At 310, In re Radco Properties, Inc., 402 B.R. 666, 678 (Bankr. E.D.N.C. 2009).

19. More troubling is the fact that the Lessors do not have adequate representation in this case. Counsel must be approved to represent the Lessors as they are a major component of the Debtor's assets and possible liabilities. My client and myself wake daily with trepidation regarding the newest "Amended *Final* Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief". Further, the Debtor filed another "Eighth Order Approving the Rejection of Certain Executory Contracts and/or Unexpired Leases". No "final" order can be entered. Debtor cannot use the word "final" when it is completely disingenuous. What Lessor is next? How can a Lessor approve the unknown? How can creditors approve a disclosure statement and plan which deliberately hides their treatment? The Lessors all cower in a corner without genuine representation.

WHEREFORE, HVP2 LLC respectfully requests that the Court deny confirmation of the Plan; deny the Debtors' motion to approve the disclosure statement, until such time as the Debtors cure all

deficiencies and provide adequate assurance of future performance; and such other and further relief as the Court deems just and proper.

Dated: February 22, 2024        Respectfully submitted,

                                              Law Office of Shmuel Klein PA

                                              BY: /s/ Shmuel Klein
                                              Shmuel Klein, Esq.
                                              Attorney for Creditor HVP2 LLC