**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
Ross J. Fiedler (admitted *pro hac vice*)
Zach R. Manning (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF ADDITIONAL CLOSING STORES**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On January 29, 2024, the United States Bankruptcy Court for the District of New Jersey

(the "Court") entered the *Amended Final Order (I) Authorizing and Approving the Conduct of*

*Store Closing Sales, With Such Sales to Be Free and Clear of All Liens, Claims, Encumbrances*

---

[1]   The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the
      Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the
      website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid.  The location of
      Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11
      cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

*and (II) Granting Related Relief* [Docket No. 1648] (the "<u>Amended Final Store Closing Order</u>")[2]

authorizing and approving the conduct of store closings and related sales in accordance with certain

store closing sale guidelines and granting related relief.  A copy of the Amended Final Store

Closing Order, including the Sale Guidelines, is attached hereto as **<u>Exhibit 2</u>**.

Pursuant to the Amended Final Store Closing Order and by this written notice

(this "<u>Notice</u>"), the Debtors hereby notify you that they have determined, in the exercise of their

business judgment, that each store location listed in **<u>Exhibit 1</u>** attached hereto shall be an

Additional Closing Store.

Parties seeking to object to the application of the Amended Final Store Closing Order to

any of the store locations set forth on **<u>Exhibit 1</u>** must file and serve a written objection so that such

objection is filed with the Court on the docket of the Debtors' chapter 11 cases and is actually

received by the Debtors and their counsel no later than March 22, 2024 (the date that is ten days

after the date that the Debtors served this Notice), and the Debtors shall cause the applicable

Dispute Notice Parties and other notice parties to be served.  Only those responses that are timely

filed, served, and received will be considered at any hearing.

If an objection to the application of the Amended Final Store Closing Order to any of the

store locations set forth on **<u>Exhibit 1</u>** is timely filed and not withdrawn or resolved, such objection

will be considered at the next regularly scheduled omnibus hearing, subject to the rights of any

party to seek relief on an emergency basis or shortened notice.

*[Remainder of page intentionally left blank]*

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Amended Final Store Closing Order.

Dated: March 12, 2024

/s/ *Michael D. Sirota*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:     msirota@coleschotz.com
         wusatine@coleschotz.com
         fyudkin@coleschotz.com
         svanaalten@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
Ross J. Fiedler (admitted *pro hac vice*)
Zachary R. Manning (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:    esassower@kirkland.com
       joshua.sussberg@kirkland.com
       aparna.yenamandra@kirkland.com
       ross.fiedler@kirkland.com
       zach.manning@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

## **Exhibit 1**

### **Additional Closing Stores**

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 1 | 407 | 366 GEORGE STREET | NEW BRUNSWICK | NJ | 08901 |
| 2 | 5484 | 9715 OTIS STREET | SOUTHGATE | CA | 90280 |

## <u>Exhibit 2</u>

**Amended Final Store Closing Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| RITE AID CORPORATION, *et al.*, | Case No. 23-18993 (MBK) |
| Debtors.[1] | (Jointly Administered) |

Order Filed on January 29, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

### AMENDED FINAL ORDER
### (I) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through thirty-six (36), is **ORDERED.**

**DATED: January 29, 2024**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]     The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid.  The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
Ross J. Fiedler (admitted *pro hac vice*)
Zachary R. Manning (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an amended version of the final order entered at Docket No. 709 (such motion, the "Motion," and such amended order, this "Final Order"): (a) authorizing, but not directing, the Debtors to enter into and perform under that certain consulting agreement among the Debtors, SB360 Capital Partners, LLC ("SB360"), and Hilco Merchant Resources, LLC ("Hilco," and together with SB360, the "Consultants") attached hereto as **Schedule 1** (as may be modified from time to time in accordance with its terms, the "Consulting Agreement");[1] (b) authorizing and approving the continuation or initiation of store closing or similar themed sales (the "Initial Store Closings") at the stores identified on **Schedule 2** attached hereto (collectively, the "Initial Closing Stores"); (c) authorizing and approving the Debtors to conduct store closings at additional stores (the "Additional Store Closings" and, together with the Initial Store Closings, the "Store Closings") at a later date or dates pursuant to the procedures set forth herein (collectively, the "Additional Closing Stores," and together with the Initial Closing Stores, the "Closing Stores") with such sales to be free and clear of all liens, claims, and encumbrances (the "Sales"), in accordance with the terms of the store closing sale guidelines attached as **Schedule 3** hereto (the "Sale Guidelines"); (d) authorizing and approving the Debtors' payment and reimbursement of Fees and Expenses (as defined in the Consulting Agreement) to the Consultants in accordance with the provisions of the Consulting Agreement; (e) authorizing and approving the inclusion of Additional Consultant

---

[1]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Consulting Agreement or the Motion, as applicable.

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Goods (as defined in the Consulting Agreement) in the Sales at the Closing Stores in accordance with the Consulting Agreement; and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration, the Liebman Declaration, and the Frejka Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing (if any) before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor

**IT IS HEREBY FOUND AND DETERMINED THAT**:[2]

A.      The Debtors have advanced sound business reasons for entering into and performing under the Consulting Agreement and adopting the Sale Guidelines as set forth in the Motion and at the Hearing (if any), and the Debtors' entry into and performance under the

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Consulting Agreement are reasonable exercises of the Debtors' business judgement and in the best interest of the Debtors and their estates.

B.    The Debtors and the Consultants negotiated and entered into the Consulting Agreement in good faith and on an arm's-length basis.

C.    The Sale Guidelines, which are attached hereto as **Schedule 3**, are reasonable and appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an efficient means for the disposition of the Closing Store Assets, and are in the best interest of the Debtors' estates.

D.    The Debtors have demonstrated good, sufficient and sound business purposes and justifications for the relief approved herein.

E.    The Store Closings and Sales are in the best interest of the Debtors' estates.

F.    The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

G.    The entry of this Final Order is in the best interests of the Debtors and their estates; and now therefore it is **HEREBY ORDERED THAT**:

1.    The Motion is **GRANTED** on a final basis as set forth herein.

2.    To the extent of any conflict between this Final Order, the Consulting Agreement, or the Sale Guidelines: (a) the Sale Guidelines shall control over the Consulting Agreement; and (b) the terms of this Final Order shall control over the Consulting Agreement and Sale Guidelines. To the extent of any conflict between this Final Order, the Sale Guidelines, the Consulting Agreement, and a Side Letter (as defined herein), subject to paragraph 33 hereof, the terms of the

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Side Letter shall control as between the Debtors and the applicable landlord(s); and the terms of this Final Order shall control as to all other matters, except that the Consulting Agreement shall control as to the Consultants' authority to enter into any Side Letter.

## I.    Authority to Enter into the Consulting Agreement.

3.    The Debtors' entry into and performance under the Consulting Agreement is approved in all respects.  The Debtors are authorized to enter into and perform under the Consulting Agreement pursuant to sections 363 of the Bankruptcy Code, including by: (a) making payments required by the Consulting Agreement to the Consultants without the need for any application of the Consultants or a further order of the Court; and (b) accepting delivery of Additional Consultant Goods to Closing Stores, offering Additional Consultant Goods for sale at Closing Stores on a consignment basis, and remitting proceeds from sales of Additional Consultant Goods, in each case, as provided in the Consulting Agreement.  The Consultants' Fees and Expenses shall be paid in accordance with the provisions of the Consulting Agreement.  Such payment of Consultants' Fees and Expenses shall be deemed to be (a) in compliance with the Approved Budget (as defined in Docket No. 1159 (the "Final DIP Order")) and the applicable provisions of the Final DIP Order; and (b) included in each such Approved Budget.

4.    Subject to the terms and conditions set forth in this Final Order and the applicable provisions of the Final DIP Order and the DIP Documents (as defined in the Final DIP Order), the Debtors and the Consultants are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and each of the transactions contemplated

| Debtors: | RITE AID CORPORATION, *et al.* |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

thereby (including conducting the Group 2 Sales and Group 3 Sales), and any and all such actions are hereby approved in all respects.

5.     The Debtors and the Consultants may modify the Consulting Agreement in accordance with the terms thereof without further order of the Court; *provided* that (a) the Debtors shall provide two business days' advance notice of any contemplated material modification(s) of Consulting Agreement (including any modification of the Consulting Agreement's economic terms) to the U.S. Trustee, counsel to the DIP Agents, counsel to the Ad Hoc Secured Noteholder Group, counsel to the Official Committee of Unsecured Creditors, counsel to the Official Committee of Tort Claimants, and counsel to any party that has requested such notice (collectively, the "Amendment Notice Parties"); and (b) the Debtors' modification of the Consulting Agreement shall be subject to the applicable provisions of the DIP Documents (as defined in the Final DIP Order).  If an Amendment Notice Party timely objects to a proposed material modification to the Consulting Agreement and the Debtors, the Consultants, and such objecting Amendment Notice Party cannot consensually resolve such objection, the Debtors and the Consultants shall not proceed with such modification absent a further order of the Court approving such modification.

6.     Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultants for any damages or losses arising out of any fraud, willful misconduct, gross negligence, or breach of the Consulting Agreement by the Consultants.

| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

## II.    Authority to Engage in Sales and Conduct Store Closings.

7.    The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue, commence, and conduct Sales and Store Closings at the Closing Stores in accordance with this Final Order and the Sale Guidelines, as may be modified by any Side Letters (as defined below) between the Debtors and the landlords at the Closing Stores. The Consultants are authorized to commence and conduct Sales and Store Closings at the Closing Stores in accordance with this Final Order, the Consulting Agreement, and the Sale Guidelines, as may be modified by any Side Letters between the Debtors and the landlords at the Closing Stores or between the Consultants and such landlords, as applicable.

8.    The Sale Guidelines are approved in their entirety on a final basis.

9.    The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order and the Sale Guidelines.

10.    All entities that are presently in possession of some or all of the Closing Store Assets in which the Debtors hold an interest that is or may be subject to this Final Order are hereby directed to surrender possession of such Closing Store Assets to the Debtors (or to the Consultants, on behalf of the Debtors, if applicable).

11.    Neither the Debtors nor the Consultants nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sales and Store Closings and to take the related actions authorized herein.

| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

12.     The Debtors are authorized to conduct Sales and internal transfers of Prescription Assets consistent with their historical practice in any size, amount, or volume, in accordance with applicable law, and all such Sales and internal transfers are hereby approved.  For the avoidance of doubt, the Debtors are authorized to enter into and consummate such Sales of Prescription Assets on the terms and conditions, including any non-monetary terms and conditions, set forth in any agreements or other documents applicable to such Sales (including any asset purchase agreements), which terms and conditions are hereby approved.  Each purchaser of Prescription Assets sold pursuant to this Final Order shall be deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, shall be entitled all of the protections afforded by such provision.  Nothing in this Final Order authorizes the Consultants to sell or otherwise dispose of any Prescription Assets, and the Consultants shall not conduct any Sales of any Prescription Assets.

13.     For the avoidance of doubt, nothing in this Final Order or in the Sale Guidelines shall be construed to exempt the Debtors from any obligation to comply with applicable law regarding the monitoring of suspicious orders or purchases.

14.     Subject to any applicable Side Letter(s), (a) the Consultants are authorized to include Additional Consultant Goods in the Sales at the Closing Stores in accordance with, and subject to, the applicable provisions of the Consulting Agreement and Sale Guidelines; and (b) the Debtors are authorized to sell Additional Consultant Goods at the Closing Stores in accordance with this Final Order, the Sale Guidelines, and the Consulting Agreement, with the proceeds of

(Page | 10)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

such sales (net of any Additional Consultant Goods Fee (as defined in the Consulting Agreement)) to be remitted to the Consultants in accordance with the Consulting Agreement.

## III. Conduct of the Sales.

15.     All newspapers and other advertising media in which the Sales and Store Closings may be advertised and all landlords and subtenants are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultants, as applicable, to conduct the Sales and Store Closings, including, without limitation, to conduct and advertise the sale of Non-Prescription Assets in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, and the Consulting Agreement.

16.     Subject to the Dispute Resolution Procedures provided for in this Final Order, the Debtors and the Consultants, as applicable, are hereby authorized to take such actions as may be necessary or appropriate to conduct the Sales and Store Closings and to implement the Consulting Agreement, in each case, without necessity of further order of this Court and as provided in and pursuant to the Sale Guidelines (subject to any Side Letters) and the Consulting Agreement, including, but not limited to, advertising a Sale of Non-Prescription Assets as a "store closing sale", "sale on everything", "everything must go", "going-out-of-business", or similar-themed sales as contemplated in the Sale Guidelines through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street signage; *provided* that use of such

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

exterior signage shall be conditioned upon the later of:  (a) execution of an applicable Side Letter with the Debtors and/or the Consultants; or (b) entry of this Final Order.

17.    Except as expressly provided in the Consulting Agreement and the Sale Guidelines and subject to any Side Letter, the sale of the Closing Store Assets shall be conducted by the Debtors and the Consultants, notwithstanding any Contractual Restrictions[3] to the contrary relative to occupancy affecting or purporting to restrict the conduct of the Sales (including the sale of Additional Consultant Goods in connection with the Sales pursuant to the Consulting Agreement), abandonment of assets, or "going dark" provisions.  Any such Contractual Restrictions shall not be enforceable in conjunction with the Store Closings and the Sales.  Any breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales (and any related sales of Additional Consultant Goods) are conducted in accordance with the terms of this Final Order, any Side Letter, and the Sale Guidelines.  The Debtors (and/or the Consultants) (in any case, in consultation with the DIP Agents) and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") among themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the parties thereto; *provided*, *however*, that, in all circumstances, the Consulting Agreement's provisions shall control whether and to what extent the Consultants are authorized to enter into Side Letters with landlord of Closing Stores.  In the event of any conflict between the

---

[3]    "Contractual Restrictions" has the meaning given to such term in Docket No. 37 (the "Initial Motion").

(Page | 12)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Sale Guidelines, the Consulting Agreement, any Side Letter, and this Final Order, subject to paragraph 33 hereof, the terms of such Side Letter shall control (*provided* that, in all circumstances, the Consulting Agreement shall control as to the Consultants' authority to enter into any Side Letter).  Side Letters shall be subject to the approval of the Debtors and copies thereof will be provided to the U.S. Trustee, the DIP Agents, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960 (Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com), counsel for the Ad Hoc Secured Noteholder Group; counsel to the Official Committee of Unsecured Creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Adam Rogoff (ARogoff@kramerlevin.com), Rachael Ringer (RRinger@kramerlevin.com), and Nancy Bello (NBello@kramerlevin.com); and Kelley Drye & Warren LLP, One Jefferson Road, 2nd Floor, Parsippany, New Jersey 07054, Attn: James S. Carr (jcarr@kelleydrye.com), Robert L. LeHane (rlehane@kelleydrye.com), and Maeghan McLoughlin (mmcloughlin@kelleydrye.com); and counsel to the Official Committee of Tort Claimants, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Arik Preis (apreis@akingump.com), Kate Doorley (kdoorley@akingump.com), and James Salwen (jsalwen@akingump.com) at least two (2) business days' prior to execution of any Side Letters (which period may be shortened or waived if so consented to by each of the DIP Agents,

(Page | 13)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

the members of the Ad Hoc Secured Noteholder Group holding greater than two-thirds of the outstanding Prepetition Notes Secured Claims (as defined in the Final DIP Order), the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants, and the U.S. Trustee).

18.     Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closings, the Sales, the sale of the Closing Store Assets or the Additional Consultant Goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, as applicable, and all such parties and persons and entities of every nature and description, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings and the Sales (including any related sales of Additional Consultant Goods), and/or (b) instituting any action or proceeding in any court (other than in this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultants, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closings, the Sales, the sale of the Closing Store Asset or the Additional Consultant Goods, or other liquidation sales at any Closing Stores and/or seek to recover damages for breach(es) of

(Page | 14)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

19.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultants shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines (as may be modified by any Side Letters), the Consulting Agreement, and this Final Order.

20.     The Consultants shall not be liable for sales taxes except to the extent expressly provided in the Consulting Agreement.  The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that, in the case of a *bona fide* dispute, the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultants shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreement.  This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state or federal law.

(Page | 15)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

21.     Pursuant to section 363(f) of the Bankruptcy Code, (a) the Debtors are authorized to sell the Closing Store Assets; (b) the Consultants are authorized to sell the Non-Prescription Assets, in all cases, subject to and in accordance with the terms and conditions of the Consulting Agreement; and (c) all sales of Closing Store Assets (including any Prescription Assets) shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Closing Store Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Closing Store Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Inventory Fee and/or FF&E Fee (each as defined in the Consulting Agreement), as applicable.

22.     The Debtors are authorized and empowered to (a) transfer Closing Store Assets among and into the Debtors' store locations; (b) sell Non-Prescription Assets in accordance with the Sale Guidelines, as applicable; and (c) sell Prescription Assets in accordance with the terms and conditions of this Final Order.  The Consultants are authorized and empowered to (a) transfer Non-Prescription Assets among and into the Debtors' store locations and (b) sell Non-Prescription Assets and abandon the same, in each case, in accordance with the Sale Guidelines, as applicable, and the terms and conditions of the Consulting Agreement.

23.     Notwithstanding anything to the contrary in this Final Order, the Consulting Agreement, or the Sale Guidelines, the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; nor shall the Consultants sell or abandon any property

(Page | 16)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

in the Consultants' possession or control that the Consultants know is not owned by the Debtors; *provided* that the Debtors will either (a) provide for the return of such property to the Debtors' headquarters or (b) return such property to the applicable lessor, or other owner of the property.

24.     Neither the Sale Guidelines, the Consulting Agreement, nor this Final Order authorize the Debtors or the Consultants to transfer or sell to any other party the personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number, and which includes all information that is "Protected Health Information" as that term is defined in 45 C.F.R. § 160.103) ("PII")) of any customers unless such sale or transfer is permitted by the Debtors' privacy policies (including any applicable "Notice of Privacy Practices" adopted under 45 C.F.R. § 164.520) and applicable state or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws"), including for the avoidance of doubt the Health Insurance Portability and Accountability Act of 1996 and Health Information Technology for Economic and Clinical Health Act of 2009 (including their implementing regulations codified at 45 C.F.R. parts 160 and 164) and any state law of similar import.  The foregoing shall not limit the use of the Debtors' customer lists and mailing lists, including by the Consultants in accordance with the Consulting Agreement, solely for purposes of advertising and promoting the Sales, to the extent such use is not prohibited by Applicable Privacy Laws.

(Page | 17)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

25.     Appointment of a consumer privacy ombudsman is not required with respect to the Sales that are consistent with the asset disposition strategy set forth in the Initial Motion as such Sales are consistent with the Debtors' privacy policies.  However, the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants, and the U.S. Trustee reserve their rights to seek to have a consumer privacy ombudsman appointed in the event the Debtors materially deviate from the asset disposition strategy set forth in the Initial Motion.

26.     The Debtors and/or the Consultants, as applicable, shall remove or cause to be removed any confidential and/or PII in any of the Debtors' hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable.  At the conclusion of any Sales overseen by the Consultants, the Consultants shall provide the Debtors with written verification that the Consultants have not removed, copied, or transferred any customer PII and that any records containing PII that were in the Consultants' possession or control during such Sales were shredded, erased or otherwise modified to render the PII unreadable or undecipherable.

27.     Nothing herein shall limit the Debtors' right to suspend, postpone, or discontinue a Sale at a Closing Store on notice to affected parties; *provided* that no Group 2 Sale or Group 3 Sale at a Closing Store that has commenced in accordance with the provisions of the Consulting Agreement may be suspended, postponed, or discontinued without the consent of the DIP Agents.

28.     Nothing herein is intended to affect any rights of any applicable Government Unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

(Page | 18)

| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

**IV.   Procedures Relating to Additional Closing Stores.**

29.   To the extent that the Debtors seek to conduct Sales at any Additional Closing Stores, the Sale Guidelines and this Final Order shall apply to each such Additional Closing Store (and the corresponding Additional Store Closing(s)).

30.   Except with respect to Sales of Prescription Assets, before conducting the Sales at any Additional Closing Store, the Debtors will file with the Court a list of each such Additional Closing Store (each, an "Additional Closing Store List") and serve a notice of their intent to conduct the applicable Sales at the Additional Closing Store on the General Notice Parties (as defined herein), including applicable landlords (collectively, the "Additional Closing Store Landlords"), by email (to the extent available to the Debtors) or overnight mail within five business days of filing the Additional Closing Store List (unless such period is extended by the Court).  With respect to the Dispute Notice Parties, including the Additional Closing Store Landlords, the Debtors will mail, if applicable, such notice to the notice address set forth in the lease for such Additional Closing Store (or at the last known address available to the Debtors).

31.   The relevant Additional Closing Store Landlords and any other interested parties shall have ten days after service of the applicable Additional Closing Store List to object to the application of this Final Order to the Additional Closing Store(s) included in such Additional Closing Store List.  If no timely objections are filed with respect to the application of this Final Order to an Additional Closing Store, the Debtors shall be authorized to proceed with conducting the Sales at the Additional Closing Stores (and any corresponding Additional Store Closing(s)) in accordance with this Final Order and the Sale Guidelines.  If any objections are filed with respect

(Page | 19)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

to the application of this Final Order to an Additional Closing Store and such objections are not resolved, the objections and the application of this Final Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary.

## V.   Dispute Resolution Procedures with Governmental Units.

32.   Nothing in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair competition, traffic, Applicable Privacy Laws, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws").  Nothing in this Final Order, the Consulting Agreement, the Sale

(Page | 20)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

33.     To the extent that the sale of Closing Store Assets is subject to any Liquidation Sale Laws, the following provisions of this paragraph 33 shall apply and control over any Side Letters:

i.      Provided that the Sales are conducted in accordance with this Final Order and the Sale Guidelines, the Debtors, the Consultants, and the Debtors' landlords shall be deemed to be in compliance with any requirements of all county, parish, municipal, or other local government (collectively, "Local") and state Liquidation Sale Laws that would otherwise apply to the Store Closings or the Sales; *provided*, that the term "Liquidation Sale Laws" shall not include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors and the Consultants shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Final Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii.     Within five business days after entry of this Final Order (unless such period is extended by the Court), the Debtors will serve by first-class mail copies of this Final Order, the Consulting Agreement, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the Board of Pharmacy's office for each state where a Closing Store is located; (c) the

| Debtors: | RITE AID CORPORATION, *et al.* |
|---|---|
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

county consumer protection agency or similar agency for each county where the Sales are being held; (d) the division of consumer protection for each state where the Sales are being held; (e) the landlords, and known counsel for the landlords if any, for the Closing Store; and (f) any subtenants (if any) under the leases with respect to the Closing Stores (collectively, the "Dispute Notice Parties").

iii.    With respect to any Additional Closing Stores, within five business days after filing any Additional Closing Store List with the Court (unless such period is extended by the Court), the Debtors will serve copies of this Final Order, the Consulting Agreement, and the Sale Guidelines on the applicable Dispute Notice Parties.

iv.    To the extent that there is a dispute arising from or relating to the Sales, this Final Order, the Consulting Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten days following entry of this Final Order, or service of an Additional Closing Store List, any Governmental Unit may assert that a Reserved Dispute exists by serving a notice (the "Dispute Notice") explaining the nature of the dispute on: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Aparna Yenamandra, P.C.; Ross J. Fiedler, and Zachary R. Manning; (b) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Warren A. Usatine, Felice R. Yudkin, and Seth Van Aalten; (c) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com); Brian S. Hermann (bhermann@paulweiss.com); and Christopher Hopkins (chopkins@paulweiss.com) and Fox Rothschild LLP, 49 Market Street, Morristown, NJ 07960 (Attn: Howard A. Cohen (hcohen@foxrothschild.com); Joseph J. DiPasquale (jdipasquale@foxrothschild.com) and Michael R. Herz (mherz@foxrothschild.com), counsel for the Ad Hoc Secured Noteholder Group; (d) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie; (e) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com), Oscar N. Pinkas (pinkaso@gtlaw.com)); (f) counsel to the Official Committee of Unsecured Creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Adam Rogoff (ARogoff@kramerlevin.com), Rachael Ringer (RRinger@kramerlevin.com), and Nancy Bello (NBello@kramerlevin.com); and Kelley Drye & Warren LLP, One Jefferson Road, 2nd Floor, Parsippany, New

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Jersey 07054, Attn: James S. Carr (jcarr@kelleydrye.com), Robert L. LeHane (rlehane@kelleydrye.com), and Maeghan McLoughlin (mmcloughlin@kelleydrye.com); (g) counsel to the Official Committee of Tort Claimants, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Arik Preis (apreis@akingump.com), Kate Doorley (kdoorley@akingump.com), and James Salwen (jsalwen@akingump.com); (h) counsel to the Consultants, Leichtman Law PLLC, 185 Madison Avenue, 15th Floor, New York, NY 10016, Attn: Maura I. Russell (mrussell@leichtmanlaw.com), and Lowenstein Sandler LLP, One Lowenstein Dr, Roseland, NJ 07068, Attn: Jeffrey Cohen (jcohen@lowenstein.com) and Andrew Behlmann (abehlmann@lowenstein.com); and (i) the affected landlord or its known counsel. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

v.    If a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of this Final Order, nor the conduct of the Debtors pursuant to this Final Order, violates such Liquidation Sale Laws. The filing of a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Consultants' ability to conduct or to continue to conduct the Sales pursuant to this Final Order absent further order of the Court. Upon the entry of this Final Order, the Court expressly authorizes the Debtors and the Consultants to conduct the Sales pursuant to the terms of the Final Order, the Consulting Agreement, and the Sale Guidelines (as may be modified by Side Letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

vi.    If, at any time, a dispute arises between the Debtors and/or the Consultants, on the one hand, and a Governmental Unit, on the other hand, as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

34.　　Subject to paragraphs 32 and 33 above, each and every federal, state, or local agency, department, or Governmental Unit with regulatory authority over the Store Closings or the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultants be required to post any bond, to conduct the Sales.

35.　　Provided that the Store Closings and the Sales are conducted in accordance with the terms of this Final Order, the Sale Guidelines (as may be modified by Side Letters), and the Consulting Agreement, and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Consultants shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closings and the Sales in accordance with the terms of this Final Order, the Sale Guidelines (as may be modified by Side Letters), and the Consulting Agreement without the necessity of further showing compliance with any such Liquidation Sale Laws.

36.　　Nothing in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall in any way:

(Page | 24)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

(a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

## VI.    Other Provisions.

37.    The consignment of Additional Consultant Goods to the Debtors pursuant to the Consulting Agreement constitutes a true consignment under Article 9 of the Uniform Commercial Code (as adopted by applicable state statues) and not a consignment for security purposes. At all times and for all purposes, the Additional Consultant Goods and the Consultants' portion of the identifiable proceeds of Additional Consultant Goods shall be the exclusive property of the Consultants, and, except for the Debtors' entitlement to the Additional Consultant Goods Fee as set forth herein and in the Consulting Agreement, no other person or entity (including, without limitation, the Debtors or any person or entity claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against or interest in any of the Additional Consultant Goods or such identifiable proceeds thereof. The Additional Consultant Goods shall at all times remain subject to the exclusive control of the Consultants. To the extent any Additional Consultant Goods are consigned to the Debtors pursuant to the Consulting Agreement, the Debtors shall, at the Consultants' sole cost and expense, insure such Additional Consultant Goods and, if required, promptly file any proofs of loss with regard thereto.

38.    The Consultants are hereby granted a first-priority security interest in and lien upon (a) the Additional Consultant Goods and (b) the identifiable proceeds of any Additional Consultant Goods (net of any Additional Consultant Goods Fee (as defined in the Consulting Agreement)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

payable to the Debtors pursuant to the Consulting Agreement), which security interest and lien shall be deemed perfected without the requirement of filing any financing statements or providing notifications to any prior secured parties (*provided* that the Consultants are hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable statute(s) identifying the Consultants' interest in the Additional Consultant Goods (and any proceeds thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and the Consultants' security interest in such Additional Consultant Goods and the Consultants' portion of the identifiable proceeds of the Additional Consultant Goods).

39. To the extent the Debtors are subject to any Fast Pay Laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

40. In the event that (a) a Group 3 Store is deemed a "Covered Store" (as defined in the Consulting Agreement) pursuant to section 7(c)(iv) of the Consulting Agreement (each such Group 3 Store, a "Covered Group 3 Store") or (b)(i) a Specified Sale Process Default has occurred and (ii) the DIP Remedies Notice Period has expired, then, in each case of clauses (a) and (b), the DIP Agents (or the Debtors, with the consent of the DIP Agents) may direct the Consultants to conduct Group 3 Sales (as defined in the Consulting Agreement) at each Store (limited, in the case of clause (a) of this paragraph 40, to Stores that are not

(Page | 26)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Extended Group 3 Stores) in accordance with the Consulting Agreement without further order of or application or motion to the Court (such Group 3 Sales, "Covered Sales"). Each Store at which Covered Sales may be conducted under this paragraph 40 shall be deemed an Additional Closing Store under this Final Order effective as of the earliest date that Covered Sales may be conducted at such Store pursuant to this paragraph 40, unless the Debtors, with the consent of the DIP Agents, notify the landlord of such Store otherwise. The provisions of paragraphs 30, 31, 33(iii), and 33(iv) of this Final Order shall not apply to Store Closings and Covered Sales conducted pursuant to this paragraph 40. Such Store Closings and Covered Sales shall be subject to oversight by the Court. The Debtors shall notify the landlord(s) of each prospective Covered Group 3 Store of prospective Covered Sales at such Store. In the event of any Covered Sales, the Consultants' Fees and Expenses (including any past due amounts) shall be paid from the proceeds of such Covered Sales in accordance with the terms of the Consulting Agreement, free and clear of any liens or security interests, and without adherence to any weekly, monthly, or aggregate limitation in any Approved Budget, but subject to the terms of the Consulting Agreement (including as to any expense budget attached thereto); *provided*, *however*, that, notwithstanding section 3(a) of the Consulting Agreement, the reconciliations with respect to the proceeds of Covered Sales and Additional Consultant Goods (if any), the payment of the Consultants' Fees and Expenses (including any past due amounts) from the proceeds of Covered Sales, and the remittance

| Debtors: | RITE AID CORPORATION, *et al.* |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

to the Consultants of the identifiable proceeds of any sale(s) of any Additional Consultant Goods (net of the Additional Consultant Goods Fee) shall, in each case, occur on a weekly basis.[4]

41.     The proceeds of any Sale of FF&E under this Final Order, net of any applicable FF&E Fee and budgeted expenses incurred in connection with such Sale(s) of FF&E (such net proceeds, the "<u>FF&E Proceeds</u>"), shall be deposited into an interest-bearing segregated account of the Debtors maintained for the benefit of the Split-Priority Debt Parties (subject to this paragraph 41) at a financial institution that is reasonably acceptable to the Required Consenting Noteholders and party to a uniform depository agreement with the U.S. Trustee (the "<u>FF&E Proceeds Escrow Account</u>").  The FF&E Proceeds Escrow Account shall be subject to the Prepetition Liens (subject to the Challenge Period), the Adequate Protection Liens, and the DIP Liens and shall not be used for any purpose other than maintaining the FF&E Proceeds of any Sale of FF&E under this Final Order.  With respect to escrowed amounts in the FF&E Proceeds Escrow Account, such funds shall be released to the Split-Priority Debt Parties to be applied to the Existing Split-Priority Indebtedness upon further order of the Court or as otherwise agreed among the Debtors, the Required Consenting Noteholders, the DIP Agents, and the Committees; *provided* that if the Existing Split-Priority Indebtedness has been repaid in full in cash, any excess funds in the FF&E Proceeds Escrow Account shall be released to the Debtors.  For the avoidance of doubt, and notwithstanding anything to the contrary that may be contained in or implied by this paragraph 41 or otherwise in this Final Order (but subject to the Consultants' rights under

---

[4]     Capitalized terms used but not defined in this paragraph 40 have the meanings given to such terms in the Final DIP Order.

(Page | 28)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

paragraphs 3 and 40 of this Final Order regarding payment of Fees and Expenses), this Final Order shall be subject in all respects to the Final DIP Order, and to the extent of any inconsistency between or ambiguity in construing this Final Order and the Final DIP Order, the Final DIP Order shall govern (except as to (x) the DIP Agents' rights under paragraph 40 of this Final Order and (y) the Consultants' rights under paragraphs 3 and 40 of this Final Order regarding payment of Fees and Expenses, as to which this Final Order shall govern).[5]

42.    Within seven (7) days of entry of the Final Order (unless such period is extended by the Court), the Consultants shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these chapter 11 cases, and the Debtors shall serve the same on the U.S. Trustee, the DIP Agents, the Ad Hoc Secured Noteholder Group, the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail.  Parties in interest shall have ten days after service of such declaration to request additional information regarding the matters disclosed in the declaration (unless such period is extended by the Court).

43.    The Consultants shall act solely as an independent consultant to the Debtors and shall not be liable for any claims against the Debtors other than as expressly provided in the Consulting Agreement (including the Consultants' indemnity obligations thereunder) or the Sale Guidelines, with the exception of acts of gross negligence, fraud, or willful misconduct and, for

---

[5]    Capitalized terms used but not defined in this paragraph 41 have the meanings given to such terms in the Final DIP Order.

(Page | 29)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

greater certainty, the Consultants shall not be deemed to be an employer, or a joint or successor employer or a related or common employer or payor within the meaning of any legislation governing employment or labor standards or pension benefits or health and safety or other statute, regulation or rule of law or equity for any purpose whatsoever, and shall not incur any successor liability whatsoever.

44.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) an authorization to assume any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion or this Final Order are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim, other than with respect to amounts payable to the Consultants pursuant to the Consulting Agreement, which are governed by the reconciliation procedures in the

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Consulting Agreement and the provisions of paragraphs 3 and 40 of this Final Order regarding payment of the Consultants' Fees and Expenses.

45.    Notwithstanding anything to the contrary contained in the Motion or this Final Order (but subject to (x) the DIP Agents' rights under paragraph 40 of this Final Order and (y) the Consultants' rights under paragraphs 3 and 40 of this Final Order as to payment of Fees and Expenses), any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of the Final DIP Order, including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Final DIP Order and to the extent of any conflict or inconsistency between this Final Order and the Final DIP Order, the Final DIP Order shall govern and control (except as to (x) the DIP Agents' rights under paragraph 40 of this Final Order and (y) the Consultants' rights under paragraphs 3 and 40 of this Final Order regarding payment of Fees and Expenses, as to which this Final Order shall govern and control).

46.    On a confidential basis and upon the written (including email) request of the U.S. Trustee (which request has been made), the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants, or the advisors to the Ad Hoc Secured Noteholder Group, the Debtors shall provide copies of periodic reports on a weekly basis concerning the Sales and Store Closings (including any sale(s) of Additional Consultant Goods) that are prepared by the Debtors, their professionals, and/or the Consultants; *provided*, *however*, that the foregoing shall

(Page | 31)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

not require the Debtors or their professionals to prepare or undertake to prepare any additional or new reports other than (a) the monthly Sales and Store Closing reports; and (b) any reporting prepared or undertaken by the Consultants pursuant to the Consultant Agreement, which reporting shall include weekly reporting to the advisors to the DIP Agents, the advisors to the Ad Hoc Secured Noteholder Group, the advisors to the Official Committee of Unsecured Creditors (on a professional-eyes-only basis), and the advisors to the Official Committee of Tort Claimants, including: (i) for each applicable weekly reporting period and the cumulative period commencing from the Agreement Effective Date (as defined in the Consulting Agreement), (A) a summary of Sales under this Final Order, (B) the gross and net proceeds of such Sales on an aggregate basis and attributable to each category of asset sold (*i.e.*, Inventory, FF&E, and Additional Consultant Goods), and (C) the total amount of Consultants' Fees and Expenses paid by the Debtors attributable to each category of asset sold; and (ii) a rolling segregated balance of Split-Lien Proceeds resulting from Sales under this Final Order on a cumulative basis.  Within thirty days after the date of completion of all Store Closings and Sales, the Debtors shall file a summary report that sets forth (a) a list of all Store Closings; (b) the Debtors' gross revenue from all Sales; (c) the total fees paid to the Consultants; and (d) the total expenses reimbursed to the Consultants.[6]

47.    Notwithstanding anything to the contrary in this Final Order, the Debtors are not authorized to, and shall not, sell the modems, ACA equipment (an electronic device used in the provision of voice over internet phone services), and any other equipment provided to the Debtors

---

[6]    Capitalized terms used but not defined in this paragraph 46 have the meanings given to such terms in the Final DIP Order.

| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

by Comcast Cable Communications Management, LLC and its affiliates or authorized contractors (collectively, "Comcast") but excluding any inside wiring located in the Debtors' leased premises and headquarters (the "Comcast Equipment"). Further, both Comcast and the Debtors are authorized to continue the existing Comcast Equipment return process in the ordinary course, provided that in the event the Debtors seek to terminate Comcast services at a location, the Debtors or their agent will notify Comcast by email to MES_CARE@comcast.com and roglenl@ballardspahr.com, with a copy to proposed counsel to the Debtors.

48.     Notwithstanding anything to the contrary in this Final Order, in conducting the Store Closings, the Debtors shall comply with that certain Supply Agreement, dated February 24, 2022 (as amended, the "AG SBT Agreement"), by and among Rite Aid Hdqtrs. Corp., the Bartell Drug Company, American Greetings Corporation ("AGC") and Papyrus Recycled Greetings, Inc. ("PRG" and, together with AGC, "American Greetings"), and the Scan-Based Trading Terms attached as Attachment 3 thereto and incorporated therein (the "SBT Terms"), in all respects, including, without limitation, by: (a) selling, and not returning to American Greetings, the products in the Debtors' possession that were or are hereafter supplied by American Greetings (collectively, the "AG Products") for sale at such Closing Store in accordance with the AG SBT Agreement until such time as the Store Closing of each Closing Store is completed; (b) conducting all sales of the AG Products through the Debtors' point of sale system and paying American Greetings' portion of the proceeds of such sales (the "AG Sale Proceeds") to American Greetings consistent with the SBT Terms; and (c) disposing at retail, and not returning to American Greetings, all AG Products remaining in the

(Page | 33)

| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Debtors' possession upon final closure of a Closing Store. The Debtors are hereby authorized and directed to continue to remit the AG Sale Proceeds to American Greetings pursuant to the terms of the AG SBT Agreement; *provided* that nothing herein shall be deemed to constitute any assumption by the Debtors of the AG SBT Agreement, with the Debtors and American Greetings reserving all of their rights with respect thereto under 11 U.S.C. § 365.

49.    Nothing in this Final Order or the Sale Guidelines shall affect or otherwise limit or relieve the Debtors from their obligations with respect to (a) that certain Western Union North America Agency Agreement (the "Agency Agreement") between certain of the Debtor parties and Western Union Financial Services, Inc. ("Western Union"), and (b) Western Union's property described under the Agency Agreement, including, but to not limited to, the Equipment (as defined in the Agency Agreement); *provided* that the Debtors shall dispose of or return Western Union's property and Equipment in a manner as is mutually agreed to between the Debtors and Western Union in writing with email being sufficient. Western Union's right to assert an administrative expense claim to the extent the Debtors sell, abandon, or otherwise misplace Western Union's property being held or controlled by the Debtors pursuant to the Agency Agreement, including the Equipment, or Western Union is otherwise damaged by the Debtors' breach of its obligations to return or destroy Equipment in accordance with the Agency Agreement, is preserved and reserved. Furthermore, nothing in this Final Order shall alter the parties' rights and obligations under the Agency Agreement and the Bankruptcy Code.

50.    Notwithstanding anything to the contrary in this Final Order or the Sale Guidelines, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the

(Page | 34)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No.: | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred pursuant to any Sale(s) without the express prior written consent of the applicable insurer and/or third-party administrator.

51. The Consulting Agreement does not modify any existing insurance coverage obligations of the Debtors under any unexpired lease of non-residential real property or applicable nonbankruptcy law.

52. For the avoidance of doubt, notwithstanding anything contained in this Final Order to the contrary, all of the rights of the Debtors, FLAVORx, Inc. ("FLAVORx"), and any other parties are preserved under this Final Order with respect to each of such party's rights, title and interest, if any, in any equipment subject to the All-In-One Master Lease, Supply and License Agreement for Pure Water Dispensing, Medication Reconstituting and Flavoring entered into by and between FLAVORx Inc. and Rite Aid Hdqtrs. Corp (such equipment, the "FLAVORx Equipment"). Pending a determination of title, the Debtors shall not sell, abandon, or otherwise interfere with any FLAVORx interests in any such FLAVORx Equipment.

53. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

54. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

55. Notwithstanding any Bankruptcy Rule to the contrary, this Final Order shall be effective and enforceable immediately upon entry hereof.

| Debtors: | RITE AID CORPORATION, *et al*. |
|---|---|
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

56.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

57.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

58.     Within two business days after the entry of this Final Order, the Debtors shall serve a copy of this Final Order and the Motion on (a) the Dispute Notice Parties, (b) the parties listed on the Debtors' master service list in these chapter 11 cases; (c) any Closing Store Interested Party (as defined herein), (d) the United States Attorney's Office for the District of New Jersey, (e) the Internal Revenue Service, (f) the Securities and Exchange Commission, (g) the U.S. Trustee, (h) counsel to the Official Committee of Unsecured Creditors, (i) counsel to the Official Committee of Tort Claimants, and (j) all parties required to receive such service pursuant to Local Rule 9013-5(f) (collectively, the "General Notice Parties").  The term "Closing Store Interested Party" means, as of any date of determination, with respect to a Closing Store, any party known to have or assert an interest in such Closing Store or in any property or assets located at such Closing Store.

59.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order, including, but not limited to:  (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al.* |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief |

allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner; (b) any claim of the Debtors, the landlords, and/or the Consultants for protection from interference with the Store Closings or Sales; (c) any other disputes related to the Store Closings or Sales; and (d) protect the Debtors and/or the Consultants against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action in respect of the Debtors, the Consultants, the landlords, the Store Closings, or the Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

## Schedule 1

**Consulting Agreement**





January 20, 2024

Steve Bixler
SVP and Chief Accounting Officer
Rite Aid Hdqtrs. Corp.
1200 Intrepid Avenue, 2nd Floor
Philadelphia, PA 19912

Re:  Consulting Engagement

Dear Mr. Bixler:

This letter agreement (together with all exhibits hereto, this "Agreement") confirms the understanding and agreement among SB360 Capital Partners, LLC ("SB360"), Hilco Merchant Resources, LLC ("Hilco," and together with SB360, the "Consultants"), and Rite Aid Hdqtrs. Corp. (together with its affiliates that are chapter 11 debtors, collectively, the "Merchant") regarding the Merchant's joint engagement of the Consultants to be retained pursuant to section 363 of the Bankruptcy Code to provide certain consulting services to the Merchant on the terms and conditions set forth herein (the "Engagement").  Capitalized terms used in this Agreement have the meanings ascribed to them in this Agreement.  This agreement refers to the Merchant, SB360, and Hilco each as a "Party" and collectively as the "Parties."

In accordance with the contractual joint venture between SB360 and Hilco, (1) principals of SB360 will lead the Engagement, and (2) principals of each of SB360 and Hilco will collaborate to provide all services necessary for the Engagement, with the assistance of additional SB360 and Hilco personnel possessing the requisite skills and experience necessary to achieve the objectives of the Engagement in the most expeditious and effective manner.  For the avoidance of doubt, the Merchant will have full decision-making authority with respect to all matters within the scope of this Agreement.

1.    **Certain Defined Terms.**

(a)    "*Agreement Effective Date*" means January 20, 2024.

(b)    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey.

(c)    "*Chapter 11 Cases*" means the jointly administered chapter 11 cases captioned *In re Rite Aid Corporation, et al.*, No. 23-18993 (MBK) (Bankr. D. N.J.). References to docket numbers in this Agreement refer to filings on the consolidated docket for the Chapter 11 Cases.

(d)    "*Covered Store*" means any Group 2 Stores or Group 3 Stores for which Consultants provide Specified Inventory Services pursuant to this Agreement;

*provided, however*, that no Group 3 Store shall be a "Covered Store" unless (i) the Merchant provides express written notice of such designation to the Consultants pursuant to section 7(c) of this Agreement; or (ii) such Group 3 Store is deemed a "Covered Store" pursuant to section 7(c)(iv) of this Agreement.

(e)   "*DIP Agents*" has the meaning ascribed to such term in Docket No. 1159.

(f)   "*DIP Documents*" has the meaning ascribed to such term in Docket No. 1159.

(g)   "*DIP Shared Collateral*" has the meaning ascribed to such term in Docket No. 1159.

(h)   "*Extended Group 3 Store*" means, as of any date of determination, any Group 3 Store for which the corresponding Merchant Lease has a Section 365(d)(4) Outside Date of June 20, 2024 or later.

(i)   "*Fees & Expenses*" means, collectively, the General Services Compensation, the Inventory Fee, the Consultant Incurred Expenses, and the FF&E Fee (each as defined herein).

(j)   "*FF&E*" means all furniture, fixtures, and equipment owned by the Merchant.

(k)   "*General Services Term*" means the period starting on the Agreement Effective Date and ending on the final Group 2 End Date.

(l)   "*Group 1 Sales*" means all sales of Merchant-owned assets in connection with the closure of Group 1 Stores.

(m)   "*Group 1 Stores*" means, collectively, each store that Merchant has designated as a "Group 1 Store" as of or after the Agreement Effective Date pursuant to section 7(c) of this Agreement.

(n)   "*Group 2 End Date*" means the date falling forty-six calendar days after the Group 2 Start Date, or such later date as agreed to in writing by the Merchant (in consultation with the DIP Agents).

(o)   "*Group 2 Sales*" means all sales of Merchant-owned assets in connection with the closure of Group 2 Stores.

(p)   "*Group 2 Start Date*" means, as to each Group 2 Store, such date(s) as may be mutually agreed in writing by the Merchant (in consultation with the DIP Agents) and the Consultants, which may be on a rolling basis.

(q)   "*Group 2 Stores*" means, collectively, each store and distribution center that Merchant has designated as a "Group 2 Store" as of or after the Agreement Effective Date pursuant to section 7(c) of this Agreement.

(r)    "*Group 3 End Date*" means, if applicable, the date falling sixty-seven calendar days after the Group 3 Start Date (if any), or such later date as agreed to in writing by the Merchant (in consultation with the DIP Agents).

(s)    "*Group 3 Sales*" means, if applicable, all sales of Merchant-owned assets in connection with any closure of Group 3 Stores (if any).

(t)    "*Group 3 Start Date*" means, if applicable, a date, after entry of the Approval Order, to be mutually agreed in writing by the Merchant (in consultation with the DIP Agents) and the Consultants; *provided* that, as to any Group 3 Store that is deemed a "Covered Store" pursuant to section 7(c)(iv) of this Agreement, the Group 3 Start Date for each such Group 3 Store shall be the date that such Group 3 Store is deemed a "Covered Store" under section 7(c)(iv) of this Agreement.

(u)    "*Group 3 Stores*" means, collectively, each store and distribution center that Merchant has designated as a "Group 3 Store" as of or after the Agreement Effective Date pursuant to section 7(c) of this Agreement.

(v)    "*Inventory*" means, as to any Merchant-operated store, all Merchant-owned inventory of such store, excluding (i) any Pharmacy Assets and (ii) any Additional Consultant Goods (as defined herein).

(w)    "*Merchant Lease*" means any agreement under which Merchant occupies or uses a Group 1 Store, a Group 2 Store, or a Group 3 Store, excluding any such agreements rejected by Merchant in the Chapter 11 Cases.

(x)    "*Pharmacy Assets*" means, as to any Merchant-operated store, the following Merchant-owned assets of such store: (i) all pharmacy inventory that is dispensed as a prescription behind the pharmacy counter; and (ii) any prescription files and all related records.

(y)    "*Plan/Sale Order*" means an order of the Bankruptcy Court that (i) confirms an Acceptable Plan (as defined in the DIP Documents); or (ii) approves a Retail Business Sale (as defined in the DIP Documents).

(z)    "*Sales*" means, collectively, (i) all Group 1 Sales, all Group 2 Sales, and any Group 3 Sales (if any); and (ii) to the extent any Additional Consultant Goods (as defined herein) are sold at any Covered Stores, such sales of Additional Consultant Goods.

(aa)    "*Sale Term*" means (i) with respect to Group 2 Sales, the period between the Group 2 Start Date and the Group 2 End Date; and (ii) with respect to any Group 3 Sales (if any), the period between the Group 3 Start Date and the Group 3 End Date.

(bb)    "*Section 365(d)(4) Outside Date*" means, as of any date of determination, with respect to any unexpired Merchant Lease, the last day of the time period specified in 11 U.S.C. § 365(d)(4)(A)(i), as such time period may be extended by the

Bankruptcy Court or by written agreement with the lessor under such Merchant Lease.

(cc)  "*Services*" means the services described in section 2 of this Agreement.

(dd)  "*Specified Inventory Services*" means (i) any services described in sections 2(c)(i) through 2(c)(iii) of this Agreement, to the extent such services are provided (or to be provided) in connection with the monetization of Inventory in place; and (ii) any other Inventory Services incidental thereto.

(ee)  "*Supervisor*" means a qualified supervisor engaged by SB360 or Hilco to provide Specified Inventory Services pursuant to this Agreement.

(ff)  "*Store Closing Order*" means the order entered at Docket No. 709.  The terms of the Store Closing Order are incorporated by reference herein.

## 2.    Scope of Engagement.

(a)  <u>General Services</u>.  The Consultants shall provide the Merchant with the following services (collectively, the "<u>General Services</u>") with respect to all Group 1 Stores and Group 1 Sales and all Group 2 Stores and Group 2 Sales, all subject to final Merchant approval and full Merchant discretion (in consultation with the DIP Agents):

(i)  analyze the data and the operational plan resulting from the Group 1 Stores that have been closed prior to the Agreement Effective Date;

(ii)  advance planning for any additional store closings, including operational preparation, marketing creative, initial discount cadence, system implementation, assessing personnel and budget requirements;

(iii)  prepare a monetization model for any additional store closings which can be modified by the inclusion or deletion of stores and compare that model with the Group 1 Stores that have been closed prior to the Agreement Effective Date to project the differential monetary recovery;

(iv)  provide analysis of any sale offers and impact to collateral value;

(v)  coordinate weekly financial reporting package for the Merchant, its advisors, the DIP Agents, and other constituents;

(vi)  conduct weekly update calls with Merchant's management and advisors, the DIP Agents, and other applicable constituents;

(vii)  conduct site visits to closing stores (at Merchant's election) to evaluate the implementation of the store closing process and protocol and make recommendations related to such implementation;

(viii)   assist Merchant with marketing initiatives for relocating customers to nearby store locations;

(ix)   make recommendations to sell through merchandise to mitigate transfer of back-end merchandise;

(x)   make marketing recommendations which are subject to Merchant approval to increase sell through and reoccurring traffic for prescription refills;

(xi)   maintain the confidentiality of all proprietary or non-public information regarding Merchant or the closing stores of which Consultants or their respective representatives become aware, except for information that is public as of the Agreement Effective Date or becomes public through no fault of any Consultant; and

(xii)   such other services as are approved by the Merchant in writing and agreed to by the Consultants.

(b)   <u>Compensation for General Services</u>.  For each month of the General Services Term, the Merchant shall pay the Consultants a monthly fee of $25,000 for the performance of the General Services and shall reimburse the Consultants for their reasonable, documented out-of-pocket expenses approved by Merchant that are incurred in connection with providing the General Services (collectively, the "<u>General Services Compensation</u>"), in each case, subject to section 3(c) of this Agreement.  The Consultants shall provide Merchant with invoices for General Services Compensation on a monthly basis, and each such invoice shall be due and payable by the later of (i) the date that the Bankruptcy Court enters the Approval Order (as defined herein) and (ii) thirty days after the Merchant's receipt of such invoice (subject to section 3(c) of this Agreement).  In the event the General Services Term includes a partial month of service, the monthly fee for General Services shall be pro-rated accordingly.

(c)   <u>Inventory Services</u>.   Subject to section 2(f) of this Agreement, the Consultants shall provide the Merchant with the following services (collectively, the "<u>Inventory Services</u>") with respect to all Group 2 Sales and, at Merchant's election, any Group 3 Sales (if any), all subject to final Merchant approval and full Merchant discretion and the consent of the DIP Agents:

(i)   oversee the monetization and disposal of the Inventory from the closing stores and coordinate with Merchant to maximize the sale of Inventory to be shipped to/from the closing stores, including but not limited to providing Supervisors;

(ii)   recommend and implement appropriate point of purchase, point of sale and external advertising (including signage) to effectively sell the Inventory during the sale, consistent with the sale themes to be approved by Merchant in consultation with the DIP Agents and recognizing the goal of maximizing the value of the Pharmacy Assets;

(iii)   maximize the proceeds of the Inventory while protecting and promoting Merchant's trade name and goodwill in the marketplace;

(iv)   coordinate with Merchant regarding an advertising and signage program to direct customers to Merchant's e-commerce and go-forward locations;

(v)   coordinate accounting functions, including evaluation of sales of Inventory by category, sales reporting and monitoring of the sale expenses using Merchant's IT systems, daily reporting to Merchant of sales and weekly reporting and reconciliation of sale proceeds and sale expenses;

(vi)   recommend appropriate staffing levels for closing stores (including store employees) and appropriate bonus and incentive programs for store employees;

(vii)   maintain the confidentiality of all proprietary or non-public information regarding Merchant or the closing stores of which Consultants or their respective representatives become aware, except for information that is public as of the Agreement Effective Date or becomes public through no fault of any Consultant;

(viii)   develop a sales plan to communicate to the DIP Agents and other constituents and report budget to actuals on a weekly basis; and

(ix)   conduct weekly update calls with Merchant's management and advisors, the DIP Agents, and other applicable constituents.

(d)   <u>Compensation for Inventory Services.</u>

(i)   As compensation for providing the Inventory Services, the Consultants shall receive a commission equal to one-and-a-half percent (1.5%) of Gross Proceeds (as defined below) from the sale of Inventory at each Covered Store (the "<u>Inventory Fee</u>"), which shall be paid in accordance with section 3 of this Agreement.

(ii)   "<u>Gross Proceeds</u>" means the aggregate of (A) the total amount (in dollars) of all sales of Inventory at the applicable Covered Store(s), in each case, during the Sale Term for such Covered Store(s) and exclusive of sales taxes (but inclusive of any amounts credited against the listed sale price of such Inventory that are attributable to gift cards, coupons, and/or customer rewards honored in connection with the sale of such Inventory); and (B) all proceeds of Merchant's insurance for loss of or damage to Inventory at each applicable Covered Store arising from events occurring during the Sale Term relating to such Inventory.

(iii)   The Consultants and the Merchant shall agree on a pro forma budget of Consultant Incurred Expenses (as defined herein) relating to each group of Covered Stores that are designated to be closed (the "<u>Budget</u>"), which

Budget shall be satisfactory to the DIP Agents.   Merchant shall be responsible for payment of Consultant Incurred Expenses to the Consultants, which shall be paid in accordance with section 3 of this Agreement.

(A)   "<u>Consultant Incurred Expenses</u>" means, as set forth in the Budget, the aggregate amount of (I) Supervisor Costs (as defined herein), (II) advertising expenses and (III) Consultants' reasonable and documented legal fees and expenses (limited to one external counsel and one local counsel for all Consultants) incurred in connection with (a) preparing this Agreement and obtaining the Approval Order, (b) negotiating any "side letters" with landlords of the applicable Covered Stores, or (c) enforcing the terms of this Agreement.   For the avoidance of doubt, any expenses related or allocable to the sale of Additional Consultant Goods (as defined herein) shall not constitute Consultant Incurred Expenses.

(B)   "<u>Supervisor Costs</u>" means the following customary costs and expenses incurred by Consultants with respect to Supervisors, in each case, in accordance with the Budget:   (I) the weekly compensation paid during the applicable Sale Term per Supervisor (which in each case represents Consultants' actual costs); (II) reasonable and documented travel expenses of the Supervisors between Covered Stores during the applicable Sale Term and to and from such Covered Stores at the commencement and conclusion of the corresponding Sale (including reasonable travel to and from the Supervisors' homes at such times); and (III) Supervisor deferred compensation as provided in the Budget.

(e)   <u>Disposition of FF&E</u>.

(i)   Subject to final Merchant approval, Consultants shall sell FF&E located at the applicable Covered Stores during the applicable Sale Term.  Consultants shall provide supervision and shall procure other goods and services necessary to sell such FF&E within and subject to a budget to be approved by Merchant (with budgeted expenses to be funded with the proceeds received from such FF&E sales).  Consultants will conduct all such FF&E sales in a manner designed to maximize the return to Merchant.

(ii)   In consideration of such services, Consultants shall be paid a fee equal to fifteen percent (15.0%) of the proceeds (net of sales tax) received from sales of FF&E located at the applicable Covered Stores during the applicable Sale Term ("<u>FF&E Fee</u>"), which fee shall be paid from the proceeds of such sales in accordance with section 3 of this Agreement.

(f)    <u>Additional Provisions Relating to Inventory Services</u>.

    (i)    The provision of Specified Inventory Services in respect of any Group 2 Stores shall be determined upon the mutual written agreement of Merchant and the DIP Agents (acting in good faith) based upon the Consultants' recommendations to maximize the proceeds of the Inventory and other DIP Shared Collateral (including Pharmacy Assets).  Additionally, the Consultants shall not be obligated to provide Specified Inventory Services in respect of any Group 2 Stores unless and until the Approval Order is entered by the Bankruptcy Court; *provided* that Merchant shall use commercially reasonable best efforts to obtain entry of such Approval Order reasonably promptly upon entry into this Agreement.

    (ii)    Except as provided in section 7(c)(iv) of this Agreement, the Consultants shall not provide any Inventory Services in respect of any Group 3 Stores absent the Merchant's express written direction to provide such services.  Nothing in this Agreement requires the Merchant to (x) request or direct the Consultants to provide any services in respect of any Group 3 Stores or (y) take any action to close any Group 3 Stores or to undertake any Group 3 Sales, provided that any Group 3 Store deemed a "Covered Store" pursuant to section 7(c)(iv) of this Agreement shall be subject to Group 3 Sales as and when required hereby.  If the Merchant determines to designate any Group 3 Stores as Covered Stores to be closed with the Consultants' assistance (or a Group 3 Store is deemed a "Covered Store" pursuant to section 7(c)(iv) of this Agreement), such closures shall be conducted in accordance with the terms of this Agreement and the Approval Order and shall be subject to the further approval of the DIP Agents (as provided in the DIP Documents), but shall not be subject any further approval of the Bankruptcy Court.

(g)    <u>Additional Consultant Goods</u>.

    (i)    Subject to Merchant's and each DIP Agent's prior written approval, Consultants may, at Consultants' sole cost and expense, supplement the Inventory in the Covered Stores with additional goods procured by Consultants which are of like kind, and no lesser quality to the Inventory in the Covered Stores (such additional goods, "<u>Additional Consultant Goods</u>").  The Additional Consultant Goods shall be purchased by Consultants and delivered to the Covered Stores at Consultants' sole expense (including as to labor, freight and insurance relative to shipping such Additional Consultant Goods to the Covered Stores).  Sales of Additional Consultant Goods shall be run through Merchant's cash register systems; *provided, however*, that Consultants shall mark the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Inventory.  Consultants and Merchant shall also cooperate so as to ensure that the Additional Consultant Goods are marked in such a way

that a reasonable consumer could identify the Additional Consultant Goods as non-Merchant goods. Additionally, Consultants shall provide signage in the Covered Stores notifying customers that the Additional Consultant Goods have been included in the Covered Stores.

(ii)     Merchant shall retain an amount equal to five percent (5%) percent of the gross proceeds (excluding Sale Taxes) from the sale of the Additional Consultant Goods (the "Additional Consultant Goods Fee"), and Consultants shall be paid by Merchant all remaining amounts from the sale of the Additional Consultant Goods in accordance with section 3 of this Agreement.

(iii)    Consultants and Merchant intend that any transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from Consultants to Merchant in all respects and not a consignment for security purposes. Subject solely to Consultants' obligations to pay to Merchant the Additional Consultant Goods Fee, at all times and for all purposes the Additional Consultant Goods and their identifiable proceeds shall be the exclusive property of Consultants, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their identifiable proceeds. The Additional Consultant Goods shall at all times remain subject to the exclusive control of Consultants.

(iv)     Merchant shall, at Consultants' sole cost and expense, insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Consultant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

(v)      Merchant acknowledges, and the Approval Order shall provide, that the Additional Consultant Goods shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code. Consultants are hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the identifiable proceeds of the Additional Consultant Goods, which security interest and lien shall be deemed perfected pursuant to the Approval Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (*provided* that Consultants are hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable Uniform Commercial Code provisions identifying Consultants' interest in the Additional Consultant Goods as consigned goods thereunder and the Merchant as the consignee therefor, and Consultants' security interest in and lien upon such Additional Consultant Goods and the identifiable proceeds thereof).

3.    **Accounting & Payment Matters.**

    (a)    <u>Weekly Reconciliations</u>.  The Merchant shall collect all proceeds from the Sales of Inventory and Additional Consultant Goods.  The Merchant shall, upon request, deliver to Consultants account statements and such other information relating to the Sales reasonably requested by Consultants.  On Wednesday of each week, commencing on the first Wednesday following the commencement of the Sale Term, the Merchant and the Consultants shall reconcile the results of the applicable Sales for the prior week, including, without limitation, the Fees & Expenses, and Merchant shall pay all amounts due to Consultants pursuant to this Agreement for such prior week within twenty-one days after the date of such reconciliation, subject to section 3(c) of this Agreement.

    (b)    <u>Final Reconciliation</u>.  Subject to section 3(c) of this Agreement, the Parties shall complete a final reconciliation and settlement of all amounts payable to Consultants pursuant to this Agreement no later than forty-five (45) days following the end of the applicable Sale Term.

    (c)    <u>Bankruptcy Court Authorization for Payments</u>.  Notwithstanding anything to the contrary in this Agreement, the Merchant shall not pay or reimburse any amounts to the Consultants under this Agreement unless and until the Approval Order is entered by the Bankruptcy Court.

4.    **Insurance.**

    (a)    <u>Merchant Insurance</u>.  Throughout the Sale Term, Merchant shall maintain casualty and liability insurance policies covering injuries to persons and property at or in connection with the applicable Covered Stores (including, but not limited to, products liability/completed operations, contractual liability, comprehensive public liability, and auto liability insurance) on an occurrence basis in an amount of at least $1,000,000 per occurrence and $2,000,000 in the aggregate and umbrella coverage of at least $5,000,000.  Merchant shall cause Consultants to be named as additional insureds with respect to all such policies.  Additionally, throughout the Sale Term, Merchant shall maintain, in such amounts as it currently has in effect, workers' compensation insurance in compliance with all applicable statutory requirements.  No later than the date that the Approval Order is entered, the Merchant shall provide Consultants with a certificate or certificates evidencing the insurance coverage required hereunder.

    (b)    <u>Consultants Insurance</u>.  Throughout the Sale Term, the Consultants shall maintain (at the Consultants' expense) casualty and liability insurance policies covering injuries to persons and property at or in connection with the Covered Stores (including, but not limited to, products liability/completed operations, contractual liability, comprehensive public liability, and auto liability insurance) on an occurrence basis in an amount of at least $1,000,000 per occurrence and $2,000,000 in the aggregate and umbrella coverage of at least $5,000,000. The Consultants shall name Merchant as an additional insured and loss payee under each such

policy. No later than the date that the Approval Order is entered, Consultants shall provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder. Additionally, throughout the Sale Term, the Consultants shall maintain workers' compensation insurance in compliance with all applicable statutory requirements. Further, if the Consultants employ or engage third parties to perform any of the Consultants' undertakings with regard to this Agreement, the Consultants will ensure that such third parties are covered by the Consultants' insurance or maintain all of the same insurance as the Consultants are required to maintain pursuant to this section 4(b) and name Merchant as an additional insured and loss payee under each policy for such insurance.

## 5.   Representations & Warranties; Certain Covenants

(a)   The Merchant warrants, represents, covenants and agrees that (i) Merchant is a Merchant duly organized, validly existing and in good standing under the laws of its state of organization, and maintains its principal executive office at the address set forth herein; and (ii) subject to any requisite Bankruptcy Court authorization(s), (A) Merchant has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder and (B) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein.

(b)   The Merchant shall provide such services as are reasonably necessary or appropriate for the Sales. Without limiting any other term or provision of this Agreement, during the Sale Term, Merchant shall provide Consultants with (i) employees at the applicable Covered Stores necessary or appropriate to implement and conduct the applicable Sales at such Covered Stores, and (ii) peaceful use and occupancy of, and reasonable access (including reasonable before and after-hours access and normal utilities/phone service) to, such Covered Stores.

(c)   The Merchant shall prepare and process all reporting forms, certificates, reports, and other documentation required under applicable law in connection with taxation of or relating to the Sales. Consultants shall provide all assistance reasonably required or requested by Merchant in connection with the preparation and processing of any such reporting forms, certificates, reports, or other documentation.

(d)   Each Consultant warrants, represents, covenants and agrees that (i) such Consultant is duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the addresses set forth herein, and (ii) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions

of such Consultant and this Agreement constitutes a valid and binding obligation of such Consultant enforceable against such Consultant in accordance with its terms and conditions, and the consent of no other entity or person is required for such Consultant to fully perform all of its obligations herein.

**6. Indemnification.**

(a) <u>Consultant Indemnification</u>. Each Consultant shall indemnify, defend, and hold Merchant and its directors, officers, members, managers, partners, employees, attorneys, advisors, representatives, lenders, principals, and affiliates (other than such Consultant or its Consultant Indemnified Parties (as defined herein)) (collectively, "<u>Merchant Indemnified Parties</u>") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (i) the willful or negligent acts or omissions of such Consultant or such Consultant Indemnified Parties; (ii) such Consultant's breach of any provision of, or the failure to perform any obligation under, this Agreement; (iii) any liability or other claims made by such Consultant Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to such Consultant's conduct of the Sales or provision of Services, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (iv) any harassment, discrimination, or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of any Merchant Indemnified Parties, or of Merchant's customers, by such Consultant or any of such Consultant Indemnified Parties; and (v) any claims made by any party engaged by such Consultant as an employee, agent, representative or independent contractor arising out of such engagement.

(b) <u>Merchant Indemnification</u>. Merchant shall indemnify and hold Consultant and its officers, directors, principals, shareholders, affiliates, members, consultants, advisors, and employees (collectively, "<u>Consultant Indemnified Parties</u>") harmless from and against all losses, liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (i) the negligence, intentional or unlawful acts or omissions of the Merchant or his consultants, advisors, employees, representatives and principals (other than Consultant Indemnified Parties); (ii) Merchant's breach of any provision of, or the failure to perform any obligation under this Agreement; (iii) Merchant's failure to (A) timely pay any taxes required under applicable law to be paid by Merchant in connection with the Services and/or Sales at Covered Stores or (B) timely file with the requisite taxing authorities all related reports and other documents required by applicable law to be filed with or delivered to such taxing authorities; (iv) any harassment, discrimination, or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of either Consultant or the Consultant Indemnified Parties by Merchant or any Merchant Indemnified Parties; and (v) any consumer warranty or products liability claims relating to any Merchant-owned assets sold pursuant to sections 2(c) or 2(e) of this Agreement.

7.   **Other Provisions.**

(a)   <u>Approval Order</u>.   The Merchant shall prepare and file a motion pursuant to 11 U.S.C. § 363 (the "<u>Motion</u>") seeking the entry of an order, in form and substance reasonably acceptable to Consultants, authorizing the Merchant's entry into and performance under this Agreement (such order, the "<u>Approval Order</u>").  Prior to filing the Motion, the Merchant shall share the Motion, Approval Order, and all related documents with Consultants and the DIP Agents.  If the Motion is denied or the Approval Order is not entered, this Agreement is null and void.  The Merchant shall use the Merchant's reasonable best efforts to ensure that the Approval Order shall specifically provide for, among other things, the following: (i) payment of the Fees and Expenses without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (ii) approval of the transactions contemplated hereby (to the extent not approved by a separate order of the Bankruptcy Court); (iii) the Consultants' right to abandon any unsold items, (iv) approval of the sale of Additional Consultant Goods as provided herein, and (v) authority to take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.

(b)   <u>Periodic Status Updates</u>.  Consultants shall provide the Merchant, its advisors, the DIP Agents and their advisors, and any other constituents requested by Merchant, with periodic updates regarding the Sales.

(c)   <u>Store Designations</u>.

(i)   Subject to section 7(c)(iv) of this Agreement, any time on or after the Agreement Effective Date, the Merchant may designate any Merchant-operated store or distribution center (a "<u>Store</u>") as a "Group 1 Store," a "Group 2 Store," or a "Group 3 Store" under this Agreement by providing a written notice of such designation to the Consultants in accordance with section 7(i) and the other terms of this Agreement, in each case, subject to the consent of the DIP Agents.  The initial "Group 1 Stores," "Group 2 Stores," or "Group 3 Stores" as of the Agreement Effective Date shall be as separately agreed to by the Consultants, Merchant, and the DIP Agents.

(ii)   Subject to section 7(c)(iv) of this Agreement, at any time on or after the Agreement Effective Date, the Merchant may designate any Group 2 Store or Group 3 Store as a "Covered Store" under this Agreement by providing a written notice of such designation to the Consultants in accordance with section 7(i) of this Agreement, in each case, subject to the consent of the DIP Agents.  The initial "Covered Stores" as of the Agreement Effective Date shall be as separately agreed to by the Consultants, Merchant, and the DIP Agents.

(iii)   [Reserved].

(iv)    A store that is designated as a Group 2 Store or Group 3 Store as of the Agreement Effective Date shall not be subsequently re-designated as a Group 1 Store without the prior written consent of the Consultants. To the extent that Merchant (with the consent of the DIP Agents) re-designates a Group 3 Store as a Group 2 Store after the Agreement Effective Date, such store or distribution center shall be deemed a "Covered Store" under this Agreement effective as of the date of such re-designation. If the Bankruptcy Court has not entered a Plan/Sale Order by March 18, 2024, then each Group 3 Store that is not an Extended Group 3 Store as of such date shall be deemed a "Covered Store" under this Agreement effective as of March 19, 2024, unless the Debtors (with the consent of the DIP Agents) notify the Consultants otherwise in writing.

(d)    The Merchant and its advisors shall (i) keep the Consultants apprised of developments regarding Extended Group 3 Stores (including the identification and population thereof); and (ii) coordinate with the Consultants on logistical matters relating to the deemed designation of Group 3 Stores as "Covered Stores" pursuant to section 7(c)(iv) of this Agreement.

(e)    The Consultants shall procure (at the sole cost and expense of the Merchant) all necessary point of purchase, point of sale and external advertising (including signage) to effectively sell the Inventory during any prospective Sale, consistent with the sale themes to be approved by Merchant and the DIP Agents (the "Advertising Materials"). The Consultants shall so procure the Advertising Materials no later than such date as separately agreed to by Merchant, the Consultants, and the DIP Agents. All Advertising Materials shall remain the property of the Merchant.

(f)    During the performance of the Inventory Services, to the extent requested by Merchant, each Consultant will use good faith efforts to formulate a proposal to monetize the Inventory in additional stores for a guaranteed return which, if accepted by Merchant, will form the basis of an agency agreement between Merchant and the Consultants. Any such agency agreement will be subject to the approval of the Bankruptcy Court and the DIP Agents and contain the customary terms and conditions for such an agreement.

(g)    Termination. The Merchant shall (in consultation with the DIP Agents) have the right to terminate this Agreement for cause upon written notice to the Consultants, and the Consultants shall have the right to terminate this agreement for cause upon written notice to the Merchant. Termination for cause shall mean any termination as a result of a Party's fraud, misrepresentation, gross negligence, willful misconduct or material breach of any of the terms of this Agreement. Upon termination of this Agreement, Consultants shall: (i) immediately discontinue all Services; and (ii) deliver to the Merchant all information, reports, papers, and other materials prepared or obtained by Consultants in performing the Services, whether completed or in process. Upon termination of this Agreement, the Merchant shall be liable for payment of all accrued and unpaid Fees & Expenses of Consultants as of the effective

date of the termination.  Notwithstanding any of the foregoing, the provisions of section 6 of this Agreement shall survive any termination of this Agreement.

(h)   <u>Consultants Not Liable for Employee Wages/Benefits</u>. The Parties expressly acknowledge and agree that Consultants shall have no liability to the Merchant or to any employee of Merchant for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from the Merchant's employment, hiring, or retention of its employees, and such employees shall not be considered employees of Consultants.

(i)   <u>Notice</u>. Any correspondence and any notice required or permitted to be given under this Agreement shall be addressed as follows and shall be deemed given on the same date on which it is sent if sent by email.

| | |
|---|---|
| If to Consultants: | SB360 Capital Partners, LLC<br>75 Second Avenue<br>Needham, MA  02494<br>Attn: Aaron S. Miller, President<br>Email:  amiller@sb360.com |
| | - and - |
| | Hilco Merchant Resources, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, IL 60062<br>Attn:  Ian Fredericks, President<br>Email:  ifredericks@hilcoglobal.com |
| With a copy to: | Leichtman Law PLLC<br>185 Madison Avenue - 15th Floor<br>New York, NY 10016<br>Attn:   Maura I. Russell<br>Email:  mrussell@leichtmanlaw.com |
| | - and - |
| | Lowenstein Sandler LLP<br>One Lowenstein Parkway<br>Roseland, NJ 07068<br>Attn:  Jeffrey Cohen and Andrew Behlmann<br>Email:  jcohen@lowenstein.com;<br>            abehlmann@lowenstein.com |
| If to the Merchant: | Rite Aid Hdqtrs. Corp.<br>1200 Intrepid Avenue, 2nd Floor<br>Philadelphia, PA 19912<br>Attn:  Steve Bixler<br>Email:  sbixler@riteaid.com |

|  |  |
|---|---|
| With a copy to: | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Attn: Aparna Yenamandra, P.C., Zach Manning, and Ross Fiedler<br>Email: aparna.yenamandra@kirkland.com; zach.manning@kirkland.com; ross.fiedler@kirkland.com |

(j)  <u>Exclusivity</u>.  The Consultants shall be the exclusive liquidator with respect to the Group 2 Stores and the Group 2 Sales.  Additionally, if the Merchant determines to have Consultants provide Inventory Services with respect to any Group 3 Sales (if any), the Consultants shall be the exclusive liquidator with respect to such Group 3 Sales.  Subject to section 3(c) of this Agreement, if the Merchant undertakes Group 3 Sales but elects not to have the Consultants provide services with respect thereto, then Merchant shall pay $500,000 to Consultants within five business days after commencing Group 3 Sales, with such payment to be funded solely with funds that constitute DIP Shared Collateral.

(k)  <u>Construction</u>. This Agreement shall be deemed drafted by each Party hereto, and there shall be no presumption against either Party in the interpretation of this Agreement. By executing this Agreement, the Merchant and each Consultant acknowledges and represent that it is represented by and has consulted with independent legal counsel with respect to the terms and conditions contained herein. All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of this Agreement.

(l)  <u>Independent Contractor</u>.  Consultants will be providing the Services to the Merchant as independent contractors.  For greater certainty, this Agreement does not create any relationship of employer and employee, or of joint ventures between the Merchant and Consultants.

(m)  <u>Severability</u>.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect, and the invalid or unenforceable provision shall be reformed to the minimum extent required to render it valid and enforceable and to effectuate the intent of this Agreement.

(n)  <u>Assignment</u>. Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either party hereto without the prior written consent of the other party. This Agreement, including, without limitation, the obligation of the Merchant to compensate Consultants for the Services, shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, legal representatives, successors and permitted assigns.  Notwithstanding the foregoing, Consultants are authorized to form a contractual joint venture with other national liquidators approved by Merchant and the DIP Agents to perform the Services hereunder, provided that the Consultants remain the lead in such joint venture.

(o)    <u>Modifications</u>. No modification, amendment, or waiver of any of the provisions contained in this Agreement, or any future representation, promise, or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party.  The failure by a Party to enforce, or the delay by a Party in enforcing, any of said party's rights under this Agreement shall not be construed as a continuing waiver of such rights, and said Party may, within such time as is provided by applicable law, commence suits, actions, or proceedings to enforce any or all of such rights. A waiver by a Party of a default in one or more instances shall not be construed as a waiver in other instances.

(p)    <u>Entire Agreement</u>. This Agreement, together with all exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party to this Agreement except as specifically set forth in this Agreement. All prior agreements, discussions, and negotiations are entirely superseded by this Agreement.

(q)    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of Delaware without reference or regard to choice of law provisions.  THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING RELATED TO OR ARISING OUT OF THE SERVICES, ANY TRANSACTION, OR CONDUCT IN CONNECTION THEREWITH OR THIS AGREEMENT.

*[Signatures on the following page]*

IN WITNESS WHEREOF, the Merchant and the Consultants have executed and delivered this Agreement as of the Agreement Effective Date.

RITE AID HDQTRS. CORP.,
on behalf of itself and its affiliates that are
debtors in the Chapter 11 Cases

By:  _____

Title:   SVP and Chief Accounting Officer

SB360 CAPITAL PARTNERS, LLC

By:  _____

Title:   President


HILCO MERCHANT RESOURCES, LLC

By:  _____

Title:  _____

IN WITNESS WHEREOF, the Merchant and the Consultants have executed and delivered this Agreement as of the Agreement Effective Date.

RITE AID HDQTRS. CORP.,
on behalf of itself and its affiliates that are
debtors in the Chapter 11 Cases

By:    _____

Title:   SVP and Chief Accounting Officer

SB360 CAPITAL PARTNERS, LLC

By:    _____

        Aaron S. Miller
Title:   President

HILCO MERCHANT RESOURCES, LLC

By:    _____

Title:

IN WITNESS WHEREOF, the Merchant and the Consultants have executed and delivered this Agreement as of the Agreement Effective Date.

RITE AID HDQTRS. CORP.,
on behalf of itself and its affiliates that are
debtors in the Chapter 11 Cases

By:  _____

Title:   SVP and Chief Accounting Officer

SB360 CAPITAL PARTNERS, LLC

By:   _____

Title:   President

HILCO MERCHANT RESOURCES, LLC

By:   *T. Kellan Grant* _____

Title:   EVP Commercial Counsel

## Schedule 2

**Initial Closing Stores**

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 1 | 213 | 2715 PARADE STREET | ERIE | PA | 16504 |
| 2 | 225 | 5612 N. FIFTH STREET | PHILADELPHIA | PA | 19120 |
| 3 | 365 | 728 EAST PULASKI HIGHWAY | ELKTON | MD | 21921 |
| 4 | 374 | 5624 BALTIMORE NATIONAL PK | BALTIMORE | MD | 21228 |
| 5 | 385 | 5804 RITCHIE HIGHWAY | BALTIMORE | MD | 21225 |
| 6 | 443 | 350 MAIN STREET | PENNSBURG | PA | 18073 |
| 7 | 553 | 4011 COTTMAN AVENUE | PHILADELPHIA | PA | 19135 |
| 8 | 558 | 1441 OLD YORK ROAD | ABINGTON | PA | 19001 |
| 9 | 761 | 2887 HARLEM ROAD | CHEEKTOWAGA | NY | 14225 |
| 10 | 803 | 300 MARKET STREET | JOHNSTOWN | PA | 15901 |
| 11 | 850 | 8716 NEW FALLS ROAD | LEVITTOWN | PA | 19054 |
| 12 | 852 | 11750 BUSTLETON AVENUE | PHILADELPHIA | PA | 19116 |
| 13 | 857 | 169 WEST LANCASTER AVENUE | ARDMORE | PA | 19003 |
| 14 | 1070 | 420 DANIEL WEBSTER HIGHWAY | MERRIMACK | NH | 03054 |
| 15 | 1288 | 1315 EAST WASHINGTON LANE | PHILADELPHIA | PA | 19138 |
| 16 | 1524 | 924 WEST MAIN STREET | FREMONT | MI | 49412 |
| 17 | 1527 | 507 N LAFAYETTE STREET | GREENVILLE | MI | 48838 |
| 18 | 1530 | 715 SOUTH CLINTON STREET | GRAND LEDGE | MI | 48837 |
| 19 | 1685 | 801 WYOMING AVENUE STE 9 | WEST PITTSTON | PA | 18643 |
| 20 | 1704 | 657 HEACOCK ROAD | YARDLEY | PA | 19067 |
| 21 | 1767 | 2801 W. DAUPHIN STREET | PHILADELPHIA | PA | 19132 |
| 22 | 1796 | 4057 ASBURY AVE STE 8 | TINTON FALLS | NJ | 07753 |
| 23 | 1854 | 1709 LIBERTY STREET | ERIE | PA | 16502 |
| 24 | 1859 | 7501 RITCHIE HIGHWAY | GLEN BURNIE | MD | 21061 |
| 25 | 1955 | 674 ROUTE 196, STE 14 | TOBYHANNA | PA | 18466 |
| 26 | 1970 | 431 HALEDON AVENUE | HALEDON | NJ | 07508 |
| 27 | 1977 | 35 MILL ROAD | IRVINGTON | NJ | 07111 |
| 28 | 2264 | 2722 WEST 9TH STREET | CHESTER | PA | 19013 |
| 29 | 2390 | 3129 LINCOLN WAY EAST | MASSILLON | OH | 44646 |
| 30 | 2442 | 950 EAST BALTIMORE PIKE | YEADON | PA | 19050 |
| 31 | 2521 | 1636 ROUTE 38 SUITE 49 | LUMBERTON | NJ | 08048 |
| 32 | 2629 | 120 SOUTH MAIN STREET | NEW CARLISLE | OH | 45344 |
| 33 | 2709 | 8235 STENTON AVENUE | PHILADELPHIA | PA | 19150 |
| 34 | 3084 | 146 WOODMAN DRIVE | DAYTON | OH | 45431 |
| 35 | 3117 | 2701 MARKET STREET | YOUNGSTOWN | OH | 44507 |
| 36 | 3247 | 401 WEST NORTH STREET | SPRINGFIELD | OH | 45504 |
| 37 | 3377 | 7941 OXFORD AVENUE | PHILADELPHIA | PA | 19111 |
| 38 | 3457 | 136 NORTH 63RD STREET | PHILADELPHIA | PA | 19139 |
| 39 | 3477 | 773 HAMILTON STREET | SOMERSET | NJ | 08873 |
| 40 | 3681 | 5440 LANSDOWNE AVENUE | PHILADELPHIA | PA | 19131 |
| 41 | 3781 | 7967 BALTIMORE ANNAPOLIS BLVD | GLEN BURNIE | MD | 21060 |
| 42 | 3880 | 15250 24 MILE ROAD | MACOMB | MI | 48042 |
| 43 | 3958 | 2002 AVENUE  U | BROOKLYN | NY | 11229 |
| 44 | 4045 | 1434 S BLACK HORSE PIKE | WILLIAMSTOWN | NJ | 08094 |
| 45 | 4234 | 102 NORTH CENTERVILLE ROAD | STURGIS | MI | 49091 |
| 46 | 4300 | 47300 PONTIAC TRAIL | WIXOM | MI | 48393 |
| 47 | 4318 | 35250 SOUTH GRATIOT AVENUE | CLINTON TWP. | MI | 48035 |
| 48 | 4321 | 51037 VAN DYKE AVENUE | SHELBY TOWNSHIP | MI | 48316 |
| 49 | 4350 | 3100 EAST MICHIGAN AVENUE | JACKSON | MI | 49202 |
| 50 | 4366 | 9155 TELEGRAPH ROAD | TAYLOR | MI | 48180 |
| 51 | 4407 | 1243 U.S. 31 SOUTH | MANISTEE | MI | 49660 |
| 52 | 4466 | 29447 FORD ROAD | GARDEN CITY | MI | 48135 |

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 53 | 4504 | 2838 EAST COURT STREET | FLINT | MI | 48506 |
| 54 | 4526 | 1900 EAST 8 MILE ROAD | DETROIT | MI | 48234 |
| 55 | 4537 | 36485 GARFIELD ROAD | CLINTON TWP. | MI | 48035 |
| 56 | 4548 | 25922 MIDDLEBELT ROAD | FARMINGTON HILLS | MI | 48336 |
| 57 | 4552 | 2 WHITNEY AVENUE | FLORAL PARK | NY | 11001 |
| 58 | 4577 | 109 NORTH WHITTEMORE STREET | ST. JOHNS | MI | 48879 |
| 59 | 4616 | 208 EAST CENTRAL AVENUE | TITUSVILLE | PA | 16354 |
| 60 | 4706 | 833 NORTH BATTLEFIELD BLVD | CHESAPEAKE | VA | 23320 |
| 61 | 4761 | 1124 NORTH BALLENGER HWY. | FLINT | MI | 48504 |
| 62 | 4767 | 230 SOUTH MAIN STREET | BELLEFONTAINE | OH | 43311 |
| 63 | 4770 | 2701 SOUTH CEDAR STREET | LANSING | MI | 48910 |
| 64 | 4868 | 71-18 KISSENA BOULEVARD | FLUSHING | NY | 11367 |
| 65 | 4981 | 3131 HEMPSTEAD TURNPIKE | LEVITTOWN | NY | 11756 |
| 66 | 5201 | 601 SOUTH GRADY WAY,STE.P | RENTON | WA | 98057 |
| 67 | 5204 | 3202 132ND STREET, S.E. | MILL CREEK | WA | 98012 |
| 68 | 5227 | 110 SW 148TH STREET | BURIEN | WA | 98166 |
| 69 | 5231 | 10103 EVERGREEN WAY | EVERETT | WA | 98204 |
| 70 | 5280 | 8230 MARTIN WAY EAST | LACEY | WA | 98516 |
| 71 | 5347 | 2440 SE CESAR E CHAVEZ BLVD | PORTLAND | OR | 97214 |
| 72 | 5412 | 1600 NORTH MAIN STREET | MERIDIAN | ID | 83642 |
| 73 | 5417 | 5005 WEST OVERLAND ROAD | BOISE | ID | 83705 |
| 74 | 5448 | 4044 EAGLE ROCK BOULEVARD | LOS ANGELES | CA | 90065 |
| 75 | 5457 | 4046 SOUTH CENTINELA AVENUE | LOS ANGELES | CA | 90066 |
| 76 | 5466 | 7859 FIRESTONE BOULEVARD | DOWNEY | CA | 90241 |
| 77 | 5521 | 4402 ATLANTIC AVENUE | LONG BEACH | CA | 90807 |
| 78 | 5571 | 935 NORTH HOLLYWOOD WAY | BURBANK | CA | 91505 |
| 79 | 5585 | 139 NORTH GRAND AVENUE | COVINA | CA | 91724 |
| 80 | 5593 | 13905 AMAR ROAD | LA PUENTE | CA | 91746 |
| 81 | 5611 | 920 EAST VALLEY BOULEVARD | ALHAMBRA | CA | 91801 |
| 82 | 5635 | 3813 PLAZA DRIVE | OCEANSIDE | CA | 92056 |
| 83 | 5638 | 1670 MAIN STREET | RAMONA | CA | 92065 |
| 84 | 5657 | 6505 MISSION GORGE ROAD | SAN DIEGO | CA | 92120 |
| 85 | 5661 | 8985 MIRA MESA BOULEVARD | SAN DIEGO | CA | 92126 |
| 86 | 5730 | 25906 NEWPORT ROAD | MENIFEE | CA | 92584 |
| 87 | 5735 | 24829 DEL PRADO | DANA POINT | CA | 92629 |
| 88 | 5753 | 30222 CROWN VALLEY PARKWAY | LAGUNA NIGUEL | CA | 92677 |
| 89 | 5757 | 19701 YORBA LINDA BOULEVARD | YORBA LINDA | CA | 92886 |
| 90 | 5760 | 1406 WEST EDINGER AVENUE | SANTA ANA | CA | 92704 |
| 91 | 5772 | 2738 EAST THOMPSON BLVD. | VENTURA | CA | 93003 |
| 92 | 5780 | 720 NORTH VENTURA ROAD | OXNARD | CA | 93030 |
| 93 | 5967 | 20572 HOMESTEAD ROAD | CUPERTINO | CA | 95014 |
| 94 | 5976 | 2620 EL CAMINO REAL | SANTA CLARA | CA | 95051 |
| 95 | 5979 | 901 SOQUEL AVENUE | SANTA CRUZ | CA | 95062 |
| 96 | 6001 | 571 BELLEVUE ROAD | ATWATER | CA | 95301 |
| 97 | 6045 | 5409 SUNRISE BOULEVARD | CITRUS HEIGHTS | CA | 95610 |
| 98 | 6080 | 1309 FULTON AVENUE | SACRAMENTO | CA | 95825 |
| 99 | 6213 | 3029 HARBOR BOULEVARD | COSTA MESA | CA | 92626 |
| 100 | 6288 | 959 CRENSHAW BOULEVARD | LOS ANGELES | CA | 90019 |
| 101 | 6318 | 3000 SOUTH ARCHIBALD AVENUE | ONTARIO | CA | 91761 |
| 102 | 6333 | 15800 IMPERIAL HIGHWAY | LA MIRADA | CA | 90638 |
| 103 | 6521 | 22201 MERIDIAN AVENUE E | GRAHAM | WA | 98338 |
| 104 | 6717 | 8509 IRVINE CENTER DRIVE | IRVINE | CA | 92618 |

| No. | Store No. | Property Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 105 | 6769 | 499 ALVARADO STREET | MONTEREY | CA | 93940 |
| 106 | 6908 | 9600 15TH AVE SW | SEATTLE | WA | 98106 |
| 107 | 6915 | 2518 196TH ST SW | LYNNWOOD | WA | 98036 |
| 108 | 6920 | 3620 FACTORIA BLVD SE | BELLEVUE | WA | 98006 |
| 109 | 6927 | 11919 NE 8TH STREET | BELLEVUE | WA | 98005 |
| 110 | 6952 | 7370 170TH AVE NE | REDMOND | WA | 98052 |
| 111 | 7827 | 1080 S WEST END BLVD | QUAKERTOWN | PA | 18951 |
| 112 | 10092 | 80 EAST MAIN STREET | WEBSTER | MA | 01570 |
| 113 | 10382 | 289 GREENWOOD AVE. | BETHEL | CT | 06801 |
| 114 | 10415 | 3 MARSHALL HILL ROAD | WEST MILFORD | NJ | 07480 |
| 115 | 10449 | 210 BRIDGETON PIKE | MANTUA | NJ | 08051 |
| 116 | 10456 | 108 SWEDESBORO ROAD SUITE 20 | MULLICA HILL | NJ | 08062 |
| 117 | 10505 | 2370 ROUTE 33 | ROBBINSVILLE | NJ | 08691 |
| 118 | 10514 | 1726 ROUTE 37 EAST | TOMS RIVER | NJ | 08753 |
| 119 | 10517 | 86  B LACEY ROAD | WHITING | NJ | 08759 |
| 120 | 10586 | 2981 OCEAN AVENUE | BROOKLYN | NY | 11235 |
| 121 | 10619 | 3199 LONG BEACH ROAD | OCEANSIDE | NY | 11572 |
| 122 | 10620 | 198 WEST MERRICK ROAD | VALLEY STREAM | NY | 11580 |
| 123 | 10626 | 836 SUNRISE HIGHWAY | BAY SHORE | NY | 11706 |
| 124 | 10628 | 2784 SUNRISE HIGHWAY | BELLMORE | NY | 11710 |
| 125 | 10633 | 901 MERRICK ROAD | COPIAGUE | NY | 11726 |
| 126 | 10635 | 577 LARKFIELD ROAD | EAST NORTHPORT | NY | 11731 |
| 127 | 10642 | 695 EAST JERICHO TURNPIKE | HUNTINGTON STATION | NY | 11746 |
| 128 | 10650 | 700-43 PATCHOGUE-YAPHANK ROAD | MEDFORD | NY | 11763 |
| 129 | 10655 | 273 PINE HOLLOW ROAD | OYSTER BAY | NY | 11771 |
| 130 | 10657 | 397 SUNRISE HIGHWAY | WEST PATCHOGUE | NY | 11772 |
| 131 | 10658 | 593 OLD TOWN RD. | PORT JEFF STATION | NY | 11776 |
| 132 | 10663 | 65 ROUTE 111 | SMITHTOWN | NY | 11787 |
| 133 | 10828 | 2453 ELMWOOD AVENUE | KENMORE | NY | 14217 |
| 134 | 10868 | 1567 PENFIELD ROAD | ROCHESTER | NY | 14625 |
| 135 | 10900 | 700 STEVENSON BLVD. | NEW KENSINGTON | PA | 15068 |
| 136 | 10901 | 351 BRIGHTON AVENUE | ROCHESTER | PA | 15074 |
| 137 | 10906 | 5235 LIBRARY ROAD | BETHEL PARK | PA | 15102 |
| 138 | 10908 | 5990 UNIVERSITY BLVD STE30 | MOON TOWNSHIP | PA | 15108 |
| 139 | 10943 | 2501 SAW MILL RUN BLVD | PITTSBURGH | PA | 15234 |
| 140 | 10949 | 5410 KEEPORT DRIVE | PITTSBURGH | PA | 15236 |
| 141 | 10967 | 6090 ROUTE 30 | GREENSBURG | PA | 15601 |
| 142 | 10974 | 4830 WILLIAM PENN HIGHWAY | EXPORT | PA | 15632 |
| 143 | 10991 | 1730 WILMINGTON ROAD | NEW CASTLE | PA | 16105 |
| 144 | 11042 | 2178 W. UNION BLVD. | BETHLEHEM | PA | 18018 |
| 145 | 11053 | 1628 SOUTH FOURTH STREET | ALLENTOWN | PA | 18103 |
| 146 | 11134 | 2401 EAST VENANGO STREET | PHILADELPHIA | PA | 19134 |
| 147 | 11135 | 6327-43 TORRESDALE AVENUE | PHILADELPHIA | PA | 19135 |
| 148 | 11160 | 200 W. RIDGE AVENUE STE 112 | CONSHOHOCKEN | PA | 19428 |
| 149 | 11182 | 25 CHESTNUT HILL PLAZA | NEWARK | DE | 19713 |
| 150 | 11188 | 3209 KIRKWOOD HIGHWAY | WILMINGTON | DE | 19808 |
| 151 | 11208 | 5 BEL AIR SOUTH PKY, SUITE1347 | BEL AIR | MD | 21015 |
| 152 | 11255 | 1458 MOUNT PLEASANT ROAD | CHESAPEAKE | VA | 23322 |
| 153 | 12999 | 301 EISENHOWER DRIVE | HANOVER | PA | 17331 |
| 154 | 17783 | 7036 WERTZVILLE ROAD | MECHANICSBURG | PA | 17050 |

## Schedule 3

**Sale Guidelines**

## Sale Guidelines[1]

1.     The Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

2.     The Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Sale shall be conducted on Sunday unless the Debtors had been operating such Closing Store on a Sunday prior to the commencement of the Sales.

3.     On "shopping center" property, neither the Debtors nor the Consultants shall distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Debtors and/or the Consultants, as applicable, may solicit customers in the Closing Stores themselves. On "shopping center" property, neither the Debtors nor the Consultants shall use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.     At the conclusion of the Sale, the Debtors (and the Consultants, if applicable) shall vacate the Closing Stores; *provided* that the Debtors (and the Consultants, if applicable) may abandon any Non-Prescription Assets not sold in the Sales at the conclusion of the Sales (the "Termination Date"), without cost or liability of any kind to the Debtors or the Consultants.  The Debtors (or the Consultants, if applicable) shall notify counsel to the DIP Agents, the advisors to the Ad Hoc Secured Noteholder Group, and the applicable landlord of their intention to abandon any Non-Prescription Assets at least two (2) days prior to the Termination Date. The Debtors (or the Consultants, if applicable) will have the option to remove the Non-Prescription Assets, at their own cost, prior to the Termination Date. Any abandoned Non-Prescription Assets left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors. For the avoidance of doubt, as of the Termination Date, the Debtors (and the Consultants, if applicable) may abandon, in place and without further responsibility or liability of any kind, any Non-Prescription Assets.

5.     The Debtors and the Consultants may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales. The Debtors may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines. All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Debtors, prior to purchase, in accordance with these Sale Guidelines.

---

[1]   Capitalized terms used but not defined in these sale guidelines (these "Sale Guidelines") have the meanings given to them in the order to which these Sale Guidelines are attached (the "Order").

6.      The Debtors and the Consultants shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. Neither the Debtors nor the Consultants shall use neon or day-glo on their sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. In addition, the Debtors and the Consultants shall be permitted to utilize exterior banners at (a) non-enclosed mall Closing Stores and (b) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided, however*, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store. In addition, the Debtors and the Consultants shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order. Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Debtors (or the Consultants) any additional restrictions not contained in the applicable lease agreement.

7.      Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to the effect that "all sales are final."

8.      Except with respect to the hanging of exterior banners, neither the Debtors nor the Consultants shall make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

9.      Neither the Debtors nor the Consultants shall make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease. No property of the landlord of a Closing Store shall be removed or sold during the Sales. The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

10.     The Debtors shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

11.     The Debtors (and the Consultants, if applicable) and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, *provided* that such agreements do not have a material adverse effect on the Debtors or their estates.

12.     The Debtors and the Consultants may advertise the sale of owned Non-Prescription Assets in a manner consistent with these Sale Guidelines. The purchasers of any owned Non-Prescription Assets sold during the sale shall be permitted to remove the owned Non-Prescription Assets either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however*, that the foregoing shall not apply to *de minimis* sales of Non-Prescription Assets made whereby the item can be carried out of the Closing Store in a shopping bag. For the avoidance of doubt, as of the Termination Date, the Debtors (and the Consultants, if applicable) may abandon, in place and without further responsibility, any Non-Prescription Assets.

13. At the conclusion of the Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Debtors and their agents and representatives shall continue to have access to the Closing Stores pending assumption or rejection of applicable leases.

14. The rights of landlords against Debtors for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

15. The Debtors are authorized to conduct and consummate sales and internal transfers of Prescription Assets consistent with their historical practices, in accordance with applicable law.

16. Notwithstanding anything to the contrary in these Sale Guidelines, (a) the Consulting Agreement shall control in all respects whether or to what extent the Consultants are authorized to act or engage in any conduct in respect of the Sales and the Closing Stores and (b) these Sale Guidelines do not authorize the Consultants to take any action or engage in any conduct that the Consultants are not authorized to take or engage in under the Consulting Agreement; *provided, however*, the foregoing shall not operate to limit the rights of the DIP Agents granted pursuant to paragraph 40 of the Order (or the obligations of the Consultants to comply with any direction given pursuant to paragraph 40 of the Order).

17. If and to the extent that the landlord of any Closing Store affected hereby contends that the Debtors or the Consultants are in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Debtors and the Consultants as follows:

> Debtors:
>
> Rite Aid Corporation
> 1200 Intrepid Avenue, 2nd Floor
> Philadelphia, PA 19112
> Attention: Chief Legal Officer
>
> with copies (which shall not constitute notice) to:
>
> COLE SCHOTZ P.C.
> Court Plaza North, 25 Main Street
> Hackensack, NJ 07601
> Attention:    Michael D. Sirota, Esq.
>               Warren A. Usatine, Esq.
>               Felice R. Yudkin, Esq.
>               Seth Van Aalten
> Email:        msirota@coleschotz.com
>               wusatine@coleschotz.com
>               fyudkin@coleschotz.com
>               svanaalten@coleschotz.com

- and -

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attention:      Joshua A. Sussberg, P.C.
                Aparna Yenamandra, P.C.
                Ross J. Fiedler
                Zachary R. Manning
Email:          joshua.sussberg@kirkland.com
                aparna.yenamandra@kirkland.com
                ross.fiedler@kirkland.com
                zach.manning@kirkland.com

Consultants:

SB360 Capital Partners, LLC
75 Second Avenue
Needham, MA  02494
Attention:      Aaron S. Miller
                Robert Raskin
Email:          amiller@sb360.com
                rraskin@sb360.com

- and -

Hilco Merchant Resources, LLC
5 Revere Drive, Suite 206
Northbrook, IL 60062
Attention:      Ian Fredericks, President
Email:          ifredericks@hilcoglobal.com

with copies (which shall not constitute notice) to:

Leichtman Law PLLC
185 Madison Avenue, 15th Floor
New York, NY 10016
Attention:      Maura I. Russell
Email:          mrussell@leichtmanlaw.com

- and -

Lowenstein Sandler LLP
One Lowenstein Parkway
Roseland, NJ 07068

Attention:      Jeffrey Cohen
                Andrew Behlmann
Email:          jcohen@lowenstein.com;
                abehlmann@lowenstein.com