Law Office of Shmuel Klein PA
Attorney for HVP2 LLC
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510
email:shmuel.klein@verizon.net

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
_____

In re:
RITE AID CORPORATION, *et al*.,
Debtors                                                                    Chapter 11
                                                                                    Case No. 23-18993 (MBK)
_____                 (Jointly Administered)

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION

COMES NOW Shmuel Klein, attorney for a Creditor of the Debtor, HVP2 LLC  (hereinafter "HVP").

The motion must be denied and the Debtor must honor its filed assumption of the HVP lease (see exhibit B filed herewith) and continue its obligations under the lease, or the case should be dismissed because the Debtor cannot come up with a viable plan.  Alternatively, the Court should allow a creditors committee of landlords who can submit their own plan of reorganization to "to implement a comprehensive financial and operational restructuring that preserves as many stores and jobs as possible, a key component of which is the rationalization of the Debtors' retail pharmacy store footprint."

**BUSINESS JUDGMENT STANDARD ABSENT**

The business judgment standard is the proper analysis to be applied to any decision to "exit" or reject a lease under §365, and not whether you agreed to give the Debtor an extension to figure out what they have known pre-petition, i.e. what stores are profitable and what stores are not profitable. The Debtor has failed to articulate any business justification for "exiting" its valuable leases,  Inst. Creds. of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, 780 F.2d 1223, 5th Cir.; In re Lionel Corp., 722 F.2d 1063, 2d Cir.).,   N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, U.S. (noting "the traditional 'business judgment' standard applied by the courts to authorize rejection of the

ordinary executory contract."); In re Old Carco LLC, 2009 BL 193010, 406 B.R. 180, Bankr. S.D.N.Y. ("The business judgment standard is employed by courts in determining whether to permit a debtor to assume or reject a contract."); Lubrizol Enterps., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 4th Cir. ("Courts addressing [whether contract rejection would be advantageous] must start with the proposition that the bankrupt's decision upon it is to be accorded the deference mandated by the sound business judgment rule.").

In the Debtor's motion, its only argument as a basis to "exit" its leases is a bizarre rationale because some lessors did not agree to extend the Debtors time to ultimately reject its unexpired commercial real estate leases "that remain subject to the Initial Extended 365(d)(4) deadline (the "Non-Extended Leases").   The real reality is that the Debtor is shooting itself in the head.  They are "exiting" valuable retail locations while retaining unprofitable locations simply because those locations agreed to give them an extension.  This Debtor has no clue how to resize itself or determine the value of its assets to continue as a viable business.  The Court should allow a creditors committee of landlords who can submit their own plan of reorganization to "to implement a comprehensive financial and operational restructuring that preserves as many stores and jobs as possible, a key component of which is the rationalization of the Debtors' retail pharmacy store footprint."

The Debtor must include all its leases or provide some business rationale to reject those leases.  It has not done that and the motion must be denied and the case dismissed.  Only when the Debtor has a clearer vision of its cliche "RiteAid 2.0" should it be allowed to go forward in a chapter 11 proceeding.  It simply has too many variables to be able to provide a viable disclosure statement and plan of reorganization.  The motion must be denied as it fails any business rationale.  The only "exit" should be the Debtor from bankruptcy.

For chapter 11 debtors, additional disclosure requirements are imposed in connection with the approval of a plan of reorganization. Southmark Corp. v. Troter, Smith & Jacobs, 212 Ga.App. 454, 456, 442 S.Ed.2d 265, 267 (Ga. 1994) (noting that chapter 11 is particularly stringent in its disclosure

requirement). Inadvertence or ignorance does not justify a failure to list a known actual or potential claim on the bankruptcy schedules. <u>In re Coastal Plains</u>, 179 F.3d at 205-206 supra. The importance of the disclosure rules is highlighted by the fact that a debtor who knowingly and fraudulently conceals asset information not only faces repercussions in civil litigation, but even puts himself at risk of being criminally prosecuted. Bankruptcy schedules are filed under oath and the debtor's failure to list a claim may enable a defendant to seek dismissal of a subsequently filed action based on the doctrine of judicial estoppel. This "obscure legal doctrine" is intended to protect the integrity of the judicial process and uphold the sanctity of the oath. <u>In re Coastal Plains</u>, 179 F.3d at 205-206 supra. Judicial estoppel prevents parties from playing "fast and loose with the courts to suit the exigencies of self interest." <u>In re Coastal Plains</u>, 179 F.3d at 205-206 supra ("the doctrine is intended to protect the judicial system" Specifically, the doctrine is intended to prevent a party from taking one position under oath in a proceeding and then take an inconsistent position in a subsequent proceeding.

    The doctrine of estoppel will bar the granting of the motion. In the event this Court allows the Debtor to reject its leases, it must be based upon an economic analysis and not whether certain creditors agreed to allow them to delay rejecting their leases. Equitably, any order must include language that those leases are rejected as of the date the Court grants the Debtor's filed motion to reject that specific lease plus six months of continued rent. Further, the order must include language that there shall be no claim of any preference for payments made pre-petition or post-petition. Rejected Creditors should also be allowed to file or amend their proof of claims to include pre and post petition amounts resulting from the breach of the lease and additional sums both administrative and unsecured amounts due and vote regarding any plan.

    Section 365(d) is that a landlord's claim for post-petition rent obligations that remain unpaid pending the assumption or rejection of the relevant lease is entitled to administrative priority, regardless of the actual use and occupancy by the debtor. <u>In re CHS Elecs., Inc</u>., 265 B.R. 339, 341 (Bankr. S.D.

Fla. 2001). This means a debtor's abandonment of the premises will not relieve its obligation to pay these administrative rent obligations under Section 365, In re Iron-Oak Supply Corp., 169 B.R 416-419 (Bankr. E.D. Cal. 1994) and the debtor will have an obligation to pay rent until the lease is rejected, supra CHS Elecs., 265 B.R. at 341  a debtor's rent obligations arising post-petition are a landlord's administrative claims; and a debtor's rent obligations (under Section 365(d), at least) do not extend past rejection of the lease.

The Debtor's motion will also trigger legally enforceable duty to perform under that lease which states that if the tenant files bankruptcy, it will be deemed a material default, and the entire lease will become due. In re Montgomery Ward Holding Corp. (Montgomery Ward), 268 F.3d 205, 207 (3d Cir. 2001). The Debtor will then incur rejection damages which will be determined and calculated in accordance with the terms of the debtor's lease and applicable state law. In re Conston Corp., Inc., 130 B.R. 449, 453 (Bankr. E.D. Pa.1991). Additional rent-like obligations such as those related to taxes, insurance, common area maintenance, utilities, interest, and legal fees constitute rent reserved for purposes of calculating the Section 502(b)(6) rejection damages.

The Third Circuit applied the three part test enumerated in Kuske v. McSheridan,184 B.R. 91, 91 (9th Cir. B.A.P. 1995) overruled in part by In re El Toro Materials Co., Inc., 504 F.3d 978 (9th Cir. 2007), which provides that rejection of a lease "results in the breach of each and every provision of the lease, including covenants, and § 502(b)(6) is intended to limit the lessor's damages resulting from the rejection." Similarly, in Foamex International, Incorporated, 368 B.R. 383, 393-94 (Bankr. D. Del. 2007) relied on McSheridan in holding that landlords are entitled to one claim, subject to the Section 502(b)(6) cap, for all pre-petition and post-petition breaches of the lease and any resulting damages.

This motion will also result in collateral damages which will allow landlords to file a separate, uncapped claim for attorney fees and costs from a pre-petition arbitration regarding lease default, See Kupfer v. Salma (In re Kupfer), 526 B.R. 812 (N.D. Ca. 2014). This creditor, and others will surely

seek to categorize claims that do not directly stem from termination as collateral damages to avoid the application of the rejection damages cap to those collateral damages.

As stated above, the motion to "exit" underscores the fact that the Debtor has no ability to devise a successful exit from bankruptcy.

WHEREFORE it is respectfully requested Debtor's motion be denied and the case dismissed or alternatively, the Court should allow a creditors committee of landlords who can submit their own plan of reorganization to "to implement a comprehensive financial and operational restructuring that preserves as many stores and jobs as possible, a key component of which is the rationalization of the Debtors' retail pharmacy store footprint.".

Dated: May 3, 2024      Law Office of Shmuel Klein PA
                        BY: /s/ Shmuel Klein
                        Shmuel Klein, Esq.
                        Attorney for HVP2 LLC