| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1 (b)**<br><br>**FOLEY & LARDNER LLP**<br>Marcella M. Jayne, Esq.<br>90 Park Avenue<br>New York, NY 10016-1314<br>Tel:    (212) 682-7474<br>Fax:    (212) 687-2329<br>mjayne@foley.com<br><br>*Counsel for CVS Pharmacy, Inc., CaremarkPCS Health, L.L.C.* and *Caremark, L.L.C.* | |
| In re:<br><br>RITE AID CORPORATION, *et al.*,[1]<br><br>Debtors. | Case No. 23-18993 (MBK)<br><br>Chapter 11<br><br>Hearing Date:  June 20, 2024 |

### JOINT REPLY OF CERTAIN PHARMACIES TO (A) MEDIMPACT HEALTHCARE SYSTEMS, INC.'S RESERVATION OF RIGHTS; AND (B) DEBTORS' OBJECTION TO JOINT MOTION OF CERTAIN PHARMACIES FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW THE PHARMACIES TO TERMINATE PHARMACY CONTRACTS WITH THE DEBTORS

CVS Pharmacy, Inc. ("CVS"), Walgreen Co. and its affiliates ("Walgreens"), and Walmart Inc. f/k/a Wal-Mart Stores, Inc., Sam's East, Inc., and Sam's West, Inc. ("Walmart" and collectively with CVS and Walgreens, the "Pharmacies"), by and through their respective undersigned counsel,[2] hereby file this reply (the "Reply") in support of their motion to modify the

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

[2] Each of the Pharmacies joining in this Motion is represented by separate counsel, and they each hereby join in the relief requested herein in their separate capacities.  Certain factual statements set forth herein may not apply to all Pharmacies, and each Pharmacy joins in arguments only to the extent applicable.  Other than as reflected in this

11439763

automatic stay to terminate Pharmacy Contracts with the Debtors [Docket No. 3384] (the "Motion"), and in response to (A) MedImpact Healthcare Systems, Inc.'s Reservation of Rights with respect to the Motion [Docket No. 3662] (the "MedImpact RoR"); and (B) the Debtors' Objection to the Motion [Docket No. 3832] (the "Debtors' Objection"). In support of the Reply, the Pharmacies respectfully state as follows:[3]

## STATEMENT

1. As discussed in the Motion, as of the Debtors' bankruptcy filing, the Pharmacies were parties to pharmacy benefit management contracts with Elixir (collectively, the "Pharmacy Contracts"). The fundamental nature of the Pharmacy Contracts and the economics of the business relationship between the Pharmacies and Elixir provide that the Pharmacies are underpaid when Elixir remits payment on a particular prescription claim filled by one of the Pharmacies. The Pharmacies are only made whole after the fact, through a variety of reimbursement and reconciliation programs that occur at the ends of fiscal years or fiscal quarters e.g., DIR/BER/GER/reconciliation (collectively, the "Subsequent Pharmacy Payments"). Those Subsequent Pharmacy Payments are crucial to the Pharmacies being fully compensated under the Pharmacy Contracts.

2. On February 1, 2024 (the "Closing Date"), the Debtors closed the sale of Elixir's operating assets to MedImpact. The Debtors are generally correct that, prior to the Closing Date, Elixir was operating in the ordinary course of business with respect to the Pharmacies. To the best of the Pharmacies' knowledge, Elixir generally remitted payment on claims as required by the

---

Motion, no Pharmacy acts, represents, or speaks on behalf of (or purports to act, represent, or speak on behalf of) any other Pharmacy or any other entities in connection with these Chapter 11 Cases.

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2

contracts.[4]

3.  Notwithstanding the occurrence of the Closing Date and MedImpact's subsequent operation of Elixir's pharmacy benefits management ("PBM") business, the Pharmacy Contracts remain unassumed and unassigned four and a half months later. Furthermore, based on the timing of the Closing Date, significant post-fiscal year or post-fiscal quarter Subsequent Pharmacy Payments were not yet due and payable as of the Closing Date, but came due in the months that followed. All of the Subsequent Pharmacy Payments identified in the Motion have already become payable or will become payable by June 30, 2024.

4.  Indeed, as set forth in the Motion, Exhibits C-E, Elixir owes the Pharmacies tens of millions of dollars in Subsequent Pharmacy Payments.[5] Nevertheless, none of the post-Closing Date Subsequent Pharmacy Payments have been paid, exposing the Pharmacies to significant harm.

5.  In the Objection, the Debtors state that "[a]t the time of the entry of the Sale Order, the Debtors agreed with the Pharmacies and MedImpact to defer assumption and assignment of these PPAs to facility timely entry of the Sale Order and Closing while the parties worked towards a consensual resolution of these issues . . . *See* Sale Order, ¶F." (Objection, Paragraph 9). While the Debtors are correct that the Pharmacies consented to entry of the Sale Order prior to resolution

---

[4]  For Walmart and Walgreens, their Pharmacy Contracts are "pay when paid" meaning that Elixir is required to remit payment to them within a certain number of days after Elixir received payment from a plan sponsor. While Walmart and Walgreens do not know when Elixir received funds, the cadence of payments and aging of balances did not deviate from established course of conduct. For CVS, which was paid within a certain number of days of a claim arising (regardless of if a plan sponsor had already paid Elixir), Elixir in large part maintained the same general course of payment conduct and compliance with contractual requirements. That said, as of the Closing Date, there were (a) certain claim amounts due to CVS that Elixir did not pay within the 30-day window for commercial claims and the 14-day window for Medicare claims, and (b) Elixir owed CVS certain unreimbursed tax amounts, as set forth in the Motion.

[5]  As reflected in Exhibits C-E, certain amounts were estimates as of the filing of the Motion and, subsequently, have been fixed in amounts different from those listed in the Motion. However, the general principle that there are tens of millions of dollars in obligations that have come due since the Closing Date – or will come due by June 30, 2024 – is unchanged.

3

of their cure claims, the Pharmacies never consented to extend consideration of the Debtors' cure obligations beyond the Closing Date. Instead, this outcome was unilaterally imposed upon them when the Debtors and MedImpact elected to close without assuming and assigning the Pharmacy Contracts in accordance with the requirements of § 365 of the Bankruptcy Code. Not only was this decision not authorized by paragraph F of the Sale Order, it was directly contrary to that provision. Paragraph F of the Sale Order states:

> [W]ith respect to the objections filed by CVS Pharmacy, Inc. and certain affiliates ("CVS"), Walmart Inc. f/k/a Wal-Mart Stores Inc. and certain of its subsidiaries, including but not limited to Sam's East, Inc. and Sam's West, Inc. ("Walmart"), Walgreen Co., ("Walgreens" and collectively with CVS and Walmart, the "Pharmacies") at Docket Nos. 1243, 1244, and 1380, respectively (collectively, the "Pharmacies' Objections"), the Pharmacies' Objections and the issues with respect to assumption and assignment of the Pharmacies' contracts and cure amounts, are hereby adjourned until, absent consensual resolution of the Pharmacies' Objection, a hearing to occur at a time to be agreed between the Debtors and the Pharmacies, **_but in any event no later than the Closing date_**.

Sale Order, ¶ F (emphasis supplied).

6. Furthermore, while the Pharmacies were subsequently assured by MedImpact's counsel that they would be paid everything that they were owed and that they just needed to provide the Debtors and MedImpact time to work through their issues, MedImpact has subsequently reversed course and disclaimed any obligation to pay the Subsequent Pharmacy Payments that have come due post-closing. Consequently, the amount of defaults under the Pharmacy Contracts that must be cured is now many millions of dollars higher than it was on the Closing Date.

7. Section 365(b)(1)(A) of the Bankruptcy Code explicitly requires the Debtors to either cure all defaults under the Pharmacy Agreements at the time of their assumption and assignment or to provide adequate assurance of a prompt cure. 11 U.S.C. § 365(b)(1)(A). The decision of MedImpact and the Debtors to close their transaction without regard to this requirement

4

has placed the Pharmacies in this untenable situation -- having contracts with a party that is not able to perform under those contracts and having to do business with a third party that is not yet a party to the contracts under which the Pharmacies are expected to perform. This shadow, "quasi-assignment" of the Pharmacy Contracts without adherence to the requirements of section 365(b)(1)(A), is antithetical to the Bankruptcy Code and exposes the Pharmacies to continuing harm, almost five months after the Debtors should have complied with all obligations upon assumption and assignment of the Pharmacy Contracts.

8. While MedImpact has refused to pay the Subsequent Pharmacy Payments as they became due following the Closing Date, the Debtors claim that they lack the funds with which to pay those amounts. They have been loud and clear that their liquidity is exhausted and they require emergency financing just to bridge to confirmation of a plan and their exit from chapter 11. The Debtors do not deny that there is not one dollar allocated in their exit financing to pay the many millions of dollars now due to the Pharmacies.

## **REPLY**

9. For the reasons set forth above and in the Motion, cause exists for relief from the automatic stay to allow the Pharmacies to terminate the Pharmacy Contracts.

10. The Debtors' failure to assign the Pharmacy Contracts to MedImpact and refusal or inability to cure all defaults thereunder, coupled with MedImpact's refusal to pay the Subsequent Pharmacy Payments as they have come due, has subjected the Pharmacies to actual pecuniary loss and a continuing risk of additional, substantial pecuniary loss.

11. Without assignment of the Pharmacy Contracts in accordance with § 365 of the Bankruptcy Code, MedImpact does not have the legal contractual right to performance under those contracts. While the Pharmacies have permitted MedImpact to act in Elixir's stead pending resolution of the assumption and cure issues, the additional defaults with respect to the unpaid

5

Subsequent Pharmacy Payments have harmed the Pharmacies. In the MedImpact RoR, MedImpact provides no assurances that payment of these amounts will ever be forthcoming, and takes no position at all on the termination of the Pharmacy Contracts. This undermines any confidence that the Pharmacies will ever receive the full performance to which they are due under the Pharmacy Contracts and leaves the Pharmacies far short of the adequate assurance of both prompt cure and future performance that are prerequisites to the Debtors' ability to assume and assign the Pharmacy Contracts. At the same time, the Debtors no longer have the ability to perform under the contracts, as they no longer have a PBM business.

12. With the automatic stay in place and their contracts remaining with the Debtors, the Pharmacies are unable to exercise the remedies available in the Pharmacy Contracts to address the failures of performance by MedImpact and the Debtors, and will continue to be so prejudiced absent relief from stay. They are owed tens of millions of dollars in Subsequent Pharmacy Payments that are either currently past due or will be due by June 30. At the same time, additional Subsequent Pharmacy Payment obligations continue to accrue while the Debtors and MedImpact are forcing the Pharmacies to bear the economic toll of a contract dispute to which the Pharmacies are not a party.

13. While the Debtors correctly state in the Objection that the Bankruptcy Code permits assumption or rejection of contracts through the confirmation date (Objection, ¶ 5), the Pharmacies find themselves only days away from the Debtors' scheduled confirmation hearing. The Pharmacies have made repeated requests that the Debtors provide adequate assurance of prompt cure in the event that the Debtors are not immediately successful with respect to their Motion to Enforce (or if MedImpact appeals a successful result), only to have each of those requests rebuffed. Through the Elixir Sale, the Debtors have obtained value due in part to the promise of the transfer of Elixir's business with the Pharmacies. While the Pharmacies understand that some

6

of the value promised to the Debtors has not yet been forthcoming, the Debtors should not be permitted to keep the Pharmacies in contractual purgatory (after doing so for over four months) while they litigate with MedImpact. So long as the automatic stay protects the Debtors and, by extension, MedImpact, from the Pharmacies' exercise of their contractual rights and remedies, the Pharmacies will be exposed to risk of additional harm that is in no way provided for under the Bankruptcy Code.

14.    Accordingly, relief from the automatic stay is appropriate for the reasons specified herein and in the Motion, absent immediate assumption and assignment of the Pharmacy Contracts and full payment of all amounts due thereunder.

[*Remainder of Page Intentionally Left Blank*]

Dated: June 19, 2024  Respectfully submitted,

/s/ *Marcella M. Jayne*
**FOLEY & LARDNER LLP**
Marcella M. Jayne, Esq.
90 Park Avenue
New York, NY 10016-1314
Tel:  (212) 682-7474
Fax:  (212) 687-2329
mjayne@foley.com

-and-

Geoffrey S. Goodman (admitted *pro hac vice*)
Emil P. Khatchatourian (admitted *pro hac vice*)
321 N. Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Tel: (312) 832-4500
Fax: (312) 832-4700
E-mail: ggoodman@foley.com
Email:  ekhatchatourian@foley.com

*Counsel for CVS Pharmacy, Inc.*

/s/ *Joseph D. Frank*
**FRANKGECKER LLP**
Joseph D. Frank (admitted *pro hac vice*)
1327 W. Washington Blvd., Suite 5 G-H
Chicago, Illinois 60607
Telephone: (312) 276-1400
Facsimile:  (312) 276-0035
Email:  jfrank@fgllp.com

*Counsel for Walgreen Co., and its Affiliates and Subsidiaries.*

/s/ *Jeremy W. Ryan*
**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (admitted *pro hac vice*)
R. Stephen McNeill (admitted *pro hac vice*)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone:  (302) 984-6000
Facsimile:   (302) 658-1192
Email: jryan@potteranderson.com
Email: rmcneill@potteranderson.com

*Counsel for Walmart Inc. and Related Entities*

11439763

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2024, a true and correct copy of the foregoing **JOINT REPLY OF CERTAIN PHARMACIES TO (A) MEDIMPACT HEALTHCARE SYSTEMS, INC.'S RESERVATION OF RIGHTS; AND (B) DEBTORS' OBJECTION TO JOINT MOTION OF CERTAIN PHARMACIES FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW THE PHARMACIES TO TERMINATE PHARMACY CONTRACTS WITH THE DEBTORS** was sent via ECF Noticing to all parties receiving ECF Notices in these chapter 11 cases and upon the parties below as indicated:

**VIA U.S. MAIL**

Rite Aid Corporation,
1200 Intrepid Avenue, 2nd Floor
Philadelphia, Pennsylvania 19112

**VIA EMAIL**:

**Office of the United States Trustee**
**United States Trustee, Region 3**
One Newark Center
1085 Raymond Blvd., Suite 2100
Newark, NJ 07102-5504
Attn: Jeffrey M. Sponder and Lauren Bielskie
Jeffrey.m.sponder@usdoj.gov
lauren.bielskie@usdoj.gov

*U.S. Trustees' Counsel*

**VIA EMAIL**:

**Kirkland & Ellis LLP**
601 Lexington Avenue
New York, NY 10022
Attention: Edward O. Sassower, P.C.;
Joshua A. Sussberg, P.C.; Aparna Yenamandra, P.C.; Ross J. Fiedler; Zachary R. Manning
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

*Counsel for the Debtors*

**VIA EMAIL**:

**Cole Schotz, P.C.**
25 Main Street
Hackensack, NJ 07601
Attention: Michael D. Sirosta, Esq.;
Warren A. Usatine, Esq.; Felice R. Yudkin, Esq.; Seth Van Aalten, Esq.
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Counsel to the Debtors*

**VIA U.S. MAIL**

MedImpact
10181 Scripps Gateway Ct
San Diego, California 92131

**VIA EMAIL:**

**DLA Piper LLP (US)**
51 John F. Kennedy Parkway, Suite
120 Short Hills, New Jersey 07078

Attention: Stuart M. Brown; Matthew S. Sarna; Richard A. Chesley
stuart.brown@us.dlapiper.com
matthew.sarna@us.dlapiper.com
richard.chesley@us.dlapiper.com

*Counsel to MedImpact Healthcare Systems, Inc.*

VIA EMAIL:

**Kramer Levin Naftalis & Frankel LLP**
1177 Avenue of the Americas
New York, NY 10036
Attention: Adam Rogoff; Rachael Ringer; Megan Wasson; Rose Bagley
arogoff@kramerlevin.com
rringer@kramerlevin.com
mwasson@kramerlevin.com
rbagley@kramerlevin.com

*Counsel to the Committees*

VIA EMAIL:

**Kelley Drye & Warren LLP**
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Attention: James S. Carr; Robert L. LeHane; Kristin S. Elliott
jcarr@kelleydrye.com
rlehane@kelleydrye.com
kelliott@kelleydrye.com

*Counsel to the Committees*

VIA EMAIL:

**Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.**
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Attn: Arthur J. Abramowitz; Ross J. Switkes

VIA EMAIL:

**Choate, Hall & Stewart LLP**
Two International Place
Boston, MA 02110
Attn: John F. Ventola; Jonathan D. Marshall; Mark D. Silva

jventola@choate.com
jmarshall@choate.com
msilva@choate.com

*Counsel to DIP Agents*

VIA EMAIL:

**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park
New York, NY 10036
Attn: Arik Preis; Mitchell P. Hurley; Kate Doorley; Theodore James Salwen; Brooks Barker
apreis@akingump.com
mhurley@akingump.com
kdoorley@akingump.com
jsalwen@akingump.com
bbarker@akingump.com

*Counsel to the Committees*

VIA EMAIL:

**Greenberg Traurig, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Attn: Alan J. Brody, Esq.

| | |
|---|---|
| aabramowitz@shermansilverstein.com<br>rswitkes@shermansilverstein.com | Oscar N. Pinkas, Esq.<br><br>brodya@gtlaw.com<br>pinkaso@gtlaw.com |
| *Counsel to the Committee* | *Counsel to DIP Agents* |
| **VIA EMAIL**: | **VIA EMAIL**: |
| **Paul, Weiss, Rifkind, Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Attn: Andrew N. Rosenberg; Brian S. Hermann; Christopher Hopkins<br>arosenberg@paulweiss.com<br>bhermann@paulweiss.com<br>chopkins@paulweiss.com | **Fox Rothschild LLP**<br>49 Market Street<br>Morristown, NJ 07960<br>Attn: Howard A. Cohen; Joseph J. DiPasquale; Michael R. Herz<br><br>hcohen@foxrothschild.com<br>jdipasquale@foxrothschild.com<br>mherz@foxrothschild.com |
| *Counsel to Ad Hoc Group* | *Counsel to the Ad Hoc Group* |

*/s/ Marcella M. Jayne*
Marcella M. Jayne