| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b) Greenbaum, Rowe, Smith & Davis LLP<br>Metro Corporate Campus One<br>P.O. Box 5600<br>Woodbridge, New Jersey 07095<br>(732) 549-5600<br>dbruck@greenbaumlaw.com<br>Attorneys for Landlord, State Street Partners LLC | |
| In re:<br><br>**RITE AID CORPORATION et al.,**<br><br>Debtors. | Chapter 11 Proceeding<br><br>**Case No.: 23-18993 (MBK)**<br><br>Jointly Administered |

**MOTION PURSUANT TO BANKRUPTCY CODE SECTION 105, 362 AND 365 TO (A) COMPEL THE DEBTORS TO IMMEDIATELY CURE THE EXISTING DEFAULTS IN THE LEASE, OR (B) PROVIDE ADEQUATE ASSURANCE OF ITS ABILITY TO CURE THE DEFAULTS IN THE LEASE (C) FOR THE COURT TO MODIFY THE PROVISIONS OF THE PLAN INJUNCTION AND OR (C) VACATE THE AUTOMATIC STAY SO AS TO PERMIT LANDLORD TO PROCEED WITH EVICTION PROCEEDINGS IN THE STATE COURTS, AND (D) SUCH OTHER RELIEF AS MAY BE APPROPRIATE.**

TO:    THE HONORABLE MICHAEL B KAPLAN,
       UNITED STATES BANKRUPTCY JUDGE

State Street Partners (State Street or Movant), by its undersigned counsel hereby files this motion (the Motion) for entry of an order pursuant to 11 USC sections 105, 362 (d) and 365 and Rule 4001-1 and 9001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of New Jersey (the Local Rules), substantially in the form attached hereto (the Proposed Order), compelling the Reorganized Debtors to comply with the provisions of the Lease (as defined hereinafter) and the provisions of the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and its Debtor Affiliates (Dkt # 2466) (as subsequently

amended, the Plan) or in the alternative for an order of the Court vacating the Injunction contained in the plan and/or the stay imposed by section 362 of the Bankruptcy Code so as to allow State Street to pursue eviction proceedings against the Debtor in the state courts of Idaho. and for such other relief as is appropriate.

State Street argues that notwithstanding that Rite Aid has identified Landlord's Lease as a Lease to be assumed, the Debtor has taken no steps to cure the multiple defaults in the Lease, that such continued refusal to cure the Lease has exposed and continues to expose Landlord to material damages, and that given the provisions of Bankruptcy Code 365 (d)(4) that Rite Aid should prove that it is capable of providing adequate assurance of its ability to cure the defaults in the Lease or that the stay should be modified to permit the Landlord to institute eviction proceedings in the State Court. In support of the Motion, State Street submits the Certification of Jeff Oberg, Managing Member of State Street (the Oberg Certification) filed contemporaneously herewith and incorporated herein, and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this motion pursuant to 28 USC 1334. This proceeding is a core proceeding pursuant to 28 USC 157(b)(2) and venue is proper in this District pursuant to 28 USC sections 1408 and 1409.

2. The statutory predicates for relief requested herein are sections 105, 362(d) and 365 of title 11 of the United Sates Code (the Bankruptcy Code)

## BACKGROUND

3. On October 15, 2023 (the petition date), the Debtors filed voluntary petitions for relief (the Bankruptcy Cases) in Chapter 11 of the Bankruptcy Code in this Court.

4. In August 2020 State Street (as landlord) through a series of assignments entered into a lease with 1515 West State Street, Boise, Idaho LLC (Tenant) for premises at 1515 West State Street, Bose, Idaho (the Lease) to be operated by Tenant as a retail drug store and for no other use. The Tenant is a debtor in these bankruptcy proceedings and is an affiliate of Rite Aid.

5. In August 2020 Rite Aid executed a Corporate Guaranty of the payment and performance obligations of the Tenant under the Lease.

6. A copy of the Lease is attached to the Oberg Certification as **Exhibit A**. A copy of the Corporate Guaranty is attached as **Exhibit B** to the Oberg Certification.

7. The Tenant remains in possession of the demised premises under the Lease.

8. On August 15, 2024 the Debtors filed their amended schedule of assumed executory contracts and unexpired leases in which the Debtors noticed State Street that the Debtors intended to assume the Lease. See Dkt # 4526, page 50, item 1252. Despite the fact that the Debtor was well aware that the insurance in effect was not in compliance with the requirements of the Lease and had been so notified by Landlord on multiple occasions, the Debtors list no cure costs for assuming the Lease. For more than a year, since September 2023 at which time the Managing Member of State Street noticed Rite Aid of the default, the Debtors were aware that the Lease was in default for failure to comply with the insurance requirements of the Lease. See Paragraph 14 of the Lease. The Debtor has taken no steps to cure the default, and such refusal has caused State Street to incur monetary and other damages. The Debtor has failed to comply with Bankruptcy Code section 365(b)(1)(A) which requires that in order to assume a lease the debtor must either cure the defaults or provide adequate assurance of its ability to cure the defaults. Rite Aid has done neither.

9. On March 28. 2024 the Debtors filed the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation, and its Debtor Affiliates (Dkt # 2466) as subsequently amended. (the Plan)

10. On August 16, 2024, the Court entered the order Approving the Disclosure Statement for and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates (Dkt # 4532) (the Confirmation Order).

11. A Notice of the Effective Date was filed (Dkt# 4800) making August 30, 2024 as the Effective Date of the Plan.

12. The Notice of the Amended Executory Contracts and Unexpired Leases (the Notice) provides for parties to object to the Notice. On August 27, 2024, State Street filed and served a Further Objection (the Objection) to Debtors Proposed Assumption of the Lease. See Doc # 4732 The Objection sets forth the continued default in the Lease pertaining to the Debtor's failure and refusal to comply with the insurance provisions of the Lease.

13. Rite Aid provided Landlord with Certificates of Insurance on June 7, 2023 for Commercial Liability Property Insurance and a Certificate of Liability Insurance on October 13, 2023. Copies of the Certificates of Insurance are attached to the Oberg Certification as **Exhibits C and C-1**. Subsequently Rite Aid provided the Landlord with additional certificates of insurance, but they did not comply with the Lease either. **See Exhibit C-2**

14. As provided in the Objection, State Street had advised the Debtor that it was in default in the terms of the Lease since September 13, 2023 at which time Landlord sent a notice of default to Rite Aid a copy of which is attached **as Exhibit "D"** to the Oberg Certification The default letter advises Rite Aid of the default in its failure to provide adequate insurance as required in the

Lease, and requests that Rite Aid obtain an appraisal of the building as set forth in the Lease. Rite Aid did not obtain an appraisal of the building as required by the Lease.

15. Despite being on notice of the default in the Lease since prior to the Petition Date, and despite numerous conversations with Landlord and counsel, the Debtor has made no effort to cure the defaults, nor provide adequate assurance of its ability to cure the default; the insurance coverage required by the Lease has not been replaced by the Debtor and the Lease remains in default. The insurance in place is not in compliance with the Lease and as a result the Landlord and the Lender are under insured. Yet, Rite Aid takes the position that it will assume the Lease but makes no effort after more than a year to cure the existing defaults.

16. The Lease requires the following as to insurance coverage at paragraph 14.

**"Tenant shall maintain at its sole cost and expense the following insurance for the Leased Premises**:

(i) Insurance against loss or damage to the Improvements and Equipment under a fire and broad form of all risk extended coverage insurance policy………. Such insurance shall be in amounts sufficient to prevent Landlord or Tenant from becoming a co-insurer under the applicable policies, and in any event in amounts not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable) as determined from time to time at Landlord's request but not more frequently than once in any 12 month period, by agreement of Landlord, Lender and tenant, or if not so agreed, at Tenant's expense , by the insurer or insurers or by an appraiser approved by Landlord……"

17. The certificate of insurance produced by Debtor states that the coverage applicable to "Building or Business Personal Property" is limited to $5,000,000. Despite the Landlord's demand that Rite Aid obtain an appraisal of the Building and Equipment in its Default Letter, Rite Aid refused to do so. Considering Rite Aid's refusal to comply with the terms of the Lease, Landlord obtained an appraisal as attached to the Oberg certification as **Exhibit E** which reveals that the value of the building alone is $7,465,000. Landlord provided Rite Aid with a copy of the appraisal,

but Rite Aid continues to refuse to cure the default. Landlord has since obtained an estimate of the value of the Equipment at the demised premises at $3,000,000.

>   (ii)    "<u>Contractual and commercial liability insurance</u> against claims for bodily injury, death or property damage occurring on or about the Leased Premises, which insurance shall be written on a so called "Occurrence Basis" and shall provide minimum protection with a combined single limit in an amount not less than the greater of (x) Five Million ($5,000,000) Dollars ( or ins such increased limits from time to time to reflect declines in the purchasing power of the dollar as Landlord or Lender may reasonably request."

17. With respect to the above liability insurance coverage requirement in paragraph 14 (ii) of the Lease, the certificate of insurance provided by Rite Aid reflects $10,000,000 in coverage <u>but has a self-insurance provision</u> for $7,000,000 which leaves only $3,000,000 in available insurance coverage. Rite Aid is not creditworthy enough to self-insure under the provisions of the Lease. See Paragraph 14(b), below. <u>In effect the liability insurance coverage provided by the Debtor is $2,000,000 less than the Lease requires</u>. Rite Aid has been advised repeatedly of this default but has failed or refused to take steps to cure the default.

>   "14 (b) During such time as (i) no Event of Default is outstanding hereunder (ii) the tangible <u>net worth of tenant</u> ( or of the guarantor of tenants obligations under the Lease <u>shall be not less than One Hundred Million ($100,000,000) Dollars</u> as determined in accordance with generally accepted accounting principles consistently applied and (ii) Tenant (or the guarantor of tenant's obligations under the Lease ) has a Standard & Poors rating of BBB or better, Tenant may self-insure all or any portion of the coverage referred to in Paragraph 14 (a)(i), (ii), (iii), (v) and (vi), provided that the self-insurance program of this section (b) does not violate any Legal Requirements of any state which regulates a Lender domiciled in said state or does not violate any provision in Landlord's Mortgage."

18. With respect to the above language in paragraph 14(b) of the Lease, Rite Aid could not self-insure for liability insurance for a variety of reasons, the first of which is that the Lease is in default. Further Rie Aid does not have a net worth of $100,000,000.

19. With respect to the property insurance coverage, in the absence of Rite Aid's willingness to obtain an appraisal of the building Landlord did so and retained the Valuation Department of State Auto Insurance Company to provide an appraisal of the building The appraisal is attached to the Oberg Certification and lists the value of the building alone at nearly $7,500,000. As noted, Landlord has recently received an estimate as to the value of the Equipment at $3,000,000.

20. Subparagraph (e) of paragraph 14 states clearly the requirements for the certificate of insurance to be provided by Rite Aid and the obligation to pay the premium for the insurance as required in the Lease.

> " Tenant shall pay as they become due, all premiums for the insurance required by this Paragraph 14, shall renew or replace each policy, and shall deliver to Landlord and Lender a certificate or other evidence (reasonably) satisfactory to Lender and Landlord of the existing policy and such renewal or replacement policy at least 30 days prior to the Policy Expiration Date…of each Policy………In the event of Tenant's failure to comply with any of the foregoing requirements of this Paragraph 14 within five (5) business days of the giving of written notice by Landlord to Tenant, Landlord shall be entitled to procure such insurance. Any sums expended by Landlord in procuring such insurance shall be **Additional Rent** and shall be repaid by Tenant, together with interest thereon at the Default Rate from the time of payment by Landlord until fully paid by Tenant immediately upon written demand therefor by Landlord…"

21. Because Rite Aid failed and refused to obtain an appraisal and thereafter failed to obtain insurance in compliance with the Lease, Landlord advised Tenant that it would acquire adequate insurance as required under the Lease and would demand reimbursement from Tenant together with interest as provided in the Lease. Landlord acquired policies of property and liability insurance in compliance with the terms of the Lease. See **Exhibit F**. The Landlord spent the following for the insurance as required in the Lease.

    i.    Property Policy for $7,500,000 of coverage for the building alone at a premium of $68,641.
    ii.    Liability Policy at a cost of $4.055
    iii.    Credit Card Processing fee, $2,362.62

Total insurance cost to replace Rite Aid policy = $75,058.62.

22. Landlord has advised Rite Aid of the expenditure for the property and liability insurance required under the Lease and has demanded reimbursement. Rite Aid has again ignored the request and failed to respond. As provided in the Lease at paragraph 19 (b)(vi) interest is accruing at the default rate on the monies advanced by Landlord to acquire the correct insurance policy.

23. Paragraph 19, entitled Default Provisions states as follows in pertinent part.

> "(a) The occurrence of any one or more of the following events.....shall constitute an Event of Default under this Lease.........(y) any {failure} in a payment of Additional Rent or other sum herein required to be paid by Tenant which continues unremedied for a period of ten (10) business days after a Nonpayment Notice is given to Tenant by Landlord.........(ii) failure by Tenant to perform and observe, or a violation or breach of any other provision of this Lease......."

24. Upon an Event of Default which remains uncured, Landlord shall have the right to notice Tenant of termination of the Lease. See Paragraph 19(b) of the Lease.

25. Paragraph 19(b)(vi) provides that the default rate on outstanding "Additional Rent" shall be six percent (6%) above the commercial lending rate"

26. The commercial lending rate in effect at regional banks is presently 6%.

27. The Corporate Guaranty executed by Rite aid provides that such guaranty of the Tenant's obligations under the Lease includes "without limitation, all reasonable attorney's fees incurred by Landlord or caused by any such default and or the enforcement of this Guaranty.

### REQUESTED RELIEF AND BASIS THEREFORE.

28. As set forth above, Rite Aid remains in default of the Lease. Despite numerous discussions Rite Aid has failed and refused to attempt to cure the defaults in the Lease. Bankruptcy Code section 365 is clear that the Debtor may not assume a Lease absent curing all defaults or at the least providing adequate assurance of its ability to cure the defaults. Rite Aid has had more than a year to satisfy section 365(b)(1)(A) but has failed to do so. See In re M. Fine Lumber Co., Inc. 383

B.R. 565,573 (Bankr. E.D.N.Y. 2008) and In re PRK Enterprises, Inc. 235 B.R. 597,602 (Bankr. E.D. Tex. 1999)

29. Rite Aid's failure and refusal to cure the defaults has created friction between the Landlord and its lender and has required Landlord to purchase policies of property and liability insurance that satisfies the conditions of the Lease at a cost in excess of $75,000 plus accruing interest. In addition, Landlord has incurred attorney's fees in connection with this matter including the bringing of this Motion. Such attorneys' fees exceed $20,000 to date and are continuing.

30. Under the circumstances cause exists under Bankruptcy Code section 362(d) to vacate the the stay and the Plan injunction so as to allow Landlord to pursue eviction of Rite Aid in the state Courts of Idaho.

31. The Debtor should not be permitted to simply notify the Landlord of its intention to assume the lease but not take steps to cure the existing defaults for more than a year.

32. For the foregoing reasons Landlord requests that the Debtor, be compelled to immediately cure the default in the Lease and reimburse Landlord for the expenditure incurred by Landlord arising from Rite Aid's defaults together with such additional relief as the Court may dem appropriate.

For the foregoing reasons Landlord requests that the Court enter the Order in the form attached granting Landlord the relief which it seeks, and such other relief as may be appropriate.

Dated: November 4, 2024

Respectfully submitted.
Greenbaum, Rowe, Smith & Davis LLP

By: _____
David L. Bruck
99 Wood Ave South
Iselin, New Jersey 08830

(732) 549-5600

dbruck@greenbaumlaw.com
Counsel to Landlord State Street Partners LLC